STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310) 452-3200

JOSEPH REICHMANN (SBN 29324)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310) 452-3200

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| J. FINLEY,<br><br>                    Plaintiff,<br><br>          v.<br><br>ERIC MICHAEL GARCETTI, *et al.*,<br><br>                    Defendants. | 2:21-cv-06003-DOC<br><br>**NOTICE OF MOTION AND MOTION (1) FOR DECLARATORY RELIEF AND (2) PRELIMINARY INJUNCTION, DECLARING THAT DEFENDANTS' PLACEMENT AND ENFORCEMENT OF NO PARKING SIGNS IS UNCONSTITUTIONAL**<br><br>Date: September 13, 2021<br>Time:  8:30 a.m.<br>Place: Courtroom 9D, Santa Ana<br><br>Judge David Ormon Carter |

**PLEASE TAKE NOTICE** that plaintiff moves the court to declare the unconstitutionality, under the United States Constitution, of defendants' placement and enforcement of no parking signs that prohibit parking between the hours of 2:00 a.m. and 6:00 a.m. on public streets in the City of Los Angeles, that oral argument will be heard as set forth above, and that the instant motion is based on

1

# **TABLE OF CONTENTS**

Pages

I.      Introduction.................................................................................3

II.     Defendants' conduct is unconstitutional.................................6

III.    Both declaratory and injunctive relief are warranted............10

        A.  Declaratory relief...........................................................10

        B.  Preliminary injunctive relief........................................11

IV.     Conclusion

Certificate of service.............................................................13

i

# Cases

*Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987) .............................. 11

*Associated General Contractors v. Coalition for Economic Equity,* 950 F.2d 1401, 1410 (9th Cir. 1991) ................................................................ 12

*Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 304 n. 4 (1984)..... 6

*Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014).......................... 7

*Douglas v. California*, 372 U.S. 353, 361 (1973)...................................................... 9

*Harper v. Va. Bd. of Elections*, 383 U.S. 663, 667 (1966) ...................................... 9

*James v. Valtierra*, 402 U.S. 137, 144-45 (1971).................................................... 9

*Johnson v. California State Board of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995)...................................................................... 12

*Jones v. City of Los Angeles*, 444 F.3d 118 (9th Cir. 2006) ................................... 10

*MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 516 (9th Cir. 1993) ... 12

*Martin v. City of Boise*, 920 F.3d 584, 604 (9th Cir. 2019).................................... 9

*McDonald v. Bd. of Election Commissioners*, 394 U.S. 802, 807 (1969) ............... 9

*Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) ...................................................... 11

*Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972)..................................... 8

*Stanley v. Univ. of Southern California*, 13 F.3d 1313, 1319 (9th Cir. 1994)........ 12

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982).............................. 11

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) .......... 11

1  the ground that the signs' placement and enforcement is violative of both the

2  Fourteenth Amendment and the Eighth Amendment to the United States

3  Constitution.

4      The L.R. 7-3 meet and confer was held on or about July 27, 2021 by

5  telephone, with Scott Marcus, who is the Chief of the Civil Litigation Branch of

6  the Los Angeles City Attorney's office.

7

8                     YAGMAN + REICHMANN,LLP

9              By:   _Stephen Yagman_

10                   **STEPHEN YAGMAN**

11                   **YAGMAN + REICHMANN,LLP**

12

13             By:   _/s/ Joseph Reichmann_
                     **JOSEPH REICHMANN**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

//

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff submits this memorandum of points and authorities (and declaration, submitted concurrently herewith) in support of plaintiff's motion for declaratory relief and the issuance of a preliminary injunction.

## I.
## INTRODUCTION

Defendants have caused to be placed on public streets around the City of Los Angeles, including the streets in Venice, no parking signs that prohibit parking RVs, campers, trailers, and the like, that are more than seven feet in height or 22 feet in length, on penalty of being fined or the vehicles being towed away and impounded. *See* Exhibit 1 to complaint, Doc. 1, Ordinance 80.69.4, which provides as follows:

City of Los Angeles ordinance § 80.69.4, whose enforcement is the basis for the claims made in this action, provides as follows:

### SEC. 80.69.4.  PARKING OF OVERSIZE VEHICLES.
(Amended by Ord. No. 182,741, Eff. 11/11/13.)

(a)   No person shall stop, stand or park, when authorized signs are in place giving notice of the restriction, any oversize vehicle, defined as a ***motor vehicle in excess of 22 feet in length or over 84 inches in height, between 2:00 a.m. and 6:00 a.m.***  The registered owner of the oversize vehicle or other person having control of the oversize vehicle shall also be in violation of this section if he or she has knowledge that the oversize vehicle had been so parked and the person parking had the express or implied permission to operate the oversize vehicle.

(b)   ***Oversize vehicle restricted areas or streets may be established in either of the following manners***:

(1)   ***The Council may authorize, by resolution, the streets upon which the parking of oversize vehicles shall be restricted between 2:00 a.m. and 6:00 a.m.***, except for those oversize vehicles displaying a valid permit issued pursuant to the provisions of Subsection (c) of this section.  ***Upon Council action designating streets with oversize vehicles parking restrictions***, the

3

Department of Transportation shall cause appropriate signs to be erected in those streets, indicating the parking limitation prominently on the sign and stating that motor vehicles with valid permits shall be exempt from the restrictions.

(2)   A Councilmember representing the district in which fewer than six street segments are impacted by the unrestricted parking of oversize vehicles may request the Department of Transportation to investigate and make a determination whether or not the parking of oversize vehicles on those street segments between 2:00 a.m. and 6:00 a.m. is adversely impacting the visibility of oncoming traffic, creating constrictions in the traveled way, or substantially reducing the availability of parking for residents and businesses.  For the purpose of this section, a street segment consists of both sides of a street between two adjacent intersecting streets.  To make this request, the Councilmember shall send a letter to the Department of Transportation identifying the street segments to be included in the restricted area, the reasons for the request, and verifying receipt of petitions showing support for the restriction by a substantial number of affected community residents.

Upon receiving a written request from a Councilmember pursuant to this subdivision, the Department of Transportation shall conduct an investigation to determine whether or not the parking of oversize vehicles between 2:00 a.m. and 6:00 a.m. on the designated street segments is adversely impacting the visibility of oncoming traffic, creating constrictions in the traveled way, or substantially reducing the availability of parking for residents and businesses.  In making its determination, the Department shall consider all relevant factors, including without limitation, the location of driveways relative to parked oversize vehicles, the width of oversize vehicles when compared to other parked vehicles, the existing availability of parking, the impact the oversize vehicles are having on parking availability for residents and businesses, the effectiveness of restricting oversize vehicle parking in alleviating any adverse impact on the visibility of oncoming traffic, constrictions of the traveled way and reduced parking supply, and whether signs may be erected on the street segments in a manner that provides adequate notice of the restriction.  The Department of Transportation shall report the results of its investigation and determination to the City Council. The City Council may, by resolution authorize the street segments upon which the parking of oversize vehicles shall be restricted between 2:00 a.m. and 6:00 a.m., except for those oversize vehicles displaying a valid permit

4

issued pursuant to the provisions of Subsection (c) of this section.  Upon Council action designating street segments with oversize vehicle parking restrictions, the Department of Transportation shall cause appropriate signs to be erected in those street segments, indicating the parking limitation prominently on the sign and stating that motor vehicles with valid permits shall be exempt from the restrictions.

   (c)   Notwithstanding the above, the parking of oversize vehicles, as defined in Subsection (a) of this section, shall be allowed in areas established pursuant to the provisions of Subsection (b) of this section, provided that the oversize vehicle properly displays a valid permit that was issued in advance by the Department of Transportation.  The permit shall be issued for a fee of $10.00 per day and for a period not to exceed three consecutive days.  The use of this permit shall be limited to the purchasing resident's street segment, or adjacent street segment if authorized by the Department.  A permit issued pursuant to this subsection shall not guarantee or reserve to the holder an on-street parking space.

(Emphases added.)

   The signs provided for by the ordinance very obviously and unabashedly target the poor, un-housed population[1] who live in these vehicles, by preventing

---

[1] Thirty-seven years ago, the Court had this to say about homelessness:

   Estimates on the number of homeless persons in the United States range from two to three million. See Brief for National Coalition for the Homeless as Amicus Curiae 3. Though numerically significant, the homeless are politically powerless inasmuch as they lack the financial resources necessary to obtain access to many of the most effective means of persuasion. Moreover, homeless persons are likely to be denied access to the vote since the lack of a mailing address or other proof of residence within a State disqualifies an otherwise eligible citizen from registering to vote. Id., at 5. The detrimental effects of homelessness are manifold and include psychic trauma, circulatory difficulties, infections that refuse to heal, lice infestations, and hypothermia. Id., at 14–15. In the extreme, exposure to the elements can lead to death; over the 1983 Christmas weekend in New York City, 14 homeless persons perished from the cold. See N.Y. Times, Dec. 27, 1983, p. A1., col. 1.

5

1  them from staying overnight in the posted areas, or from sleeping in their vehicles

2  between the hours of 2:00 a.m. and 6:00 a.m.

3     The signs specifically target the un-housed and the poor, and prevent them

4  from having access to public amenities[2], such as showers in which to bathe and

5  public toilets.  Declaration of C. Finley, submitted herewith ("Finley Decl.").

6  There is no reason at all, much less any legitimate reason, for the placement and

7  threatened enforcement of these signs.  The reason is to restrict the locations at

8  which un-housed persons freely may be, and this is unconstitutional, both on its

9  face and as applied.

10                                  **II.**

11              **DEFENDANTS' CONDUCT IS UNCONSTITUTIONAL.**

12     Like *Les Misérables*, in 1862, in which Victor Hugo examined the nature of

13  law and grace, and urban design, so too does this action address the fate of the poor

14

15  _____

16  *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 304 n. 4 (1984).

17     This condition was exacerbated when, in 1981, President Reagan repealed

18  President Carter's Mental Health Systems Act with the Omnibus Budget

19  Reconciliation Act.  This pushed the responsibility of mentally ill patients back to
    the states, and created block grants for the states, but federal spending on mental

20  illness declined.  A time-line is found at

21  https://www.kqed.org/news/11209.729/did-the-emptying-of-mental-hospitals-
    contribute-to-homelessness-here.  Basically, President Kennedy signed the

22  Community Mental Health Act so that the federal government would fund mental

23  hospitals instead of state governments, and when President Reagan ended federal
    funding, states (who have very constrained budgets and who must balance their

24  budgets) never went back to funding fully mental hospitals. *See id.*, Jessica

25  Placzek, Dec. 8, 2016.

26  [2] In 1867, 154 years ago, Karl Marx, in his seminal *Das Kapital*, posited that there

27  were three stages of economic development, slavery, feudalism, capitalism,
    socialism, and communism, and that in "late-stage" capitalism, as now exists in the

28  United States, the chasm between the rich and the poor so greatly would widen that
    the rich would seek to banish and subjugate the poor.

and un-housed in urban Los Angeles.  In 2014, the Ninth Circuit's holdings in *Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014), should have put paid to defendants' challenged conduct in the instant matter, but it didn't. Defendants are local politicians who have no, or very little, regard for the poor and down-trodden, and instead seek to appease those who most likely are going to vote, hopefully for them.  Defendants seek to appease the rich and comfortable among us, and who don't want to be bothered looking at those who are less fortunate. They want them just to disappear, to go away.  They want to negatively eugenicize their urban scape, to clear it of the unsightly.  This court must not let them get away with that.

In *Desertrain*, the Ninth Circuit told the City of Los Angeles to stop demonizing and punishing the poor, and held as follows, but to no avail:

> This 42 U.S.C. § 1983 case concerns the constitutionality of Los Angeles Municipal Code Section 85.02, which ***prohibits use of a vehicle "as living quarters either overnight***, day-by-day, or otherwise." ***Plaintiffs include four homeless individuals who parked their vehicles in the Venice area of Los Angeles*** and were cited and arrested for violating Section 85.02. ***Defendants are the City of Los Angeles*** and individual LAPD officers.
> . . .
> [The subject ordinance states that ***N[o] person shall use a vehicle parked or standing upon any City street***, or upon any parking lot owned by the City of Los Angeles and under the control of the City of Los Angeles or under control of the Los Angeles County Department of Beaches and Harbors, ***as living quarters either overnight***, day-by-day, or otherwise.
>
> On September 23, 2010, Los Angeles officials held a "Town Hall on Homelessness" ***to address complaints of homeless individuals with vehicles living on local streets in Venice***.
> . . .
> Beginning in late 2010, the Task Force began enforcing Section 85.02 ***against homeless individuals***. Four such homeless individuals are Plaintiffs in this case . . . .
> . . .
> **Section 85.02 promotes arbitrary enforcement that targets the homeless.**

7

A statute is also unconstitutionally vague if it encourages arbitrary or discriminatory enforcement. *See Papachristou,* 405 U.S. at 162, 92 S.Ct. 839. If a statute provides "no standards governing the exercise of ... discretion," it becomes "***a convenient tool for harsh and discriminatory enforcement*** by local prosecuting officials, ***against particular groups deemed to merit their displeasure.***" *Id.* at 170, 92 S.Ct. 839 (internal quotation marks omitted).

[The ordinance] appears to be ***applied only to the homeless***[,][3] ... to enable men to be caught who are vaguely undesirable in the eyes of the police and prosecution . . . .

The [Supreme] Court [in *Papachristou v. City of Jacksonville,* 405 U.S. 156 (1972)] viewed the ordinance in its historical context as the descendant of English feudal poor laws ***designed to prevent the physical movement and economic ascension of the lower class***. *Id.* at 161–62, 92 S.Ct. 839. In America, such laws had been used to "***roundup ... so-called undesireables***," and resulted "in ***a regime in which the poor and the unpopular [we]re permitted to stand on a public sidewalk ... only at the whim of any police officer.***" *Id.* at 170, 171, 92 S.Ct. 839 (internal quotation marks omitted). The Court concluded that "the rule of law implies equality and justice in its application. Vagrancy laws ... teach that the scales of justice are so tipped that even-handed administration of the law is not possible. ***The rule of law [must be], evenly applied*** to minorities as well as majorities, ***to the poor*** as well as the rich, [and] is the great mucilage that holds society together." *Id.* at 171, 92 S.Ct. 839.
. . .
[The manner in which the City of Los Angeles behaved is] incompatible with the concept of an even-handed administration of the law to the poor and to the rich that is fundamental to a democratic society.
. . .
In sum, Section 85.02 has ***paved the way for law enforcement to target the homeless*** and is therefore unconstitutionally vague.

---

[3] Here, this precisely is what is going on: the subject no parking signs are applied only to the un-housed, to prevent only them from sleeping in their vehicles between 2:00 a.m. and 6:00 a.m. Yet, seven years ago, the City was told to cut this out, but to no avail.

[The Section] opens the door to discriminatory enforcement against the homeless and the poor.

> **For many homeless persons, their automobile may be their last major possession**—the means by which they can look for work and seek social services. The City of Los Angeles has many options at its disposal to alleviate **the plight and suffering of its homeless citizens. Selectively preventing the homeless and the poor from using their vehicles for activities many other citizens also conduct in their cars should <u>not</u> be one of those options.**

754 F.3d at 1149-58 (emphases added). Yet, here we are, again: new faces, same old, cacophonous song.

This long has been condemned by both the Supreme Court and the Ninth Circuit.

In his dissent in *James v. Valtierra*, 402 U.S. 137, 144-45 (1971), Justice Marshall, joined by Justics Brennan and Blackmum, stated that "[i]t [the law in issue] is an explicit classification on the basis of poverty--a suspect classification which demands exacting judicial scrutiny[,] . . . [because it] may affect the poor more harshly than it does the rich." (Citing *Douglas v. California*, 372 U.S. 353, 361 (1973) (Harlan, J., dissenting). In as many words, majority dispositions of the Court held the same thing. *See McDonald v. Bd. of Election Commissioners*, 394 U.S. 802, 807 (1969) ("a careful examination on our part is especially warranted where lines are drawn on the basis of wealth"); *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 667 (1966) ("We conclude that a State violates the Equal Protection Clause of the Fourteenth Amendment whenever it makes . . .affluence . . . a[] . . . standard."); *Douglas v. California*, 372 U.S. 353, 358 (1973) ("equality [is] demanded by the Fourteenth Amendment where the rich man . . . enjoys the benefit . . . while the indigent . . . is forced to shift for himself.").

There is the same right under the Eighth Amendment. In *Martin v. City of Boise*, 920 F.3d 584, 604 (9th Cir.), *amended on denial of reh'g and reh'g en banc,*

9

*cert. denied sub nom. City of Boise, Idaho v. Martin*, 140 S.Ct. 674 (2019), the

court held that:

> "so long as there is a greater number of homeless individuals in Los Angeles than the number of available beds [in shelters]" for the homeless, Los Angeles could not enforce a similar ordinance against homeless individuals . . . . We agree with *Jone's* reasoning and central conclusion . . . and so hold that an ordinance violates the Eighth Amendment insofar as it imposes criminal sanctions against homeless individuals for sleeping outdoors, on public property, when no alternative shelter is available to them.

(Citing with approval and adopting the reasons set forth in *Jones v. City of Los Angeles*, 444 F.3d 118 (9th Cir. 2006), *vacated*, 505 F.3d 1006 (2007)).  In *Martin*, although *Jones* too-cleverly-by-half had been settled by the City of Los Angeles having paid out a small king's ransom in attorneys' fees to plaintiffs' counsel, lawyers with the ACLU Foundation of Southern California, in order to try to prevent it from becoming binding precedent, still it ended up becoming binding precedent, especially on the City, when the court in *Martin* "agree[d] with *Jones's* reasoning and central conclusion."  *Martin* brought *Jones* back from the graveyard of cases that over-reaching parties sought to bury by settling and then getting a court to vacate.

Plaintiff both has stated and sustained both Fourteenth Amendment and Eighth Amendment claims, and there is a likelihood of plaintiff succeeding on the merits.  *See infra.*

## III.
## BOTH DECLARATORY AND INJUNCTIVE RELIEF ARE WARRANTED.
### A.  DECLARATORY RELIEF

"In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party[,] . . . [and a]ny such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  28 U.S.C. § 2201.  Moreover, "[f]urther necessary or proper

relief based on a declaratory judgment or decree may be granted after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

Here, based on the foregoing, plaintiff is entitled to the declaratory relief that the subject ordinance is unconstitutional both on its face and as applied, and to further injunctive relief. *See infra*.

## B. PRELIMINARY INJUNCTIVE RELIEF

"A plaintiff seeking a preliminary injunction must establish that he [or she] is likely to succeed on the merits, that he [or she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his [or her] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982). Plaintiff is likely to succeed on the merits, *see supra*, plaintiff is likely to suffer irreparable harm in that plaintiff will have been deprived of plaintiff's right to park her RV in Venice, the balance of equities tips decidedly in plaintiff's favor and against defendants, and clearly a preliminary injunction is in the public interest, because it always is in the public's interest to have constitutional and lawful ordinances and to treat all citizens, both rich and poor, equally, and not based on wealth or poverty.

In the Ninth Circuit, a party may obtain injunctive relief in the form of a preliminary injunction by satisfying one of two, alternative tests.

11

The traditional test requires that there be "(1) a strong likelihood[4] of success on the merits [as here there is], (2) the likelihood of irreparable injury to plaintiff if the preliminary relief is not granted [as here there is], (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest[.]" *Johnson v. California State Board of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995). The public interest is the most important factor, and it would be irreparably harmed were the subject ordinance to stand.

Under the so-called "alternative test," a party seeking injunctive relief must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury, *or* (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *Stanley v. Univ. of Southern California*, 13 F.3d 1313, 1319 (9th Cir. 1994).

Taken as a whole, these requirements construct "a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 516 (9th Cir. 1993) (citations and internal quotation marks omitted). Conversely, *mutatis mutandis*, and/or by *modus tollens*, as the probability of success increases the required degree of irreparable harm decreases. *See id.*

Under the test for injunctive relief, a moving party must show that there is a fair chance of success on the merits. *Stanley,* 13 F.3d at 1319, as here plaintiff has shown. Likewise, "[u]nder either formulation of the test, a party seeking an injunction must demonstrate that it will be exposed to some significant risk of irreparable injury." *Associated General Contractors v. Coalition for Economic Equity,* 950 F.2d 1401, 1410 (9th Cir. 1991).

---

[4] *Winter* did not change this standard, and it arguably reduced the "*strong* likelihood" standard to merely "likely to succeed on the merits." Plaintiff has met both standards.

1   Defendants are acting and continue to act without any legal authority and

2   contrary to controlling legal authority, and continue to proceed with the posting

3   and enforcement of their parking violation signs.

4   Plaintiff has demonstrated that plaintiff is entitled to a preliminary

5   injunction.

6                                    **IV.**
                              **CONCLUSION**

7   For each and all of the reasons set forth, plaintiff should be granted

8   declaratory relief and a preliminary injunction, as set forth in the proposed order

9   that is lodged concurrently herewith.

10                          Respectfully submitted,

11            **YAGMAN + REICHMANN, LLP**

12   By:

13            **STEPHEN YAGMAN**

14

15            **YAGMAN + REICHMANN, LLP**

16   By:   /s/ Joseph Reichmann

17            **JOSEPH REICHMANN**

18

19

20

21

22

23

24

25

26

27

28   //

13

## CERTIFICATE OF SERVICE

I, STEPHEN YAGMAN, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I served a copy of the foregoing motion, proposed order, and declaration on City of Los Angeles deputy City attorney Scott D. Marcus, Chief, Civil Litigation Branch, and with whom I held the L.R. 7-3 meeting in this action, by emailing it to him at scott.marcus@lacity.org.  He is registered with the court's electronic filing system, and thus has agreed to accept electronic service of papers filed.

_____
STEPHEN YAGMAN  08/16/21

14