STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310) 452-3200

Attorneys for Plaintiffs and
Putative Class Members

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| W. LOCKETT, *etc.*, *et al.*, | 2:21-cv-06003-DOC(KESx) (consolidated with 2:21-cv-06109-DOC(KESx) and 2:21-cv-07596-DOC(KESx), by order of 09/24/21) |
|---|---|
| Plaintiffs, | |
| v. | |
| ERIC MICHAEL GARCETTI, *et al.*, | **PLAINTIFFS' REPLY ON APPLICATION FOR TEMPORARY RESTRAINING ORDER, PROHIBITING DEFENDANTS FROM ENFORCING ZONE ORDINANCES AGAINST PLAINTIFF DAVID JACOBS AND CITY-WIDE** |
| Defendants. | |
| | Judge David O. Carter |

//

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs submits this memorandum of points and authorities in reply on and in support of plaintiffs' and putative class members application for a temporary restraining order prohibiting defendants from again enforcing their Zone ordinance against plaintiff David Jacobs, city-wide, and against class members, who are unhoused persons who do not inhabit oversize vehicles.

## I.
## INTRODUCTION.

Defendants, and their lawyer who also is a defendant, Los Angeles City Attorney Michael Nelson Feuer, know well, but parse out and quibble with virtually all of the pertinent and controlling Ninth Circuit law dealing with homelessness and, more specifically with the City of Los Angeles.

Here is what Feuer had to say about what he called "**IMPORTANT COURT CASES**," in his Aug. 7, 2020 press release entitled "**OUR RESPONSE**":

**MARTIN V. BOISE (2018)**

> ***UPDATE: On December 16, 2019, the Supreme Court declined to hear an appeal in this case. The City of Boise had asked SCOTUS to take this case and the City of Los Angeles filed a brief too - wanting clarification of the City's authority with respect to people experiencing homelessness who dwell on the streets. In filing the brief, City Attorney Mike Feuer said, "the City agrees with a central tenet of Boise – that no individual should be susceptible to punishment for sleeping on the sidewalk at night, if no alternative shelter is available. But Boise's rationale sweeps too broadly, and the opinion is internally inconsistent and unclear. By raising more issues than it resolves, the decision leaves jurisdictions like Los Angeles without the certainty necessary to balance intensely competing interests without risking costly and time consuming litigation." Read the brief here. This 9th Circuit Court decision involves two homeless men who were cited by Boise police for illegally lodging. The court found that the shelter options offered to the homeless men were not viable options for them (for reasons the court found valid) and therefore they could not be compelled to go there. The 9th Circuit stated that the Eighth Amendment bars enforcement of a statute or ordinance prohibiting homeless sitting, sleeping or lying on sidewalks or in

other public places whenever the number of homeless individuals in the jurisdiction exceeds the number of available shelter beds. The 9th Circuit held that "[a]s long as there is no option of sleeping indoors, the government cannot criminalize indigent, homeless people for sleeping outdoors, on public property" on the false premise they had a choice in the matter. However, the Court also noted that ... "Even where shelter is unavailable, an ordinance prohibiting sitting, lying or sleeping outside at particular times or in particular locations may well be constitutionally permissible."

### JONES V. LOS ANGELES (2006)

This case involved homeless people who were arrested for lying, sitting or sleeping on the sidewalks of Skid Row. The settlement agreement stated that the City would not enforce Los Angeles Municipal Code ("LAMC") 41.18 (d) (sitting, lying or sleeping on the sidewalk) after 9pm at night and before 6am in the morning with a few exceptions. These exceptions included enforceability, regardless of time, within 10 feet of a loading dock, entrances and exits to a building or parking lot, after a warning is given. The settlement stated that this restriction on enforcement would remain until Los Angeles constructed a certain amount of housing units. However, after the Martin v. Boise case (see below), the number of units the City promised to build is no longer relevant to enforcement due to the Martin Court's holding.

### LAVAN V. CITY OF LOS ANGELES (2011)

This case involved a claim that homeless people's property was destroyed by the City during a cleanup in the Skid Row area. It is important to note that in this case, the 9th Circuit stated that the Fourth and Fourteenth Amendment applies to the City's seizure of unattended property. In broad terms in this case the Court stated City agents and employees are enjoined from: Seizing property without notice absent objectively reasonable belief that it is abandoned, presents immediate threat to public health or safety, or is evidence of crime or contraband. In addition, anything seized must be maintained in a secure location for at least 90 days before its destruction. The City must also leave post removal notice in a prominent place for any property taken. DESERTRAIN V. CITY OF LOS ANGELES (2014) This case involved an individual living in a vehicle on a City street. The 9th Circuit found the City's law to be unconstitutionally vague. The City re-wrote its law with changes so as to restrict vehicle dwelling in certain areas during certain hours. (For a detailed explanation of the areas please see the FAQ section).

**MITCHELL SETTLEMENT (No. CV-16-01750)**
Plaintiffs Carl Mitchell, Judy Coleman, Salvador Roque, Los Angeles Catholic Worker and Cangress had Under the terms of the settlement agreement, which apply only to the Skid Row area of downtown that was the subject of the lawsuit and injunction, the City:
· Maintains the capability to address immediate threats to public health and safety, including threats related to homeless encampments; ·
Maintains the ability to perform routine trash and sanitation services; ·
Maintains the ability to enforce the American with Disabilities Act on public streets and sidewalks; ·
Confirms its authority to remove larger, bulky items, such as couches, mattresses, dressers, refrigerators, barbeques, and wooden pallets; ·
Maintains the ability to enforce the time restrictions on erected tents in public spaces and to enforce most other provisions of LAMC 56.11; ·
Can continue to conduct noticed cleanings under Operation Healthy Streets; ·
Can conduct any appropriate outreach to persons experiencing homelessness; ·
May appropriately seize property under the Fourth Amendment and its exceptions, including the Community Caretaking doctrine; ·
May enforce any other laws that are not inconsistent with the Agreement.
The terms of the settlement agreement apply only for three years, and only to the area of downtown Los Angeles bordered by Second Street to the north, Eighth Street to the south, Spring Street to the west, and Alameda Street to the east.
The settlement gives the City greater authority and flexibility to remove property from public areas than had been allowed under the injunction: ·
Under the settlement, the City may seize bulky items such as couches, mattresses, dressers, refrigerators, barbeques, and wooden pallets;
Under the injunction, the City could only seize these items if they posed an immediate threat to public health or safety. ·
Under the settlement, the City may remove items from the public space that block ADA access or ingress or egress into buildings, businesses, or residences, if the property cannot be reasonably moved to provide appropriate clearance; Under the injunction, the City could only seize items that blocked ADA access or ingress and egress if they posed an immediate threat to public health or safety.

Exhibit 1 hereto. Amazingly, Feuer claims that the *Mitchell* settlement gives "the City greater authority and flexibility to remove property from public areas than had been allowed under the injunction."

Somehow, the City and Feuer have managed to navigate around all of these cases, and more.[1]

## II.

## NONE OF DEFENDANTS' CONTENTIONS HAS ANY MERIT.

Defendants make only procedural objections, none of which as any merit.

1. The first amended complaint timely was filed, pursuant to Fed. R. Civ. P. Rule 15(a)(1)(A), because it was filed "21 days after serving it [the original complaint]." Declaration of Stephen Yagman ("Yagman Decl."), filed herewith.

2. The instant application is not an *ex parte* application, as that term is defined and understood under the Local Rules of this court, L.R. 7-19.1 is inapplicable, and the best notice of it physically possible was provided. *Ibid*. And, no prejudice as a result of the alleged lack of notice is claimed.

3. Very immediate and very irreparable, loss, and damage has been shown. Declaration of David Jacobs, and Exhibits attached thereto. And, the malefactors are coming back again on Thurs., Oct. 28, pursuant to the subject ordinance.

4. Very "specific facts" are set forth, in full satisfaction of Fed. R. Civ. P. Rule 65(b). And, defendants now have been heard in opposition. And, there now is a "writing under oath" to show what happened on a Sunday evening, Oct. 24, which was the absolute quickest plaintiff's counsel could gather the evidence required, including photographs and declarations, of the wrongful and threatening wrongful conduct of defendants that occurred on Thursday morning, Oct. 21, of which plaintiff's counsel was made aware on Friday, Oct. 22.

---

[1] *See* "Court Prohibits Los Angeles City from Summarily Destroying Homeless Individuals' 'Bulky Items,'" attached hereto as Exhibit 2.

5

5. Plaintiff, David Jacobs has "demonstrate[d] a personal stake in the outcome," Opp. at 2:24-26, and with an immediate threat of more irreparable harm, so as to satisfy both *Allen v. Wright*, 468 U.S. 737, 750-51 (1984), *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983), and *Warth v. Seldin*, 422 U.S. 490 (1975).

6. All of defendants' contention regarding plaintiff Finley are irrelevant, because plaintiff Jacobs now also is a plaintiff and a putative representative of the class whom he will represent. This action no longer is limited to plaintiff Finley's claims; nor to plaintiff Lockett's claims.

7. The First Amended Complaint, Doc. 68, now is "the operative complaint."

8. No leave from the court was required to file that complaint, and in any event, such leave is to be "freely given." Rule 15(a)(2).

9. Plaintiff Jacobs is as much a class representative as to his defined class as are plaintiffs Finley and Lockett as to their defined classes. No substituted class representation is sought.

10. All of the *Winter* factors are satisfied as to plaintiff Jacobs, and defendants fail to address the factors as to plaintiff Jacobs; their addressing those factors as to plaintiff Finley are irrelevant.

Plaintiff Jacobs has demonstrated that plaintiff is entitled to a TRO.

Plaintiff also requests that the court consider Exhibits 1-10 that are attached to the FAC as well as the article "Court Prohibits Los Angeles City from Summarily Destroying Homeless Individuals' 'Bulky Items," that bears upon defendant Feuer's Response to the pertinent court rulings on homelessness that is set forth above, and which should be considered as an admission by Feuer as a defendant herein, as well as an admission on behalf of the other defendants, who are his legal clients herein.

//
//

# III.
# CONCLUSION

For each and all of the reasons set forth, plaintiff Jacobs should be granted a TRO, as set forth in the proposed TRO order that was lodged concurrently with the application.

Respectfully submitted,
YAGMAN + REICHMANN, LLP

By: /s/ Stephen Yagman
STEPHEN YAGMAN

//

## DECLARATION OF STEPHEN YAGMAN

I, Stephen Yagman, declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am one of the attorneys for the plaintiffs in this action.

2. On Tues. and Wed., Oct. 12 & 13, 2021, I went to City Hall, 200 N. Main Street, and was refused entry, so that I could not go to the following-named defendants offices therein. Having made diligent attempts to serve them at their offices, on Thursday, Oct. 14, 2021, at 2:15 p.m., I personally, substitute served the following-named defendants with the summons and complaint in the *Lockett v. Garcetti* component of these consolidated actions, 2:21-cv-07596-DOC(KESx), by leaving a summons and complaint for each of them, in envelopes with their names on the outside thereof, with a man who identified himself as LAPD officer Stillwell, who was seated next to the metal detector at City Hall, at 200 N. Main Street in Los Angeles, and who apparently was in charge, because he refused me entry in the building, to serve the summonses and complaints on the following-named defendants, so that I left them with him, who then told me he would throw them in the garbage. 200 North Main Street is the business address for the following-named defendants. On Oct. 15, 2021, I then mailed copies of the summonses and complaints to the following-named defendants. The defendants are: Garcetti, Blumenfeld, Bonin, Buscaino, Martinez, O'Farrell, Lee, James, Garcia, Davis, Caloza, and Villegas.

3. The contents of paragraph two show that the First Amended Complaint filed on Oct. 24, 2021, Doc. 68, was filed as a matter of right within 21 days after serving the summons and complaint, pursuant to Fed. R. Civ. P. Rule 15(a)(1(A), and thus it was timely was filed in the *Finley* action, 2:21-cv-06003-DOC(KESx),

8

as the court ordered that all papers filed subsequent to Sept. 24 be filed in the *Finley* action, with which the *Lockett* action had been consolidated.

4. Even though three actions were consolidated on Sept. 24, 2021, still the original complaint and the summons on it had to be served in order for the court to acquire jurisdiction over the named defendants as to plaintiff Lockett's claims against them, even though the court had jurisdiction over them as to plaintiff Finley's claims.

5. I was unable to contact defense counsel by telephone on Sunday, Oct. 24, 2021, when I filed the TRO application, and I decided that the best way to give notice of it was to file it, so that it instantaneously upon it being filed it would be electronically transmitted to defense counsel.

6. My understanding is that a TRO application is not considered under the Local Rules to be an *ex parte* application because, *inter alia*, it is exempted from L.R. 7-3, and is *sui generis*.

*[signature]*
STEPHEN YAGMAN 10-25-21 10:00 p.m.

//

9

# EXHIBIT 1



L.A. CITY ATTORNEY
MIKE **FEUER**

UPD
COVID

HOME　ABOUT　GET HELP　LATEST NEWS　CRIMINAL JUSTICE REFORM　COVID-19

## HOMELESSNESS



"Los Angeles needs mission-driven, accountable, even impatient leadership on homelessness — leadership that is both focused and empowered to make things happen."

- City Attorney Mike Feuer: LA Times Op-Ed: *L.A. needs a homelessness czar*

# OUR RESPONSE

Homeless Engagement Team

Homeless Patient Dumping

Safe Parking

LA DOOR

Mental Health Diversion

Operation Clean Slate

Motel Conversions

Helpful Definitions

FAQ

Important Court Cases

### HOMELESS ENGAGEMENT AND RESPONSE TEAM

Our Homeless Engagement and Response Team (HEART), in partnership with the LA County Public Defender's Office, runs a criminal record clearing program for people experiencing homelessness or at risk of experiencing homelessness. HEART deploys alongside the public defenders to park spaces, shelters, service providers, and libraries to host mobile legal clinics – essentially bringing the Court to the streets. HEART helps participants resolve infraction citations for minor violations, such as jaywalking, having an open container, or having expired car tags. These tickets are wiped clean in exchange for service engagement with onsite resources, such as housing, benefits, drug treatment, medical care, and job training. The public defenders help participants expunge past misdemeanor and felony convictions and connect with counsel for active cases. This community engagement is funded by the LA County Board of Supervisors, which recently awarded HEART nearly $1 million dollars to conduct this innovative legal work. Last year HEART hosted 56 clinics, engaged 1,200 participants, facilitated the resolution of 1,102 cases and connected 1,112 to homeless case managers.

You can also report the encampment so service providers are sent by going here:
www.lahsa.org/portal/apps/la-hop/request

### HOW DO I FIND MY LOCAL LAPD DIVISION CONTACT INFORMATION?

www.lapdonline.org/our_communities/content_basic_view/6279

## IMPORTANT COURT CASES

### MARTIN V. BOISE (2018)

***UPDATE: On December 16, 2019, the Supreme Court declined to hear an appeal in this case. The City of Boise had asked SCOTUS to take this case and the City of Los Angeles filed a brief too - wanting clarification of the City's authority with respect to people experiencing homelessness who dwell on the streets. In filing the brief, City Attorney Mike Feuer said, "*the City agrees with a central tenet of Boise – that no individual should be susceptible to punishment for sleeping on the sidewalk at night, if no alternative shelter is available. But Boise's rationale sweeps too broadly, and the opinion is internally inconsistent and unclear. By raising more issues than it resolves, the decision leaves jurisdictions like Los Angeles without the certainty necessary to balance intensely competing interests without risking costly and time-consuming litigation.*" Read the brief here.

This 9th Circuit Court decision involves two homeless men who were cited by Boise police for illegally lodging. The court found that the shelter options offered to the homeless men were not viable options for them (for reasons the court found valid) and therefore they could not be compelled to go there. The 9th Circuit stated that the Eighth Amendment bars enforcement of a statute or ordinance prohibiting homeless sitting, sleeping or lying on sidewalks or in other public places whenever the number of homeless individuals in the jurisdiction exceeds the number of available shelter beds. The 9th Circuit held that "[a]s long as there is no option of sleeping indoors, the government cannot criminalize indigent, homeless people for sleeping outdoors, on public property" on the false premise they had a choice in the matter. However, the Court also noted that ... "Even where shelter is unavailable, an ordinance prohibiting sitting, lying or sleeping outside at particular times or in particular locations may well be constitutionally permissible."

### JONES V. LOS ANGELES (2006)

This case involved homeless people who were arrested for lying, sitting or sleeping on the sidewalks of Skid Row. The settlement agreement stated that the City would not enforce Los Angeles Municipal Code ("LAMC") 41.18 (d) (sitting, lying or sleeping on the sidewalk) after 9pm at night and before 6am in the morning with a few exceptions. These exceptions included enforceability, regardless of time, within 10 feet of a loading dock, entrances and exits to a building or parking lot, after a warning is given. The settlement stated that this restriction on enforcement would remain until Los Angeles constructed a certain amount of housing units. However, after the Martin v. Boise case (see below), the number of units the City promised to build is no longer relevant to enforcement due to the Martin Court's holding.

### LAVAN V. CITY OF LOS ANGELES (2011)

This case involved a claim that homeless people's property was destroyed by the City during a cleanup in the Skid Row area. It is important to note that in this case, the 9th Circuit stated that the Fourth and Fourteenth Amendment applies to the City's seizure of unattended property. In broad terms in this case the Court stated City agents and employees are enjoined from: Seizing property without notice absent objectively reasonable belief that it is abandoned, presents immediate threat to public health or safety, or is evidence of crime or contraband. In addition, anything seized must be maintained in a secure location for at least 90 days before its destruction. The City must also leave post removal notice in a prominent place for any property taken.

### DESERTRAIN V. CITY OF LOS ANGELES (2014)

This case involved an individual living in a vehicle on a City street. The 9th Circuit found the City's law to be unconstitutionally vague. The City re-wrote its law with changes so as to restrict vehicle dwelling in certain areas during certain hours. (For a detailed explanation of the areas please see the FAQ section).

### MITCHELL SETTLEMENT

(No. CV-16-01750) Plaintiffs Carl Mitchell, Judy Coleman, Salvador Roque, Los Angeles Catholic Worker and Cangress had



**L.A. CITY ATTORNEY MIKE FEUER**

UPD
COVID

HOME    ABOUT    GET HELP    LATEST NEWS    CRIMINAL JUSTICE REFORM    COVID-19

Under the terms of the settlement agreement, which apply only to the Skid Row area of downtown that was the subject of the lawsuit and injunction, the City:

- Maintains the capability to address immediate threats to public health and safety, including threats related to homeless encampments;
- Maintains the ability to perform routine trash and sanitation services;
- Maintains the ability to enforce the American with Disabilities Act on public streets and sidewalks;
- Confirms its authority to remove larger, bulky items, such as couches, mattresses, dressers, refrigerators, barbeques, and wooden pallets;
- Maintains the ability to enforce the time restrictions on erected tents in public spaces and to enforce most other provisions of LAMC 56.11;
- Can continue to conduct noticed cleanings under Operation Healthy Streets;
- Can conduct any appropriate outreach to persons experiencing homelessness;
- May appropriately seize property under the Fourth Amendment and its exceptions, including the Community Caretaking doctrine;
- May enforce any other laws that are not inconsistent with the Agreement.

The terms of the settlement agreement apply only for three years, and only to the area of downtown Los Angeles bordered by Second Street to the north, Eighth Street to the south, Spring Street to the west, and Alameda Street to the east.

The settlement gives the City greater authority and flexibility to remove property from public areas than had been allowed under the injunction:

- Under the settlement, the City may seize bulky items such as couches, mattresses, dressers, refrigerators, barbeques, and wooden pallets;

*Under the injunction, the City could only seize these items if they posed an immediate threat to public health or safety.*

- Under the settlement, the City may remove items from the public space that block ADA access or ingress or egress into buildings, businesses, or residences, if the property cannot be reasonably moved to provide appropriate clearance;

*Under the injunction, the City could only seize items that blocked ADA access or ingress and egress if they posed an immediate threat to public health or safety.*

Name

your name

Email

email address

Neighborhood *

what part of LA?

How can we help? *

please be as specifc as possible

add me to your updates

Submit

Q Search...

The Office of Mike Feuer
Los Angeles City Attorney
James K. Hahn City Hall East, Suite 800
Los Angeles, CA 90012 | 213-978-8100

# EXHIBIT 2

Careers (/about/join-our-team)   Trainings (/services/practices/trainings)   Subscribe (/subscribe)

Our Locations (/about/our-locations)   Contact Us (/contact-us)

☰   🔍

(/)

Home (/)  >  Insights (/news-events/insights)  >
Court Prohibits Los Angeles City from Summarily Destroying Homeless Individuals' "Bulky" Items (/news-events/insights/2021/legal-alerts/09/court-prohibits-los-angeles-city-from-summarily-de)

LEGAL ALERTS  |  SEP 22, 2021

# Court Prohibits Los Angeles City from Summarily Destroying Homeless Individuals' "Bulky" Items

Ninth Circuit Affirms Lower Court's Preliminary Injunction

The U.S. Ninth Circuit Court of Appeals decisions in *Martin v. City of Boise* (https://scholar.google.com/scholar_case?case=10872202325524770184&hl=en&as_sdt=6&as_vis=1&oi=scholarr) and *Lavan v. City of Los Angeles* (https://scholar.google.com/scholar_case?case=17194910442654756314&hl=en&as_sdt=6&as_vis=1&oi=scholarr) significantly altered how municipalities can regulate public camping and related activities. As a recap, in *Martin* the court held that the Eighth Amendment prohibits the imposition of criminal penalties on unsheltered homeless persons for sitting, sleeping or lying outside on public property. Subject to some exceptions, *Martin* prohibits jurisdictions from enforcing (/News-Events/Insights/2021/Legal-Alerts/08/Court-Rules-that-City-Erected-Structure-at-a-Muni) camping ordinances when the number of homeless individuals in a jurisdiction exceeds the number of available shelter beds.

*Lavan* concerned enforcement of a City of Los Angeles ordinance that prohibited leaving merchandise, baggage or "any article of personal property" on parkways or sidewalks. The plaintiffs (a group of homeless individuals) alleged, among other things, that the city violated their Fourth



Amendment rights by summarily seizing and destroying their "momentarily unattended" personal property—which included personal identification documents, family memorabilia, portable electronics, blankets and shelters. The court rejected the city's argument that the Fourth Amendment allowed the seizure and destruction of the plaintiffs' property (characterizing that argument as an "invitation to impose [an] unprecedented limit on the Fourth Amendment's guarantees"). Instead, the court held that the city's seizure and immediate destruction of the plaintiffs' un-abandoned property was unreasonable under the Fourth Amendment.

Garcia v. City of Los Angeles (https://cdn.ca9.uscourts.gov/datastore/opinions/2021/09/02/20-55522.pdf) is the latest development in this area. In this case, the Ninth Circuit determined that municipalities may not summarily seize and destroy even "bulky" items of personal property left on city property.

### The "Bulky" Items Controversy

To set the stage, the Los Angeles Municipal Code (https://codelibrary.amlegal.com/codes/los_angeles/latest/lamc/0-0-0-138386) (like many o...

cities' codes) includes regulations governing the storage of personal property in public areas. At issue in *Garcia* was a subset of such regulations relating to "bulky items." Subject to limited exceptions, the bulky items provision authorized city personnel to, without notice, remove and immediately destroy any attended or unattended bulky items stored on property owned, managed or maintained by the city (e.g., roads, sidewalks and median strips). The LAMC defined bulky items as "any item, with the exception of a constructed tent, operational walker, crutch or wheelchair, that is too large to fit into a 60-gallon container with the lid closed, including but not limited to, a shed, structure, mattress, couch, chair, other furniture or appliance."

A group of homeless individuals filed a lawsuit alleging that the bulky items provision on its face violated the Fourth Amendment's protection against unreasonable searches and seizures, and the Fourteenth Amendment's guarantee of procedural due process. The district court agreed, concluding that the plaintiffs were likely to succeed on their Fourth Amendment and Fourteenth Amendment claims. The court issued a preliminary injunction on the city's enforcement of the bulky items provision. The city appealed.

The Ninth Circuit's analysis began and ended with *Lavan*. The court observed that the facts of *Lavan* were "strikingly similar" to the facts now before the court: *i.e.*, in both cases, city employees acting pursuant to a city ordinance "seized and summarily destroyed" homeless individuals' property that was momentarily unattended. The court concluded that it saw "no meaningful distinction" between the destruction of property enjoined in *Lavan* and the destruction of property under the bulky items provision. The fact that the plaintiffs' property in this case was larger than 60 gallons did "not reduce their possessory interests in those items." As such, the court concluded that the plaintiffs had demonstrated a likelihood of success on the merits of their Fourth Amendment claim and affirmed the district court's grant of a preliminary injunction.

**Takeaways from *Garcia v. City of Los Angeles***

Takeaways from *Garcia v. City of Los Angeles* include the following:

> **Size is irrelevant.** Municipalities may not summarily remove and destroy homeless individuals' personal property that is stored in public. The mere size or volume of personal property does not change the result.
> **Not addressed: property removal with notice and storage.** The court did not rule on the constitutionality of ordinances that provide for the removal, notice and storage of personal property. Variations of such regulations have been crafted and/or upheld by district courts. (see e.g., *Mitchell v. City of Los Angles* (C.D. Cal. 2016) 2016 WL 11519288, citing with approval *De-Occupy Honolulu v. City and County of Honolulu* (D. Hawaii 2013) 2013 WL 2285100).