MICHAEL N. FEUER, City Attorney
SCOTT MARCUS, Chief Assistant City Attorney (SBN 184980)
GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
DORA A. GONZALEZ, Deputy City Attorney (SBN 210947)
EMERSON H. KIM, Deputy City Attorney (SBN 285142)
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California 90012
Telephone:  213-978-7561
Facsimile:   213-978-7011
emerson.kim@lacity.org

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| W. LOCKETT, individually and as a representative of a class, and E. SERIN and D. JACOBS, individually and as representatives of a class,<br><br>              Plaintiffs,<br><br>    v.<br><br>ERIC MICHAEL GARCETTI, et al.<br><br>          Defendants. | No. 2:21-cv-06003-DOC (KESx)<br><br>**Hon. David O. Carter**<br>**United States District Judge**<br><br>Action filed:  July 26, 2021<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY DEFENSE COUNSEL**<br><br>Date:  December 20, 2021<br>Time: 8:30 a.m.<br>Ctrm: 9D |

## I.   INTRODUCTION

Plaintiffs bring their Motion to Disqualify ("Motion") premised on an inapposite case, *Dunton v. County of Suffolk*, 729 F.2d 903 (2d Cir. 1984), as no entity defendant is a party to this lawsuit and the police officer defendants' actions are not at issue. Plaintiffs' lawsuit targets the City of Los Angeles's ("City's") allegedly unconstitutional ordinances only, implying that the individual defendants simply followed protocol to enforce those unconstitutional ordinances.[1]  (*See* SAC ¶¶ 30-41.)  Thus, no "actual" or "potential" conflict exists, and defense counsel's duty of loyalty to Defendants is uncompromised.  Moreover, Plaintiffs lack standing to bring their Motion.  Though they are the party moving for disqualification, none of them have or had an attorney-client relationship with Defendants' counsel.  Accordingly, the Court should deny Plaintiffs' Motion.

## II.   LEGAL STANDARD

"California law governs questions of conflicts of interest and disqualification." *Radcliffe v. Hernandez*, 818 F.3d 537, 541 (9th Cir. 2016).  The Central District has adopted California's Rules of Professional Conduct ("Rules"), which govern attorney conflicts of interest.  *See* Local Rule 83-3.1.2.  Rule 1.7 states, in relevant part:

(a)   A lawyer shall not, without informed written consent from each client and compliance with paragraph (d), represent a client if the representation is directly adverse to another client in the same or a separate matter.

(b)   A lawyer shall not, without informed written consent from each affected client and compliance with paragraph (d), represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or the lawyer's own interest.

---

[1] Although Plaintiffs' lawsuit is against the City, Plaintiffs name 40 individuals instead.

DEFENDANTS' OPPOSITION TO MOTION TO DISQUALIFY

1    . . .

2    (d)    Representation is permitted under this rule only if the lawyer

3           complies with paragraphs (a), (b), and (c), and:

4           (1)    the lawyer reasonably believes that the lawyer will be able to

5                  provide competent and diligent representation to each affected

6                  client;

7           (2)    the representation is not prohibited by law; and

8           (3)    the representation does not involve the assertion of a claim by

9                  one client against another client represented by the lawyer in

10                 the same litigation or other proceeding before a tribunal.

11   Cal. R. Prof. Conduct 1.7(a), (b), & (d) (State Bar of Cal. 2018).  If the client is a private,

12   public, or governmental organization, then:

13          [a] lawyer representing [the] organization may also represent any of its

14          constituents, subject to the provisions of rules 1.7, 1.8.2, 1.8.6, and 1.8.7.  If

15          the organization's consent to the dual representation is required by any of

16          these rules, the consent shall be given by an appropriate official,

17          constituent, or body of the organization other than the individual who is to

18          be represented, or by the shareholders.

19   *Id.* at R. 1.13(g).

20          California law distinguishes between two types of conflicts of interest.  *See*

21   *Radcliffe*, 818 F.3d at 541-42.  "Where the potential conflict is one that arises from the

22   successive representation of clients with potentially adverse interests, the courts have

23   recognized that the chief fiduciary value jeopardized is that of client confidentiality."  *Id.*

24   at 542 (quoting *Flatt v. Super. Ct.*, 9 Cal. 4th 275, 283 (1994)).  However, where, as

25   here, the alleged conflict is "simultaneous" representation, the conflict "do[es] not

26   primarily implicate the duty of confidentiality but rather the attorney's duty — and the

27   client's legitimate expectation — of loyalty."  *Id.* (internal quotation marks omitted).

28          The California Supreme Court has stated that "[a]ttorneys have a duty to maintain

2

DEFENDANTS' OPPOSITION TO MOTION TO DISQUALIFY

undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process . . . . The effective functioning of the fiduciary relationship between attorney and client depends on the client's trust and confidence in counsel." *People ex rel Dept. of Corporations v. SpeeDee Oil*, 20 Cal. 4th 1135, 1146 (1999)(citations omitted).  Indeed, "[t]he most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation . . . . Such patently improper dual representation suggests to the clients — and to the public at large — that the attorney is completely indifferent to the duty of loyalty and the duty to preserve confidences." *Id.* at 1147 (citation omitted); *see Unified Sewerage Agency of Wash. Cty., Or. v. Jelco Inc*., 646 F.2d 1339, 1345 (9th Cir. 1981) (discussing concurrent representation under prior ABA Code of Responsibility and stating that "representation adverse to a present client must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients").

## III.   ARGUMENT

### A.   No "Actual" or "Potential" Conflict Exists to Pose a Risk to Defense Counsel's Duty of Loyalty.

Plaintiffs do not provide any examples of the existence of a conflict of interest to demonstrate interference with the court's ability to ensure the orderly administration of justice and the progress of this case.  (*See generally* Mot.)  They cannot because no "actual" or "potential" conflict of interest exists.  Although the recently enacted Rule 1.7 foregoes those terms, it appears to still rely on that distinction by prohibiting joint representation where the clients' interests are "directly adverse" or where there is a "significant risk" that "the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to . . . another client[.]" *See* Cal. R. Prof. Conduct 1.7(a), (b).  Thus, under Rule 1.7, a conflict of interest is potential if there is a significant risk that "a lawyer's obligations to two or more clients in the same matter . . . may materially limit the lawyer's ability to recommend or advocate all possible positions that each

1   might take because of the lawyer's duty of loyalty to the other clients." *Id.* at R. 1.7,

2   comment. 4.  A directly adverse conflict, i.e., an "actual" conflict, exists when, for

3   example, "a lawyer accepts representation of more than one client in a matter in which

4   the interests of the clients actually conflict[.]" *Id.* at R. 1.7, comment. 1.

5          Here, there is no implication that Defendants' interests are "directly adverse" to

6   one another or that a "significant risk" exists that defense counsel's representation will

7   be materially limited due to counsel's responsibilities to another client.  Plaintiffs have

8   not put forth any information or evidence showing that an entity defendant is asserting

9   that police officers acted improperly or that the individual defendants are claiming that

10  they received inadequate training from an entity defendant.  *See, e.g., Miller v. Alagna*,

11  138 F.Supp.2d 1252, 1257 (C.D. Cal. 2000) (outlining the potentially adverse litigation

12  positions that the entity and officer defendants might take).  They cannot because no

13  entity defendant is a party and none of the allegations infer that individual defendants

14  acted in their personal capacity.  Even were that the case, there is nothing in the SAC to

15  suggest any individual defendant acted outside the course and scope of their

16  employment.  Plaintiffs target the City's allegedly unconstitutional ordinances only,

17  implying that the individual defendants simply followed protocol to enforce those

18  unconstitutional ordinances.  (*See* SAC ¶¶ 30-41.)  The challenged policies are what they

19  are, but do not present any conflict of interest for the defendants.  Thus, no "actual" or

20  "potential" conflict exists, and defense counsel's duty of loyalty to Defendants is

21  uncompromised.

22       **B.    *Dunton* Is Not Germane Here.**

23          Plaintiffs contend that the mere representation of both the police officer

24  defendants and the other defendants is a *de facto* conflict of interest.  (*See id.* at 2:2-10.)

25  Plaintiffs premise their Motion on *Dunton*, specifically that an inherent conflict of

26  interest arises in a 42 U.S.C. § 1983 action when co-defendants in a suit are a local

27  government and police officers, as differing theories of liability and differing defenses

28  are applicable to each defendant.  (*See* Mot. 5:10-7:24.)  However, *Dunton* is not

4

DEFENDANTS' OPPOSITION TO MOTION TO DISQUALIFY

1   germane to the instant action.

2        First, the City is not a defendant to this action, as Plaintiffs have named only

3   individuals.  (*See* SAC, ECF No. 68.)  Thus, unlike *Dunton*, a local government is not a

4   co-defendant.

5        Second, though a handful of co-defendants are police officers, no allegations are

6   made by Plaintiffs that identify any specific misconduct by the officers.  (*See generally*

7   SAC.)  Put differently, whereas alleged police misconduct was at the center of *Dunton*

8   (and Plaintiffs' other cited case, *Heller v. Bushey*, 759 F.2d 1371 (9th Cir. 1985)), the

9   individual actions of police officers are not at issue here.  In *Dunton*, defendant police

10  officer had attacked another individual due to a potential extramarital affair, and co-

11  defendant County of Suffolk deflected liability by unexpectedly arguing that the officer

12  had acted in his personal capacity rather than his official capacity.[2]  *Dunton*, 729 F.2d at

13  908 ("As soon as the County Attorney began to undermine Officer Pfeiffer's good faith

14  immunity defense by stating that Pfeiffer acted as an 'irate husband' and not as a police

15  officer, he was not only failing to act as a conscientious advocate for Pfeiffer, but was

16  acting against Pfeiffer's interest.  The seriousness of this conflict made disqualification

17  appropriate.").  Here, the allegations regarding specific actions are centered on the

18  sanitation workers: "City employees from the Sanitation Bureau, backed-up with muscle

19  by LAPD officers, remove un-housed persons' belongings" as part of the health hazard

20  removal and comprehensive street and sidewalk cleaning programs.  (SAC ¶ 33.)  The

21  allegations that involve the defendant police officers appear to be a general, unsupported

22  accusation of racial animus by the officers in assisting the sanitation department in its

23  cleaning efforts.  (*Id.* ¶¶ 43-45.)  Again, whatever the issues are with regard to street

24

25  [2] With respect to Plaintiffs' other case, *Heller* did not deal with the question of a conflict
    of interest in representing a local government and police officers.  *Heller* dealt with an
26  alleged excessive use of force by police officers on a drunk driving suspect who fell
    through a plate-glass window as the officers attempted to handcuff him.  *Heller*, 759
27  F.2d at 1372-73.  In any event, *Heller* was reversed by the Supreme Court in *City of Los
    Angeles v. Heller*, 475 U.S. 796 (1986).
28

DEFENDANTS' OPPOSITION TO MOTION TO DISQUALIFY

cleanings, there is no suggestion of any conflict of interest.

Third, none of the allegations appear to claim that any defendant acted in their personal capacity against City policy à la *Dunton*.  (*See generally* SAC.)  Plaintiffs' focus is the City and the City's allegedly unconstitutional ordinances, not the individuals.  (*See, e.g.,* SAC ¶ 32 ("Under the pretenses of 'Health Hazard Removal' and 'Comprehensive Street & Sidewalk Cleaning,' the ordinances thinly-veiled purpose and effect is to get un-housed persons off the streets and sidewalks of the City of Los Angeles, and out of sight.").)  In other words, the key concern that a municipality may avoid liability by showing that an employee was not acting within the scope of his/her official duties is not at issue here, as no such allegations exist.  The naming of specific police officers is arguably a red herring created by design by Plaintiffs.  They could and should have simply sued the City (but chose not to).

### C.   <u>Plaintiffs Lack Standing to Bring Their Motion.</u>

Standing is a jurisdictional matter that goes to the power of a federal court to decide an issue placed before it.  The requirements for Article III standing, necessary for any party to seek relief from a federal court, are that the party has personally suffered an "injury in fact," which is causally related to the conduct in issue and redressable by a favorable decision of the court.  *Lujan v. Defenders of Wildlife* 504 U.S. 555, 560-61 (1992).  The burden is on the party seeking relief to establish these "irreducible constitutional minimum" elements with respect to the particular issues the party wishes to have decided.  *Id.*

"Standing doctrine [also] embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights . . . ."  *Allen v. Wright*, 468 U.S. 737, 751 (1984); *see also Bennett v. Spear*, 520 U.S. 154, 162 (1997) (discussing the prudential rule that a plaintiff's grievance must arguably fall within the "zone of interests" protected or regulated by the applicable law).  "The majority view is that only a current or former client of an attorney has standing to complain of that attorney's representation of

DEFENDANTS' OPPOSITION TO MOTION TO DISQUALIFY

interests adverse to that current or former client." *Colyer v. Smith*, 50 F. Supp. 2d 966, 969 (C.D. Cal. 1999); *see* C*ivil Serv. Comm'n v. Super. Ct.*, 163 Cal. App. 3d 70, 76-77 (1984). "The party moving for disqualification must have had or currently have an attorney-client relationship with the attorney in question." *Hechavarria v. City & County of San Francisco*, No. C 10-0525 CRB, 2010 U.S. Dist. LEXIS 97764, *3-4 (N.D. Cal. Sept. 17, 2010).

Here, Defendants are the only parties that may be affected by a conflict of interest. Plaintiffs lack standing and may not seek disqualification of opposing counsel because they are not a party affected by any potential or actual conflict. Therefore, Plaintiffs' Motion must fail.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion.

DATED:  November 29, 2021          MICHAEL N. FEUER, City Attorney
                                   SCOTT MARCUS, Chief Assistant City
                                   Attorney
                                   GABRIEL S. DERMER, Assistant City Attorney
                                   DORA A. GONZALEZ, Deputy City Attorney
                                   EMERSON H. KIM, Deputy City Attorney

                          By:  */s/ Emerson H. Kim*
                                   EMERSON H. KIM, Deputy City Attorney
                                   Attorney for Defendants