1   STEPHEN YAGMAN (SBN 69737)
    filing@yagmanlaw.net
2   YAGMAN + REICHMANN, LLP
    333 Washington Boulevard
3   Venice Beach, California 90292-5152
    (310) 452-3200
4
5   Attorneys for Plaintiffs and
    Putative Class Members
6
7
8               **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**
10                  **WESTERN DIVISION**
11

| | |
|---|---|
| **PEOPLE OF CITY OF LOS ANGELES WHO ARE UN-HOUSED, AS A CLASS REPRESENTED BY C. FINLEY,** *etc.*, <br><br> Plaintiffs, <br><br> v. <br><br> **ERIC MICHAEL GARCETTI**, *et al.*, <br><br> Defendants. | 2:21-cv-06003-DOC(KESx) <br><br> **NOTICE OF MOTION AND MOTION FOR INTERIM, CATALYTIC ATTORNEYS' FEES, AGAINST CITY OF LOS ANGELES DEFENDANTS ONLY** <br><br> Date: July 18, 2022 <br> Time:  8:30 a.m. <br> Place: Courtroom 9D, Santa Ana <br><br> Judge David O. Carter |

20
21      **PLEASE TAKE NOTICE** that plaintiffs move the court an award of
22  interim, catalytic attorneys' fees pursuant to 42 U.S.C. § 1988(a), that oral
23  argument will be heard as set forth above, and that the instant motion is based on
24  the grounds that all of the criteria for an award of such fees are met. The L.R. 7-3
25  meet and confer was held on June 10, 2022 by telephone, with the City defendants'
26  defense counsel, and the issues raised were not resolved.
27  //
28  //

**YAGMAN + REICHMANN, LLP**

By: _____
        **STEPHEN YAGMAN**

//

2

1

# TABLE OF CONTENTS

I. Introduction..............................................................................................3

II. Argument................................................................................................5

    1. Plaintiffs have stopped vehicle sweeps.........................................5

    2. Plaintiffs have prevailed...............................................................6

        A. In general...........................................................................6

        B. Interim attorneys' fees......................................................7

    3. The lodestar method is to be used...............................................12

        a. The relevant legal community governs reasonable rates................14

    4. The hourly rate of $1,000 is reasonable for an attorney with nearly

        50 years experience prosecuting § 1983 actions..................................15

    5. The number of hours worked is reasonable.................................16

    6. The hourly rates are valid, or below, market rates.....................18

    7. Out-of-pocket litigation costs are recoverable under § 1988(a)................21

*Kerr* factors addendum...............................................................................22

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Cases

*Alyeska Pipeline Service Co. v. Wildnerness Soc'y*, 421 U.S. 240, 247 (1975)....... 5

*Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006) ............................. 13

*Benton v. Oregon Student Assistance Comm'n*, 421 F.3d 901, 906 (9th Cir. 2005) 7

*Blum v. Stenson*, 465 U.S. 886 (1984) ...................................................... 18

*Blum v. Stenson*, 465 U.S. 886, 897 (1984). .......................................... 17

*Bouman v. Block,* 940 F.2d 1211, 1237 (9th Cir. 1991) ........................................ 3

*Brewster v. Dukakis,* 786 F.2d 16, 18 (1st Cir. 1986) .............................. 4

*Buckhannon Bd. and Care Home, Inc. v. West. Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001) ............................................... 5

*Cabrales v. County of Los Angeles,* 935 F.2d 1050, 1053 (9th Cir. 1991)............. 4

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).................. 16

*Carson v. Billings Police Dep't,* 470 F.3d 889, 891 (9th Cir. 2006).................... 15

*Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *as amended,* 808 F.2d 1373 (9th Cir. 1987) ............................................... 12

*Christensen v. Stevedoring Servs. of Am.,* 557 F.3d 1049, 1053 (9th Cir. 2009). 12

*City of Burlington v. Dague,* 505 U.S. 557, 562 (1992)........................................ 12

*City of Riverside v. Rivera,* 477 U.S. 561, 575-76 (1986 ....................................... 6

*County of Los Angeles v. U.S. Dist. Ct. for the Cent. Dist. of California (Forsyth v. Block),* 223 F.3d 990, 996 (9th Cir. 2000) ...................................... 20

*Crumpton v. Gates,* 947 F.3d 1418 (9th Cir. 1991)............................................... 19

*Davis v. City and County of San Francisco*, 976 F.2d 1536, 1542 (9th Cir. 1992) 20

*Dep't of Water Resources Environmental Impact Cases*, 2022 WL 1908832, *6-7 (Cal. Ct. Appeal, certified for publication June 3, 2022) .................................. 10

*Ellwest Stereo Theatre, Inc. v. Jackson,* 653 F.2d 954, 955 (5th Cir. 1981)......... 3

*Farrar v. Hobby,* 506 U.S. 103, 114 (1992) ............................................... 6

*Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir. 1992).................................. 14

*Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013)............. 13

*Guam Society of Obstetricians & Gynecologists v. Ada,* 100 F.3d 691, 700 (9th Cir. 1996) ................................................................................................ 4

*Hall v. Cole*, 412 U.S. 1, 5 (1973) .............................................................. 12

*Hanrahan v. Hampton*, 446 U.S. 754, 756-58 (1980) ............................... 9

*Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983) ...................................... 4

*Herbst v. Ryan*, 90 F.3d 1300, 1304 (7th Cir. 1996) ............................... 19

*Herbst v. Ryan*, 90 F.3d 1300, 1304 (9th Cir. 1996) ............................... 19

*Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 715 (9th Cir. 2013) ............... 7

*Ingram v. Oroudjian,* 647 F.3d 925, 928 (9th Cir. 2011) ....................... 15

*Islamic Shura Council of Southern California v. Federal Bureau of Investigation,* 2011 WL 7144144, *1 (C.D. Cal. 2011) ............................................... 15

*Jaffee v. Redmond,* 142 F.3d 409, 416-17 (7th Cir. 1998) ...................... 6

*Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) ..................... 11

*Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975) ...................... 13

*Kinney v. Int'l Bhd. of Elec. Workers*, 939 F.2d 690, 692 (9th Cir. 1991) ............. 12

*L.H. v. Schwarzenegger,* 645 F.Supp. 2d 888, 893 (E.D. Cal. 2009) ................... 14

*Lewis v. Kendrick*, 944 F.2d 949, 955 (1st Cir. 1991) .............................. 19

*Lytle v. Carl*, 382 F.3d 978, 988 (9th Cir. 2004) ...................................... 11

*Mahach-Watkins v. Depee*, 593 F.3d 1054, 1059 (9th Cir. 2010) ............................ 7

*McCown v. City of Fontana,* 565 F.3d 1097, 1102 (9th Cir. 2009) ...................... 15

*Morales v. City of San Rafael,* 96 F.3d 259, 364 nn. 9 & 10 (9th Cir. 1996) ....... 14

*Morales v. City of San Rafael,* 96 F. 3d 259, 363-64 (9th Cir. 1996) .................... 17

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 559 (1986) ...................................................................................................... 6

*Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 551 (2010) ................................. 13

*Perkins v. Mobile Housing Board,* 847 F.2d 735, 738 (11th Cir. 1988). ............... 19

*Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454-55 (9th Cir. 2010) ..... 16

*Quesada v. Thomason,* 850 F. 2d 537, 540 n. 11 (9th Cir. 1988), ........................ 18

*Reiser v. Del Monte Props. Co.*, 605 F.2d 1135, 1138 (9th Cir. 1979) .................. 12

*Riverside v. Rivera,* 477 U.S. 561, 574 (1986) ....................................................... 18

*Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3rd Cir. 1990). ................................. 20

*Schwarz v. Sec'y of Health & Human Serv.,* 73 F.3d 895, 906 (9th Cir. 1995) ..... 12

*Serrano v. Unruh,* 32 Cal.3d 621 (1982) ................................................................... 4

*Sethy v. Alameda Cnty. Water Dist.,* 602 F.2d 894, 897 (9th Cir. 1979) ................ 3

*Sole v. Wyner*, 551 U.S. 74, 77 (2007) ....................................................................... 5

*Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) ........................................ 11

*Suzuki v. Yuen*, 678 F.2d 761 (9th Cir. 1982) ......................................................... 18

*Texas Teachers v. Garland Schl. Dist.,* 489 U.S. 782, 792 (1989) .......................... 6

*Thomas v. Baca,*, 2014 WL 7333266, * 6 (C.D. Cal. 2014) .................................... 16

*Trevino v. Gates,* 99 F.3d 911, 925 (9th Cir. 1996) ................................................ 14

*Trustees of Construction Industry and Laborers Health & Welfare Trust v.*

    *Redland Ins. Co.,* 460 F.3d 1253 (9th Cir. 2006) ............................................. 21

*United Steelworkers of Amer. v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir.

    1990) .............................................................................................................. 15, 18

*Ustrak v. Fairman,* 851 F.2d 983, 988 (7th Cir. 1988) ............................................ 4

*Wilcox v. City of Reno,* 42 F.3d 550, 554-55 (9th Cir. 1994) .................................. 7

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs submit this memorandum of points and authorities in support of their motion for an award of interim, catalytic attorneys' fees, along with the required declarations and evidence submitted concurrently herewith.

### I. INTRODUCTION

The legislative history of § 1988(b) indicates that the public policy behind awarding fees is to induce competent counsel to undertake civil rights actions, by assuring them that if they succeed in catalyzing and vindicating federally-protected rights, as here, they would be paid in the same manner as "is traditional with attorneys compensated by fee paying clients," even when the results obtained are not entirely non-pecuniary or solely of nominal pecuniary value. Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Sess., *reprinted in* 1976 U.S. Code Cong. & Ad. News 59089.

Given this strong purpose, courts long have established that, although the statute appears to speak in permissive terms, a court's discretion to deny attorneys' fees to a successful civil rights plaintiff is "exceedingly low." *Ellwest Stereo Theatre, Inc. v. Jackson,* 653 F.2d 954, 955 (5th Cir. 1981).

"Congress plainly intended that successful plaintiffs should ordinarily recover attorney's fees, unless special circumstances would render such an award unjust." *Sethy v. Alameda Cnty. Water Dist.,* 602 F.2d 894, 897 (9th Cir. 1979)(quotation marks omitted). Here, there are no special circumstances.

Courts repeatedly have held that attorneys in civil rights actions are entitled to recover ***their full fees*** when they achieve meaningful and substantial relief, in catalytically modifying positively defendants' behavior, even when they do not prevail on every issue. *Bouman v. Block,* 940 F.2d 1211, 1237 (9th Cir. 1991)(plaintiff proceeding under multiple theories for sex discrimination and prevailing on FEHA claims is entitled to recover attorneys' fees). The Supreme

3

Court explained that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983); *see also \*Cabrales v. County of Los Angeles,* 935 F.2d 1050, 1053 (9th Cir. 1991)[1](former Chief Judge Alex Kozinski: same – the result at the end of the litigation is all that matters because "losing is part of winning.").

If the rule were otherwise, attorneys would be discouraged from taking on high risk cases – such as the instant matter, which was, and remains extremely high risk. *Hensley,* 461 U.S. at 435. *See also Serrano v. Unruh,* 32 Cal.3d 621 (1982); *Guam Society of Obstetricians & Gynecologists v. Ada,* 100 F.3d 691, 700 (9th Cir. 1996)(plaintiffs cannot be faulted for their thoroughness in pleading related claims). Parsing discrete issues according to their relative importance to the outcome is disfavored, because doing so would require the trial court to make mini-determinations of prevailing party status on each dispute. *See Brewster v. Dukakis,* 786 F.2d 16, 18 (1st Cir. 1986). Once a plaintiff has been determined to be a prevailing party, s/he is entitled to all reasonable time spent, and "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation [as a whole]." *Ustrak v. Fairman,* 851 F.2d 983, 988 (7th Cir. 1988)(quoting *Hensley,* 461 U.S. at 435).

//
//
//
//
//

---

[1] Cases marked with an asterisk are civil rights actions prosecuted by Stephen Yagman.

## II. ARGUMENT

### 1. Plaintiffs, Who So Far Have Prevailed Significantly In This Action, In Less Than A Year, And Are Entitled To Interim, Catalytic Attorney's Fees In This Action, Pursuant To 42 U.S.C. § 1988. Plaintiffs Have Prevailed On A Significant Issue: Getting The Concession That There Would Be No Vehicle Sweeps.

"In the United States, parties are ordinarily required to bear their own attorney's fees – the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. and Care Home, Inc. v. West. Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001). Pursuant to this "American Rule," prevailing parties are not entitled to attorneys' fees "absent explicit statutory authority." *Ibid.* (internal quotation marks omitted). However, for private civil rights actions brought pursuant to 42 U.S.C. § 1983, "Congress has established an exception to the 'American Rule[,]' that 'the prevailing litigant is ordinarily not entitled to collect [counsel fees] from the loser.'" *Sole v. Wyner*, 551 U.S. 74, 77 (2007) (quoting *Alyeska Pipeline Service Co. v. Wildnerness Soc'y*, 421 U.S. 240, 247 (1975)). This exception, which is codified under 42 U.S.C. § 1988(b), "authorizes federal district courts, in their discretion, to 'allow the prevailing party . . . a reasonable attorney's fee as part of the costs.'" *Ibid.* (quoting 42 U.S.C. § 1988(b)). Plaintiffs filed the instant civil rights action pursuant to § 1983.

Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, codified at 42 U.S.C. § 1988(b), in response to the Court's holding in *Alyeska Pipeline Service Co.* that, absent express statutory authorization, each party to a lawsuit shall bear her/his own attorneys' fees.

Section 1988(b) is intended to ensure that the victims of civil rights violations will be able to attract competent legal counsel to vindicate their rights in court. *Hensley,* 461 U.S. at 429. Section 1988(b) accomplishes that goal, by making certain that a prevailing plaintiff "'should ordinarily recover an attorney's

1  fee unless special circumstances would render such an award unjust.'" *Ibid.*

2  (quoting S. Rep. No. 94-1011, p. 4 (1976)). *See also Pennsylvania v. Delaware*

3  *Valley Citizens' Council for Clean Air,* 478 U.S. 546, 559 (1986); *City of*

4  *Riverside v. Rivera,* 477 U.S. 561, 575-76 (1986 (affirming Judge Mariana R.

5  Pfaelzer's attorneys' fees award).

6       The "overriding goal [of Section 1988(b)] was to reimburse with a

7  reasonable attorneys' fee those who as 'private attorneys general' take it upon

8  themselves to invoke and thereby invigorate federal constitutional and statutory

9  rights[,]" *Jaffee v. Redmond,* 142 F.3d 409, 416-17 (7th Cir. 1998), which is what

10  plaintiffs' counsel herein has done in the instant matter and has done in this court

11  for over 40 years. Declaration of Stephen Yagman ("Yagman Decl."), and CV

12  attached thereto.

13  **2. Plaintiffs "Prevailed" And Therefore Are Entitled To An Award Of Fees.**

14  **A. In General.**

15

16       Because plaintiffs prevailed in this action by succeeding on a significant

17  issue, by defense counsel's concession at the May 20, 2022 hearing that defendants

18  no longer would conduct sweeps of RVs, they are entitled to an award of interim,

19  catalytic attorneys' fees. *Hensley,* 461 U.S. at 433. The Supreme Court held in

20  *Texas Teachers v. Garland Schl. Dist.,* 489 U.S. 782, 792 (1989), that *Hensley*

21  sets forth the appropriate test for determining prevailing party status. The *Garland*

22  Court looked to whether the relief on the merits of plaintiff's claim *changed the*

23  *legal relationship* between the plaintiff and the defendant, and, applying this test,

24  the Court in *Farrar v. Hobby,* 506 U.S. 103, 114 (1992), found that plaintiff had

25  modified the defendant's behavior in a way that benefits the plaintiff (albeit in a

26  money judgment), by forcing the defendant to pay an amount that otherwise would

27  not be paid: here, to do something it had refused to do. Here, plaintiffs'

28

6

1    modification of defendants' behavior by defendants' concession to discontinue

2    vehicle sweeps, mean that plaintiffs are prevailing parties.

3       "[I]n order to qualify for attorney's fees under § 1988[b], a plaintiff must be

4    a 'prevailing party[,]'" and a party "prevails" when "actual relief on the merits of

5    his claim materially alters the legal relationship between the parties by modifying

6    the defendant's behavior in a way that directly benefits the plaintiff [here,

7    thousands of people who in the City of Los Angeles live in vehbicles]." *Farrar*,

8    506 U.S. at 110, 111-12; *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 715

9    (9th Cir. 2013) (same). Both the Supreme Court and Ninth Circuit recognize that

10    "[a] plaintiff who receives a nominal damage award for a § 1983 claim is a

11    prevailing party under § 1988." *Mahach-Watkins v. Depee*, 593 F.3d 1054, 1059

12    (9th Cir. 2010); *see also Farrar*, 506 U.S. at 112. However, while a nominal

13    damages award "does not affect the prevailing party inquiry[,]" "it does bear on the

14    propriety of fees awarded under § 1988." *Farrar*, 506 U.S. at 114 (the degree of a

15    plaintiff's success does not affect his eligibility for a fee award, but is relevant to

16    whether a party is entitled to fees); *see also Hensley*, 461 U.S. at 436  (a plaintiff's

17    degree of success is the "most critical factor" bearing on the reasonableness of a

18    fee award). Thus, a party receiving only nominal damages must also achieve "other

19    tangible results – such as sparking a change in policy or establishing a finding of

20    fact with potential collateral estoppel effects" – to support an award of attorney's

21    fees. *Wilcox v. City of Reno*, 42 F.3d 550, 554-55 (9th Cir. 1994); *see also Benton*

22    *v. Oregon Student Assistance Comm'n*, 421 F.3d 901, 906 (9th Cir. 2005). Here, so

23    far plaintiffs have had enormous success, in the face of constant and very stiff

24    opposition.

25

26                 **B. Interim Attorneys' Fees.**

27       Plaintiffs contend that they so far prevailed on the issue of quasi-injunctive

28    relief sought in this action because, to be considered a prevailing party, a plaintiff

must "obtain an enforceable judgment against the defendant from whom fees are sought, *or comparable relief through a consent decree or settlement*." *Farrar*, 506 U.S. at 111 (citations omitted; emphasis added). In this respect, and "[i]n short, a plaintiff 'prevails' when actual relief on the merits of his [or of her] claim materially alters the legal relationship between the parties *by modifying the defendants' behavior in a way that directly benefits the plaintiff*." *Id*. at 111-12 (emphasis added). Here, as the court well-knows (and plaintiffs do not belabor this point) since it was only because of plaintiffs' counsel's zealous and persistent pursuit, and the court's persistent questioning of defense counsel on May 20, that the following concessions were made:

>"after a minimum of three visits an assessment of the vehicle must take place to determine whether the vehicle is being actively used as a dwelling, meaning, if after three visits the vehicle is not being used as a dwelling, then the officer . . . can make the determination that the -- vehicle is abandoned." TR May 20, 2022 at 27:17-23.

>"THE COURT: . . . What the defendants are stating is that they're not going to have a wholesale sweep." *Id*. at 40:11-13.

>"THE COURT: . . . . if this take the import of a sweep, you'll have an injunction within 24 hours." *Id*. at 49:6-7.

>"THE COURT: . . . If he [Yagman] sees a sweep, he's going to come right back in this court as early as a week or two . . . but don't use this as a guise for a sweep. All right?" *Id*. at 51:16-22.

Thus, plaintiffs have satisfied this condition precedent to an award of interim, catalytic attorneys' fees, since plaintiffs so far successfully have caused a determination of the substantial rights of the parties and they therefore also are entitled to an interim award of fees.

8

In *Hanrahan v. Hampton*, 446 U.S. 754, 756-58 (1980)(*per curiam*), *reh'g denied*, 448 U.S. 913 (1980), the Court held as follows with respect to interim attorneys' fees awards under section 1988(b):

> The legislative history of the Civil Rights Attorney's Fees Awards Act of 1976 indicates that a person may in some circumstances be a "prevailing party" without having obtained a favorable "final judgment following a full trial on the merits," H.R.Rep. No. 94-1558, p. 7 (1976). *See also* S.Rep. No. 94-1011, p. 5 (1976). Thus, for example, "parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief," *ibid.*; U.S.Code Cong. & Admin.News 1976, pp. 5908, 5912. *See also* H.R.Rep. No. 94-1558, *supra*, at 7, and cases cited; *Dawson v. Pastrick*, 600 F.2d 70, 78 (CA7 1979); *Nadeau v. Helgemoe*, 581 F.2d 275, 279-281 (CA1 1978).

> It is evident also that Congress contemplated the award of fees *pendente lite* in some cases. S.Rep. No. 94-1011, *supra*, at 5; H.R.Rep. No. 94-1558, supra, at 7-8. But it seems clearly to have been the intent of Congress to permit such an interlocutory award only to a party who has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal. The congressional Committee Reports described what were considered to be appropriate circumstances for such an award by reference to two cases--*Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), and *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). S.Rep. No. 94- 1011, *supra*, at 5; H.R.Rep. No. 94-1558, supra, at 8. In each of those cases the party to whom fees were awarded had established the liability of the opposing party, although final remedial orders had not been entered. The House Committee Report, moreover, approved the standard suggested by this Court in Bradley, that " 'the entry of any order that determines substantial rights of the parties may be an appropriate occasion upon which to consider the propriety of an award of counsel fees . . . ,' " H.R.Rep. No. 94-1558, *supra*, at 8, quoting *Bradley v. Richmond School Board, supra*, 416 U.S., at 723, n. 28, 94 S.Ct., at 2022, n. 28. Similarly, the Senate Committee Report explained that the award of counsel fees pendente lite would be "especially appropriate where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues." S.Rep. No. 94-1011, *supra*, at 5, U.S.Code Cong. & Admin.News 1976, p. 5912 (emphasis added). It seems apparent from these passages that Congress intended to permit the interim award of counsel fees only when a party has prevailed on

1  the merits of at least some of his claims. For only in that event has there
2  been a determination of the "substantial rights of the parties . . . . "[2]

3

4

5  [2] *See also Dep't of Water Resources Environmental Impact Cases*, 2022 WL
6  1908832, *6-7 (Cal. Ct. Appeal, certified for publication June 3, 2022, as
   California law and federal law on catalytic fees is basically the same:

7
8  It is not necessary for a plaintiff to obtain a judgment in its favor to qualify
   as a successful party. (*Yucaipa, supra*, 238 Cal.App.4th at p. 521, 189
9  Cal.Rptr.3d 306.) In *Graham*, our Supreme Court endorsed the "catalyst
   theory" of attorney fees, under which plaintiffs may be considered
10 successful if their lawsuit caused the defendant to voluntarily provide the
11 relief sought. (*Graham, supra*, 34 Cal.4th at pp. 560-561, 568, 21
   Cal.Rptr.3d 331, 101 P.3d 140.) Under the catalyst theory, attorney fees may
12 be awarded even when litigation does not result in a judicial resolution if the
13 defendant voluntarily changes its behavior substantially because of, and in
   the manner sought by, the litigation. (*Id.* at p. 560, 21 Cal.Rptr.3d 331, 101
14 P.3d 140.) The catalyst theory is an application of the principle that courts
15 look to the practical impact of the litigation, not the manner of its
   resolution. (*Id.* at p. 566, 21 Cal.Rptr.3d 331, 101 P.3d 140.) Thus, a
16 plaintiff may be a "successful party" whenever it obtains the relief sought in
17 its lawsuit, regardless of whether that relief is obtained through a judgment,
   settlement, or voluntary change in the defendant's conduct. (*Id.* at p. 567, 21
18 Cal.Rptr.3d 331, 101 P.3d 140; see also *Zuehlsdorf v. Simi Valley Unified
19 School Dist.* (2007) 148 Cal.App.4th 249, 257, 55 Cal.Rptr.3d 467 [plaintiff
20 may be a prevailing party when the defendant's voluntary compliance moots
   the controversy]; accord, *Coalition for Economic Survival v.
21 Deukmejian* (1985) 171 Cal.App.3d 954, 962, 217 Cal.Rptr. 621.) However,
22 the moving party must establish that (1) its "lawsuit was a catalyst
   motivating the defendants to provide the primary relief sought;" (2) "the
23 lawsuit had merit and achieved its catalytic effect by threat of victory, not by
24 dint of nuisance and threat of expense[;]"[5] and (3) it "reasonably attempted
   to settle the litigation prior to filing the lawsuit." (*Tipton-Whittingham v.
25 City of Los Angeles* (2004) 34 Cal.4th 604, 608, 21 Cal.Rptr.3d 371, 101
26 P.3d 174.)
27 To satisfy the first (causation) prong, the plaintiff need not show the
   litigation was the only cause of defendant's acquiescence. (*Skinner v. Ken's
28 Foods, Inc.* (2020) 53 Cal.App.5th 938, 946, 267 Cal.Rptr.3d 869 (*Skinner*).)
   The litigation need only be a " 'substantial factor' " contributing to the relief

10

1   To determine reasonable attorneys' fees under § 1988, a "district court

2   should first determine the lodestar amount by calculating 'the number of hours

3   reasonably expended on the litigation multiplied by a reasonable hourly rate.'"

4   *Lytle v. Carl*, 382 F.3d 978, 988 (9th Cir. 2004) (quoting *Jordan v. Multnomah*

5   *County*, 815 F.2d 1258, 1262 (9th Cir. 1987)).

6   "Where a plaintiff has obtained excellent results, his [or her] attorney should

7   recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. Here, plaintiffs so far

8   have achieved an excellent result. Moreover, a plaintiff does not need to receive all

9   of the relief requested in order to show excellent results warranting a fully

10  compensatory fee. *Id.* at 435 n. 11; *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th

11  Cir. 2001).

12  "'Reasonable fees' under § 1988 are to be calculated according to the

13  prevailing market rates in the relevant community[,]" *Blum v. Stenson*, 465 U.S.

14  886, 895 (1984), taking into consideration "the experience, skill, and reputation of

15

16

17  obtained. (*Ibid.*; accord, *Yucaipa, supra*, 238 Cal.App.4th at p. 522, 189
    Cal.Rptr.3d 306.)

18  But the plaintiff cannot be a successful party by obtaining just any relief.
19  (*Bowman v. City of Berkeley* (2005) 131 Cal.App.4th 173, 177, 31
    Cal.Rptr.3d 447.) In catalyst cases, the plaintiff must show its lawsuit was a
20  catalyst motivating the defendant to provide the *primary* relief sought in the
21  litigation. (*Id.* at p. 178, 31 Cal.Rptr.3d 447; *California Public Records
    Research, Inc. v. County of Yolo* (2016) 4 Cal.App.5th 150, 191, 209
22  Cal.Rptr.3d 26.) Thus, when a plaintiff seeks fees under a catalyst theory,
23  courts generally must conduct the following inquiry: (1) identify the
    plaintiff's primary litigation objectives, (2) compare the results obtained to
24  determine whether the plaintiff in fact achieved those objectives, and, if so,
25  (3) decide whether the lawsuit was a material factor or contributed in a
    significant way to those results. (*Yucaipa, supra*, 238 Cal.App.4th at pp.
26  521-522, 189 Cal.Rptr.3d 306; *Graham, supra*, 34 Cal.4th at pp. 566-567,
27  21 Cal.Rptr.3d 331, 101 P.3d 140; *Hogar Dulce Hogar v. Community
    Development Com. of City of Escondido* (2007) 157 Cal.App.4th 1358,
28  1366, 69 Cal.Rptr.3d 250.)

11

the attorney [who requests fees]." *Schwarz v. Sec'y of Health & Human Serv.,* 73
F.3d 895, 906 (9th Cir. 1995) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d
1205, 1210 (9th Cir. 1986), *as amended*, 808 F.2d 1373 (9th Cir. 1987)).

"To inform and assist the court in the exercise of its discretion, the burden is
on the fee applicant to produce satisfactory evidence -- in addition to the
attorney's own affidavits -- that the requested rates are in line with those prevailing
in the community for similar services by lawyers of reasonably comparable skill,
experience, and reputation." *Blum*, 465 U.S. at 896 n. 11.

Last, since federal courts in any event have the power to award attorneys'
fees "in the exercise of their equitable powers[,]" *Hall v. Cole*, 412 U.S. 1, 5
(1973), or when "successful litigation confers 'a substantial benefit on the
members of an ascertainable class, and where the court's jurisdiction over the
subject matter of the suit makes possible an award[,]'" *ibid.* (quoting *Mills v.
Electric Auto-Life Co.,* 396 U.S. 375, 393-94 (1970)); *accord Kinney v. Int'l Bhd.
of Elec. Workers*, 939 F.2d 690, 692 (9th Cir. 1991); *Reiser v. Del Monte Props.
Co.*, 605 F.2d 1135, 1138 (9th Cir. 1979), an award should be made.

### 3. The Lodestar Method Is To Be Applied To Determine Fees.

In determining whether an award of attorneys' fees is reasonable, the
lodestar method is the fundamental starting point. *Christensen v. Stevedoring
Servs. of Am.,* 557 F.3d 1049, 1053 (9th Cir. 2009); *City of Burlington v. Dague,*
505 U.S. 557, 562 (1992)(stating that "the 'lodestar' figure has . . . become the
guiding light of [the court's] fee-shifting jurisprudence[.]").

The "lodestar" is the product of hours reasonably expended on a case
multiplied by the customary hourly rates generally prevailing in the relevant legal
community, here Los Angeles, for services rendered by similarly-qualified
lawyers. *Hensley,* 461 U.S. 424. *See* all attached declarations and orders. Under
currently applicable controlling law, the Court has sought to make uniform the

12

manner of determining what a "reasonable fee" is under a fee-shifting statute, such as 42 U.S.C. § 1988(b). *Dague,* 505 U.S. at 562. The Court has adopted the position that "the 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a '*strong presumption*' that the lodestar represents a 'reasonable' fee . . . ." *Ibid.* (emphasis added).

As stated and "[i]n the Ninth Circuit, the customary method of determining the permissible amount of attorney's fees under § 1988 is the 'lodestar' method[,]" *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006), which "produces an award that roughly approximates the fee that the prevailing attorney would have received *if he or she had been representing a paying client* who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (emphasis added). As stated, the "lodestar" is "the presumptively reasonable rate, which is reached by multiplying the number of hours reasonably expended by the prevailing party with a reasonable hourly rate, then making any adjustments as necessary to account for factors not already subsumed within the initial lodestar calculation." *Mendez*, 540 F.3d 1109, 1129 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (listing 12 factors bearing on the reasonableness of a fee award)). Because there is a "strong presumption" that the lodestar figure represents a reasonable fee, the favored procedure is to adjust the reasonable number of hours or reasonable hourly rate at the first step of the inquiry, rather than adjusting the lodestar after it has been calculated, based on reasonableness factors subsumed in the analysis at step one of the inquiry.[3] *See*

---

[3] Factors presumptively taken into account at step one of the lodestar calculation include (1) the novelty and complexity of the issues in the litigation, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013).

*Morales v. City of San Rafael,* 96 F.3d 259, 364 nn. 9 & 10 (9th Cir. 1996).
Where, as here, prevailing parties achieve great success, a court must also consider
that success in determining the size of a fee award. *See Hensley,* 461 U.S. at 440
(the extent of a plaintiff's success is a "crucial factor in determining the amount of
an award of attorney's fees under [§ 1988]"); *Mendez,* 540 F.3d at 1130 (district
court is "obligated" to consider a plaintiff's extent of success).

### a. The Relevant Legal Community Governs Reasonable Fee Rates.

In determining a lawyer's reasonable hourly rate, "the court should be
guided by the rate prevailing in the community for similar work performed by
[other] attorneys of comparable skill, experience, and reputation." *\*Trevino v.
Gates,* 99 F.3d 911, 925 (9th Cir. 1996)(internal quotation marks omitted), *cert.
denied sub nom. Gates v. Trevino,* 520 U.S. 1117 (1997), *appeal from remand,*
145 F.3d 1341 (9th Cir. 1998)(unpublished)(appeal after remand from 99 F.3d
911, upholding attorneys' fee award). "[T]he proper reference point in determining
an appropriate fee award is the rates charged by private attorneys in the same legal
market as prevailing counsel . . . ." *Ibid.* (citing *Blum v. Stenson,* 465 U.S. 886,
895 (1984).

In *L.H. v. Schwarzenegger,* 645 F.Supp. 2d 888, 893 (E.D. Cal. 2009), the
court noted that "the relevant legal community is that in which the forum district is
located[,]" (citing *Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir. 1992), and
that a reasonable rate should reflect not only the market rates, but also the skill and
experience of the prevailing party's counsel, which here is at the highest level.
"The attorney's hourly rate is reasonable if it is in line with the prevailing market
rate of the relevant legal community." *Islamic Shura Council of Southern
California v. Federal Bureau of Investigation,* 2011 WL 7144144, \*1 (C.D. Cal.

14

2011)(Judge Cormac J. Carney).  The party seeking fees has "the burden to prove that the rate charged is in line with the prevailing market rate of the relevant community[,]" *Carson v.  Billings Police Dep't,* 470 F.3d 889, 891 (9th Cir. 2006); *see also Blum,* 465 U.S. at 895 (1984); *Ingram v.  Oroudjian,* 647 F.3d 925, 928 (9th Cir.  2011)("We have held that '[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation[,]'" (Quoting *Chalmers v.  City of Los Angeles,* 796 F.2d 1205, 1210-11 (9th Cir.  1986)), a burden plaintiffs clearly have carried, and reasonable hours expended on a case are hours that are not "'excessive, redundant, or otherwise unnecessary.'" *McCown v.  City of Fontana,* 565 F.3d 1097, 1102 (9th Cir. 2009)(quoting *Hensley,* 461 U.S. at 434).  Here, there hardly was one hour that was excessive, redundant, or otherwise unnecessary.

"Affidavits of the plaintiffs' attorney . . . and rate determinations in other cases, particularly those setting rate[s] for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Amer.  v.  Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990).  Plaintiffs' counsel's appropriate market rate of $1,000 per hour is addressed in the numerous declarations submitted concurrently herewith. Plaintiffs' counsel, Stephen Yagman, tried over 200 § 1983 actions to verdict in this court over 44 years, and has tried more civil rights actions than any attorney, alive or dead.

### 4. The Hourly Rate Of $1,000 Is Reasonable, For An Attorney With Nearly 50 Years' Experience, Prosecuting Virtually Exclusively § 1983 Actions.

In computing the lodestar amount, a district court must determine a reasonable hourly rate to use for the attorney who worked on a plaintiff's behalf throughout the litigation in question. *See Gonzalez,* 729 F.3d at 1205. "The 'prevailing market rates in the relevant community' set the reasonable hourly rate

15

for purposes of computing the lodestar amount." *Ibid*; *see also Blum*, 465 U.S. at 895 ("'[R]easonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant legal community, regardless of whether plaintiff is represented by private or nonprofit counsel."). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. When determining a reasonable hourly rate, the "relevant legal community" is generally the forum in which the district court sits, and "the proper scope of comparison . . . extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation,' no matter the subject." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454-55 (9th Cir. 2010). Satisfactory evidence of the prevailing market rate may consist of a plaintiff's attorney's own davit, as here, and other attorneys' affidavits, also as here, regarding prevailing fees in the community, and rate determinations in other cases. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

In support of a rate of $1,000 per hour, plaintiffs submit both their own lawyer's declaration and other lawyers' declarations. Yagman's last fee award in this court was made in *Thomas v. Baca*, 2:04-cv-08448-DDP, by Judge Dean D. Pregerson, who on Dec. 19, 2014, awarded Yagman $750/hour for services rendered from Oct. 2004 to Dec. 2007, rendered 15 years ago. *Thomas v. Baca,*, 2014 WL 7333266, * 6 (C.D. Cal. 2014).

### 5. The Number Of Hours Worked Is Reasonable.

In order to determine what constitutes a reasonable award, the Supreme Court held that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433. This calculation,

1   known as the lodestar amount, is "presumed to be the reasonable fee." *Blum*, 465 at

2   97.

3       As the court stated in *Morales*, 96 F. 3d at 363-64:

4

5       The lodestar determination has emerged as the predominate element of the
        analysis" in determining a reasonable attorney's fee award. *Jordan v.*
6       *Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). The "lodestar" is
7       calculated by multiplying the number of hours the prevailing party
        reasonably expended on the litigation by a reasonable hourly rate. *McGrath*
8       *v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995). After making that
9       computation, the district court then assesses whether it is necessary to adjust
        the presumptively reasonable lodestar figure on the basis of the *Kerr* factors
10      . . . that are not already subsumed in the initial lodestar calculation.
11      . . . *Id.;* \**Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir.
12      1988), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 57, 107 L.Ed.2d 773 (1989).
        FN8. The twelve *Kerr* factors bearing on the reasonableness are:
13      (1) the time and labor required, (2) the novelty and difficulty of the
14      questions involved, (3) the skill requisite to perform the legal service
        properly, (4) the preclusion of other employment by the attorney due to
15      acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or
16      contingent, (7) time limitations imposed by the client or the circumstances,
        (8) the amount involved and the results obtained, (9) the experience,
17      reputation, and ability of the attorneys, (10) the "undesirability" of the case,
18      (11) the nature and length of the professional relationship with the client,
        and (12) awards in similar cases.[4]
19      *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert.*
20      *denied*, 425 U.S. 951, 96 S.C. 1726, 48 L.Ed.2d 195 (1976)..
21      There is a strong presumption that the lodestar figure represents a reasonable
        fee. "Only in rare instances should the lodestar figure be adjusted on the
22      basis of other considerations." *Harris v. Marhoefer*, 24
23      F.3d 16, 18 (1994); *Oviatt v. Pearce*, 954 F.2d 1470, 1482 (9th Cir. 1992).
        Under the lodestar approach, many of the *Kerr* factors have been subsumed
24      as a matter of law. *Cunningham*, 879 F.2d at 487.
25      FN9. Among the subsumed factors presumably taken into account in either
26      the reasonable hours component or the reasonable rate component of the
        lodestar calculation are: "(1) the novelty and complexity of the issues, (2)
27

28  _____
    [4] As an addendum to this memorandum, plaintiffs will comment on each of the 12
    *Kerr* factors as they pertain to the instant actions.

the special skill and experience of counsel, (3) the quality of representation, ... (4) the results obtained," *Cabrales v. County of Los Angeles,* 864 F.2d 1454, 1464 (9th Cir. 1988), *reinstated,* 886 F.2d 235 (1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1838, 108 L.Ed.2d 966 (1990), and (5) the contingent nature of the fee agreement, *City of Burlington v. Dague,* 505 U.S. 556, 565-67, 112 S.Ct. 2368, 2643, 120 L.Ed.2d 449 (1992).

Here, it needs to be stated that a foremost consideration in determining fees is "the significance of the legal issues on which the plaintiff[s] claim[] to have prevailed and the public purpose the plaintiff's litigation served." *Morales,* 96 F. 3d at 363 (internal quotation marks omitted). The legal issues in this litigation and on which plaintiffs prevailed were monumental – this hardly is an exaggeration – and against great odds.

"[A] civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms[,]" *Quesada v. Thomason,* 850 F. 2d 537, 540 n. 11 (9th Cir. 1988)(citing *Riverside v. Rivera,* 477 U.S. 561, 574 (1986) (plurality opinion), and the instant action conferred a benefit not only on plaintiffs but also on other civil rights plaintiffs.

### 6. The Attorneys' Hourly Rates Are Valid, Or Below, Market Rates.

Attorneys should be compensated at their usual and customary hourly billing rates, so long as such rates are a valid market rate for such services. *Blum,* 465 U.S. 886; *Suzuki v. Yuen,* 678 F.2d 761 (9th Cir. 1982). *See United Steelworkers of Am. v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990)("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."). Here, the usual and customary hourly rates of plaintiff's attorney have been established with admissible evidence, and evidence that the rates are valid market rates for the services rendered has been submitted. *See Hensley,* 461 U.S. at 447 ("the Senate Report specifies that fee awards under § 1988 should be equivalent to fees 'in other types of equally complex Federal litigation, such as anti-trust cases'"). "[J]udges

18

1  awarding fees must make certain that attorneys are paid ***the full value that their***
2  ***efforts would receive on the open market in <u>NON</u>-civil rights cases*** . . . ." *Ibid.*
3  (Emphasis added.)

4       Fully compensatory "fee awards provide the necessary encouragement to
5  private citizens to file suit to correct [constitutional] violations[,]" *Herbst v. Ryan*,
6  90 F.3d 1300, 1304 (9th Cir. 1996), because a verdict relatively small in relation to
7  the amount of fees claimed "may deter future harassment . . . ."[5] *Lewis v. Kendrick*,
8  944 F.2d 949, 955 (1st Cir. 1991)(citing *Stefan v. Laurentis*, 889 F.2d 363, 369 (1st
9  Cir. 1989)). As plaintiffs have argued, deterrence -- stopping defendants from
10  terrorizing them with the threat of towing and impounding their homes -- is the
11  main purpose, along with compensation, of § 1983. *Hardin v. Straub,* 490 U.S.
12  536, 538-40 (1989)( Section 1983's "chief goals [are] compensation and deterrence
13  . . . ." (footnote omitted))

14       The declaration of Stephen Yagman constitutes sworn evidence that the
15  attorney actually expended the time for which compensation is sought. "Sworn
16  testimony that, in fact, it took the time claimed is evidence of considerable weight on
17  the issue of the time required in the usual case." *Perkins v. Mobile Housing Board,*
18  847 F.2d 735, 738 (11th Cir. 1988). For a court to deny compensation, "it must
19  appear that the time claimed is obviously and convincingly excessive under the
20  circumstances." *Ibid.* "The applicant need *not* detail how each minute was
21  expended; rather counsel should identify the general subject matter of his time
22  expenditures." *Hensley*, at 437, n. 12 (emphasis added). As another court put it, "a
23  fee petition should include 'some fairly definite information as to the hours devoted
24  to various general activities, *e.g.*, pretrial discovery, settlement negotiations, and the
25  hours spent by various classes of attorneys, e.g., senior partners, junior partners,

26

27  _____
28  [5] This precisely is the issue here: deterrence, the foremost objective and purpose of
§ 1983. *See* \**Crumpton v. Gates*, 947 F.3d 1418 (9th Cir. 1991).

1  associates.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3rd Cir. 1990).  However,

2  "'it is not necessary to know the exact number of minutes spent nor the precise

3  activity to which each hour was devoted nor the specific attainments of each

4  attorney.'"  *Id.* at 1190.  In *Rode*, the court rejected the argument that billing entries

5  such as "settlement" and "miscellaneous research, telephone conversations, and

6  conferences concerning facts, evidence, and witnesses" were insufficiently specific.

7  *Id.* at 1191 n. 13. *See also Davis v. City and County of San Francisco*, 976 F.2d

8  1536, 1542 (9th Cir. 1992) (rejecting argument that billing records were

9  insufficiently specific, emphasizing that *Hensley* requires only that counsel "identify

10  the general subject matter of his time expenditures").

11       As former Chief Judge Alex Kozinski[6] put it very aptly yet very bluntly in

12  *Moreno,* 534 at 1111:

13

14       Lawyers must eat, so they generally won't take cases without a
         reasonable prospect of getting paid. Congress thus recognized that
15       private enforcement of civil rights legislation relies on the availability
         of fee awards: "If private citizens are to be able to assert their civil rights,
16       and if those who violate the Nation['s] fundamental laws are not to proceed
17       with impunity, then citizens must have the opportunity to recover what it
         costs them to vindicate these rights in court." S.Rep. No, 94-1011, at
18       2 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5908, 5910.
19

20

21  [6] Chief Judge Kozinski also said of Stephen Yagman, 22 years ago, in the year

22  2000: "[C]ounsel, Stephen Yagman, has a formidable reputation as a plaintiff's

23  advocate in police misconduct cases; defendants in such cases may find it
    advantageous to remove him as an opponent." **County of Los Angeles v.  U.S.*

24  *Dist. Ct. for the Cent.  Dist.  of California (Forsyth v.  Block),* 223 F.3d 990, 996

25  (9th Cir.  2000)(denying County of Los Angeles' petition for a writ of mandamus,
    challenging former Judge Florence-Marie Cooper's, of this court, denial of

26  attorney motion to disqualify Mr. Yagman as plaintiff Forsyth's counsel, on

27  ground that, when Joseph Reichmann joined the Yagman & Yagman & Reichmann
    law firm in 1999, *Mr.  Yagman* should be disqualified because Mr.  Reichmann had

28  presided over a settlement conference in this court that involved one of the
    Sheriff's Department deputy defendants in another police brutality case in 1993).

## 7. Out-Of-Pocket Litigation Costs Are Recoverable Under § 1988(b)

It is well-established that attorneys' fees under § 1988 include out-of-pocket litigation expenses the normally would be charged to a fee-paying client, even when the court may not tax such expenses as "costs" under 28 U.S.C. § 1920. *Trustees of Construction Industry and Laborers Health & Welfare Trust v. Redland Ins. Co.,* 460 F.3d 1253 (9th Cir. 2006). Therefore, plaintiffs are entitled to recover all out-of-pocket expenses incurred in this action because these are expenses that a client normally would pay to his attorneys, but which were not taxed as § 1920 costs.

Attached to the Yagman declaration is an invoice for the $67.50 cost of a copy of the transcript of the court's May 20 hearing, that was needed for the preparation of the instant motion.

## III. CONCLUSION

For the reasons stated herein, and the evidence submitted herewith, the court should award attorneys' fees as supported by the evidentiary submissions attached hereto, and any further fees to be expended on this motion.

Respectfully submitted,

**YAGMAN + REICHMANN, LLP**

By: **STEPHEN YAGMAN**

//

### ***KERR* FACTORS ADDENDUM**

The *Kerr* factors as they are applicable to these actions are:

(1) **the time and labor required,** is extensive, at least because there has been much work to do, counsel has needed to remain constantly available as wrongful actions are suffered by the homeless plaintiffs, counsel must go to plaintiffs' locations to (sometimes find) meet with them, and then return with declarations for them to sign, and counsel has been very reluctant to go out of town or on any vacations, lest something bad befall one of the plaintiffs that he immediately would need to address, as has been the case with TRO applications;

(2) **the novelty and difficulty** of the questions involved, is high and the case has been difficult because defendants and defense counsel literally won't give an inch, as is amply evidenced by the repeated times the court had to put the same question to defense counsel at the May 20 hearing, each time virtually never getting any substantive response;

(3) the **skill requisite to perform the legal service** properly, takes a very experienced attorney who is expert in the areas of substantive and adjective law;

(4) the **preclusion of other employment by the attorney** due to acceptance of the case, is almost total, because the case is time-consuming and demands quick and effective responses to the clients' needs;

(5) the **customary fee,** cannot be charged because all plaintiffs are homeless and impecunious, but the "customary fee" is sought under 42 U.S.C. § 1988(a);

(6) whether the **fee is fixed or contingent**: it is wholly contingent on success, and thus it is a very risky case for counsel;

(7) **time limitations imposed** by the client or the circumstances, are that counsel is required to be virtually almost always on call, days, nights, and weekends, to field communications from clients, many of whom have not means by which to communicate;

(8) the **amount involved** and the **results obtained**, are *de minimis* as to amounts

and the results relatively will be *de minimis*, except in the important respect of

alleviating and preventing human suffering;

(9) the **experience, reputation, and ability** of the attorneys, is spoken for in

plaintiffs' counsel's CV, which Judge Dean D. Pregerson has said "speaks for itself

-- *see* especially pp. 1-7;

(10) the "**undesirability**" of the case, speaks for itself -- clients who are

undesirables and virtual pariahs in the community, the case is hard-fought and

politically motivated by defendants, who have free legal representation;

(11) the **nature and length** of the professional relationship with the clients is short

and thus more difficult, but it is close; and,

(12) **awards in similar cases** are such that the award sought in the instant matter

would be commensurate with or a bit below other awards, adjusting for time and

inflation. (Counsel for plaintiffs has a very long list of his other awards in similar

cases, but for now will rely on Judge Pregerson's 2014 award in the *Thomas* case,

but if defense counsel challenges this then, plaintiffs' counsel will dig them out and

file them). *See e.g. Weston v. City of Los Angeles*, 99 Fed.App'x 1148 (9th Cir.

1996) (affirming 1994 attorneys' fees award, 28 years ago, and stating: "The Court

finds that an award of $120,000.00 for Stephen Yagman [300 hours x $350/hr] and

$4,812.50 for Marion Yagman [13.75 hours x $350/hr] is reasonable. The time and

effort required to prosecute this action have been fully documented by Plaintiff's

counsel. The Court does not find that the time expended by Plaintiff's counsel was

excessive, duplicative or otherwise unnecessary. The prevailing market rate in the

community is indicative of the reasonable hourly rate. Plaintiff's counsel have

submitted extensive evidence demonstrating that the prevailing market rate for

attorneys of similar training, knowledge and experience in the relevant legal

market is between $350 and $400. Thus, the Court does not find that the hourly

1    rates of $400 for Stephen Yagman and $350 for Marion Yagman are

2    unreasonable.").

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28