## DECLARATION OF STEPHEN YAGMAN

I, Stephen Yagman, declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am one of the attorneys for the plaintiff in this action.

2. I submit this declaration in support of plaintiffs' motion for an award of interim, catalytic attorneys' fees.

3. Attached hereto is a copy of my CV, I drafted it and know personally its contents, which are true, and I incorporate its contents herein by this reference.

4. My hourly until the end of 2007 was $750, *see Thomas v. Baca*, 2014 WL 7333266, * 6 (C.D. Cal. 2014), and my hourly billing rate since my re-admission to the bar of this court on July 19, 2021 has been $1,000, and it has been billed to and paid to me by current-fee-paying clients (whose cases I take only to be able to maintain an approximately 95% federal civil rights practice, in which fees are a long time in coming).

5. Attached hereto is a chart that sets forth the legal work and hours for which I seek interim compensation. The chart is constructed from the contemporaneous time records I have kept of the work I have done in these consolidated cases, and I seek compensation at the rate of $1,000 per hour. I log time in 15 minute increments, but I do not bill for any time unless it passes the 15-minute mark, so that, for example, if I spend 50 minutes on any task, I bill for the immediately-preceding 45 minutes, but not for any time between one minute and 14 minutes, so that I eliminate much time from my billing, as an exercise of billing judgment.

6. Also, in support of the hourly rate claimed, I attach the unpublished disposition in *Kerri Walsh Jennings v. AOS Group, LP*, 2019 WL 3406789 (Court

of Appeal, Second, 2019), not for any law set forth therein, but for the factual contents of the hourly rate of $1,200 that was awarded.

_____

**STEPHEN YAGMAN** 06/20/22

| TASK PERFORMED | TIME EXPENDED |
| --- | --- |
| 2021<br>June<br>12 interview Ms. Finley and her spouse, Mr. White | 2.75 |
| 13 interview Ms. Finley and her spouse, Mr. White | 4.0 |
| 14 research issues and read pertinent cases | 10.75 |
| 21 interview homeless witnesses in Main Street area of Venice, write memoranda as to their observations | 5.5 |
| 22 interview witness Clukey, memo | 1.0 |
| 30 research cases on homelessness | 8.25 |
| July | |
| 4 Interview plaintiffs Lockett & Serin, and draft memoranda and declarations | 3.75 |
| 21 draft complaint, summons, interested parties, related cases, civil cover sheet, in forma pauperis requests | 5.75 |
| 26 file new case materials | 1.0 |
| 28 read notice of assignment, notice to proceed before magistrate, order re transfer | .25 |
| Aug. | |
| 2 conference with plaintiff Finley, mem to file | 1.5 |

1

| | |
|---|---|
| 2 draft declaration for Finley, and meet with her | 1.5 |
| 3 research motion for preliminary injunction | 9.75 |
| 4 research motion for preliminary injunction | 6.75 |
| 5 research motion for preliminary injunction | 7.75 |
| 6 draft preliminary injunction motion & order | 10.75 |
| 15 file preliminary injunction motion | .50 |
| 23 read opposition to preliminary injunction motion, and cases cited, shepardize | 5.75 |
| 27 draft reply on preliminary injunction motion | 2.0 |
| Sept. | |
| 2 research and draft Rule 28(j) analog (Women's Health case) | 1.50 |
| 3 research and draft Rule 28(j) analog (Garcia case) | .75 |
| 5 research and draft 3d Rule 28(j) analog | .25 |
| 8 read order denying as moot PI motion, and cases cited, and shepardize | 1.75 |
| 8 draft motion for reconsideration of denial of PI | 2.75 |

| | |
|---|---|
| 9 read answer, memo to file | 1.75 |
| 9 draft FAC | 2.75 |
| 10 read and calendar scheduling order | .25 |
| 18 research and draft new PI motion and order | 3.0 |
| 19 research and draft new PI motion and order | .75 |
| 20 draft application for TRO | 1.0 |
| 20 conference with Wendy Lockett and draft declaration for her | 2.75 |
| 21 read opposition to TRO application, research cases, Shepardize | 5.75 |
| 22 read min. ord. deny TRO | .25 |
| 23 read motion to dismiss, research, Shepardize | 6.0 |
| 24 read motion to dismiss, research, Shepardize | 5.75 |
| 24 read consolidation order, annotate all case files | .50 |
| 26 research and draft reply on TRO | 1.75 |
| 27 read opposition to TRO reconsideration | .50 |
| 27 read opposition to PI motion | 1.0 |
| 28 research and draft motion to strike affirmative defenses from answer | 3.0 |
| 30 draft S.Y. declaration re: reconsideration motion | .50 |

3

| Oct. | |
|---|---|
| 1 read order denying TRO and cases, Shepardize | 1.0 |
| 2 draft and file new TRO application | 1.0 |
| 3 draft 3d TRO application | 1.0 |
| 4 read opposition to 3d TRO application | .75 |

| 4 draft reply on 3d TRO application | .75 |
|---|---|
| 7 read order denying TRO & PI, research | .75 |
| 11 research re: motion to dismiss | 5.75 |
| 12 research and draft opposition to motion to dismiss | 7.25 |
| 18 read reply on motion to dismiss | 2.0 |
| 22 read and calendar scheduling notice | .25 |
| 23 research and draft TRO application | 2.75 |
| 23 research and draft 2AC | 1.0 |
| 24 draft reply on TRO application | 1.25 |
| 25 read, research, Shepardize TRO opposition | .75 |
| 25 draft reply on TRO application | 1.0 |
| 25 research and draft class cert. motion | 14.25 |
| 26 research and draft class cert. motion | 8.25 |
| 27 draft order on class cert. motion | 10.0 |
| Nov. | |

4

| | |
|---|---|
| 1 research and draft 28(j) analog in opposition to motion to dismiss | .50 |
| 2 read ex parte app for extension of time to file class cert opposition and draft opposition to it | .50 |
| 4 read motion to strike amended complaint, research, and memo to file | 1.0 |
| 8 read opposition to class cert. motion | 2.75 |
| 9 draft reply on class cert. motion, research | 1.75 |
| 10 draft opposition to motion to strike | 1.0 |
| 10 read amended minutes on denial of motion to strike | .25 |
| 12 read defendants' supplemental brief on TRO | 1.0 |
| 13 draft response on TRO | .50 |
| 13 draft response on class cert. motion, research | 2.0 |

| | |
|---|---|
| 15 draft motion to compel adequate initial disclosures | 2.75 |
| 15 draft supp. to TRO application | .75 |
| 16 draft opposition to defendants' related case statement | .50 |
| 18 read opposition to motion to compel adequate initial disclosures | .50 |

| | |
|---|---|
| 18 conference with plaintiff Jacobs and memo to file and declaration | 2.75 |
| 19 prep for and hearing before Mag., mem to file | 1.0 |
| 19 read order denying TRO | .25 |
| 19 draft motion to reconsider TRO | 1.75 |
| 20 draft reply on discovery motion | .50 |
| 20 draft motion to disqualify counsel, research and draft | 5.75 |
| 22 read opposition to motion to reconsider | 1.0 |
| 22 draft response on TRO application | 1.0 |
| 24 read answer to amended complaint, and research affirmative defenses | 3.75 |
| 29 draft sanctions motion | 5.75 |
| 29 draft 1AC | 1.0 |
| Dec. | |
| 2 read opposition to sanctions motion and draft reply | 2.25 |
| 21 read order denying sanctions motion | .25 |
| Jan. | |
| 3 read and research motion to dismiss master complaint | 6.25 |
| 3 read opposition to reconsideration motion | 2.0 |
| 3 draft reply on reconsideration motion | 1.0 |
| 8 draft TRO application | 1.0 |

| 8 confer with plaintiffs Saucedo and Kinney and draft declarations for them | 3.75 |
|---|---|
| 10 research and draft opposition to motion to dismiss, to strike and for judicial notice | 5.75 |

| 11 draft TRO reply | 1.0 |
|---|---|
| 17 read reply in support of motion to dismiss, research and Shepardize | 6.0 |
| 18 confer with Finley and witness Wikoff and draft their declarations | 2.75 |
| 21 read opposition to TRO application | .75 |
| April | |
| 5 research and draft TRO | 2.75 |
| 7 read opposition to TRO application | 1.0 |
| 9 draft reply on TRO application | .75 |
| May | |
| 20 prepare for and hearing | 8.75 |
| June | |
| 1 research and draft fees motion | 8.0 |
| 2 research and draft fees motion | 8.0 |
| 3 research and draft fees motion | 8.0 |
| 18 research and draft fees motion | 3.25 |

**TOTAL HOURS: <u>306.50</u> X $1,000 per hour = <u>$306,500.00</u>**[1]

---

[1] No time for any telephone conferences, meetings, or correspondence has been included, and all such time has been excluded, in the exercise of billing discretion.

**JAMS CERTIFIED TRANSCRIPTION**
**16000 VENTURA BOULEVARD #1010**
**ENCINO, CA 91436**
**(661) 609-4528**
**jams@jamstranscription.com**

BILLING DATE: JUNE 20, 2022

TO:  Stephen Yagman
Yagman & Reichmann LLP
333 Washington Boulevard
Venice Beach, CA 90292-5152

| JAMS Order No. | 2022-46 | |
|---|---|---|
| Case No. | CV 21-6003-DOC (KESx) | |
| Case Name | *People of City of Los Angeles Who Are Un-housed, et al. v. Garcetti, et al.* | |
| Date of Proceeding | 5/20/22 | |
| Pages | 75 | |
| | | |
| | | |
| | Total Due | $67.50 |
| | | |
| 6/7/22 | Paid -- CC No. Ending 8007 | (67.50) |
| | | |
| | **BALANCE DUE** | **$0.00** |

*Rate: $0.90/page (Ordinary-Copy)

Case 2:21-cv-06003-DOC-KES Document 249-1 Filed 06/20/22 Page 11 of 36 Page ID #:3062

Jennings v. AOS Group, LP, Not Reported in Cal.Rptr. (2019)

🚩 KeyCite Red Flag - Severe Negative Treatment
Unpublished/noncitable

2019 WL 3406789
Not Officially Published
(Cal. Rules of Court, Rules
8.1105 and 8.1110, 8.1115)
Only the Westlaw citation
is currently available.

California Rules of Court, rule 8.1115,
restricts citation of unpublished
opinions in California courts.

Court of Appeal, Second
District, Division 4, California.

Kerri Walsh JENNINGS,
Plaintiff and Respondent,
v.
AOS GROUP, LP,
Defendant and Appellant.

B289681
|
Filed 07/29/2019

APPEAL from a judgment of the Superior
Court of Los Angeles County, William F.
Fahey, Judge. Affirmed. (Los Angeles County
Super. Ct. No. BC657250)

**Attorneys and Law Firms**

Fortis, Matthew A. Berliner for Defendant and
Appellant.

Kendall Brill & Kelly, Alan Jay Weil and Sarah
E. Moses for Plaintiff and Respondent.

CURREY, J.

## INTRODUCTION

**\*1** Plaintiff and respondent **Kerri Walsh Jennings**, a professional beach volleyball player, three-time Olympic gold medalist, and one-time Olympic bronze medalist, sued defendant and appellant AOS Group, LP (AOS) for breach of contract, seeking damages and attorneys' fees. Months after Walsh Jennings filed the complaint, AOS paid her the damages demanded by the complaint, plus interest and court costs. The parties did not, however, enter into a settlement agreement or release. Walsh Jennings later filed a motion for attorneys' fees based on an indemnity provision in the contract. The trial court granted Walsh Jennings' motion and awarded the total fees requested.

AOS appeals, contending the contractual language relied upon is a third party indemnity provision that does not create a right to prevailing party attorneys' fees in litigation between the parties to the contract. Alternatively, AOS contends the attorneys' fees awarded were unreasonable. We reject both contentions and affirm. We also find the contract entitles Walsh Jennings to an award of attorneys' fees on appeal, and remand to the trial court to calculate the amount of those fees.

## FACTUAL AND PROCEDURAL BACKGROUND

Walsh Jennings licensed her name and likeness to AOS in exchange for $150,000. They entered into a Talent Services Agreement (Agreement), which contained an indemnification provision, stating in relevant part: "[AOS] agrees to

Case 2:21-cv-06003-DOC-KES   Document 249-1   Filed 06/20/22   Page 12 of 36   Page ID #:3063

Jennings v. AOS Group, LP, Not Reported in Cal.Rptr. (2019)

defend, indemnify and hold harmless [Walsh Jennings], her agent, representatives, and employees from and against any and all damages, claims, suits, actions judgments, costs and expenses including reasonable [attorneys'] fees, arising out of: (a) any material breach by [AOS] of this Agreement or any representation or warranty made hereunder ...."

Walsh Jennings filed a complaint for breach of contract, alleging AOS failed to pay her $150,000 in breach of the express terms of the Agreement.[1] Walsh Jennings sought compensatory damages and attorneys' fees and costs. AOS moved to strike Walsh Jennings' prayer for attorneys' fees, arguing the Agreement did not contain an attorneys' fees provision for a dispute between the contracting parties. In opposition, Walsh Jennings relied on the indemnity provision in the Agreement to argue the Agreement expressly provided for the payment of attorneys' fees to the prevailing party. The court agreed with Walsh Jennings and denied the motion.

[1]    Walsh Jennings originally sued AVP, Inc. because it was identified as the named party to the Agreement. Walsh Jennings added AOS as a Doe Defendant after it admitted it was the proper defendant.

AOS answered the complaint and ultimately paid Walsh Jennings the amount she claimed was due under the Agreement, plus interest and costs. As noted above, the parties did not enter into a settlement agreement, but AOS acknowledged Walsh Jennings could move for attorneys' fees. AOS opposed Walsh Jennings' motion, again arguing the Agreement did not allow for attorneys' fees to Walsh Jennings as the prevailing party in a dispute with AOS, and the requested fees were unreasonable. Neither

party submitted any extrinsic evidence related to the Agreement or its meaning.

**\*2** The court declined to revisit its prior ruling on AOS's motion to strike, found Walsh Jennings' requested fees were reasonable, and entered judgment in favor of Walsh Jennings for the full amount of the attorneys' fees requested ($92,726). AOS appeals from the judgment.

## DISCUSSION

### I. The Agreement's Indemnity Provision is Not Limited to Third Party Claims

"Interpretation of a written contract is a question of law for the court unless that interpretation depends upon resolving a conflict in properly admitted extrinsic evidence." (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 599 (*Alki Partners*).) Here, the trial court interpreted the Agreement without consideration of any extrinsic evidence. Therefore, we exercise our independent judgment in determining whether the indemnification provision in the Agreement permits Walsh Jennings to recover attorneys' fees in her action against AOS for breach of contract. We hold it does.

"Although indemnity generally relates to third party claims, 'this general rule does not apply if the parties to a contract use the term "indemnity" to include direct liability as well as third party liability.' " (*Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1024 (*Zalkind*).) "The indemnity provisions of a contract are to be construed under the same

Case 2:21-cv-06003-DOC-KES   Document 249-1   Filed 06/20/22   Page 13 of 36   Page ID #:3064

Jennings v. AOS Group, LP, Not Reported in Cal.Rptr. (2019)

rules for interpreting contracts, " 'with a view to determining the actual intent of the parties.' " " (*Id.* at p. 1025.)

In concluding the indemnification provision here applied to direct claims between the parties, the trial court relied on *Wilshire-Doheny Associates, Ltd. v. Shapiro* (2000) 83 Cal.App.4th 1380 (*Wilshire-Doheny*). In that case, a corporation agreed, in three indemnity provisions, to indemnify two of its corporate officers for any claims or action brought against them in their capacity as corporate officers. (*Id.* at pp. 1387, 1394-1396.) The corporation later sued the two officers, asserting claims arising out of their conduct as corporate officers. (*Id.* at pp. 1385-1386.) The *Wilshire-Doheny* court held the indemnification provisions afforded a right to attorneys' fees in an action on the contract, stating "[t]here is nothing in the language of any of the three indemnity provisions specifically limiting their application to third party lawsuits." (*Id.* at p. 1396.)

*Zalkind, supra*, 194 Cal.App.4th 1010 is also instructive. The contract in *Zalkind* stated the " 'Buyer shall indemnify, hold harmless and defend the Selling Parties ... from and against any and all Damages that arise from or are in connection with: [¶] ... [¶] ... Any breach or default by the Buyer of its covenants or agreements contained in this Agreement.' " (*Id.* at p. 1022.) The contract defined "Damages" as " '(i) demands, claims, actions, suits, investigations and legal or other proceedings brought against any indemnified party ... and (ii) all liabilities, damages, losses, ... costs and expenses (including ... reasonable attorneys' ... fees ...) incurred by any indemnified party ....' "

" (*Id.* at p. 1023, italics omitted.) The *Zalkind* court concluded the provision was "broadly worded" and "does not limit indemnification to third party claims and extends indemnification to 'any and all' damages incurred by [the plaintiffs] arising out of [the defendant's] breach of the Asset Purchase Agreement." (*Id.* at p. 1027.)

**\*3** The indemnification provision here similarly provides that AOS agrees to "defend, indemnify, and hold harmless [Walsh Jennings]" from and against "any and all" damages, claims and actions "including reasonable [attorneys'] fees" arising out of "any material breach by [AOS] of this Agreement." As in *Zalkind*, this language does not limit indemnification to third party claims and extends indemnification to "any and all" damages incurred by Walsh Jennings arising out of AOS's breach of the Agreement. (*See also Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 554-555 [parties' agreement to indemnify one another for breaches of contractual representations, warranties, or covenants encompassed direct claims]; *Continental Heller Corp. v. Amtech Mechanical Services, Inc.* (1997) 53 Cal.App.4th 500, 508-509 [subcontractor's agreement to indemnify contractor for losses incurred "on account of any breach of [subcontractor's] obligations and covenants" entitled contractor to recover attorneys' fees in breach of contract action with subcontractor].) Had the parties intended to narrow the clause to cover only third-party claims, they could have done so expressly. (*In re Marriage of Vaughn* (2018) 29 Cal.App.5th 451, 460.) They did not.

Case 2:21-cv-06003-DOC-KES   Document 249-1   Filed 06/20/22   Page 14 of 36   Page ID #:3065

Jennings v. AOS Group, LP, Not Reported in Cal.Rptr. (2019)

AOS urges us to follow cases where indemnity provisions were limited to third party claims. But none of those cases involved indemnity provisions providing for attorneys' fees incurred in actions against the other contracting party for breach of the contract itself. (*See e.g.Carr Business Enterprises, Inc. v. City of Chowchilla* (2008) 166 Cal.App.4th 14, 19 [indemnitor promised to indemnify "against all claims, damages, losses and expenses including attorney fees arising out of the performance of the work described herein"]; *Myers Building Industries, LTD. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 963-964 [indemnifying "all claims ... and expenses, including ... [attorneys'] fees, arising out of ... the performance of the Work"]; *Alki Partners, supra,* 4 Cal.App.5th at p. 598 [indemnity for any and all damages "resulting in any way from the performance or non-performance of [contracting party's] duties hereunder ..."].) The indemnity provision here expressly permits recovery of attorneys' fees arising out of "any material breach by AOS of this Agreement." Accordingly, we conclude the trial court properly interpreted the indemnity provision to provide for attorneys' fees in this case.

## II. The Trial Court Did Not Abuse Its Discretion in Determining the Attorneys' Fee Award

Under Civil Code section 1717, subdivision (a), "reasonable attorney's fees shall be fixed by the court ..." in an action "where the contract specifically provides that attorney's fees and costs ... shall be awarded ...." Because an award of attorneys' fees under section 1717 is governed by equitable principles, "the trial court has broad authority to determine the amount of a reasonable fee." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) The trial judge " 'is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' [Citations.]" (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) Thus, we review the court's determination of reasonable attorneys' fees for abuse of discretion. (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691.)

Here, Walsh Jennings supported her request for $92,726 in attorneys' fees with two declarations from her lead counsel (Mr. Weil) and billing records indicating her attorneys and paralegals spent 141 hours litigating the matter. Mr. Weil detailed his work over the year his firm was retained by Walsh Jennings, including engaging in pre-litigation attempts to obtain payment of the amounts owed, drafting the complaint, opposing AOS's motion to strike, researching which entity was the proper defendant, and serving written discovery and deposition notices. For this work, Mr. Weil charged the following hourly rates: $790 in 2017 and $850 in 2018 for Mr. Weil, discounted from his standard rate of $950; $360-$395 for the associate, discounted from $490; and $290 for the paralegals, discounted from $300. Mr. Weil participated in the determination and adoption of the hourly billing rates for all attorneys at his firm, relying on survey and empirical data of billing rates in the market, information on billing rates he obtained in the course of representing other lawyers and law firms, and publicly available rate data.

\*4 The very experienced trial judge found "the hourly rates and hours are reasonable." Regarding the hourly rates, Judge Fahey explained: "I am very familiar with the market rates of lawyers in this town. And there are few of them that have been members of the Bar longer than I have. Mr. Weil is one of them. But I recently approved fees for Latham and Gibson and Munger in excess of [$]1200. Candidly, I think Mr. Weil is in that category. You may disagree, but he's an experienced, very capable lawyer."

AOS contends the award is excessive, challenging both the time spent by Mr. Weil and his associate on various tasks and the hourly rates. AOS also challenges specific time entries for communicating with the client (total of 19 hours), certain "heavily redacted time entries," and block billing. These complaints do not warrant reversal under the deferential standard of review applicable here. AOS has failed to carry its burden to show the trial court's award of $92,726 as attorneys' fees and costs constituted an abuse of discretion.

### III. Walsh Jennings Is Awarded Her Attorneys' Fees On Appeal
We sent a letter to counsel for the parties, under Government Code section 68081, soliciting their views on whether Walsh Jennings should be entitled to her attorneys' fees on appeal. We reviewed the parties' briefs and hold that she is, for the reasons discussed above. (See *Serrano v. Unruh* (1982) 32 Cal.3d 621, 637 ["it is established that fees, if recoverable at all – pursuant either to statute or parties' agreement – are available for services at trial and on appeal."].)

### DISPOSITION

The judgment is affirmed. Walsh Jennings is awarded her costs and attorneys' fees on appeal. The matter is remanded to the trial court for its determination of the amount of an award of attorneys' fees on appeal to Walsh Jennings, and entry of an order awarding those fees.

WE CONCUR:

WILLHITE, Acting P.J.

COLLINS, J.

### All Citations

Not Reported in Cal.Rptr., 2019 WL 3406789

---

**End of Document**     © 2022 Thomson Reuters. No claim to original U.S. Government Works.

99 F.3d 1148
Unpublished Disposition
NOTICE: THIS IS AN
UNPUBLISHED OPINION.
(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA9 Rule 36-3 for rules regarding the citation of unpublished opinions.)
United States Court of Appeals, Ninth Circuit.

Roy WESTON, Plaintiff–Appellee,
v.
CITY OF LOS ANGELES: Willie Williams, Chief of Police; Grainne Murray; Oscar Prado; Defendants–Appellants.

No. 95–55416.
|
Argued and Submitted Oct. 10, 1996.
|
Decided Oct. 18, 1996.

Appeal from the United States District Court for the Central District of California, No. CV 91–1314–ABC; Audrey B. Collins, District Judge, Presiding.

**Synopsis**
C.D.Cal.

AFFIRMED.

Before: PREGERSON, BOOCHEVER, and REINHARDT, Circuit Judges.

MEMORANDUM[*]

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

**\*1** Appellants challenge the order of the district court awarding $124,812.50 in attorney's fees to plaintiff **Roy Weston**, following a jury verdict in his favor in the amount of $4,002. Because we conclude that the district court did not abuse its discretion, we affirm the award.

I.

The district court's determination of attorney's fees is reviewed for abuse of discretion. *Corder v. Brown,* 25 F.3d 833, 836 (9th Cir.1994). As we recently held:

> The customary method of determining fees, which the district court should have used here, is known as the lodestar method. "The lodestar determination has emerged as the predominate element of the analysis" in determining a reasonable attorney's fee award. The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. After making that computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation. That is the procedure the district court was required to follow here.

*Morales v. City of San Rafael,* No. 94–15523, 1996 WL 502102, at \*4 (9th Cir. Sept. 6, 1996) (internal citations omitted). There is a "strong

presumption that the lodestar figure represents a reasonable fee." *Id.* at \*4 n. 8.

Without question, the district court in its written order recognized the proper procedure as set forth above. The order begins with a clear general analysis of the lodestar figure and the relevant factors to be considered. The court then proceeds to make the calculation, multiplying the hours "reasonably expended" by Weston's attorneys by a "reasonable" hourly rate:

> The Court finds that an award of $120,000.00 for Stephen Yagman [300 hours x $350/hr] and $4,812.50 for Marion Yagman [13.75 hours x $350/hr] is reasonable. The time and effort required to prosecute this action have been fully documented by Plaintiff's counsel. The Court does not find that the time expended by Plaintiff's counsel was excessive, duplicative or otherwise unnecessary. The prevailing market rate in the community is indicative of the reasonable hourly rate. Plaintiff's counsel have submitted extensive evidence demonstrating that the prevailing market rate for attorneys of similar training, knowledge and experience in the relevant legal market is between $350 and $400. Thus, the Court does not find that the hourly rates of $400 for Stephen Yagman and $350 for Marion Yagman are unreasonable.

Defendants first argue that the trial court abused its discretion because it "made no reduction in the requested fees to reflect the vast gap between the $60 million in damages sought and the $4,002 awarded." Relying entirely on the existence of a disparity between the damages awarded and the damages sought,

the City argues that the district court abused its discretion by failing to give "primary consideration to the amount of damages awarded versus those sought. Had it done so, the court could not have awarded the full fees requested."

**\*2** The City's argument turns on its reading of the obligations imposed on a trial court by the Supreme Court's decision in *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566 (1992), and this court's decision in *McGinnis v. Kentucky Fried Chicken of California,* 51 F.3d 805 (9th Cir.1994). The City, however, misconceives the court's obligation under *Farrar* and *McGinnis:* nothing in either of those cases or the others cited in appellants' brief *requires* a district court to make an express reduction in the figure requested by plaintiffs simply because of a disparity between the damages alleged in the complaint and those awarded by the jury.[1] Rather, *Farrar* and *McGinnis* only require that the district court "*consider* 'the results obtained' ... or 'the extent of [ ] success' in calculating the lodestar figure." *Morales,* 1996 WL 502102, at \*4 (internal citations omitted). The district court here fulfilled that obligation. The court noted in its written order:

---

[1] Indeed, the district court is not required to "recite" the *Kerr* factors—including "the extent of success" factor—at all. The requirement is simply that it consider those factors. *Morales,* 1996 WL 502102, at \*4 n. 10.

In evaluating the reasonableness of these awards, the Court notes that this case resulted in substantial success for the Plaintiff. In addition to prevailing on his claims against the Defendant officers, Plaintiff also prevailed in the *Monell* phase against the City of Los Angeles, an area

in which Plaintiffs have historically been unsuccessful. In addition, Plaintiff received both compensatory and punitive damages rather than nominal damages.

Notwithstanding the City's repeated attempts to disparage Weston's victory, the district court found that plaintiff achieved "substantial success" and that the attorney's fee award was reasonable in light of the success achieved. The City's argument that the district court abused its discretion on this count is without merit.

Moreover, the City fails in its attempt to dismiss the obvious public benefits derived from this suit. What we said in *Morales* applies equally well here:

> Morales' nonmonetary success was significant. The jury held both the City and the officer involved responsible for his unlawful arrest. Because it assessed damages against the defendants, the verdict established a deterrent to the City, its law enforcement officials and others who establish and implement official policies governing arrests of citizens. Thus, it served the public purpose of helping to protect Morales and persons like him from being subjected to similar unlawful treatment in the future.

1996 WL 502102, at *4. Even if the court did not make explicit findings regarding public benefit, its decision is supported by the above conclusions analyzing generally the deterrence value of jury verdicts in civil rights cases like Weston's—conclusions which seem quite obvious.[2]

---

2    Appellants' reliance on *Romberg v. Nichols*, 48 F.3d 453 (9th Cir.1995) for the proposition that Weston failed to carry his burden on this issue is misplaced. *Romberg*

involved only nominal damages, and its reasoning is, accordingly, of little assistance in a case in which actual damages were awarded.

Likewise, we are unpersuaded by appellants' argument that the district court abused its discretion because it "did not reduce the requested fees one penny to reflect Weston's failure to prevail on all his claims and against all defendants." Certainly, a district court *may* reduce an attorney's fee award where the plaintiff does not prevail against all defendants or on all of his claims. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.1984). However, "[i]t is clear that a litigant need not prevail on every claim in order to receive a full fee." *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir.1992). The full lodestar amount may be inappropriate where "relief sought on the unsuccessful claims is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury upon which the relief granted is premised." *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir.1995). Here, however, the district court, did not abuse its discretion in awarding full fees where all of the claims sought relief arising from the same "course of conduct" and where the court found plaintiff substantially succeeded in his suit. *Id.*

**\*3** Next, we reject the City's contention that the district court erred by calculating the award using "unreasonable" rates. The court, relying on *Jordan v. Multnomah County*, 815 F.2d 1258 (9th Cir.1987), correctly noted that "the prevailing market rate in the community is indicative of the reasonable hourly rate." It went on to find expressly that "Plaintiff's counsel have submitted extensive evidence demonstrating that the prevailing market rate for attorneys of similar training, knowledge

and experience in the relevant legal market is between $350 and $400. Thus, the Court does not find that the hourly rates of $400 for Stephen Yagman and $350 for Marion Yagman are unreasonable." None of the City's complaints undermine the findings of the district court nor do they support a conclusion that the district court abused its discretion in using the rates it used to calculate the lodestar figure.

Finally, we find no error in the district court's decision to award the fees at current as opposed to historical rates. That decision was perfectly consistent with the holding of *Missouri v.*

*Jenkins by Agyei,* 491 U.S. 274 (1989), the case on which the court expressly relied.

II.

Because it is clear that the attorney's fees award in this case was well within the discretion of the district court, we affirm.

AFFIRMED.

**All Citations**

99 F.3d 1148, 1996 WL 601474 (Table)

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Westlaw.

Not Reported in F.Supp.2d, 2013 WL 1296763 (C.D.Cal.)
(Cite as: 2013 WL 1296763 (C.D.Cal.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
C.D. California.
Robert CONTRERAS
v.
CITY OF LOS ANGELES, et al.

No. 2:11–cv–1480–SVW–SH.
March 28, 2013.

**Proceedings:** IN CHAMBERS ORDER Re MOTION
FOR ATTORNEYS' FEES [227]
STEPHEN V. WILSON, District Judge.
*1 Paul M. Cruz, Deputy Clerk.

## I. INTRODUCTION

On February 17, 2011, Plaintiff Robert Contreras
("Plaintiff") brought the instant action against Defend-
ants City of Los Angeles and Los Angeles Police De-
partment Officers Julio Benavides and Mario Flores
("Defendants"). (Dckt.1). Plaintiff asserted two causes
of action: one claim of excessive force in violation of
the Fourth Amendment, and a claim for municipal liab-
ility under *Monell v. Department of Social Services of
the City of New York,* 436 U.S. 658 (1978). *Id.* On Au-
gust 22, 2011, the Court bifurcated the *Monell* claim,
and on December 19, 2011, the Court bifurcated the li-
ability and damages phases of Plaintiff's excessive force
claim. A three-day jury trial was held on Plaintiff's ex-
cessive force claim: the jury found in favor of Plaintiff
on February 2, 2012. (Dckt.97). On September 21,
2012, after another three-day jury trial, the jury awarded
Plaintiff $4.5 million for the present value of future
costs of medical care and $1,225,000 for past and future
physical pain. (Dckt.193).

On January 22, 2013, Plaintiff brought the instant
motion for attorneys' fees and costs, pursuant to 42
U.S.C. § 1988. For the reasons put forward in this Or-
der, the Court awards Plaintiff $807,001 in attorneys'
fees and $85,549 in litigation-related expenses, for a
total fees and costs award of $892,550.

## II. ATTORNEYS' FEES

"A prevailing party may be awarded reasonable
fees in relation to the prosecution of a federal civil
rights claim." *Thomas v. City of Tacoma,* 410 F.3d 644,
647 (9th Cir.2005); *see also* 28 U.S.C. § 1988(b) ("In
any action or proceeding to enforce a provision of sec-
tion [1983 of this title] the court, in its discretion, may
allow the prevailing party, other than the United States,
a reasonable attorney's fee....").[FN1] A plaintiff prevail-
ing on his or her Section 1983 claim " 'should ordinar-
ily recover an attorney's fee unless special circum-
stances would render such an award unjust.' " *Thomas,*
410 F.3d at 647 (quoting *Hensley v. Eckerhart,* 461 U.S.
424, 429 (1983)) (internal citations, quotation marks,
and alteration omitted).

> FN1. As noted above, Plaintiff prevailed on his
> excessive force claim after a three-day jury tri-
> al. *See* Dckt. 97.

"In the Ninth Circuit, the customary method of de-
termining the permissible amount of attorneys' fees un-
der § 1988 is the 'lodestar' method." *Ballen v. City of
Redmond,* 466 F.3d 736, 746 (9th Cir .2006). In calcu-
lating attorneys' fees using the lodestar method, the dis-
trict court must " 'determine the presumptive lodestar
figure by multiplying the number of hours reasonably
expended on the litigation by the reasonable hourly
rate.' " *Grove v. Wells Fargo Financial Cal., Inc.,* 606
F.3d 577, 582 (9th Cir.2010) (quoting *Intel Corp. V.
Terabyte Int'l, Inc.,* 6 F.3d 614, 622 (9th Cir.1993)).
"The fee applicant bears the burden of establishing enti-
tlement to an award and documenting the appropriate
hours expended and hourly rates." *Hensley,* 461 U.S. at
437 (1983).[FN2] The district court then has discretion to
adjust the "presumptively reasonable" lodestar figure on
the basis of the following factors: " '(1) the time and
labor required, (2) the novelty and difficulty of the
questions involved, (3) the skill requisite to perform the
legal service properly, (4) the preclusion of other em-
ployment by the attorney due to acceptance of the case,
(5) the customary fee, (6) whether the fee is fixed or
contingent, (7) time limitations imposed by the client or
circumstances, (8) the amount involved and the results

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1296763 (C.D.Cal.)
(Cite as: 2013 WL 1296763 (C.D.Cal.))

obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.' " *Evon v. Law Offices of Sidney Mickell,* 688 F.3d 1015, 1033 n. 11 (9th Cir.2012) (quoting *Morales v. City of San Rafael,* 96 F.3d 359, 363–64 n. 8 (9th Cir.1996)).

> FN2. "The applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley,* 461 U.S. at 437.

**A. Reasonable hourly rate**

   ***2** The reasonable hourly rate corresponds "to the prevailing market rates in the relevant community, taking into consideration the experience, skill, and reputation of the attorney." *Dang v. Cross,* 422 F.3d 800, 813 (9th Cir.2005) (internal citations and quotation marks omitted). However, the fee applicant must to produce credible evidence that the requested rates meet this standard. *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 980 (9th Cir.2008). "[A]ffidavits of the [applicant's] attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases ... are satisfactory evidence of the prevailing market rate." *Id.* (internal quotation marks omitted); *see also Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 946 (9th Cir.2007) ("[B]illing rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.") (internal citations and quotation marks omitted).

*1. Dale Galipo*

   Dale Galipo, the lead attorney on this matter, requests a rate of $800 an hour. In support of his contention that this rate is reasonable, Mr. Galipo submitted several items of evidence:

   • Mr. Galipo's own opinion that the rate was reasonable (based on his accomplishments and level of experience), *see* Decl. of Dale Galipo ("Galipo Decl.," Dckt. 227–4) ¶ 19;

   • the declarations of four senior members of the civil rights bar, each attesting to Mr. Galipo's experience and skill and each stating that the $800 is a reasonable rate for the type of work undertaken in litigating this case, *see* Burton Decl. ¶¶ 11, 13, Grimes Decl. ¶ 6, Becerra Decl. ¶ 4, Hoffman Decl. ¶ 4;

   • a copy of a recent decision in which the Honorable Paul Abrams, Magistrate Judge for the United States District Court for the Central District of California, awarded Mr. Galipo $700 an hour in a civil rights action, *see* Galipo Decl. ¶ 21 and Ex. C attached thereto; and,

   • an article from the Los Angeles Daily Journal indicating that average law firm partner piling rates in Los Angeles average $797 an hour, *see* Galipo Decl. ¶ 20 and Ex. B attached thereto.

   In their opposition, Defendants submitted a study indicating that the average billing rate for partners in the Southern California area was $514. *see* Decl. of Defs.' Counsel Craig Miller ("Miller Decl."), Ex. 2.

   The Court finds the requested rate without sufficient support. No court has awarded a rate of $800 an hour in similar litigation; indeed, in the declarations submitted by other civil rights lawyers, the highest rate awarded to any lawyer for civil rights work was $750. Indeed, a district court in Northern California recently awarded Mr. Galipo a rate of $525 an hour in a similar excessive force case. *See Cotton v. City of Eureka, Cal.,* 889 F.Supp.2d 1154, 1162 (N.D.Cal.2012). Moreover, Mr. Galipo runs a relatively small firm, further reducing the reasonableness of the requested rate. *See Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1059 (2d Cir.1989) ("[S]maller firms may be subject to their own prevailing market rate.").

   ***3** However, the $514 an hour rate proposed by Defendants clearly falls below the prevailing market rates in the relevant community. As an initial matter, the study submitted by the Defendants covered all of Southern California; however, there are significant differences in rates between attorneys practicing in Los Angeles and those practicing in other parts of Southern

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1296763 (C.D.Cal.)
(Cite as: 2013 WL 1296763 (C.D.Cal.))

California. *See* Galipo Decl. ¶ 20 and Ex. B attached thereto (noting that the average partner in Los Angeles billed $797 an hour, while the average partner in San Diego billed $568 an hour). Moreover, the $514 an hour rate proposed by Defendants fails to take into consideration Mr. Galipo's experience, skill, and reputation. Mr. Galipo has been practicing law for nearly thirty years, and has specialized in personal injury, criminal defense, and civil rights actions since opening his own firm in 1991. *Id.* ¶¶ 7, 8. He has tried over one hundred fifty civil cases, winning multiple six- and seven-figure civil rights verdicts. *Id.* ¶¶ 9, 11. Moreover, the instant litigation required no small amount of skill: Mr. Galipo was required to navigate the case past a related criminal conviction and the testimony of two police officers in order to prevail. Furthermore, Mr. Galipo took on a substantial risk in litigating this action-his fee award was entirely contingent upon prevailing at trial. *See Fischel v. Equitable Life Assur. Soc'y of U.S.,* 307 F.3d 997, 1008 (9th Cir.2002) ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.") (internal citations and quotation marks omit- ted).

Based on the Court's experience, and the fact that Mr. Galipo has been awarded between $525 and $700 an hour in similar cases, the Court finds $675 an hour a reasonable rate for Mr. Galipo.

### 2. *Other Attorneys*

Plaintiff employed six other attorneys in this case-Thomas Seabaugh, Hilary Rau, Richard Vasquez, John Fattahi, William Schmidt, and Melanie Partow-who request rates between $200 and $415 an hour. All except Mr. Schmidt worked as associates in Mr. Galipo's firm; Mr. Schmidt was the first lawyer retained by Plaintiff, and undertook significant investigative work before turning the case over to Mr. Galipo.

In support of their contention that the requested rates are reasonable, each attorney submitted an affidavit detailing his or her experience and attesting to the amount as reasonable. Each also relied upon the Daily Journal article submitted by Mr. Galipo, which pegs the

average associate billing amount in Los Angeles at $550 an hour. In response, Defendants submitted a study indicating that the average billing rate for associates in the Southern California area was $337 an hour. *See* Miller Decl. Ex. 2.

Upon consideration of these materials, the Court finds the rates requested by Mr. Seabaugh ($350 an hour), Ms. Rau ($285 an hour) and Mr. Vasquez ($200 an hour) reasoanble. Each falls well within the range of associate billing (even at the $337 an hour level Defendants contend is reasonable), and adequately reflects their level of experience and skill in prosecuting this action. Moreover, the Court finds the rates of Mr. Schmidt ($400 an hour) reasonable, considering his expertise and skill in prosecuting this action. Mr. Schmidt has practiced for twelve years, successfully representing dozens of civil rights plaintiffs, and was the primary lawyer during the initial investigation of this action. Schmidt Decl. ¶ 4. Indeed, Mr. Schmidt was the only lawyer who would take Plaintiff's case, highlighting the risk he undertook upon agreeing to represent Plaintiff. Schmidt Decl. ¶ 5.

*4 However, the Court finds the requested rate of Mr. Fattahi ($400 an hour), and Ms. Partow ($415 an hour) without sufficient support. Mr. Fattahi has only six years of litigation experience, and in a similar civil rights action was recently awarded $320 an hour. *See P.C. v. City of Los Angeles, et al.,* No. 2:07–cv–3413–PLA (C.D.Cal. Sept. 14, 2012). Upon consideration of the materials submitted by the parties, the Court finds $350 an hour a reasonable rate for Mr. Fattahi's work. Similarly, the Court finds unreasonably high Ms. Partow's requested rate of $415 an hour, as she has only eight years of litigation experience. Partow Decl. ¶ 6. Upon consideration of the materials, the Court finds $375 an hour reasonable for Ms. Partow, considering her experience and skill in this matter.

### B. Hours Reasonably Expended

As noted above, "[w]hen a party seeks an award of attorneys' fees, that party bears the burden of submitting evidence of the hours worked[.]" *Carson v. Billings Police Dept.,* 470 F.3d 889, 891 (9th Cir.2006). "The district court may not uncritically accept the number of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1296763 (C.D.Cal.)
(Cite as: 2013 WL 1296763 (C.D.Cal.))

hours claimed by the prevailing party, even if actually spent on the litigation, but must, in order to award fees based on them, find that the time actually spent was reasonably necessary." *Id.* at 893 (internal citations and quotation marks omitted). Although the district court has discretion in determining the reasonableness of the hours claimed, it must provide a "concise but clear" explanation "to give at least some indication of how it arrived at the amount of compensable hours." *Gates v. Deukmejian,* 987 F.2d 1392, 1398 (9th Cir.1992). At the same time, the Supreme Court has instructed:

[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice,* 131 S.Ct. 2205, 2216, 563 U.S. —— (2011). The requested hours "may be reduced where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986), *amended on other grounds,* 808 F.2d 1373 (1987).

Plaintiffs spent a combined 1,575.3 hours on this matter, as evidenced by the time sheets each attorney submitted documenting the hours spent on Plaintiff's case. Specifically, Mr. Galipo spent 830 .4 total hours working on this case (including four hours preparing the instant fee application); William Schmidt, 223 total hours; Hilary Rau, 203.1 total hours; Thomas Seabaugh, 198.4 total hours (including 5.8 hours preparing the instant fee application); Richard Vasquez, 82.5 total hours; John Fattahi, 30.2 total hours; and Melanie Partow, 7.7 total hours. The Court finds this amount reasonable. The instant litigation unfolded over two years, from the filing of the complaint in February of 2011 through the filing of the instant fees motion in January of 2013. During that time, there were two separate jury trials: one on the issue of liability, the second on damages. Each phase required substantial work by Plaintiff's

attorneys: in addition to deposing witnesses, visiting the scene of the incident, and preparing witnesses, Plaintiff's attorneys prepared and/or responded to twenty four motions in limine. Additional time was spent negotiating a settlement, which the parties had initially agreed to before it later fell through. Finally, Plaintiffs put in substantial time opposing Defendants' post-trial motion for judgment as a matter of law, or, in the alternative, a new trial. Finally, Plaintiff's counsel exercised considerable billing judgment in this matter: the time sheets submitted by Plaintiff's counsel are do not bill time spent on administrative or semi-clerical tasks.

**\*5** Defendants raise five objections to the hours billed: that the hours billed for certain tasks were excessive; that the attorneys billed for conferences between counsel; general concerns of duplication; the presence of associates at trial and other proceedings; and finally, the time spent by Mr. Schmidt traveling. The Court addresses each in turn, and finds each meritless.

1. *Hours Billed*
Defendants identify several tasks for which they claim the hours billed are excessive. Each contention is without merit. Defendants complain that the 18 hours billed by Mr. Galipo in reviewing Plaintiff's criminal file at the outset of this litigation is excessive; however, this was a necessary and prudent expenditure of time in light of the potential *Heck v. Humphrey* bar that Plaintiff's related criminal arrest might have posed. Similarly, Defendants' complaint that Mr. Galipo spent 15 hours preparing for the deposition of Officer Benavides is misplaced; such thorough and careful preparation was necessary for deposing one of the three key witnesses in this case. Defendants other contentions regarding excessive billing are similarly without merit.

2. *Attorney Conferences*
Next, Defendants object to billing entries for meetings and conferences amongst and between the lawyers on this case. "[C]onferences between attorneys to discuss strategy and prepare for oral argument are an essential part of effective litigation." *McKenzie v. Kennickell,* 645 F.Supp. 437, 450 (D.D.C.1986). A review

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1296763 (C.D.Cal.)
(Cite as: 2013 WL 1296763 (C.D.Cal.))

of the time sheets reveals that such conferences did not occur excessively; the bulk of each attorney's time was spent in matters directly related to preparing for litigation.

### 3. *Duplication*
Defendants also make the general objection that more than one of plaintiff's attorneys billed for the same work, but only vaguely identify what efforts were duplicative. For example, Defendants object that Mr. Seabaugh, who came into the trial during the damages phase, held several conferences with Ms. Rau to come up to speed; or that more than one associated worked on Plaintiff's opposition to Defendants' motion for a new trial. Such efforts are far from *unbillable* duplication: as the Ninth Circuit has noted,

> When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research: Cases are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed with the research previously performed. All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time.

*Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir.2008).

### 4. *Presence of Associates at Trial and Hearings*
Defendants object to the fact that more than one lawyer billed for hours spent in trial and at hearings. Mr. Galipo was present at each hearing, and was routinely accompanied by one, or sometimes two, associates. Having more than one lawyer present at a hearing is standard practice, especially when limited to key events in a case-such as trial or a motion for judgment as a matter of law. *See Fleming v. Kemper Nat. Services, Inc.,* 373 F.Supp.2d 1000, 1009 (N.D.Cal.2005) ("The settlement conference had the potential for being the most significant court date in the case, however, and it was not unreasonable for Fleming to send two counsel

to attend it.").

### 5. *Mr. Schmidt's Travel*
*6 Finally, Defendants object to time billed by Mr. Schmidt for travel. Most of Mr. Schmidt's travel was undertaken at the very beginning of Plaintiff's case, when Mr. Schmidt was the only lawyer investigating Plaintiff's claim. For example, before Mr. Galipo took over day-to-day management of Plaintiff's case, Mr. Schmidt traveled from his office in Fresno to visit Plaintiff while the latter was imprisoned at California Men's Colony in San Luis Obispo. *See* Schmidt Decl. in Support of Pl.'s Reply, ¶ 9. This trip was a necessary part of the fact-finding process that precedes every case. Similarly, Mr. Schmidt traveled to depose Vincent Dispaltro, a key witness against Plaintiff, before Mr. Galipo took over the case. *Id.* ¶ 10. Since Mr. Galipo took over the case, Mr. Schmidt has kept his traveling to a minimum. A review of the records indicates that the travel time billed by Mr. Schmidt was reasonably spent in prosecution of this action. Moreover, district courts have routinely awarded fees for time spent traveling. *See Thalheimer v. City of San Diego,* 2012 U.S. Dist. LEXIS 59315, at * 12–13 (S.D.Cal. Apr. 26, 2012) ("However, when a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling.") (internal citations and quotation marks omitted); *Saldana–Neily v. Taco Bell of America, Inc.,* 2008 WL 793872, at *8 (N.D.Cal. Mar. 24, 2008) (finding it proper to award attorneys' fees for travel time based upon lost opportunity). Thus, the Court finds the travel time billed by Mr. Schmidt was reasonably spent in prosecuting this action.

### C. Lodestar Calculation
Thus, the Court applies the reasonable hourly rates to the hours reasonably spent on this matter as follows:

| ttorney | Rate | Hours | Total Fee |
|---|---|---|---|
| Dale Galipo | $675 | 830.4 | $560,520 |

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1296763 (C.D.Cal.)
(Cite as: 2013 WL 1296763 (C.D.Cal.))

| William Schmidt | $400 | 223 | $89,200 |
| Hilary Rau | $285 | 203.1 | $57,883.50 |
| Thomas Seabaugh | $350 | 198.4 | $69,440 |
| Richard Vasquez | $200 | 82.5 | $16,500 |
| John Fattahi | $350 | 30.2 | $10,570 |
| Melanie Partow | $375 | 7.7 | $2,887.5 |
| **TOTAL** | **N/A** | **1575.3** | **$807,001** |

The Court finds the proper lodestar amount to be $807,001.

Several of the *Kerr* factors militate in favor of finding this amount reasonable. As demonstrated above, the case required a considerable expenditure of time and labor by a small legal team. Plaintiff's road to success was littered with difficult factual and legal issues, including Defendants' motion for judgment as a matter of law on the grounds of qualified immunity and a host of hotly contested evidentiary issues. Moreover, as noted above, Plaintiff's counsel undertook substantial risk in taking on and litigating this action through a jury verdict.

Furthermore, the results obtained further militate in favor of finding the amount reasonable. After prevailing at the liability phase of the trial, Plaintiff's attorneys secured $5.725 million in compensatory damages. Finally, the $807,001 awarded here is similar to amounts awarded in other Section 1983 excessive force cases. *See, e.g. Cotton v. City of Eureka, Cal.,* 889 F.Supp.2d 1154, 1163 (N.D.Cal.2012) (awarding $727,904.00 in attorneys' fees in an excessive force case that resulted in a $4.575 million verdict in plaintiffs' favor); *P.C. v. City of Los Angeles, et al.,* No. 2:07–cv–3413–PLA (C.D.Cal. Sept. 14, 2012) (awarding $700,195.60 in attorneys' fees in an excessive force case that resulted in a $3.2 million verdict).

**III. LITIGATION COSTS**

*7 District courts have "discretion to award out of pocket expenses and costs" to plaintiffs who prevail on their Section 1983 claims. *Tutor–Saliba Corp. v. City of Hailey,* 452 F.3d 1055, 1058 n. 1 (9th Cir.2006). 28 U.S.C. § 1988 specifically provides that a court may,

"in its discretion," include "expert fees as part of the attorney's fee." [FN3] Plaintiff has requested $85,549 in litigation-related expenses, as follows: $44,500 for the work of his medical expert, Dr. H. Ronald Fisk; $11,297 for the work of his economist, Marianne Inouye; $27,703.66 for the work of his life care planner, Liz Holakiewicz; [FN4] and $2,048.32 in travel-related expenses incurred by Mr. Schmidt. Each expert submitted invoices documenting the fees requested for the services performed, *see* Galipo Decl. ¶¶ 22–23 and Exs. D–F attached thereto, and Mr. Schmidt submitted his mileage costs, see Schmidt Decl. ¶ 5 and Ex. B attached thereto. Defendants do not dispute the reasonableness of the requested fees, and upon review of the submitted materials, the Court finds the amount requested reasonable-expense-related costs and litigation.

> FN3. Defendants argue that recovery of expert fees is not allowed under the Supreme Court's decision in *West Virginia Univ. Hospitals, Inc. v. Casey,* 499 U.S. 83 (1991). However, as reflected by the current language of Section 1988, Congress amended the statute to allow recovery of such fees in direct response to the *West Virginia* decision. *See Landgraf v. USI Film Products,* 511 U.S. 244, 251, 114 S.Ct. 1483, 1490, 128 L.Ed.2d 229 (1994) (holding that the Civil Rights Act of 1991 "responds to *West Virginia Univ. Hospitals, Inc. v. Casey* by providing that an award of attorney's fees may include expert fees") (citation omitted).

> FN4. Dr. Fisk, Ms. Inouye, and Ms. Holakiewicz were each retained as experts during the damages phase of the trial.

**IV. CONCLUSION**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1296763 (C.D.Cal.)
(Cite as: 2013 WL 1296763 (C.D.Cal.))

    For the reasons put forward in this Order, the Court awards Plaintiff $807,001 in attorney's fees and $85,549 in litigation-related expenses, for a total fees and costs award of $892,550.

C.D.Cal.,2013.
Contreras v. City of Los Angeles
Not Reported in F.Supp.2d, 2013 WL 1296763 (C.D.Cal.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:21-cv-06003-DOC-KES  Document 249-1  Filed 06/20/22  Page 27 of 36  Page ID
Case 2:21-cv-07189-PSG-MRW  Document 75  Filed 05/17/22  Page 1 of 10  Page ID #:1355
#:3067  Link 67

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 21-7189 PSG (MRWx) | Date | May 17, 2022 |
| Title | Benjamin Schonbrun v. SNAP, Inc., et al. | | |

Present: The Honorable    Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**    **Order GRANTING IN SUBSTANTIAL PART SNAP's motion for attorneys' fees.**

Before the Court is a motion for attorneys' fees and costs filed by Defendant SNAP, Inc. ("SNAP"). *See generally* Dkt. # 67 ("*Mot.*"). Plaintiff Benjamin Schonbrun ("Plaintiff") opposed. *See generally* Dkt. # 72 ("*Opp.*"). SNAP replied. *See generally* Dkt. # 73 ("*Reply*"). The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving, opposing, and reply papers, the Court **GRANTS IN SUBSTANTIAL PART** SNAP's motion for attorneys' fees and costs.

## I.    Background

This case concerns a building fire in Venice, California. *See First Amended Complaint,* Dkt # 17 ("*FAC*"), ¶¶ 6, 16. In January 2021, a fire broke out in a homeless encampment near a building Plaintiff allegedly owned, which spread to the building and burned it to the ground. *Id.* ¶ 17. Plaintiff sued three insurance companies, two public officials, the City of Los Angeles, and SNAP. *See generally id.* He brought 11 causes of action ranging from a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claim to a breach of a written agreement claim. *See generally id.*

Several Defendants, including SNAP, moved to dismiss each of Plaintiff's claims. *See generally* Dkts. # 10, 12, 15. Plaintiff failed to oppose any of those motions, so the Court granted each motion to dismiss with leave to amend. *See generally* Dkt. # 16. Plaintiff filed his first amended complaint shortly thereafter but made few if any changes, saying that he did not believe the identified defects in the motions to dismiss were actually defects. *See* Dkt. # 49 at 6:1–6; Dkt. # 50 at 7:16–22.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 21-7189 PSG (MRWx) | Date | May 17, 2022 |
|---|---|---|---|
| Title | Benjamin Schonbrun v. SNAP, Inc., et al. | | |

Plaintiff also appended a five-year lease between SNAP and three LLCs to his first amended complaint. *See* Dkt. # 17, Ex. 1 (*"Lease"*), ¶ 1.1. Plaintiff alleged that he was the assignee of the lease, *FAC* ¶ 3 n.1, but then perplexingly said that, if this is not true, he "would" assign the rights to himself and argued that there was no legally significant distinction between Plaintiff and the LLCs he owned anyway, *see* Dkt. # 50 at 3:3–7, 3:4 n.1. Among other things, the lease permits a "prevailing party" to seek "all attorneys' fees reasonably incurred." *Lease* ¶ 31.

All seven Defendants moved to dismiss the claims against them in Plaintiff's first amended complaint. *See generally* Dkts. # 24, 28, 29, 30, 33. The Court granted each motion. *See generally* Dkt. # 59 (*"Dismissal Order"*). Relevant here, the Court found that Plaintiff again failed to cure his lack of standing to sue SNAP under the lease. *Id.* at 6–7. The Court also held that, in any event, each of Plaintiff's 10 claims against SNAP failed on the merits too. *Id.* at 7–15.

The Court denied Plaintiff leave to amend because (1) amendment was futile as to many of his claims; (2) Plaintiff already received an opportunity to amend and did not cure any identified deficiencies; and (3) there was some evidence of bad faith because Plaintiff did not endeavor to meet the pleading standard, brought many claims without first conducting a reasonable factual investigation, and repeatedly failed to oppose dispositive dismissal arguments in his briefing. *Id.* at 15–16.

Plaintiff then filed a motion for reconsideration and to alter or amend the judgment two weeks after the Court's dismissal order, *see generally* Dkt. # 66, which the Court denied in its entirety, *see generally* Dkt. # 74. SNAP now moves for its reasonable attorneys' fees as the prevailing party under the lease agreement. *See generally Mot.*

II.   Legal Standard

Under the "American Rule," each party to a lawsuit is generally responsible for its own attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Ordinarily, the prevailing party in a lawsuit does not collect fees absent contractual or statutory authorization. *See Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983). However, upon determining that a fee award is in order, the court must ensure that the requested fees are reasonable. *See Hensley*, 461 U.S. at 433–34. Reasonableness is generally determined using the "lodestar" method, which multiplies "the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Gracie v. Gracie*, 217 F.3d 1060,

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 21-7189 PSG (MRWx) | Date | May 17, 2022 |
|---|---|---|---|

| Title | Benjamin Schonbrun v. SNAP, Inc., et al. |
|---|---|

1070 (9th Cir. 2000) (internal citations omitted); *Hensley*, 461 U.S. at 433. The moving party has the burden to produce evidence that the rates and hours worked are reasonable. *See Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622–23 (9th Cir. 1983). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992).

### III.   Discussion

The Court addresses in turn (A) whether SNAP is entitled to recover attorneys' fees under the parties' lease, and (B) whether SNAP's requested fees are reasonable.

#### A.   SNAP's Entitlement to Attorneys' Fees Under the Lease

SNAP maintains that it is entitled to seek attorneys' fees under the parties' lease. *See Mot.* 11:22–12:15. The Court agrees.

Under Federal Rule of Civil Procedure 54, a motion for attorneys' fees must (1) "be filed no later than 14 days after the entry of judgment;" (2) state the amount sought; and (3) specify the statute, rule, or other ground entitling the movant to the award. Fed. R. Civ. P. 54(d)(2)(B). Here, SNAP moved for attorneys' fees exactly 14 days after the Court's final judgment dismissing Plaintiff's case. *See generally Dismissal Order; Mot.* SNAP also states the amount sought—$148,741.65. *Reply* 6:13–14. However, the parties dispute the third requirement—whether SNAP is entitled to seek attorneys' fees from Plaintiff under the lease.

To make that determination in a diversity case such as this, federal courts look to state law. *See Ford v. Baroff*, 105 F.3d 439, 442 (9th Cir. 1997). Under California Civil Code § 1717, the prevailing party is entitled to attorneys' fees "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded." Cal. Civ. Code § 1717(a). In other words, an attorneys' fee award is justified under § 1717 if (1) there is a prevailing party, (2) the action is "on a contract," and (3) the contract contains a provision that "specifically provides" that attorneys' fees "shall be awarded." *See id.* Here, the parties do not dispute that the action was "on a contract" or that the lease "specifically provides" for an award of attorneys' fees. Instead, solely at issue here is whether Plaintiff is a party to the lease and whether SNAP is the "prevailing party."

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 21-7189 PSG (MRWx) | Date | May 17, 2022 |
|---|---|---|---|
| Title | Benjamin Schonbrun v. SNAP, Inc., et al. | | |

First, Plaintiff claims he is not a party to the lease and therefore cannot be bound by its terms—i.e., here, the attorneys' fees provision. *Opp.* 4:9–20. This blatantly contradicts Plaintiff's representations to the Court throughout the case that he personally—rather than his LLCs—owned the building and was the "assignee of the lease." *See* Dkt. # 1, ¶ 3 n.1; *FAC* ¶ 3 n.1. A "deliberate, clear, and unequivocal" statement made in the pleadings is a binding judicial admission on behalf of the party who made it. *Breville USA, Inc. v. Hurom L.S. Co.*, No. CV 13-8324 DMG (AJWx), 2014 WL 12600145, at *5 (C.D. Cal. Apr. 28, 2014). Because Plaintiff deliberately, clearly, and unequivocally asserted in the first amended complaint that he was the "assignee of the lease," *FAC* ¶ 3 n.1, he is conclusively bound by this representation, *see Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings . . . unless amended, are considered judicial admissions conclusively binding on the party who made them."). As such, the attorneys' fee provision can be enforced against Plaintiff.

Second, Plaintiff says SNAP is not the prevailing party because the Court's dismissal order was not a final judgment and because Plaintiff's reconsideration motion is still pending. *Opp.* 3:5–4:8. Under California Civil Code § 1717(b)(2), there is a prevailing party once there is a "final disposition of the entire litigation." *Bank of Idaho v. Pine Ave. Assocs.*, 137 Cal. App. 3d 5, 16 (1982). The Court's dismissal order finally disposed of all claims against all Defendants in this case. *See Dismissal Order* at 17 ("This order closes the case."). And although Plaintiff's motion for reconsideration and to alter or amend the judgment was pending when SNAP filed its attorneys' fees motion, the Court has now decided that motion in SNAP's favor. *See* Dkt. # 74 at 6. As such, SNAP is the prevailing party here.

In short, Plaintiff is bound by his representation in the pleadings that he was the assignee of the lease, and SNAP is entitled to seek attorneys' fees under the lease as the prevailing party.

### B. Reasonableness of SNAP's Proposed Fee Award

SNAP claims that it is entitled to $148,741.65 in attorneys' fees. *Reply* 6:13–14. Plaintiff argues that SNAP's fees are unreasonable, excessive, and should be denied outright or reduced. *See Opp.* 4:21–10:27.

Federal courts determine the reasonableness of a fee award by calculating the lodestar figure. *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000); *see also PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (same under California law). The "lodestar figure" is determined by multiplying the number of hours reasonably spent on the litigation by a reasonable rate. *Fischer*, 214 F.3d at 1119 (citing *Hensley*, 461 U.S. at 433). SNAP's proposed lodestar

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 21-7189 PSG (MRWx) | Date | May 17, 2022 |
|---|---|---|---|
| Title | Benjamin Schonbrun v. SNAP, Inc., et al. | | |

figure is \$148,741.65. *Reply* 6:13–14. The Court has broken down SNAP's proposed lodestar figure in greater detail below:[1]

| Name | Title | Experience | Hours | Rate | Total Fee |
|---|---|---|---|---|---|
| Mr. Amnon Siegel (2021) | Partner | 18 years | 33.6 | \$675 | \$22,680.00 |
| Mr. Amnon Siegel (2022) | Partner | 18 years | 24.8 | \$695 | \$17,236.00 |
| Ms. Jessica Newman | Associate | 7 years | 3.3 | \$550 | \$1,815.00 |
| Mr. Adam Agatston (2021) | Associate | 6 years | 90.2 | \$550 | \$49,610.00 |
| Mr. Adam Agatston (2022) | Associate | 6 years | 16.4 | \$575 | \$9,430.00 |
| Mr. Murad Salim | Associate | 5 years | 8.2 | \$575 | \$4,715.00 |
| Ms. Kathryn Clark | Paralegal | n/a | 1 | \$295 | \$295.00 |
| Ms. Cindy Lumia | Paralegal | n/a | 2.7 | \$295 | \$796.50 |
| Ms. Carole Conklin | Paralegal | n/a | 11 | \$295 | \$3,245.00 |
| March 2022 fees | n/a | n/a | 45.5 | n/a | \$26,274.50 |
| Anticipated fees | n/a | n/a | n/a | n/a | \$12,460.00 |
| Costs | n/a | n/a | n/a | n/a | \$184.65 |
| **Totals:** | **n/a** | **n/a** | **236.7** | **n/a** | **\$148,741.65** |

Based on these figures, the Court addresses in turn (i) whether these rates are reasonable, (ii) whether these hours are reasonable, and (iii) what, if any, final adjustments need to be made.

### i. *Reasonable Rate*

The reasonable hourly rate is the rate prevailing in the community for similar work. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013) ("[T]he court must compute

---

[1] The Court prepared this table based on the actual billing records appended to SNAP's motion, *see generally* Dkt. # 67-8 ("*Billing Records*"), and two declarations by Mr. Amnon Siegel discussing hours worked in March and April 2022, *see generally* Dkt. # 67-1 ("*Siegel Decl.*"); Dkt. # 73-1 ("*Siegel Supp. Decl.*"). According to Mr. Siegel, Miller Bardoness, the law firm representing SNAP in this matter, charges much higher rates than the table reflects, but SNAP apparently receives a significant discount. *See Siegel Decl.* ¶ 41. The Court therefore incorporated into the table only the rates SNAP was actually charged.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 21-7189 PSG (MRWx) | Date | May 17, 2022 |
|---|---|---|---|

| Title | Benjamin Schonbrun v. SNAP, Inc., et al. |
|---|---|

the fee award using an hourly rate that is based on the prevailing market rates in the relevant community."); *Viveros v. Donahue*, CV 10-08593 MMM (Ex), 2013 WL 1224848, at *2 (C.D. Cal. Mar. 27, 2013) ("The court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services."). The relevant community is the community in which the court sits. *See Schwarz v. Sec. of Health & Hum. Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

Here, SNAP seeks the following hourly rates: $675 for Mr. Siegel in 2021, which increased to $695 in 2022; $550 for Ms. Newman; $550 for Mr. Agatston in 2021, which increased to $575 in 2022; $575 for Mr. Salim; and $295 for paralegals Ms. Clark, Ms. Lumia, and Ms. Conklin. *See generally Billing Records*; *Siegel Decl.*; *Siegel Supp. Decl.* These rates are supported by the declaration of Mr. Siegel, which details each attorney's experience. *See Siegel Decl.* ¶¶ 33–37. SNAP also cites various cases from this District and the billing rates of certain "AmLaw 100 firms" to support its requested rates. *See Mot.* 15:9–16:17. However, the Court prefers to rely on the Real Rate Report as "a much better reflection of true market rates than self-reported rates in all practice areas." *See Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*, No. CV 02-1089 PSG (VBKx), 2021 WL 4786889, at *3 (C.D. Cal. Aug. 24, 2021) (quoting *Hicks v. Toys 'R' Us-Del., Inc.*, No. CV 13-1302 DSF JCG, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014)); *Gilliam v. Levine*, No. CV 18-2580 PSG (MRWx), 2022 WL 401462, at *5 (C.D. Cal. Jan. 25, 2022).

The Real Rate Report classifies breach of contract litigation as "Commercial" litigation. *See 2021 Real Rate Report, The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* at 239. In Los Angeles, the median hourly rate for commercial litigation attorneys is $901 for partners and $753 for associates. *Id.* at 92. Accordingly, SNAP's requested maximum hourly rates of $695 for partners and $575 for associates fall well below the median rates in the community for comparable services. Additionally, the Real Rate Report suggests that the median hourly rate for paralegals in commercial litigation is $250. *Id.* at 45. However, it does not provide Los Angeles-specific rates, which are often markedly higher than nation-wide averages. As such, the Court finds SNAP's requested rate of $295 for paralegals to be reasonable.

Having considered SNAP's attorneys' experience and the prevailing rates in the community for comparable work, the Court approves as reasonable SNAP's requested hourly rates.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 21-7189 PSG (MRWx) | Date | May 17, 2022 |
|---|---|---|---|
| Title | Benjamin Schonbrun v. SNAP, Inc., et al. | | |

### ii.    Reasonable Hours

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)). "The district court . . . should exclude from this initial fee calculation hours that were not reasonably expended." *Hensley*, 461 U.S. at 434 (cleaned up). Hours not reasonably expended are those that are "excessive, redundant, or otherwise unnecessary." *Id.* A district court may reduce hours by either conducting an hour-by-hour analysis or by making an across-the-board percentage cut. *See $28,000.00 in U.S. Currency*, 802 F.3d at 1106.

Here, SNAP seeks attorneys' fees for approximately 236 hours of work. *See Billing Records*; *Siegel Decl.*; *Siegel Supp. Decl.* These hours include (1) pre-lawsuit correspondence with Plaintiff regarding the building fire and his potential claims; (2) preparing two motions to dismiss 10 causes of action; (3) opposing a sanctions motion that Plaintiff later withdrew; (4) opposing Plaintiff's motion for reconsideration; and (5) preparing the instant motion for attorneys' fees. *See Billing Records*; *Siegel Decl.*; *Siegel Supp. Decl.* Plaintiff challenges the reasonableness of the hours worked on numerous grounds.

First, Plaintiff contends that SNAP's pre-lawsuit hours are not compensable under the attorneys' fee provision of the lease. *Opp.* 6:23–7:8. Plaintiff reads the attorneys' fees provision to permit the prevailing party to collect reasonable attorneys' fees only *after* a "Party or Broker brings an action or proceeding involving the Premises." *Id.* 6:25–27 (quoting *Lease* ¶ 31). But the attorneys' fee provision does not actually say that. *See Lease* ¶ 31 ("The attorneys' fees award . . . shall be such as to fully reimburse all attorneys' fees reasonably incurred."). This language is broad enough to suggest that the hours spent in pre-suit discussions with Plaintiff's counsel were reasonable in the face of apparent "landlord[] threats and demands." *See Billing Records* at 93.

Second, Plaintiff says that SNAP's counsel unreasonably billed for over 16 hours to draft a letter responding to Plaintiff's initial demand letter and to draft a substantially identical meet and confer letter sent before filing SNAP's motion to dismiss. *Opp.* 7:11–27. Plaintiff vastly overstates the similarity and simplicity of these documents. SNAP's response to the initial demand letter accurately and thoroughly examines the parties' respective obligations under the lease. *See* Dkt. # 67-4. And the meet and confer letter is far more detailed and thoroughly addresses the merits, in SNAP's view, of all 10 causes of action Plaintiff brought against it. *See*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 21-7189 PSG (MRWx) | Date | May 17, 2022 |
|----------|------------------------|------|--------------|
| Title | Benjamin Schonbrun v. SNAP, Inc., et al. | | |

Dkt. # 67-5. The Court finds that these hours were reasonably expended, particularly because SNAP's letters provided Plaintiff with an accurate view of the merits of his case very early on in the litigation.

Third, Plaintiff argues that spending 55.2 hours preparing a "relatively straightforward" motion to dismiss is unreasonable. *Opp.* 8:3–24. Plaintiff appears to argue that Mr. Agatston, who primarily drafted the motion to dismiss, was inefficient and that "Plaintiff should not have to pay for time spent training Mr. Agatston." *See id.* 8:12–24. But SNAP's motion to dismiss was not "relatively straightforward"; it thoroughly and accurately discussed all 10 causes of action Plaintiff brought against SNAP, ranging from breach of written agreement, to civil RICO, to nuisance, to conspiracy, and the list goes on. However, the Court generally agrees that spending over 55 hours to prepare a single motion to dismiss is excessive, particularly given that SNAP already had a clear view of the arguments it would make given its previous work drafting letters to Plaintiff about the merits of his case. Accordingly, the Court will cut these hours by approximately 10%, reducing Mr. Agatston's 2021 hours by 4.5 and Mr. Siegel's 2021 hours by 1. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (permitting courts to perform a 10% "haircut" even without explanation).

Fourth, Plaintiff says billing over 20 hours to meet and confer about, prepare, and file SNAP's second motion to dismiss was unreasonable in part because Plaintiff made "few, if any, changes from the Original Complaint." *Opp.* 9:1–17. The Court has reviewed both motions to dismiss and generally agrees that the first and second motions to dismiss were very similar. However, that does not mean this was entirely a "cut and paste" job as Plaintiff claims. *See id.* 9:8. SNAP was still obliged to investigate and account for any changes in the first amended complaint and update its motion accordingly. And SNAP also had to contend with Plaintiff's opposition this time. Overall, the Court finds that the hours expended on SNAP's second motion to dismiss were not entirely unnecessary but were somewhat excessive. As such, the Court again cuts the hours worked by approximately 10%, reducing Mr. Agatston's 2022 hours by 1 and Mr. Siegel's 2022 hours by 1. *See Moreno*, 534 F.3d at 1112.

Finally, Plaintiff claims that SNAP's request for 45.5 hours in March 2022 and its request for $12,460 in "anticipated fees" are unsupported by sufficient evidence. *Opp.* 9:18–10:27. SNAP counters that Mr. Siegel's declarations alone are sufficient to document these hours because a party "can carry its burden of establishing its entitlement to attorney fees by submitting a declaration from counsel instead of billing records or invoices." *Reply* 14:14–19 (quoting *Lunada Biomedical v. Nunez*, 230 Cal. App. 4th 459, 487–88 (2014)). But the cases SNAP cites for support do not stand for the proposition that a declaration that does not detail

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

#### CIVIL MINUTES - GENERAL

| Case No. | CV 21-7189 PSG (MRWx) | | Date | May 17, 2022 |
|---|---|---|---|---|
| Title | Benjamin Schonbrun v. SNAP, Inc., et al. | | | |

actual hours worked is sufficient to carry SNAP's burden. *See Lunada Biomedical*, 230 Cal. App. 4th at 487–88 (citing *City of Colton v. Singletary*, 206 Cal. App. 4th 751, 785 (2012), which found a declaration sufficient that "was broken down by task" and thus permitted the court to see if there was duplicative work done); *Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 700 (2014) (permitting a declaration to stand in for billing records when the attorneys "provided declarations . . . broken down by hours expended in each category of services rendered").

SNAP's evidence falls short of this bar. Mr. Siegel's declaration vaguely notes that SNAP's counsel expended 45.5 hours in March 2022. *Siegel Decl.* ¶ 45. But he does not explain in any detail what was being done in March 2022, nor are the hours listed "broken down by task." *See City of Colton*, 206 Cal. App. 4th at 785. And even after filing its reply brief in May 2022—i.e., well after the SNAP's March 2022 bill would have been finalized—SNAP still did not provide its billing records or additional detail by way of declaration to support its March 2022 hours. SNAP did provide a detailed declaration breaking down its April 2022 hours by task, *see Siegel Supp. Decl.* ¶¶ 2–3, which begs the question: Why not do the same for March 2022? Accordingly, because the Court has no way of confirming the reasonableness of the hours worked during March 2022, the Court discounts those hours. *See Gilliam*, 2022 WL 401462, at *6 (discounting all requested hours that were unsupported by satisfactory evidence); *see also $28,00,00.00 in U.S. Currency*, 802 F.3d at 1107 (indicating that the moving party "has an initial burden of production" and must produce "satisfactory evidence" for the court to determine the reasonableness of a fee award).

For the same reasons, the Court also discounts the additional $12,460 SNAP seeks in "anticipated hours" for "finalizing this fees motion, reviewing Plaintiff's opposition to the same, and drafting its reply brief." *Siegel Decl.* ¶ 49. As of the filing of SNAP's reply brief, the *actual* hours spent on these "anticipated" tasks would have been clear and thus should have been fully reflected either in actual billing records or a detailed declaration. They were not, and the Court therefore discounts them for failure to present satisfactory evidence. *See Gilliam*, 2022 WL 401462, at *6; *$28,00,00.00 in U.S. Currency*, 802 F.3d at 1107.

   iii. *Final Adjustments*

SNAP's requested attorneys' fees are adjusted as follows: (1) Mr. Agatston's 2021 hours are reduced by 4.5 and Mr. Siegel's 2021 hours are reduced by 1; (2) Mr. Agatston's 2022 hours are reduced by 1 and Mr. Siegel's 2022 hours are reduced 1; (3) all March 2022 hours are

---

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 21-7189 PSG (MRWx) | Date | May 17, 2022 |
|---|---|---|---|
| Title | Benjamin Schonbrun v. SNAP, Inc., et al. | | |

discounted; and (4) all "anticipated" fees are discounted.  Accordingly, the adjusted lodestar is $105,587.15, as detailed in the table below:

| Name | Modified Hours | Rate | Modified Total Fee |
|---|---|---|---|
| Mr. Amnon Siegel (2021) | 32.6 | $675 | $22,005.00 |
| Mr. Amnon Siegel (2022) | 23.8 | $695 | $16,541.00 |
| Ms. Jessica Newman | 3.3 | $550 | $1,815.00 |
| Mr. Adam Agatston (2021) | 85.7 | $550 | $47,135.00 |
| Mr. Adam Agatston (2022) | 15.4 | $575 | $8,855.00 |
| Mr. Murad Salim | 8.2 | $575 | $4,715.00 |
| Ms. Kathryn Clark | 1 | $295 | $295.00 |
| Ms. Cindy Lumia | 2.7 | $295 | $796.50 |
| Ms. Carole Conklin | 11 | $295 | $3,245.00 |
| March 2022 fees | 0 | n/a | $0.00 |
| Anticipated fees | 0 | n/a | $0.00 |
| Costs | n/a | n/a | $184.65 |
| **Totals:** | **183.7** | **n/a** | **$105,587.15** |

IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** SNAP's motion for attorneys' fees and costs as adjusted above and awards SNAP **$105,587.15** in attorneys' fees and costs.

**IT IS SO ORDERED.**