1                                DECLARATION OF CAROL A. SOBEL

2       I, CAROL A. SOBEL, declare:

3          1.     I am an attorney admitted to practice before the Supreme Court of the

4  State of California and the Ninth Circuit Court of Appeals, among other federal

5  courts. I submit this declaration in support of the fees requested by counsel in this

6  matter. It is based on facts of which I have personal knowledge and, if called to

7  testify to those facts, I could and would do so competently.

8          2.     I graduated from law school and was admitted in 1978. Following 20

9  years with the ACLU Foundation of Southern California, I entered private practice

10 in April of 1997. My practice primarily involves complex civil rights litigation,

11 focusing on issues related to homelessness, First Amendment rights and police

12 practices. I have received many awards for my legal work over the years. These
   awards are set out in my resumé at Exhibit 1.

13         3.     For the six years prior to 1997, I was a Senior Staff Counsel in the legal

14 department of the ACLU Foundation of Southern California. In this position, I was

15 responsible for preparing many of the fee motions in cases where the ACLU

16 represented the prevailing party. Because the ACLU does not bill clients on an

17 hourly basis for its services, I was required to obtain information to establish

18 reasonable market rates for the ACLU lawyers. It was my practice to obtain current

19 billing rates for lawyers of comparable skill and experience at several firms

20 throughout the City. I did this annually, contacting partners who were familiar with

21 the ACLU lawyers in question so that they could make an informed judgment about

22 the comparable skill levels of the attorneys at their firms whose rates were used to

23 establish ACLU billing rates.

24         6.     Since leaving the ACLU, I have continued to survey firms each year to

25 obtain relevant comparisons for rates. I generally begin this process the first time in

26 each year I prepare a fee motion, or enter into settlement discussions regarding fees.

27 As part of my survey, I make it a point to obtain information concerning rates for

28 attorneys in both larger law firms engaged in complex litigation, as well as smaller

1

            **Sobel Declaration**

boutique civil rights law firms.  Based on the information I obtained over more than three decades regarding rates at each of these firms, I am of the opinion that there is a significant difference between fees sought and awarded to attorneys at smaller civil rights firms and those at larger firms that sometimes do pro bono civil rights work.

7.     To obtain information concerning market rates for attorneys in Southern California, I also review attorney fee applications and awards in cases other than my own.  Specifically, I review fee applications submitted by, and awards to, public interest attorneys and support staff practicing the range of civil rights law, including the ACLU, Disability Rights Legal Center ("DRLC"), Public Counsel, Disability Rights Advocates, Asian Americans Advancing Justice, the Western Center on Law and Poverty ("WCLP"), MALDEF and others in Los Angeles.  I also review fee motions filed by, and awards to, private civil rights and public interest firms and attorneys, including, among others, Kaye McLane Bednarski & Litt; Schonbrun Seplow Harris & Hoffman; Hadsell Stormer & Renick; The Cochran Firm and McNicholas & McNicholas, among other firms.  I do this to determine what is being sought and approved as market rates for lawyers at these firms.

8.     Because many of the cases brought by public interest groups are co-counseled by pro bono attorneys at commercial firms engaged in complex anti-trust and other business litigaton, I review those billing rates as well.  In addition, when I become aware of a case where statutory fees are sought, I regularly obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as LEXIS and Westlaw.  Declarations by attorneys at, and awards to, large firms engaged in complex litigation provide me with information regarding customary billing rates for these firms.  I estimate that I review around 100 or more fee motions, supporting declarations and fee awards annually.

9.     My declarations in support of fee applications have been cited repeatedly as evidence of reasonable market rates throughout California. For example, in *Nadarajah v. Holder,* 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of the rates fpr ACLU attorneys

2

**Sobel Declaration**

1  under the Equal Access to Justice Act ("EAJA").  In *Torrance Unified School District*
2  *v. Magee*, 2008 U.S. Dist. LEXIS 95074 (CD CA 2008), granting fees pursuant to the
3  federal IDEA statute, 20 U.S.C. §1415(i)(3)(c), the Court cited to my declaration as
4  persuasive evidence of rates.  In *Atkins v. Miller*, CV 01-01574 DDP (CD CA 2007),
5  this Court awarded fees to a 1975 graduate at $675 an hour, specifically citing to my
6  declaration and that of Barry Litt to support the rate.  *Id.* at pp. 8-9 and n.4.
7  Additional cases in which my declarations have been cited favorably include, among
8  others, *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (May 30, 2012);
9  *Orantes-Hernandez v. Holder*, 713 F.Supp.2d 29, 963-964 (C.D.Cal.2010); *Hiken
10  v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Vasquez v.
11  Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of
12  Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v.
13  County of Los Angeles, supra*; *Dugan v. County of Los Angeles*, cv-11-08145
14  CAS (C.D. Cal. March 3, 2014); *Flores v. City of Westminster*, SA-CV-11-0278
15  DOC (C.D. Cal. Oct. 23, 2014); *Carrillo v. Schneider Logistics*, Case: 12-55042
16  (9th Cir. 2014); and *Wagafe v. Trump*, Case 2:17-cv-00094-RAJ [Doc. 223]
17  (W.D. WA 02/27/19).  In *Jochimsen*, a unanimous court found me qualified to
    opine on reasonable market rates.

18      10.    In addition, I have litigated statutory fee issues at the appellate level
19  in several of my cases.  Most notably, I was lead counsel before the California
20  Supreme Court in *Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604
21  (2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal.4th 533
22  (2004), establishing the continued vitality of the "catalyst" fee doctrine in
23  California courts.  I was also lead counsel in *Jones v. City of Los Angeles*, 555
24  Fed.Appx. 659 (2014), establishing entitlement to fees as a "prevailing party"
25  based on the Ninth Circuit's necessary approval of a settlement that was
26  conditioned on vacatur of the panel decision.
27      11.    It is my understanding that Mr. Cook is requesting a rate of $825 an
28  hour in this case, and attorney Samantha Koerner is requesting $625 an hour.  In

3
**-33-**                          **Sobel Declaration**

1   my experience, both rates are at the very low end of the current reasonable rate

2   for attorneys of comparable skill and experience in the Central District of

3   California. My opinion is based on comparisons to rates approved for attorneys

4   of comparable skill, experience and reputation in the Los Angeles legal market

5   and any past fee awards which include time for these lawyers. I look to rates

6   awarded to the attorney in previous cases based on my understanding that such

7   awards are strong evidence of reasonable rates. *See Chaudhry v. City of Los*

8   *Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*,

9   802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.*, 523

10  F.3d 973, 976 (9th Cir. 2008).

11      12.    To support my opinion here, I attach fee awards and supporting

12  declarations in civil rights cases in the Los Angeles legal market. Each is a true

13  and correct copy of the document available in the Court's files, with the state

14  Superior Court's stamp or the federal ECF header. Several are now several years

15  old. These older exhibits illustrate the reasonableness of the rates but do not

16  reflect current rates. In *Hiken v. DOD*, the court noted that "market rates in effect

17  more than two years *before* the work was performed" are not current lodestar

18  rates. 802 F.3d at 1107 (9th Cir. 2016) (emphasis in original).

19      13.    In *Communities Actively Living Independent and Free v. City of Los*

20  *Angeles*, CASE NO. CV 09-0287 CBM (Rzx) (C.D. CA 2013), the Court

21  approved the rate of $800 an hour for Laurence Paradis, identified as a 1985 law

22  graduate. A true and correct copy of the Court's order, bearing the ECF filing

23  imprint, is attached at Exhibit 2. Significantly, the Court noted that the lodestar

24  was calculated using 2012 rates. Ex. 2, ¶3, lines 16-18. Mr. Cook's requested

25  rate is only $25 above Mr. Paradis' 2012 rate. In 2012, Mr. Paradis had 27 years

26  of experience, eight years less than Mr. Cook has now. I am very familiar with

27  the skills, experience and reputation of both Mr. Cook and Mr. Paradis and, in

28  my opinion, both are widely recognized as experts in their respectivie fields of

4

**Sobel Declaration**

1  police practices and disability rights.  In the same case, the Court approved the

2  2012 rate of $665 an hour for Shawna Parks, identified as a 1999 law graduate.

3  Ex. 2, ¶¶ 5, 8.  In 2012, Ms. Parks had 13 years of experience, about half the

4  amount Samantha Koerner has now. In my experience interacting with both Ms.

5  Parks and Ms. Koerner, they are relatively comparably skilled and experienced.

6      14.    In 2017, in *Garcia v. Los Angeles County Sheriff's Dept.*, CV 09-

7  08943 DMG (SHx), attorneys with the Disability Rights Legal Center filed a

8  motion for attorney fees as part of the approval of the class settlement.  The Court

9  approved the settlement but did not separately list the rates approved. [Doc, 452].

10  The individual rates are set out in the declaration of Anna Rivera of DRLC in

11  support of the fee motion, a true and correct copy of which is attached at Exhibit

12  3.  In *Garcia*, Paula Pearlman, a 1982 law graduate, was approved at the rate of

13  $875 an hour; Shawna Parks, a 1999 law graduate was approved at the rate of

14  $745 an hour; Maronel Barajas, a 2003 law graduate, was approved at the rate

15  of $675 an hour; and Matthew Strugar, a 2004 law graduate, was approved at

16  $660 an hour for 2017; and, Carly Munson, a 2006 law graduate, was billed at

17  $625 an hour. *Id.*, ¶ 65. Ms. Pearlman had the same years of experience in 2017

18  as Mr. Cook has now; Ms. Munson had 12 less years than Ms. Koerner has now.

19      15.    Attached at Exhibit 4 is a true and correct copy of the 2018

20  Declaration of Maronel Barajas in support of DRLC's application for attorney

21  fees in *Jewett v. Shasta County Sheriff's Department*, Case No. 2:13-cv-0882

22  MCE AC (PC) (E.D. Ca. 2018).  The case was filed in the Eastern District of

23  California; however, the attorneys applied market rates in the Central District,

24  where DRLC is based.  The district court approved the class settlement. [Doc.

25  161]. The parties resolved the fees through settlement, which was then approved

26  by order of the Court. [Doc. 170].   The 2018 rate in *Jewett* for Maronal Barajas,

27  a 2003 law graduate, was $715 an hour and the 2018 rate for Anna Rivera, a

28  2005 law graduate, was $690 an hour.  Ex. 5, p. 18.  Both 2018 rates are

Sobel Declaration

considerably above the $625 now requested for Samantha Koerner, who has a decade more experience than Ms. Barajas and nine years more than Ms. Rivera.

16. Attached at Exhibit 5 is a true and correct copy of the order of the District Court awarding attorney fees after appeal and remand in *Xue Lu v. United States of America*, 2016 U.S. Dist. LEXIS 194330, Case 2:01-cv-01758-CBM-EX, (C.D. CA 2016) [Doc. 366]. The fees were awarded based on enhanced EAJA rates. The 2016 rate approved for V. James DeSimone, a 1985 law graduate, is $825 an hour, the same rate now requested by Mr. Cook. Michael Seplow, a 1990 law graduate, was approved at the 2016 rate of $760 an hour, more than 20 percent above the $625 requested by Ms. Koerner and less than 10 percent below rate of $825 for Mr. Cook. Ms. Koerner has one year less experience than Mr. Seplow had in 2016 and Mr. Cook has nine years more.

17. Attached at Exhibit 6 is the order awarding fees on appeal in *Carrillo v. Schneider Logistics*, Case: 12-55042 (9th Cir. 04/21/2014). In *Carrillo*, the Circuit approved 2013 rates of $755.25 an hour for Theresa Traber and $688.75 an hour for Jonathan Weissglass. Ex. 6, p. 13. Ms. Traber is a 1984 law graduate, the same year as Mr. Cook. Ex. 6, p. 3. Jonathan Weissglass is a 1994 law graduate, the same year as Ms. Koerner. *Id.* Six years later, Mr. Cook seeks a rate barely 10 percent above the rate approved for Ms. Traber for 2013, and Ms. Koerner requests a rate almost 10 percent below the 2013 rate approved for Jonathan Weisglass.

18. The requested rates in this motion are also reasonable when compared to rates for far less experienced attorneys at commercial firms, Milbank Tweed Hadley & McCloy LLP served as pro bono counsel with the Disability Rights Legal Center in 2014 in *LAUSD v. Garcia*, Case: 10-55879 (9th Cir. 2014). In support of the motion for fees in that matter, Hannah Cannom, then an associate at Milbank Tweed, filed a declaration setting out the rates for the firm's attorneys. A true and correct copy of the Cannom declaration

**Sobel Declaration**

is attached at Exhibit 7.  Ms. Cannom attested that the 2014 rate for Daniel Perry, a 1999 law graduate, was $1,135 an hour.  At the time, Mr. Perry had only 15 years of experience, less than half of Mr. Cook's experience now.  Ex. 7, ¶ 7. In addition to Daniel Perry, fees were sought for Delilah Vinzon, then practicing for approximately 11 years, at $900 an hour.  *Id.*, ¶ 8.  Ms. Cannom also attested that her 2014 rate as an eighth-year associate was $800 an hour. *Id.*, ¶ 6.  She is a 2006 law graduate. *Id.* at UCLA law school. *Id.*, ¶ 2.

19.  The information from the exhibits I cite is summarized in the chart below, listing the exhibit number, the attorney, the year of the award or declaration, the years of experience at the time and the rate.

| Ex. | Attorney | Year | Experience | Rate |
|---|---|---|---|---|
| 2 | Laurence Paradis | 2012 | 27 | $800 |
| 2 | Shawna Parks | 2012 | 13 | $665 |
| 3 | Paula Pearlman | 2017 | 35 | $875 |
| 3 | Shawna Parks | 2017 | 18 | $745 |
| 3 | Maronel Barajas | 2017 | 14 | $675 |
| 3 | Matthew Strugar | 2017 | 13 | $660 |
| 3 | Carly Munson | 2017 | 11 | $625 |
| 4 | Maronel Barajas | 2018 | 15 | $715 |
| 4 | Anna Rivera | 2018 | 13 | $690 |
| 5 | V. James DeSimone | 2016 | 31 | $825 |
| 5 | Michael Seplow | 2016 | 26 | $760 |
| 6 | Theresa Traber | 2013 | 21 | $755.25 |
| 6 | Jonathan Weisglass | 2013 | 19 | $688.75 |
| 7 | Daniel Perry | 2014 | 15 | $1,035 |
| 7 | Delilah Vinson | 2014 | 14 | $900 |
| 7 | Hannah Cannom | 2014 | 8 | $800 |

**Sobel Declaration**

20.    Based on the foregoing, I am of the opinion that the rate sought by this motion are well within, if not below, the range of rates approved for attorneys of comparable experience in the Los Angeles legal market.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of March, 2019 at Santa Monica, California.

CAROL A. SOBEL

**Sobel Declaration**

# CAROL A. SOBEL

725 Arizona Avenue• Suite 300 • Santa Monica, CA 90401 •
Tel. 310 393-3055 • Email carolsobellaw@gmail.com

## Employment:

| | |
|---|---|
| **LAW OFFICE OF CAROL A. SOBEL** <br> Solo civil rights law firm. | APRIL, 1997 TO PRESENT |

**SENIOR STAFF COUNSEL**                                      1990 TO APRIL, 1997
*ACLU Foundation of Southern California*

Responsible for conducting civil rights and civil liberties litigation in state and federal courts in California;
supervise litigation by ACLU volunteer counsel and other ACLU legal staff.

**STAFF ATTORNEY**                                            1985 TO 1990
*ACLU Foundation of Southern California*

Civil liberties litigation, primarily in the areas of Establishment Clause and Free Exercise violations, as well as other
First Amendment rights.

**ASSOCIATE DIRECTOR**                                        1979 TO 1985
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Under the direction of the Executive Director, responsible for administration of two non-profit organizations,
including working with Boards of Directors on development of policy on civil liberties issues. Engaged in litigation
and assisted Legal Director in coordination and supervision of pro bono attorneys.

**DEVELOPMENT DIRECTOR**                                      1977 TO 1979
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Responsible for conducting a variety of fundraising efforts to meet a million-dollar plus annual budget for a
501(c)(3) and a 501(c)(4).

## Admitted to Practice:

| | |
|---|---|
| California Supreme Court | No vember, 1978 |
| United States Supreme Court | Sep tember, 1991 |
| Ninth Circuit Court of Appeals | A ugust, 1986 |
| U.S.D.C. Central District of California | February, 1986 |
| U.S.D.C. Eastern District of California | June, 1990 |

## Litigation Experience:

### Federal courts:   (Partial listing of published opinions and significant cases)

*CPR for SKID ROW,*
779 F.3d 1098 (9th Cir. 2015)
Partial reversal of summary judgment in favor of the Defendant and holding that California Penal Code §403
could not lawfully be applied to criminalize the expressive activity of the Plaintiffs for protesting on Skid
Row.
(Lead counsel and argued on appeal)

**Sobel Resume - EXHIBIT 1**

*Desertrain v. City of Los Angeles*
754 F.3d 1114 (9th Cir. 2014)
Reversal of summary judgment in favor of the Defendants and holding that Los Angeles Municipal Code
§85.02, prohibiting parking a vehicle on public streets or parking lots any time of day or night if a person
"lives" in the vehicle, is unconstitutionally vague.
(Lead counsel and argued on appeal)

*Lavan v. City of Los Angeles*
693 F.3d 1022 (9th Cir. 2012), *affirming* grant of preliminary injunction 797 F.Supp.2d 1005 (C.D. Cal.
2011)
Preliminary injunction barring City from confiscating and immediately destroying the property of homeless
individuals on Los Angeles' Skid Row.
(Lead Counsel)

*Long Beach Area Peace Network v. City of Long Beach*
522 F.3d 1010 (9th Cir. 2008), as amended July 24, 2009
Upholding and reversing in part on appeal a decision of the district court granting Plaintiffs' request for a
preliminary injunction to enjoin a municipal parade ordinance that included vague permit standards setting, *inter
alia*, advance-notice requirements  police charges based on the past unlawful conduct of third parties without
adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.
(Lead counsel)

*Fitzgerald v. City of Los Angeles*
485 F.Supp.2d 1137 (CD CA 2008)
Extending injunction against police sweeps of homeless persons on Los Angeles' Skid Row on the grounds of
searching for parole and probation violations.  See below for discussion of permanent injunction in 2003.
(Co-Counsel)

*Multi-Ethnic Immigrant Worker Organizing Network (MIWON) v. City of Los Angeles*
246 F.R.D. 621 (C.D. Cal. 2007)
Order granting class certification in challenge to police assault on a lawful assembly of immigrant rights
supporters by the Los Angeles Police Department on May Day, 2007.
(Class Co-Counsel)

*Edward Jones, et al., v. City of Los Angeles,*
444 F.3d 1118 (9th Cir. 2006), vacated pursuant to settlement 505 F.3d 1006 (2007)
Challenge to City of Los Angeles Municipal Code §41.18(d), prohibiting sitting, lying or sleeping on any street
or sidewalk anywhere in the City at any time of day or night.  Plaintiffs, all of whom are homeless persons,
brought an 8th Amendment as-applied challenge to their arrests and citations for violating the ordinance when
their was no available adequate shelter.
(Co-counsel)

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*
316 F.3d 1059 (9thCir. 2003)
Challenge by City of Los Angeles to interim fee award granting plaintiffs' fees as "catalysts" under state civil
rights fee shifting statutes. Following oral argument, the Ninth Circuit certified issue of continued availability
of "catalyst" fees under California law after adverse decision by the United States Supreme Court rejecting
catalyst fee doctrine under federal law absent express legislative authorization.  Certified for hearing before the
California Supreme Court and ultimately upheld the catalyst fee doctrine under California law.
(Co-counsel; argued in Ninth Circuit)

*Fitzgerald v. City of Los Angeles*
2003 U.S. Dist. LEXIS 27382 (CD CA 2003)
Permanent injunction enjoining Fourth Amendment violations by the Los Angeles Police Department (LAPD).
The injunction prevents the LAPD  from engaging in stops of homeless persons for parole and probation sweeps
on Skid Row without reasonable suspicion to believe that specific individuals are on parole or probation and
subject to a search condition, or that the individual has engaged in, or is about to commit a crime.
(Lead counsel)

*Khademi v. South Orange County Community College District*
194 F.Supp.2d 1011 (C.D. CA 2002)
First Amendment facial challenge invalidating college policy  regulating time, place and manner of student
speech on campus.
(Lead counsel)

*Mardi Gras of San Luis Obispo v. City of San Luis Obispo*
189 F. Supp.2d 1018 (C.D. Cal. 2002)
Preliminary injunction to enjoin a municipal parade ordinance that required lengthy advance-notice requirement
and permitted high insurance and police charges based on the past unlawful conduct of third parties without
adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.

**Sobel Resume - EXHIBIT 1**
Page 2

*Bauer v. Sampson*
261 F.3d 775 (9th Cir. 2001)
First Amendment challenge to disciplinary action against college professor for publication of an alternative newsletter criticizing elected and appointed public officials and disclosing wrongdoing by college officials and personnel. The college sought to discipline the professor for violating the district's policies on discrimination and work-place violence. The polices were declared unconstitutional as applied to the professor's speech.

*H.C. v. Koppel*
203 F.3d 610 (9th Cir. 2000)
Dismissal of federal civil rights action filed in federal court against state court judge and appointed counsel for minor in family law matter. Circuit held that Younger Abstention applied and non-custodial parent had adequate state court remedy.

*Justin v. City of Los Angeles*
2000 U.S. Dist. LEXIS (CD Cal. 2000)
Class action to enjoin police sweeps of homeless population on Los Angeles' Skid Row. Permanent injunction stipulated to in settlement following certification of the injunctive relief class.
(Lead counsel)

*Los Angeles Alliance for Survival, et al. v. City of Los Angeles*
987 F. Supp. 819 (1997); 157 F.3d 1162 (9th Cir. 1998); on certification to the California Supreme Court, 22 Cal.4th 352 (2000); 224 F.3d 1076 (9th Cir. 2000)
Injunction issued in challenge to municipal ordinance barring so-called "aggressive solicitation" in broad areas of traditional public fora. Preliminary injunction entered by district court based on California Constitution. On appeal, the Ninth Circuit certified the California Constitution question to the California Supreme Court. Following decision by the California Supreme Court, the Ninth Circuit upheld the original injunction.
(Co-counsel)

*Service Employees International Union 660 v. City of Los Angeles*
114 F. Supp.2d 966 (C.D. Cal. 2000)
Challenge to the "no-protest zone" at the Democratic National Convention in Los Angeles in 2000, as well as a preliminary injunction to enjoin the City of Los Angeles parade ordinance.
(Co-counsel)

*United States v. Wunsch*
54 F.3d 579 (9th Cir. 1995);84 F.3d 1110 (9th Cir. 1996) (reargument)
First Amendment challenge to discipline of male attorney for "gender bias" in sending note to female Asst. U.S. Attorney after she successfully moved to disqualify him as defense counsel in a criminal case. Ninth Circuit invalidated the penalty and declared unconstitutional California's "offensive personality" regulation on attorneys' professional conduct. (Argued and briefed on appeal).

*American Jewish Congress v. City of Beverly Hills*
65 F.3d 1539 (9th Cir. 1995);90 F.3d 379 (9th Cir. 1996) (en banc)
First Amendment challenge to display of a religious symbol on public property and to permit scheme for expressive activities in public fora in the City of Beverly Hills. The en banc panel held the permit scheme unconstitutional and found that a preference had occurred for the display of a particular religious symbol. The en banc decision was unanimous. (Argued and briefed on appeal)

*Baca v. Moreno Valley Unified School District*
936 F. Supp. 719 (C.D. Cal. 1996)
First Amendment challenge to school board regulations preventing speakers from making disparaging remarks about public employees during public board meetings.

*Wallin v. City of Los Angeles*,
1194 U.S. App. LEXIS 2343 (9th Cir. 2004)

Circuit dismissed appeal of defendant City and law enforcement officers from denial of qualified immunity. Appellee, a female officer with the Los Angeles Police Department, alleged that appellants violated her right to equal protection, due process and right to petition the government because they violated LAPD confidentiality regulations and delayed the investigation into her allegations of co-worker rape.

(Lead counsel)

*National Abortion Federation v. Operation Rescue*
8 F.3d 680 (9th Cir. 1993)
Class-action state-wide injunction against blockades of women's health care clinics by anti-abortion activists. First case decided under the "frustrate and hinder" clause of 42 U.S.C. § 1985(3), the 1871 Ku Klux Klan Act. Appeals court held cause of action under "frustrate and hinder" clause was properly plead and reversed 12(b)(6) ruling on that claim.

(Co-lead counsel throughout; argued on appeal)

**Sobel Resume - EXHIBIT 1**
Page 3

*Hewitt v. Joyner*

940 F.2d 1561 (9th Cir. 1991)

Establishment Clause challenge to Christian theme park, Desert Christ Park, owned and operated by San Bernardino County. Ninth Circuit held County ownership and operation of the park violated the Establishment Clause.

(Lead counsel throughout litigation; argued on appeal).

*Standing Deer v. Carlson*

831 F.2d 1525 (9th Cir. 1986)

First Amendment challenge for Native Americans at Lompoc Federal Penitentiary to regulation barring religious headbands in the dining facilities for purported health reasons.

(Argued and briefed on appeal)

*Burbridge v. Sampson*

74 F.Supp.2d 940 (C.D. Ca. 1999)

First Amendment challenge to community college policy regulating student speech in public fora on campus. Court issued a preliminary injunction, declaring the college's speech regulations unconstitutional.

*Rubin v. City of Santa Monica*

823 F.Supp. 709 (C.D. Ca. 1993)

First Amendment challenge to city permit scheme limiting access to public parks for protected expressive activities. Court issued a preliminary injunction and declared the permit scheme unconstitutionally on vagueness grounds and procedural due process grounds. (Lead counsel)

## State Court

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*

34 Cal.4th 604 (2002)

California continues to recognize "catalyst" fee awards to prevailing parties under the private attorney-general statute (Cal. Code of Civ. Proc. §1021.5) and Fair Employment and Housing Act (FEHA) despite change in federal civil rights fee-shifting law. Under California law, there is no requirement of a judicial determination establishing a change in the legal obligations of the parties.

(Co-counsel and argued at California Supreme Court)

*Los Angeles Alliance for Survival v. City of Los Angeles*

22 Cal.4th 352 (2000)

Ordinance restricting certain activity as "aggressive solicitation" was not content-based under California Constitution

(co-counsel)

*Williams v. Garcetti*

5 Cal.4th 561 (1993), *sub nom Williams v. Reiner*, 13 Cal.App.4th 392 (1991)

Challenge on due process grounds to portion of STEPP law which imposed a criminal penalty on parents of minor children engaged in or at risk of delinquent conduct.

(Argued and brief on appeal to California Supreme Court)

*Sands v. Morongo Unified School District*

53 Cal.3d 863 , *cert denied*, 112 U.S. 3026 (1991)

225 Cal.App.3d 1385 (1989)

Establishment Clause challenge invalidating prayers at public high-school graduations.

(Argued and briefed as lead counsel throughout litigation)

**Sobel Resume - EXHIBIT 1**

*Walker v. Superior Court of Sacramento*

47 Cal.3d 112 (1988)

Establishment Clause/Free Exercise/Due Process challenge to criminal prosecution of Christian Science parents for death resulting from use of prayer instead of traditional medicine in treatment of ill child. (Wrote amicus brief on due process issues).

*Irvine Valley College Academic Senate, et al. v. South Orange County Community College District*

129 Cal.App.4th 1482 (2005)

Statutory construction of plain language of Education Code §87360, bolstered by legislative intent, requires actual joint agreement and mutual development of revisions to faculty hiring policies.

(co-counsel, drafted final briefs on appeal)

*Fashion 21, et al. v. Coalition for Humane Immigrant Rights (CHIRLA), et al.*

111 Cal.App.4th 1128 (2004)

Special motion to strike defamation complaint by retainer against garment worker advocates must be granted as the plaintiff retailer could not establish a probability of prevailing on the merits of their claims. Garment worker advocates properly relied on draft labor commission regulations suggesting retailer could be liable for sweatshop conditions of manufacturing of its retail goods.

(lead counsel at all stages)

*Gonzalez v. Superior Court*

33 Cal.App.4th 1539 (1995)

Challenge to discovery order in sexual harassment case requiring plaintiff to disclose name of confidential informant who provided her with photographic evidence of harassment. "After-acquired evidence" rule applied to require disclosure.

(Lead counsel in trial court and appeal)

*Lantz v. Superior Court of Kern County*

28 Cal.App.4th 1839 (1994)

Privacy rights challenge to interpretation of Consumer Personnel Records Statute (CCP § 1985(3), requiring strict adherence to statutory procedures and limiting exemption of local government agencies from adhering to statutory requirements.

(Lead counsel throughout litigation)

*Rudnick v. McMillan*

25 Cal.App.4th 1183 (1994)

Defamation verdict involving public figure plaintiff and local environmentalist author of letter to editor overturned on basis that letter was protected opinion and public figure subject to constitutional malice proof burden. Wrote amicus brief which formed basis of appellate ruling.

*Westside Sane/Freeze v. Hahn*

224 Cal.App.3d 546 (1990)

Challenge to restrictions on First Amendment petition activities in shopping center.

(Co-counsel, co-wrote appeal)

*City of Glendale v. Robert George*

208 Cal.App.3d 1394 (1989)

Reversal of trial court order imposing prior restraints on speech of "Presidential Santa" on the basis that he constituted a public nuisance to his neighbors in a residential area.

(Argued and briefed on appeal)

*McCarthy v. Fletcher*

207 Cal.App.3d 130 (1989)

Challenge to removal of textbooks from school reading list based on community-based religious objections. Court of Appeal reversed summary judgment decision, holding that there was sufficient evidence of constitutionally impermissible factors in evaluation of appropriateness of class-room reading materials.

(Argued and brief on appeal)

Sobel Resume - EXHIBIT 1
Page 5

*Fiske v. Gillespie*
200 Cal.App.3d 130 (1988)
Challenge to sex-based actuarial presumptions in insurance industry rate for particular types of life insurance
and annuity benefits.
(Co-Counsel, Argued on appeal)

## Publications:
## (Partial listing)s

*Catalyst Fees After Buckhannon*
Civil Rights Litigation and Attorney Fees Annual Handbook
(January 2006)

*Free Speech and Harassment: An Overview*
*in the Public Employee Sector*
CPER: CALIFORNIA PUBLIC EMPLOYEE RELATIONS
Institute of Industrial Relations - UC Berkeley
June 1999  No. 136

*Defeating Employer Defenses to Supervisor Liability*
*After* Ellerth *and* Faragher
ADVOCATE, October 1998

*Student Expression Under California Law*
UCLA Journal of Education
Volume 3, pp. 127-137 (1989)

*Should Attorneys Be Disciplined For Gender Bias*
Point/Counterpoint ABA Journal   August, 1995

*Fight Illegal Police Practices in State Court*
Los Angeles Daily Journal
March 6, 1992

*Judicial Oversight Limited by Supreme Court*
Los Angeles Daily Journal
May 6, 1991

*Jury Nullification is Conscience of Community*
Los Angeles Daily Journal
August 31, 1990

*A Basic Right Merits Shield From The Mob*
Los Angeles Times
August 11, 1991 p.M5

*Prop 115 revisited: Police charged with crimes
deserve fair trials too*
Los Angeles Daily News
May 7, 1991

*Prayer Doesn't Belong at Graduation*
USA Today
May 15, 1991 p. A10

*Killea Tactic Can Only Hurt the Church in the Long Run*
Los Angeles Times (San Diego)
November 20, 1989 p.B7

*The Fifth is a Shield for All*
Los Angeles Times
August 6, 1988  II8
(authored for Exec. Dir. ACLU)

*Which Way Will Rehnquist Court Turn?*
Los Angeles Daily News
June 18, 1986 p.21

*Constitution Exacts Cost for Religious Freedom*
Los Angeles Daily News
June 8, 1986 FOCUS  p.3

## Education:

| | |
|---|---|
| Peoples College of Law | J.D.  May, 1978 |
| Douglass College.For Women, Rutgers University | B.A.  June, 1968 |

## Professional and Community Activities:

| | |
|---|---|
| Adjunct Professor - Loyola Law School<br>Civil Rights Advocacy Practicum | 2007-present |
| Blue Ribbon Panel on LAPD Rampart Inquiry, Member | 2004-2006 |
| Ninth Circuit Gender Bias Task Force<br>Convenor, Advisory Committee on Employment Law | 1992-1993 |
| Ninth Circuit Conference on "Ethnicity, Race, and Religion in the Ninth Circuit"<br>Member, Working Subcommittee | 1993 |
| Los Angeles Public Interest Law Journal<br>Advisory Board | 2007-present |

**Sobel Resume - EXHIBIT 1**
Page 7

| | |
|---|---|
| Los Angeles Center for Law and Community Action<br>Member, Board of Directors | 2015-present |
| National Police Accountability Project<br>Member, Advisory Board and Board of Directors | 2006-present |
| National Lawyers Guild, Los Angeles - President | 2001-2008 |
| National Lawyers Guild - National Executive Vice President | 2009-2011 |
| National Lawyers Guild Far West Regional Vice-President | 2003-2005 |
| National Lawyers Guild, National Executive Committee | 2003-2012 |
| NLG National Mass Defense Committee, Co-chair | 2003-2012 |
| Women Lawyers Association of Los Angeles<br>Member, ProChoice Committee | 1985-2002 |
| The California Anti-SLAPP Project<br>Member, Board of Directors | 1995-2010 |

## Awards:
## (Partial listing)

| | |
|---|---|
| PEN Freedom to Write Award | 1991 |
| American Jewish Congress Tzedek Award | 1992 |
| Planned Parenthood Los Angeles, Distinguished Service Award | 1990 |
| Freethought Heroine Award | 1992 |
| National Lawyers Guild - Los Angeles | 1999 |
| ACLU of Southern California Pro Bono Attorney Award | 2001 |
| Asian Pacific American Legal Center Pro Bono Award | 2003 |
| California Lawyer: Super Lawyer -Civil Rights/Constitutional Law | 2004-2014 |
| ACLU of Southern California Freedom of Expression Award | 2007 |
| Daily Journal Top 100 Most Influential Lawyers in California | 2007 |

Sobel Resume - EXHIBIT 1
Page 8

| | |
|---|---|
| National Lawyers Guild - Ernie Goodman Award | 2007 |
| Angel Award - California Lawyer Magazine Award for pro bono work | 2007 |
| CLAY Award (California Lawyer of the Year - civil rights) - California Lawyer Magazine | 2008 |
| Top 75 Women Litigators in California - Daily Journal | 2008, 2013 |
| California Super Lawyers - Top 50 Women Lawyers in Southern California | 2014 |
| National Lawyers Guild, Los Angeles Law for the People Award | 2014 |
| ACLU Lifetime Achievement Award | 2017 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

COMMUNITIES ACTIVELY
LIVING INDEPENDENT AND
FREE, a nonprofit corporation, and
AUDREY HARTHORN, an
individual, on behalf
of themselves and ALL OTHERS
SIMILARLY SITUATED

          Plaintiffs,

    vs.

CITY OF LOS ANGELES, a
public entity, and COUNTY OF
LOS ANGELES, a public entity,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 09-0287 CBM (RZx)

CLASS ACTION

ORDER GRANTING PLAINTIFFS'
APPLICATION FOR REASONABLE
ATTORNEYS' FEES AND COSTS

    Before the court is Plaintiffs' Application for Reasonable Attorneys' Fees
and Costs. [Docket No. 234.] Plaintiffs have applied to the Court for an order
approving attorneys' fees and reimbursement of litigation costs to Class Counsel
in the amount of $1,225,000, and up to $75,000 in attorneys' fees and costs for

1

1    monitoring the Settlement Agreement ("Agreement"). Defendant County of Los

2    Angeles does not oppose the motion, and these are the amounts contained in the

3    proposed class settlement agreement between the Plaintiffs and the County.

4    Having read the papers submitted and carefully considered the arguments and

5    relevant legal authority, and good cause appearing, the Court GRANTS Plaintiffs'

6    Motion for Reasonable Attorneys' Fees and Costs and finds and rules as follows:

7              NOW, THEREFORE, IT IS HEREBY ORDERED:

8         1.    The Court finds that Plaintiffs have submitted sufficient evidence

9    supporting their claim for reasonable attorneys' fees and costs, and hereby

10   approves the settlement of attorneys' fees and costs in the amount of $1,225,000

11   for work performed on this matter, as stated in Section VII of the Agreement. The

12   Court also approves the availability of fees and costs for monitoring the

13   Agreement after Final Approval, in an amount up to $75,000, as stated in Section

14   VI.G of the Agreement.

15        2.    The Court finds that Plaintiffs have provided sufficient evidence,

16   including time records detailing the tasks performed on this matter and

17   declarations from practitioners in the field, supporting the reasonableness of their

18   2012 requested hourly rates. The Court finds that the requested hourly rates

19   correspond to the prevailing market rate in the relevant community, considering

20   the experience, skill, and reputation of the attorneys in question.

21        3.    Class counsel stated that no other litigation in the country has sought

22   to determine the nature and extent of a municipality's obligation to include

23   persons with disabilities in its emergency preparedness and planning efforts.

24   Therefore, counsel had to conduct considerable research, familiarize themselves

25   with the fact intensive literature on the subject of emergency planning, and

26   explore untested legal theories. The active litigation included extensive,

27   voluminous discovery, numerous depositions, and thousands of pages of

28

1    documents.  The negotiations were thorough, involving many teleconferences, in-

2    person meetings, and conferences and mediation sessions before two judges.

3    Additionally, after a joint request to stay the litigation, the Court approved a

4    process where Plaintiffs and the Defendant County would coordinate to draft a

5    "Persons with Disabilities and Access and Functional Needs Annex," ("Annex")

6    for which the experts conferred and resolved many issues, and any disputes were

7    referred to counsel.  Resolving the issues involved many settlement conferences

8    on the phone and in person, and multiple proposals and drafts by both parties.

9    After the Annex was sent out for public comment in late 2011, the U.S.

10   Department of Justice detailed its concerns, after which a second draft was

11   developed and Defendant County of Los Angeles developed a work plan.

12   Negotiations continued for five months regarding the scope of the Annex and

13   workplan.  Parties then attended two mediation sessions in February and July 2012

14   and were able to resolve all outstanding substantive issues.  After the July

15   mediation session, parties continued to work together to finalize the Agreement

16   and other matters, including attorneys' fees and costs.  The proposed settlement

17   was approved by the Los Angeles County Board of Supervisors on October 15,

18   2012.

19       4.      The Court finds that Class Counsel was efficient in allocating work.

20   Counsel states that only four attorneys performed the majority of the work

21   required, that discrete tasks were given to other attorneys as needed, and that a

22   small group of attorneys litigated the entire case.  Counsel also states that

23   Attorneys Wolinsky, Smith, and Gilbride from Disability Rights Advocates

24   ("DRA"), and Attorney Parks from Disability Rights Legal Center ("DRLC"), did

25   a majority of the work.

26       5.      In support of the hourly rates quoted by lead attorneys in this case,

27   Attorney Wolinsky is a graduate of Yale Law School in 1961 and has been

28

1   practicing law and trying cases for over 50 years.  He has been the lead and trial

2   attorney in well over 150 class action and high-impact cases, and has tried and

3   argued cases before the California and New York Federal Courts, the California

4   and Hawaii Supreme Courts, and many other appellate courts.  He is the Director

5   of Litigation at DRA and is considered one of the foremost experts nationally on

6   civil rights and disability law, and is requesting an hourly rate of $860.  Attorney

7   Parks is a 1999 graduate of University of California at Berkeley, Boalt Hall, and is

8   nationally recognized as a leading disability rights attorney and has been co-

9   director of litigation at DRA since April 2012.  From 2005 to March 2012, she

10  was at the DRLC, where she was a litigation attorney, and later the legal director

11  from 2009 to 2012, and is requesting an hourly rate of $665.  Attorney Smith is

12  managing attorney at DRA, and graduated from U.C. Berkeley, Boalt Hall Law

13  School in 2005.  She received the 2013 California Lawyer Magazine Attorney of

14  the Year Award in the area of Disability Law for her work on this litigation and

15  the 2010 California Lawyer Attorney of the Year Award in the area of Disability

16  Law for her work on the above referenced Caltrans case, and is requesting an

17  hourly rate of $555.  Attorney Gilbride is a 2007 graduate of Georgetown Law

18  School and worked on this case as part of DRA.  Attorney Gilbride served as a

19  law clerk to Judge Ronald Gould on the U.S. Court of Appeals for the Ninth

20  Circuit in Seattle.  She conducted much of the written discovery and took and

21  defended several depositions.  She was also responsible for all expert discovery,

22  and is knowledgeable in the requirements for emergency preparedness under the

23  law, and is requesting an hourly rate of $430.

24       6.     In support of the hourly rates quoted by other attorneys in this case,

25  Attorney Uzeta is a 1992 graduate of University of California at Davis, King Hall

26  School of Law, with a Certification in Public Interest Law.  She has practiced

27  exclusively in the area of civil rights law, in particular disability rights, since

28

1  1993.  From February 1995 to August 2008, she worked as an attorney at

2  Disability Rights California ("DRC"), the largest disability rights organization in

3  the nation, where she represented individuals and classes with disabilities in

4  federal and state litigation.  From August 2008 to December 2010, she was

5  employed as the Litigation Director of the Southern California Housing Rights

6  Center, a Los Angeles based nonprofit whose mission is to combat housing

7  discrimination, where she engaged mostly in disability discrimination cases, and is

8  requesting an hourly rate of $700.  Attorney Paradis is the Executive Director and

9  Co-Director of Litigation at DRA.  He graduated from Harvard Law School in

10  1985 and has extensive experience with disability rights litigation, and has

11  received several awards for his work on precedent setting disability rights cases,

12  including the California Lawyer Magazine Attorney of the Year Award in 2003

13  and 2011 and the Trial Lawyer of the Year Award from the San Francisco Trial

14  Lawyers Association.  Mr. Paradis assisted with advising the litigation team on

15  settlement strategy and potential experts, and is requesting an hourly rate of $800.

16  Attorney Elsberry is a 1987 graduate of University of California, Hastings College

17  of Law. He was a Managing Attorney at DRA from 2009 to 2012, and is currently

18  a Senior Staff Attorney at DRLC. He assisted with certain tasks relating to class

19  certification, and is requesting an hourly rate of $725.  Attorney Weed is a 2002

20  graduate of the University of Michigan Law School.  She was involved in the

21  preliminary investigation and review of the voluminous public records, and is

22  requesting an hourly rate of $600.  Attorney Biedermann is a 2007 graduate of

23  Yale Law School and was an Arthur Liman Fellow at DRA from 2007 to 2009.

24  She assisted with the review of many public records and drafting the complaint,

25  and is requesting an hourly rate of $430.  Attorney Chuang is a 2007 graduate of

26  University of Pennsylvania Law School and has been a Staff Attorney at DRA

27  since 2011.  Previously, she was a Litigation Associate at Latham & Watkins LLP.

28

6/10/13 Fee Order - EXHIBIT 2

1   She primarily worked on finalizing the settlement agreement, providing notice to

2   the class, and drafting the motions for preliminary and final approval, as well as

3   the motion for reasonable attorneys' fees and costs, and is requesting an hourly

4   rate of $430.  Attorney Janssen is currently a Staff Attorney at DRA and graduated

5   from New York University School of Law in 2010.  She assisted with discrete

6   tasks relating to the negotiation of the County's Work Plan and draft Annex, and

7   is requesting an hourly rate of $330.  Attorneys Patkin, Lee, and Strugar worked

8   on the case in their capacity as attorneys at DRLC.  Former DRLC staff attorney

9   Patkin is a 2007 graduate of UCLA School of Law, and is requesting an hourly

10  rate of $450.  Former DRLC staff attorney Strugar is a 2004 graduate of USC

11  Gould School of Law, and is requesting an hourly rate of $525.  Former DRLC

12  staff attorney Lee is a 2003 graduate of Loyola Law School, and is requesting an

13  hourly rate of $550.  The Fee Experts cited by Attorneys indicate that the hourly

14  rates requested by all of these attorneys is reasonable.

15      7.      The Court finds that the rate of $240 for DRA's paralegals and $250

16  for its summer associates is reasonable.  DRA's paralegals are college graduates

17  that have worked under attorney supervision for over a year.  DRA's summer

18  associates generally have two full years of law school experience before working

19  at DRA for their second-year summer.  The Court further finds that the hourly rate

20  of $230 for DRLC's law clerks and litigation assistants is reasonable.

21      8.      The Court hereby approves the following 2012 hourly rates and hours

22  expended:

| DRA | Rate | Hours | Fees |
|---|---|---|---|
| Sid Wolinsky | $860.00 | 700.00 | $602,000.00 |
| Shawna Parks | $665.00 | 81.40 | $54,131.00 |
| Mary-Lee Smith | $555.00 | 139.50 | $77,422.50 |
| Karla Gilbride | $430.00 | 494.40 | $212,592.00 |

6

| DRA | Rate | Hours | Fees |
|---|---|---|---|
| Larry Paradis | $800.00 | 15.80 | $12,640.00 |
| Ron Elsberry | $725.00 | 18.30 | $13,267.50 |
| Katherine Weed | $600.00 | 20.50 | $12,300.00 |
| Stephanie Biedermann | $430.00 | 184.00 | $79,120.00 |
| Christine Chuang | $430.00 | 125.00 | $53,750.00 |
| Kara Janssen | $330.00 | 36.40 | $12,012.00 |
| Summer Associates | $250.00 | 26.70 | $6,675.00 |
| Paralegals | $240.00 | 260.90 | $62,616.00 |

| DRLC | Rate | Hours | Fees |
|---|---|---|---|
| Michelle Uzeta | $700.00 | 35.50 | $24,850.00 |
| Shawna Parks | $665.00 | 285.60 | $189,924.00 |
| Debra Patkin | $450.00 | 143.50 | $64,575.00 |
| Jennifer Lee | $550.00 | 16.00 | $8,800.00 |
| Matthew Strugar | $525.00 | 20.20 | $10,605.00 |
| Law Clerk | $230.00 | 122.90 | $28,267.00 |
| Steve Cueller (Litigation Assist.) | $230.00 | 4.70 | $1,081.00 |

9.    The Court finds that the hourly rates and hours expended are reasonable under established Ninth Circuit law. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing the lodestar figure and the requirement to consider factors outlined in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975)).[1]

---

[1] The requested Attorneys' Fees and Costs stem from negotiations between Class Counsel and the County of Los Angeles, and are much lower than the fees calculated under the lodestar method. The calculated fees, without any multiplier, are $1,526,628.00 and the costs expended are $47,903.05, for a total of $1,574,531.05, which is $349,531.05 greater than the amount negotiated by the Settlement. Since this case involved injunctive and declaratory relief, the Fee award will not result in an "inequity" between Counsel and Class Members. *See In re HP Inkjet Printer Litig.*, 11-16097, --- F.3d ----, 2013 WL 1986396, *1, *5 (9th Cir. May 15, 2013) (reasoning that "coupon" settlements may create inequity where Class Counsel request fees and

1     10.     The Court further finds that Counsel has submitted sufficient

2     evidence of the time and effort undertaken by Class Counsel in prosecuting and

3     settling the claims, and that this time and effort was reasonable and necessary in

4     light of the needs of the litigation.

5          In accordance with the terms of the Agreement, the County of Los Angeles

6     shall pay attorneys' fees and reimbursement of litigation costs to Class Counsel in

7     the amount of $1,225,000 within ninety (90) days of this Order (September 9,

8     2013) and up to $75,000 for monitoring the Agreement within six (6) years of this

9     Order.

10

11    **IT IS SO ORDERED.**

12    DATED: June 10, 2013

13                                    CONSUELO B. MARSHALL

14                                    UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27  _____

28    costs).

8

6/10/13 Fee Order - EXHIBIT 2

DISABILITY RIGHTS LEGAL CENTER
   Anna Rivera (Bar No. 239601)
   anna.rivera@drlcenter.org
   Maronel Barajas (Bar No. 242044)
   Maronel.barajas@drlcenter.org
350 S. Grand Ave Suite 1520
Los Angeles, CA 90071
Telephone: (626) 389-8277
Facsimile: (213) 736-1428

MILBANK TWEED HADLEY & McCLOY LLP
   Linda Dakin-Grimm (Bar No. 119630)
   ldakin@milbank.com
   Daniel M. Perry (Bar No. 264146)
   dperry@milbank.com
   Samir L. Vora (Bar No. 253772)
   svora@milbank.com
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-6063
*Attorneys for PLAINTIFF MICHAEL GARCIA and the Plaintiff Class*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GARCIA on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity, et al.,<br><br>Defendants. | Case No. : CV 09-08943 DMG (SHx)<br><br>DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES RELATED TO CLASS ACTION SETTLEMENT WITH COUNTY OF LOS ANGELES |

# DECLARATION OF ANNA RIVERA

I, ANNA RIVERA, declare:

1.      I am a Senior Staff Attorney at the Disability Rights Legal Center ("DRLC"). The DRLC, along with co-counsel at Milbank Tweed, Hadley & McCloy ("Milbank"), represents Plaintiff Michael Garcia and has been appointed by the Court as Class Counsel. The facts set forth herein are based upon my personal knowledge, my review of documents prepared and/or maintained by DRLC in the ordinary course of business, and information provided to me by employees of DRLC's co-counsel, Milbank. If called as a witness, I could and would testify competently thereto.

2.      DRLC is a 501(c)(3) non-profit public interest organization dedicated to advancing the civil rights of people with disabilities through education, advocacy and litigation. Founded in 1975, DRLC is one of the oldest non-profit, public interest law centers to focus on representing individuals with diverse disabilities. DRLC's mission is to champion the rights of people with disabilities through education, advocacy and litigation.  DRLC accomplishes its work through several programs, including the Civil Rights Litigation Program, Education Advocacy Program, Cancer Legal Resource Center, the Inland Empire Program, and the Community Advocacy Program. DRLC, engages in, *inter alia*, class action, multi-plaintiff and other complex impact litigation on behalf of individuals with disabilities who face discrimination or other violations of civil rights or federal statutory protections. DRLC is generally acknowledged to be a leading public interest organization.  Attorneys in the firm have lectured at local, state, and national legal and professional organizations on the law applicable to individuals with disabilities.

**5/8/17 Rivera declaration - EXHIBIT 3**

3.    DRLC has litigated complex civil rights and public interest cases for over 40 years with a focus on impact complex litigation affecting the disability community. Examples include: *Willits, et. al. v. City of Los Angeles*, Case No. CV 10-05782 CBM (RZx) (a successfully settled class action challenging the City of Los Angeles' failure to maintain pedestrian right of ways, including sidewalks and curb ramps for people with mobility disabilities); *Ms. Wheelchair California v. Starline Tours*, No. CV11-02620JFW (CWx) (C.D. Cal.) (a successfully settled class action resulting in company-wide change in policy governing accessible tours and seating); *Peter Johnson et al. v. Los Angeles County Sheriff's Department et al.*, USDC Case No. CV 08-03515 DDP (SHx) (a successfully settled class action currently in the monitoring stage on behalf of individuals with mobility impairments to obtain program and physical access while detained in the Los Angeles County Jail); *Casey A., et al. v. Robles, et al.*, Case No. CV10-00192-(GHK) (FMx) (C.D. Cal.) (a successfully settled class action addressing Los Angeles County's failure to provide youth in the County's largest probation camp with basic and appropriate education and rehabilitative services); *Doe2 v. County of San Bernardino, et al.*, (CV ED 02-962 SGL) (a successfully settled class action addressing the County's failure to provide special education and mental health services to children with disabilities in their custody in juvenile detention); *Valenzuela v. County of Los Angeles*, Case No. CV 02-9092 (JWJx) (C.D. Cal.) (a successfully settled class action addressing failure to provide effective communication for people who are deaf and hard of hearing in field and jail settings by Los Angeles County Sheriff's Department); and *Lauderdale v. Long Beach Police Department*, Case No. CV 08-979 ABC (JWJx) (a successfully settled class action addressing police department's failure to provide effective communication for people who are deaf or hard of hearing.).

//

4.     As a non-profit law firm and a provider of legal services pursuant to grants and other funding, DRLC does not charge fees to its clients for any work undertaken on their behalf.  DRLC primarily handles cases in which the client cannot afford to retain a law firm, where other lawyers will not handle the matter, and/or where the injunctive relief is the primary outcome of the litigation. Our legal services are provided free of charge to our clients, with attorneys' fees generally paid pursuant to fee shifting statutes.

## Case History and Settlement with County Defendants

5.     Plaintiff obtained excellent results through the settlement reached with Defendants County of Los Angeles, Los Angeles County Sheriff's Department, Sheriff Baca in his official capacity (collectively, "County Defendants").

6.     As representatives of class, Plaintiffs engaged in thorough discovery to ensure that the parties and the Court had adequate information to assess the barriers to accessing special education in the jail and relief sought for the class—as well as the reasonableness of the Settlement Agreement.  The discovery included: substantial written discovery, including interrogatories, requests for admissions, and requests for production of documents, which resulted in the combined production of approximately hundreds of documents.  Further, Plaintiffs actively pursued discovery in this matter. Due to disagreements that arose during the discovery process, the parties met and conferred on many occasions and Plaintiffs also filed a discovery motion.  In addition to extensive written discovery, Plaintiffs deposed four County of Los Angeles officials and the County of Los Angeles' expert witness. The County of Los Angeles deposed the Named Plaintiff as well as Plaintiff's expert witness.

7.     In addition, the parties filed cross-motions for summary judgment.

8.     In the summer of 2009, the Parties began settlement negotiations. The Parties participated in extensive arms-length settlement negotiations, which

-3-

included extensive written negotiations, multiple in-person meetings, telephonic
settlement negotiations, and multiple in-person settlement conferences with Judge
Terry J. Hatter Jr., who acted as a settlement officer in this case.

9.    Concurrently with the Lawsuit, Los Angeles Unified School District
("LAUSD") commenced a civil action ("Related Case") in the United States
District Court for the Central District of California, Case No. 2:09-cv-09289-VBF-
CT appealing the decision of the California Office of Administrative Hearings
("OAH") which found that, pursuant to California Education Code section 56041,
the LAUSD was the entity legally responsible for providing Plaintiff Michael
Garcia with a free appropriate public education while he was incarcerated in the
LACJ. The District Court in the Related Case subsequently entered orders
affirming the OAH decision. On or about June 3, 2010, LAUSD appealed that
order to the United States Court of Appeals for the Ninth Circuit.

10.    Plaintiffs' settlement negotiations with the County Defendants where
effectively stayed pending the outcome of LAUSD's appeal in the Related Case in
the Ninth Circuit. On or about January 20, 2012, the Ninth Circuit certified the
question to California Supreme Court. On or about March 28, 2012, The
California Supreme Court agreed to take the matter. On or about December 17,
2013, the California Supreme Court issued a seminal decision, holding that the
assignment of responsibility for providing special education to eligible county jail
inmates between the ages of 18 and 22 years is governed by the terms of California
Education Code Section 56041. The Ninth Circuit then issued a final decision on
January 28, 2014, finding that the District Court's ruling in the Related Case was
consistent with the California Supreme Court's answer to the certified question, the
Ninth Circuit Court of Appeals affirmed the District Court's decision affirming the
2009 decision of the administrative law judge.

-4-

11.     Subsequent to this decision, the Parties renewed their settlement negotiations. The Parties engaged in several in-person meetings, telephonic negotiations, and exchanged multiple written drafts of the Settlement Agreement. The Parties worked diligently to finalize the terms of the proposed Settlement Agreement. On or about February 9, 2017 the Parties entered into a written Settlement Agreement. Attached hereto as Exhibit A is a true and correct copy of the Settlement Agreement.

12.     Plaintiff obtained excellent results through the settlement reached with Defendants County of Los Angeles, Los Angeles County Sheriff's Department, Sheriff Baca in his official capacity (collectively, "County Defendants").

13.     Plaintiff described the terms of that settlement in more detail in his Motion for Preliminary Approval of Class Action Settlement Agreement. (*See* Dkt. No. 424-1 and 424-3). As part of the settlement agreement, the County Defendants have agreed to do the following: (a) administer a questionnaire to all newly booked 18-22 year old individuals who are processed through the LACJ Inmate Reception Center aimed at identifying those inmates who would like to receive special education services, (b) notify the charter school that currently provides services at the LACJ of those individuals who affirmatively state they would like to receive special education services, (c) create and distribute an informational pamphlet regarding the availability of special education services and how to request them, (d) modify its Inmate Grievance/Service Request Form to include a box titled "Special Education/IEP," (e) designate an employee or employees who will facilitate the provision of special education services, and (f) train relevant Sheriff's Department staff regarding the provision of special education services to eligible students.

14.     The qualifications of Class Counsel have been set forth in great detail in the earlier class certification briefing in this case and are discussed further below in paragraphs 19-57.  (*See* Dkt. Nos. 81-84).

**DRLC Rates**

15.     In setting our rates, DRLC reviews published cases and unpublished decisions concerning attorneys' fees rates used by comparable non-profit public interest organizations, awards that DRLC has received for attorneys' fees, and other information from private attorneys relating to the rates charged by private firms for comparable litigation.  DRLC also carefully monitors its billing practices to ensure that courts are able to properly perform the lodestar analysis for a fee award. We also take into account the experience of the attorneys and staff working on the case and the complexity of the case.

16.     Several courts have found DRLC's hourly rates reasonable. Examples of courts finding DRLC's hourly rates reasonable include:

- *Michael Garcia v. Los Angeles County Sheriff's Dept.*, Case No. CV 09-8943 MMM (SHx), the United States District Court for the Central District of California approved DRLC's 2011 historical rates in a class action. Attached as Exhibit B is a true and correct copy of that order.

- *California in Communities Actively Living Independent and Free, et al. v. City of Los Angeles et al.*, Case No. CV 09-0287 CBM (RZx) the United States District Court for the Central District of California found DRLC's 2012 historical rates reasonable. This included a range of $450-$550 for staff attorneys and $230 for law clerks.  And the court found a 2012 historical hourly rate of $550 for a 2003 law graduate was reasonable. *Id*. at 6:11-14. The court further found that the plaintiffs had "provided sufficient evidence . . . supporting the reasonableness of their 2012 requested hourly rates" and "that requested hourly rates correspond to the prevailing market rates in the

-6-

1   relevant community, considering the experience, skill, and reputation
2   of the attorneys in question." *Id*. at 2:18-20. Attached hereto as
3   Exhibit C is a true and correct copy of that order.

4   • *Peter Johnson v. Los Angeles County Sheriff's Department*, Case No.
5   CV 08-03515 DDP (SHx), the United States District Court for the
6   Central District of California granted Plaintiffs' Motion for Attorneys'
7   Fees and Costs in full. Attached as Exhibit D is a true and correct
8   copy of that order. In particular, the motion that was granted sought
9   time billed by DRLC attorneys at 2014 historical hourly rates of $800
10   for a 1982 graduate, $700 for a 1992 graduate, $500 for a 2005
11   graduate and an hourly rate of $230 for law clerks. See, Declaration of
12   Richard Diaz in support of Plaintiffs' Motion for Attorneys' Fees,
13   attached as Exhibit E (summary of hourly rates sought by Plaintiffs at
14   para. 38 of Diaz Declaration) (exhibits to Declaration omitted due to
15   length).

16   • *Willits et al v. City of Los Angeles et al*, Case No. CV 10-5782 CBM
17   (RZx), the United States District Court for the Central District granted
18   Plaintiffs' Motion for Attorneys' Fees and Costs and approved
19   DRLC's 2014 historical hourly rates. Attached as Exhibit F is a true
20   and correct copy of that order. In particular, the motion that was
21   granted sought time billed by DRLC attorneys at 2014 historical
22   hourly rates of $680 for a 1987 graduate, $550 for a 2003 graduate,
23   $375 for a 2010 graduate, and an hourly rate of $230 for law clerks.
24   Id. at pg.6.

25   • *Greater Los Angeles Agency on Deafness, Inc. et al v. Krikorian*
26   *Premiere Theaters*, LLC, Case No. CV 13-07172-PSG (ASx), the
27   United States District Court for the Central District of California
28   approved DRLC's 2015 historical rates in a class action which had

-7-

1   systemic implications regarding access to movie theaters for

2   individuals who are deaf or hard of hearing.  Attached as Exhibit G is

3   a true and correct copy of that order.

4   17.   Experts in the field have also found DRLC's 2016 historical rates to

5   be reasonable.  For example, in a declaration in support of plaintiff's motion for

6   reasonable attorney fees and costs, Mr. Barrett S. Litt opined as to the

7   reasonableness of DRLC's rates in the matter of *Independent Living Center of*

8   *Southern California et al v. City of Los Angeles, et al.*, Case No. CV 12-0551 FMO

9   (PJW), a class action case currently pending in the United States District Court for

10  the Central District of California. Attached as Exhibit H is a true and correct copy

11  of that declaration (exhibits have been omitted due to length).

12  18.   DRLC's current rates have also been found reasonable by Richard

13  Pearl, an expert in the area of attorney fees charged in California and elsewhere.  In

14  a declaration in support of plaintiff's motion for reasonable attorney fees and costs,

15  Mr. Pearl opined as to the reasonableness of DRLC's rates in the matter of *Ochoa*

16  *et al v. City of Long Beach et al*, Case No. 2:14-cv-04307-DSF-FFM, a class action

17  case currently pending in the United States District Court for the Central District of

18  California. Attached as Exhibit I is a true and correct copy of that declaration.

19  19.   DRLC's hourly rates for staff on this case are set forth in the chart

20  below at paragraph 66. This chart lists the billing attorney, year of law school

21  graduation, and pertinent hourly rate for all DRLC staff for whom fees are

22  requested in this matter.  Based on the information that I reviewed in working with

23  the Director of Litigation to set our hourly rates, I believe our rates to be consistent

24  with the current prevailing market rates charged by other attorneys with

25  comparable skills, qualifications, experience, and reputation in the market covered

26  by the Central District.

27  //

28  //

-8-

## DRLC Attorneys and Their Roles

20.   In addition to the hours expended by Milbank, Plaintiff is seeking compensation for eight DRLC attorneys who billed on this matter:  (1) Paula Pearlman, former Executive Director; (2) Shawna L. Parks, former Legal Director of the DRLC; (3) Maronel Barajas, Director of Litigation; (4) Matthew Strugar, former Staff Attorney; (5) Umbreen Bhatti, former Staff Attorney; (6) Carly Munson, former Staff Attorney; (7) Andrea Oxman, former Staff Attorney; (8) Elliot Field, former Staff Attorney.

21.   Paula Pearlman was the Executive Director at DRLC when she worked on this instant matter. As Executive Director, her duties included oversight of DRLC's litigation efforts. She also taught a Disability Rights class at Loyola Law School in Los Angeles.  I understand that, prior to joining DRLC, Ms. Pearlman was a former Supervising Attorney at the California Women's Law Center, where she specialized in sex discrimination in employment and education. I understand that Ms. Pearlman graduated from the Southwestern University School of Law in 1982. I understand that she has served on the U. S. Access Board Courthouse Access Advisory Committee, as the board chair of the Employment Round Table of Southern California (ERTSC), as a board member of the Legal Aid Association of California, as co-chair of the Lawyer Representatives of the Central District, Ninth Circuit Judicial Conference, and as a member of the California State Bar Standing Committee on the Delivery of Legal Services.

22.   I understand that Ms. Pearlman has received numerous awards including the 2010 St. Ignatius of Loyola Award, St. Thomas More Society, the 2009 "FEHA 50th Anniversary Civil Rights Award," from the California Department of Fair Employment and Housing, and she was a 2007 Legal Aid Association of California Attorney Award of Merit Recipient. She was named a "Super Lawyer" in 2009 in the area of public interest law and class actions, and

-9-

ER-17 Rivera declaration - EXHIBIT 3

she was a 2007 finalist for "Attorney of the Year" for Trial Lawyers for Public Justice.

23.     I understand that Ms. Pearlman's experience with the plaintiffs and understanding of public entity work was important to filing this case. I understand that Ms. Pearlman participated in depositions, settlement conferences, and conferred within DRLC to discuss strategy and tasks.

24.     A 2014 historical hourly rate of $800 was previously approved for Ms. Pearlman in *Peter Johnson v. Los Angeles County Sheriff's Department*, Case No. CV 08-03515 DDP (SHx); that order and related declaration are attached hereto as Exhibits D and E.

25.     DRLC seeks compensation for Ms. Pearlman at an hourly rate of $875, which is DRLC's 2017 billing rate for an attorney of her experience.

26.     Shawna L. Parks is a 1999 graduate of U.C. Berkeley School of Law, and a 1995 graduate of U.C. Berkeley.  I understand that from 1999-2000 Ms. Parks was a Fulbright Scholar in Budapest, Hungary, where she researched a recently enacted nondiscrimination statute, worked on developing test litigation, and co-organized a conference of Eastern European disability rights advocates.

27.     From early 2012 through late 2013 Ms. Parks was a Director of Litigation at Disability Rights Advocates in Berkeley, California. From 2005 through early 2012 Ms. Parks was at the Disability Rights Legal Center where she was Legal Director from 2009 through late 2011. Prior to her work at the DRLC Ms. Parks was a staff attorney and Equal Justice Works Fellow at Disability Rights Advocates from 2000 through 2003. From 2003 through 2004 she was an associate at what was then known as Schonbrun DeSimone Seplow Harris & Hoffman, where she worked primarily on race and gender discrimination employment cases. Ms. Parks has extensive expertise in the substantive areas of disability rights, civil rights and education, including special education. She has litigated numerous

-10-

cases, including both class actions and individual cases, in these fields. Ms. Parks is currently the principal attorney in the Law Office of Shawna L. Parks, which she founded in 2014.

28.    I understand that in the instant matter Ms. Parks participated in many aspects of the litigation including discovery, research, settlement, motion work and engaged in strategy sessions.

29.    A 2012 historical rate of $665 was approved for Ms. Parks in *CALIF, et al., v. City of Los Angeles, et al.*, 2011 WL 4595993 (C.D. Cal. 2011), Case No. 2:09-cv-00287- CBM-RZ. A true and correct copy of that fee order is attached hereto as Exhibit C. In that Order the Court describes Ms. Parks as "nationally recognized as a leading disability rights attorney." Order at 4:8

30.    DRLC seeks compensation for Ms. Parks at an hourly rate of $745, which is DRLC's 2017 billing rate for an attorney of her experience.

31.    Maronel Barajas is the Litigation Director at the Disability Rights Legal Center.  As the Director of Litigation, she oversees all aspects of DRLC's litigation program, including supervising and litigating individual, multi-plaintiff, and class action cases. This includes coordinating, supervising and providing substantive expertise and support to attorney staff and legal assistants, as well as law clerks and volunteers in DRLC's two offices.  Further, her duties as the Director of Litigation also include negotiating co-counseling agreements, outreach, grant writing, retaining experts, and budgeting.  She also lectures and provides training on disability rights issues in various forums and participates in legislative and regulatory comment on behalf of the organization.

32.    Ms. Barajas is a 2003 graduate of Columbia Law School and 2000 graduate of the University of California, Irvine. The majority of her practice has focused on civil rights matters, including matters on behalf of individuals with disabilities.  Indeed, civil rights has been my primary focus for approximately twelve years.  Approximately, nine of those years have been spent on cases

-11-
DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES
ED-17 Rivera declaration - EXHIBIT 3

exclusively on behalf of individuals with disabilities.  During this time, she litigated various cases in the area of disability rights, including individual, multi-plaintiff and class action cases. These cases have primarily been against public entities, and most often with the goal of system reform. Ms. Barajas has also supervised attorneys in numerous lawsuits affecting the rights of people with disabilities. As a result, she has developed extensive knowledge in the area of disability rights cases, cases requiring policy reform, and cases involving public entities.

33.    After law school, from late 2004 through early 2005, Ms. Barajas worked as a legal representative for MACS Copy and Interpreting Inc., where her work focused primarily on worker's compensation matters. In early 2005, Ms. Barajas joined DRLC and held various positions until she left in late 2008.  These positions included being an Education Advocate, Staff attorney, Associate Director and ultimately Director of the Education Advocacy Program. During 2005-2008, her work was exclusively on behalf of people with disabilities, with a focus on matters on behalf of students with disabilities.  Ms. Barajas worked on cases at the administrative and federal court level. She also regularly lectured and trained on issues relating to individuals with disabilities, including participating in legislative and regulatory comment on behalf of the organization.  By way of example, Ms. Barajas was an Adjunct Professor at Loyola Marymount University in Los Angeles where she taught an upper division Special Education and the Law course; guest lectured at Loyola Law School's Disability Rights and Special Education Law class; and wrote articles related to the rights of students with disabilities. In her capacity as Director of the Education Advocacy program, she also supervised attorney staff and managed DRLC's Education Advocacy Program's externship program. In 2007, during Ms. Barajas tenure as the Director, the Education Advocacy Program along with DRLC's litigation program was recognized as the Agency Winner at the National Association of Counsel for Children in Keystone,

-12-

1  Colorado for improving the educational opportunity for students with disabilities
2  held in detention facilities and for improving the access to courts for individuals
3  with disabilities.

4       34.   In late 2008, Ms. Barajas left DRLC to become an associate with the
5  former law firm of Traber & Voorhees, a prominent civil rights litigation firm in
6  Pasadena, California. Traber & Voorhees recently dissolved after one its founding
7  partners, Theresa M. Traber, was appointed to the bench.  At Traber & Voorhees,
8  her focused primarily on discrimination cases in the employment, education, and
9  custodial context.  Ms. Barajas handled matters at the state, federal and state
10 appellate level.  She remained an associate with Traber & Voorhees until early
11 2011.

12      35.   In early 2011, Ms. Barajas returned to work with DRLC as the sole
13 Senior Staff Attorney in the litigation program.  In addition to focusing on impact
14 and complex litigation, she co-authored an article with Paula Pearlman, Esq. for
15 the 2011-2012 Ability magazine issue, titled "a boy and his dog" regarding a case
16 where she was lead counsel from DRLC.  To my knowledge, it was the first case
17 of its kind where a federal court judge held that a student with autism had the right
18 to attend school with his service dog. Until approximately 2013, Ms. Barajas also
19 served as an Adjunct Professor at Loyola Marymount University where she taught
20 an upper division Special Education and the Law course.  Ms. Barajas also
21 oversaw DRLC's externship program with Loyola Law School until that
22 partnership ended. In 2015, she was promoted to Managing Attorney of the
23 litigation department, and in late 2016, she was again promoted, this time to
24 Director of Litigation, a position that she still holds.

25      36.   I understand that Ms. Barajas participated in settlement and engaged
26 in strategy sessions.

27      37.   A 2012 historical hourly rate of $550 for a 2003 law graduate was
28 previously approved in *California in Communities Actively Living Independent and*

-13-

*Free, et al. v. City of Los Angeles et al.*, Case No. CV 09-0287 CBM (RZx) at 6:11-14; that order and related declaration are attached hereto as Exhibit C.

38.     DRLC seeks compensation for Ms. Barajas at an hourly rate of $675, which is DRLC's 2017 billing rate for an attorney of her experience

39.     Matthew Strugar is a 2004 graduate from the University of Southern California Gould School of Law. When he worked on this matter, he was a Staff Attorney with the litigation department. While at DRLC, Mr. Strugar focused on class action and impact litigation centered on matters in the correctional context. I understand that Mr. Strugar participated in working with plaintiff and class members.

40.     DRLC seeks compensation for Mr. Strugar at an hourly rate of $660, which is DRLC's 2017 billing rate for an attorney of his experience.

41.     Umbreen Bhatti graduated from the University of Michigan Law School in 2005. I understand that prior to joining DRLC she was an associate at Latham & Watkins and later a staff attorney at the ACLU of Delaware, where she managed a caseload involving civil rights cases in state and federal court and before state commissions, litigating a wide variety of civil rights issues. While she worked on this matter she was a Staff Attorney with the litigation department. While at DRLC, Mr. Gibson focused on class action and impact litigation centered on physical and programmatic accessibility for individuals with disabilities. In the instant matter, I understand that Ms. Bhatti participated in settlement and engaged in strategy sessions.

42.     A 2014 historical hourly rate of $500 was previously approved for a 2005 graduate in *Peter Johnson v. Los Angeles County Sheriff's Department*, Case No. CV 08-03515 DDP (SHx); that order and related declaration are attached hereto as Exhibits D and E.

43.     DRLC seeks compensation for Ms. Bhatti at an hourly rate of $640, which is DRLC's 2017 billing rate for an attorney of her experience.

44.   Carly Munson is a 2006 graduate from Boston University School of Law.  When she worked on this matter, she was a Staff Attorney. While at DRLC, Ms. Munson focused on impact litigation centered with a focus on matters in the educational context. I understand that Ms. Munson participated in drafting, reviewing, and revising documents related to the complaint, investigating the claims, working with the plaintiffs, motion work and settlement. Ms. Munson also participated in regular conference calls with co-counsel to discuss strategy and tasks and conferred within DRLC and with co-counsel.

45.   DRLC seeks compensation for Ms. Munson at an hourly rate of $625, which is DRLC's 2017 billing rate for an attorney of her experience.

46.   Andrea Oxman is a 2007 graduate from the University of Southern California Gould School of Law.  When she worked on this matter, she was a Staff Attorney with the litigation department. While at DRLC, Ms. Oxman focused on class action and impact litigation centered on physical and programmatic accessibility for individuals with disabilities. Ms. Oxman is currently an associate in private practice at Klinedinst PC.  I understand that Ms. Oxman participated in drafting, reviewing, and revising documents related to the complaint, investigating the claims, working with the plaintiffs, discovery, motion work and settlement.

47.   DRLC seeks compensation for Ms. Oxman at an hourly rate of $600, which is DRLC's 2017 billing rate for an attorney of her experience.

48.   Elliot Field is a 2009 graduate from Loyola Law School. When he worked on this matter, he was a Staff Attorney. While at DRLC, Mr. Field focused on impact litigation centered with a focus on matters in the educational context. I understand that Mr. Fields participated in depositions and worked with plaintiffs.

49.   DRLC seeks compensation for Mr. Field at an hourly rate of $525, which is DRLC's 2017 billing rate for an attorney of his experience.

50.   DRLC law clerks also worked on this matter. DRLC seeks compensation for law clerks at an hourly rate of $250.  DRLC seeks a currently

-15-

hourly rate of $250 for law clerks. DRLC relies on its law clerks primarily to do legal and factual research, and did so in this matter. DRLC's law clerks are law students from local law schools, including Loyola Law School.

51.    In *California in Communities Actively Living Independent and Free, et al. v. City of Los Angeles et al.*, Case No. CV 09-0287 CBM (RZx) the United States District Court for the Central District of California found DRLC's 2012 rates of $230 for law clerks reasonable; that order and related declaration are attached hereto as Exhibit C.

52.    DRLC also seeks compensation for work performed by Legal Assistants at a currently hourly rate of $250.

53.    In *California in Communities Actively Living Independent and Free, et al. v. City of Los Angeles et al.*, Case No. CV 09-0287 CBM (RZx) the United States District Court for the Central District of California found DRLC's 2012 rates of $230 for legal assistants reasonable; that order and related declaration are attached hereto as Exhibit C.

54.    The manner in which DRLC staffed this case is fairly standard for a case of this size and importance.

55.    DRLC made every effort to litigate this matter efficiently by coordinating our work, minimizing duplication, and assigning tasks in a time and cost efficient manner, based on the time keepers' experience levels and talents.

56.    The attorneys at Milbank worked on this matter as co-counsel and as appropriate. It was essential for the DRLC to co-counsel with the attorneys from Milbank in this matter particularly given their expertise and experience with litigation. The specific work that they did on the case and their rates are discussed fully in the Declaration of Samir L. Vora in Support of Plaintiff's Motion for Award of Attorneys' Fees and Expenses that is filed herewith.

//

//

## Method of Recording Time

57.     DRLC's method of recording attorneys' fees consists of recording time spent on particular cases as contemporaneously as possible with the actual expenditure of the time, in tenth of an hour increments, and submitting those time records in the regular course of business. DRLC's law clerks and support staff do the same.

## Exercise of Billing Judgment and Determining the Lodestar

58.     The $200,000 in fees and costs for DRLC and Milbank attorneys combined represents only a portion of the actual hours expended by Plaintiffs' counsel in the nearly eight years this case has been litigated. In determining the reasonable attorneys' fees for work performed DRLC calculated its lodestar based on its current 2017 hourly rates as well as apportioning those fees for work attributable to County Defendants.

59.     DRLC's total actual fees and costs through October 2011 is $810,851. A true and correct copy of DRLC's billing statement is attached here to as Exhibit J.

60.     In order to determine the amount of fees to apportion to County Defendants, I carefully reviewed DRLC's billing statement on an entry by entry basis in order to categorize time spent in the following categories: (a) time related to general furtherance of Plaintiff's claims in the case as a whole; and (b) time related specifically to County Defendants.

61.     This resulted in 869.70 hours of time, for a total value of $538,213.50 for time spent in general furtherance of the litigation.  And, 163.90 hours of time, for a total value of $101,812.50 for time spent related specifically to County Defendants.

62.     I then equally divided the time spent in general furtherance of the litigation among all Defendants in the litigation, for a total amount of

DECLARATION OF ANNA RIVERA IN SUPPORT OF PLAINTIFF'S MOTION
FOR AWARD OF ATTORNEYS' FEES

6/3-17 Rivera declaration - EXHIBIT 3

approximately 173.9 hours of time per defendant, for a total value of $107,642.70.

63.     I then added $101,812.50 (total value for time spent related specifically to County Defendants) and $107,642.70 (the corresponding fraction of time spent in general furtherance of the litigation among all Defendants). This billing discretion resulted in final lodestar of **$209, 455.20** for approximately 338 hours as applied to the County Defendants

64.     In reaching the lodestar for determining DRLC's fees and costs, I carefully reviewed all of the DRLC attorneys' billing statements.  In reviewing this time spent by DRLC attorneys and law clerks, I exercised billing judgment and in doing so wrote-off certain time, as appropriate.

65.     Below is a table of the DRLC time-keepers on this matter, including hours and total fees attributed to its claims against the County Defendants at the time of settlement:

| Attorney Name | Graduation | Billing Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Paula Pearlman | 1982 | $875 | 29.10 | $25,462.50 |
| Shawna Parks | 1999 | $745 | 223.70 | $166,656.50 |
| Maronel Barajas | 2003 | $675 | 20.10 | $13,567.50 |
| Matthew Strugar | 2004 | $660 | 12.00 | $7,920.00 |
| Umbreen Bhatti | 2005 | $640 | 11.80 | $7,552.00 |
| Carly Munson | 2006 | $625 | 143.00 | $89,375.00 |
| Andrea Oxman | 2007 | $600 | 758.60 | $455,160.00 |
| Elliot Field | 2009 | $525 | 49.30 | $25,882.50 |
| Law Clerks | N/A | $250 | 75.90 | $18,975.00 |

-18-

| Paralegals | N/A | $250 | 1.20 | $300.00 |
|---|---|---|---|---|
| DRLC Total Fees | | | 1331.60 | $810,851.00 |
| Subtotal of DRLC Fees Spent in General Furtherance of Litigation | | | 869.70 | $538,213.50 |
| Subtotal of DRLC Fees Spent Specifically Related to County Defendants | | | 169.90 | $101,812.50 |
| **DRLC Fees Apportionment to County Defendants** | | | | Total: $209, 455.20 |

66.     Since the time of settlement, DRLC has expended additional time negotiating and executing an amendment to the settlement agreement and in preparing the preliminary approval papers as well as the instant attorneys' fee motion.

67.     I have personally reviewed all the entries and calculations in this declaration.  Any calculation errors in the totals of hours, fees, or expenses are inadvertent and mine alone.

68.     In addition to fees, DRLC incurred out-of-pocket costs, as apportioned to County Defendants, which it has not included in its request here. As with time records, costs are recorded in our system as contemporaneously as

possible to when they are incurred or when we are billed by a third party, and are submitted by DRLC staff in the regular course of business.

69.     The fees claimed here are for the work necessary to investigate and develop Plaintiffs' claims, secure class certification, secure discovery needed for trial , prepare a motion for partial summary judgment, and to achieve a resolution that remedies violations of the civil rights of students in jail eligible to received special education services

70.     In my opinion, the total $200,000 in fees and costs for DRLC and Milbank attorneys combined is a reasonable figure for attorneys' fees and costs particularly given the amount of work invested in this matter.  The amount sought by Plaintiff in this matter represents a fair and reasonable fees and costs award in this case.


I declare under penalty of perjury of the laws of the United States of America and the State of California that the foregoing is true and correct, and that this declaration was executed on June 8, 2017 in Whittier, California.




ANNA RIVERA

1    KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
2    sragland@keker.com
AJAY S. KRISHNAN - # 222476
3    akrishnan@keker.com
TAYLOR GOOCH - # 294282
4    tgooch@keker.com
FRANCO MUZZIO - # 310618
5    fmuzzio@keker.com
633 Battery Street
6    San Francisco, CA 94111-1809
Telephone:    415 391 5400
7

8    DISABILITY RIGHTS LEGAL CENTER
MARONEL BARAJAS - #242044
9    maronel.barajas@drlcenter.org
ANNA RIVERA - # 239601
10    anna.rivera@drlcenter.org
MALLORY L. SEPLER-KING – #298262
11    mallory.sepler-king@drlcenter.org
350 S. Grand Avenue, Suite 1520
12    Los Angeles, CA 90071
Telephone:    626 389 8277

13    ATABEK & ASSOCIATES, P.C.
JON A. ATABEK, ESQ. - # 269497
14    jatabek@atabeklaw.com
16330 Bake Parkway
15    Irvine, CA 92618
Telephone:    213 394 5943

16    Attorneys for Plaintiffs
EVERETT JEWETT, LEGAL SERVICES FOR PRISONERS WITH CHILDREN, GLEN
17    HAROLD EVERETT, MICHAEL DONALD ACKLEY, HAROLD ROBERT MARQUETTE

                   UNITED STATES DISTRICT COURT
18                  EASTERN DISTRICT OF CALIFORNIA

19    EVERETT JEWETT, LEGAL SERVICES      Case No. 2:13-cv-0882 MCE AC (PC)
FOR PRISONERS WITH CHILDREN,
20    GLEN HAROLD EVERETT, MICHAEL      **DECLARATION OF MARONEL
DONALD ACKLEY, HAROLD      BARAJAS IN SUPPORT OF PLAINTIFFS'**
21    ROBERT MARQUETTE, on behalf of      **MOTION FOR REASONABLE
themselves and all others similarly      ATTORNEYS' FEES AND COSTS**
22    situated,
              Plaintiffs,      Date:      June 28, 2017
23              v.      Time:      10:00 a.m.
                                     Dept.:      Courtroom 7
24    SHASTA COUNTY SHERIFF'S      Judge:      Hon. Hon. Morrison England
DEPARTMENT, a public entity; TOM
25    BOSENKO, as Sheriff of the Shasta      Date Filed: May 6, 2013
County; SHASTA COUNTY, a public
26    entity; and CALIFORNIA FORENSIC
MEDICAL GROUP, INC. a private entity;
27    and DOES 1 through 25, in their
individual capacities,
28
              Defendants.

I, Maronel Barajas, declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California and am counsel of record for Plaintiffs in the above-captioned case. I am the Director of Litigation at the Disability Rights Legal Center.  The facts set forth herein are within my personal knowledge or knowledge gained from interviews or review of pertinent documents. If called as a witness, I could and would competently testify thereto.

2.      I submit this declaration in support of Plaintiffs' Motion for Reasonable Attorneys' Fees, Expenses, and Costs.

3.      Disability Rights Legal Center (DRLC), along with co-counsel Keker, Van Nest & Peters LLP ("KVP") and Atabek & Associates, P.C. ("Atabeck") are counsel for named Plaintiffs Everett Jewett, Glen Harold Everett, Michael Donald Ackley, and Legal Services for Prisoners with Children, and the class of persons with detainees and prisoners with mobility disabilities (collectively, "Plaintiffs").

## BACKGROUND AND EXPERIENCE OF DRLC

4.      DRLC is a 501(c)(3) non-profit public interest organization dedicated to advancing the civil rights of people with disabilities through education, advocacy and litigation. Founded in 1975, DRLC is one of the oldest non-profit, public interest law centers to focus on representing individuals with diverse disabilities. DRLC's mission is to champion the rights of people with disabilities through education, advocacy and litigation.  DRLC accomplishes its work through several programs, including the Civil Rights Litigation Program, Education Advocacy Program, Cancer Legal Resource Center, the Inland Empire Program, and the Community Advocacy Program. DRLC, engages in, *inter alia*, class action, multi-plaintiff and other complex impact litigation on behalf of individuals with disabilities who face discrimination or other violations of civil rights or federal statutory protections. DRLC is generally acknowledged to be a leading public interest organization.  DRLC also participates in various *amici curiae* efforts in a number of cases affecting the rights of people with disabilities. Attorneys in the firm have lectured at local, state, and national legal and professional organizations on the law applicable to individuals with disabilities.

2

DECLARATION OF MARONEL BARAJAS IN SUPPORT OF PLAINTIFFS' MOTION FOR
REASONABLE ATTORNEYS' FEES AND COSTS
Case No. 2:13-cv-0882 MCE AC (PC)
4/11818 Barajas declaration - EXHIBIT 4

1      5.      DRLC has litigated complex civil rights and public interest cases for over 40 years

2 with a focus on high impact litigation affecting the disability community. Examples include:

3 *Peter Johnson et al. v. Los Angeles County Sheriff's Department et al.*, USDC Case No. CV 08-

4 03515 DDP (SHx) (a successfully settled class action currently in the monitoring stage on behalf

5 of individuals with mobility impairments to obtain program and physical access while detained in

6 the Los Angeles County Jail); *Michael Garcia v. Los Angeles County Sheriff's Dept.*, USDC Case

7 No. CV-09-08943 DMG (SHx) (a successfully settled class action with three defendants resulting

8 in access to education for individuals with disabilities held at the Los Angeles County Jail;

9 litigation is ongoing as to defendant, California Department of Education); *Willits et. al. v. City of*

10 *Los Angeles*, USDC Case No. CV 10-05782 CBM (RZx) (a successfully settled class action

11 challenging the City of Los Angeles' failure to maintain pedestrian right of ways, including

12 sidewalks and curb ramps for people with mobility disabilities); *Ms. Wheelchair California v.*

13 *Starline Tours,* USDC Case No. CV11-02620 JFW (CWx) (a successfully settled class action

14 resulting in company-wide change in policy governing accessible tours and seating); *Casey A., et*

15 *al. v. Robles, et al.*, USDC Case No. CV10-00192 GHK (FMx) (a successfully settled class action

16 addressing Los Angeles County's failure to provide youth in the County's largest probation camp

17 with basic and appropriate education and rehabilitative services); *Doe2 v. County of San*

18 *Bernardino, et al.*, USDC Case NO. EDCV 02-962 RT (SGLx) (a successfully settled class action

19 addressing the County's failure to provide special education and mental health services to

20 children with disabilities in their custody in juvenile detention); *Valenzuela v. County of Los*

21 *Angeles*, USDC Case No. CV 02-9092 ABC (JWJx) (a successfully settled class action

22 addressing failure to provide effective communication for people who are deaf and hard of

23 hearing in field and jail settings by Los Angeles County Sheriff's Department); and *Lauderdale v.*

24 *Long Beach Police Department*, USDC Case No. CV 08-979 ABC (JWJx) (a successfully settled

25 class action addressing police department's failure to provide effective communication for people

26 who are deaf or hard of hearing.)

27      6.      As a non-profit law firm and a provider of legal services pursuant to grants and

28 other funding, DRLC does not charge fees to its clients for any work undertaken on their behalf.

1    DRLC primarily handles cases in which the client cannot afford to retain a law firm, where other

2    lawyers will not handle the matter, and/or where the injunctive relief is the primary outcome of

3    the litigation. Our legal services are provided free of charge to our clients, with attorneys' fees

4    generally paid pursuant to fee shifting statutes.

5                                   **DRLC RATES**

6            7.     In setting our rates, DRLC reviews published cases and unpublished decisions

7    concerning attorneys' fees rates used by comparable non-profit public interest organizations,

8    awards that DRLC has received for attorneys' fees, and other information from private attorneys

9    relating to the rates charged by private firms for comparable litigation.  DRLC also carefully

10   monitors its billing practices to ensure that courts are able to properly perform the lodestar analysis

11   for a fee award. We also take into account the experience of the attorneys and staff working on the

12   case and the complexity of the case.

13           8.     Several courts have found DRLC's hourly rates reasonable. Examples of courts

14   finding DRLC's hourly rates reasonable include:

15           • *Michael Garcia et al. v. Los Angeles County Sheriff's Dept.*, USDC Case No. CV-

16             09-08943 DMG (SHx), the United States District Court for the Central District of

17             California approved DRLC's 2017 rates in a class action. This included a range of

18             $525 - $660 for staff attorneys who graduated from law school from 2009 to 2004

19             and an hourly rate of $250 for law clerks.  In addition, a 2017 hourly rate of $675

20             was approved for Ms. Barajas. Attached as Exhibit A is a true and correct copy of

21             that order. *See*, Declaration of Anna Rivera in support of Plaintiffs' Motion for

22             Attorneys' Fees, attached as Exhibit B (summary of hourly rates sought by

23             Plaintiffs at para. 65 of Rivera Declaration) (exhibits to Declaration omitted due to

24             length).

25           • *Communities Actively Living Independent and Free, et al. v. City of Los Angeles et

26             al.*, USDC Case No. CV 09-0287 CBM (RZx) the United States District Court for

27             the Central District of California found DRLC's 2012 historical rates reasonable.

28             In particular, the motion that was granted sought time billed by DRLC attorneys at

                                         4

1     2012 hourly rates of $550 for a 2003 graduate, $665 for a Director of Litigation

2     who was a 1999 graduate and $700 for a Director of Litigation who was a 1992

3     graduate. The court also found a 2012 hourly rate of $230 for a law clerk

4     reasonable. *Id.* at 6: 21 - 7:17. The court further found that the plaintiffs had

5     "provided sufficient evidence . . . supporting the reasonableness of their 2012

6     requested hourly rates" and "that requested hourly rates correspond to the

7     prevailing market rates in the relevant community, considering the experience,

8     skill, and reputation of the attorneys in question." *Id.* at 2:18-20. Attached hereto

9     as Exhibit C is a true and correct copy of that order.

10     •   *Peter Johnson et al. v. Los Angeles County Sheriff's Department*, USDC Case No.

11     CV 08-03515 DDP (SHx), the United States District Court for the Central District

12     of California granted Plaintiffs' Motion for Attorneys' Fees and Costs. Attached as

13     Exhibit D is a true and correct copy of that order. In particular, the motion sought

14     time billed by DRLC attorneys at 2014 historical hourly rates of $800 for a 1982

15     graduate, $700 for a 1992 graduate, $500 for a 2005 graduate and an hourly rate of

16     $230 for law clerks. In addition, a 2014 historical hourly rate of $325 was

17     approved for Mr. Diaz, a 2012 graduate. *See*, Declaration of Richard Diaz in

18     support of Plaintiffs' Motion for Attorneys' Fees, attached as Exhibit E (summary

19     of hourly rates sought by Plaintiffs at para. 38 of Diaz Declaration) (exhibits to

20     Declaration omitted due to length).

21     •   *Willits et al v. City of Los Angeles et al*, USDC Case No. CV 10-5782 CBM

22     (RZx), the United States District Court for the Central District granted Plaintiffs'

23     Motion for Attorneys' Fees and Costs and approved DRLC's 2014 historical

24     hourly rates. Attached as Exhibit F is a true and correct copy of that order. In

25     particular, the motion that was granted sought time billed by DRLC attorneys at

26     2014 historical hourly rates of $680 for a 1987 graduate, $550 for a 2003 graduate,

27     $375 for a 2010 graduate, and an hourly rate of $230 for law clerks. *Id.* at pg.6.

28     •   *Greater Los Angeles Agency on Deafness, Inc. et al. v. Krikorian Premiere*

1      *Theaters, LLC*, USDC Case No.  CV 13-07172 PSG (ASx), the United States

2      District Court for the Central District of California approved DRLC's 2015

3      historical rates in a class action which had systemic implications regarding access

4      to movie theaters for individuals who are deaf or hard of hearing. In particular, the

5      court found reasonable a 2015 hourly rate of $500 for a 2005 graduate. Attached as

6      Exhibit G is a true and correct copy of that order.

7      9.    DRLC's hourly rates for staff on this case are set forth in the chart below at

8  paragraph 53. This chart lists the billing attorney, year of law school graduation, and pertinent

9  hourly rate for all DRLC staff for whom fees are requested in this matter.  Based on the

10  information that I reviewed in working with the Managing Attorney to set our hourly rates, I

11  believe our rates to be consistent with the current prevailing market rates charged by other

12  attorneys with comparable skills, qualifications, experience, and reputation in the greater Los

Angeles area.

13      **DRLC'S ATTORNEYS AND THEIR ROLES**

14      10.    In the instant case, DRLC did outreach and investigation necessary for prosecution

15  of this case, worked on the amended complaint, discrete discovery, motion work and participated

16  in settlement negotiations and strategy discussions.

17      11.    In addition to myself, DRLC is seeking compensation for Anna Rivera, Kara

18  Janssen, Mallory Sepler-King, and Jonathan Gibson.  DRLC is not billing for former staff

19  attorney Richard Diaz, law clerks and legal assistants. Further, DRLC's fees and costs in this

20  matter do not include any time or expense related to Plaintiff Everett Jewett's individual claims.

21      12.    I am the Director of Litigation at the DRLC.  As the Director of Litigation, I

22  supervise all litigation efforts by DRLC, including overseeing high impact and class action cases.

23  This includes coordinating, supervising and providing substantive expertise, support and training

24  to attorney staff and legal assistants, as well as law clerks and volunteers in DRLC's two offices.

25  I am also responsible for negotiating co-counseling agreements, outreach, grant writing, retaining

26  experts, and budgeting. I participate in legislative and regulatory comment on disability rights

27  issues on behalf of DRLC. I am also a frequent lecturer and panelist on subjects relating to

28  disability rights, including litigation and practice, and special education law and policy.  I am also

1    the Interim Co-Director of DRLC's Clinical Program at the University of La Verne College of

2    Law.

3         13.      A true and correct copy of my resume is attached hereto as Exhibit H.

4         14.      I am a 2003 graduate of Columbia Law School and 2000 graduate of the

5    University of California, Irvine. While in law school, I was involved with Columbia's Tenants

6    Rights Project and the Unemployment Action Committee. I was also a member of the Columbia

7    Human Rights Law Review and the Columbia Journal of Gender and the Law. I graduated *magna*

8    *cum laude* and with departmental honors from the University of California, Irvine, where I

9    received Bachelor of Arts degrees in Criminology, Law & Society, and Sociology. I am a

10    member of Phi Beta Kappa, Golden Key National Honor Society.  I am also a member of the

11    Disability Rights Bar Association (DRBA), California Association of Parent Child Advocacy

12    Law Group (CAPCALaw), and Directors of Litigation and Advocacy (DoLA) section of the

13    Legal Aid Association of California (LAAC).

14         15.      After law school, from late 2004 through early 2005, I worked as a legal

15    representative for MACS Copy and Interpreting Inc., where my work focused primarily on

16    worker's compensation matters. In early 2005, I joined DRLC and held various positions until I

17    left in late 2008.  These positions included being an Education Advocate, Staff Attorney,

18    Associate Director and ultimately Director of the Education Advocacy Program. During 2005-

19    2008, my work was exclusively on behalf of people with disabilities, with a focus on matters on

20    behalf of students with disabilities.  I worked on cases at the administrative and federal court

21    level. I also regularly lectured and trained on issues relating to individuals with disabilities,

22    including participating in legislative and regulatory comment on behalf of the organization.  By

23    way of example, I was an Adjunct Professor at Loyola Marymount University in Los Angeles

24    where I taught an upper division Special Education and the Law course; guest lectured at Loyola

25    Law School's Disability Rights and Special Education Law class; and wrote articles related to the

26    rights of students with disabilities. In my capacity as Director of the Education Advocacy

27    program, I also supervised attorney staff and managed DRLC's Education Advocacy Program's

28    externship program. In 2007, during my tenure as the Director, the Education Advocacy Program

1   along with DRLC's litigation program was recognized as the Agency Winner at the National

2   Association of Counsel for Children in Keystone, Colorado for improving the educational

3   opportunity for students with disabilities held in detention facilities and for improving the access

4   to courts for individuals with disabilities.

5         16.     In late 2008, I left DRLC to become an associate with the former law firm of

6   Traber & Voorhees, a prominent civil rights litigation firm in Pasadena, California. Traber &

7   Voorhees recently dissolved after one its founding partners, Theresa M. Traber, was appointed to

8   the bench.  At Traber & Voorhees, I focused primarily on discrimination cases in the

9   employment, education, and custodial context.  I handled matters at the state, federal and state

10  appellate level.  I remained an associate with Traber & Voorhees until early 2011.

11        17.     In early 2011, I returned to work with DRLC as the sole Senior Staff Attorney in

12  the litigation program.  In addition to focusing on impact and complex litigation, I co-authored an

13  article with Paula Pearlman, Esq. for the 2011-2012 Ability magazine issue, titled "A boy and his

14  dog" regarding a case where I was lead counsel from DRLC.  To my knowledge, it was the first

15  case of its kind where a federal court judge held that a student with autism had the right to attend

16  school with his service dog. Until approximately 2013, I also served as an Adjunct Professor at

17  Loyola Marymount University where I taught an upper division Special Education and the Law

18  course.  I also oversaw DRLC's externship program with Loyola Law School until that

19  partnership ended. In 2015, I was promoted to Managing Attorney of the litigation department,

20  and in late 2016, I was again promoted, this time to Director of Litigation, a position that I still

21  hold.

22        18.     Throughout my career, I have focused on complex civil rights cases in the areas of

23  disability law, housing, education and employment. I have worked exclusively on high impact

24  cases relating to the rights of persons with disabilities for over ten years.  During this time, I have

25  litigated various cases in the area of disability rights, including individual, multi-plaintiff and

26  class action cases. These cases have primarily been against public entities, and most often with

27  the goal of system reform. I have also supervised attorneys in numerous lawsuits affecting the

28  rights of people with disabilities. As a result, I have developed extensive knowledge in the area of

8

1    disability rights cases, cases requiring policy reform, and cases involving public entities.

2    Representative cases that I have worked on while at DRLC include:

3        • *Ochoa et al. v. City of Long Beach et al.*, USDC Case No. CV 14-04307 DSF

4          (FFMx), a successfully settled class action case challenging the City of Long

5          Beach's failure to maintain pedestrian right of ways, including sidewalks and curb

6          ramps for people with mobility disabilities. The class action is currently in the

7          monitoring stage.

8        • *Michael Garcia et al. v. Los Angeles County Sheriff's Dept.*, USDC Case No. CV-

9          09-08943 DMG (SHx), a successfully settled class action case with three

10         defendants resulting in access to special education for individuals with disabilities

11         held at the Los Angeles County Jail. Litigation as to defendant, California

12         Department of Education is ongoing. The class action is currently in the

13         monitoring stage as two defendants.

14       • *Johnson et al. v. Los Angeles County Sheriff's Department et al.*, USDC Case No.

15         CV 08-03515 DDP (SHx), a successfully settled class action case challenging the

16         Los Angeles Sheriff's Department alleged failure to provide inmates with mobility

17         impairments to obtain program and physical access while in Los Angeles County

18         Jail. This class action is currently in the monitoring stage.

19       • *Gundry et al. v. Long Beach Unified School District*, USDC Case No. 2:15-CV-

20         05490 GW (PJWx), a successfully settled multi-plaintiff case addressing Long

21         Beach Unified School District's alleged failure to provide transition services for

22         students with cognitive disabilities.

23       • *M.R. v. Los Angeles Unified School District*, USDC Case No. 2:14-CV-09811-AB

24         (RZx), a successfully settled federal case addressing the need to provide program

25         and physical access to a student with a mobility disability.

26       • *C.S. v Public Safety Academy of San Bernardino and San Bernardino Unified*

27         *School District*, USDC Case No. EDCV-14-00941 RGK (DTBx), a successfully

28         settled case of first impression in California federal court challenging charter

9

1          school's use of a 2.0 grade policy to exclude students with disabilities.

2          • *Bresolin v. Los Angeles Unified School District*, USDC Case No. CV-10-78888

3          DSF (AJWx), a successfully settled case on behalf of parent with mobility

4          disability addressing need to provide program and physical access to her child's

5          school.

6          • *Guzman v. California Department of Corrections and Friends Outside,* USDC

7          Case Number 5:13-CV-00175 AB (DTBx), a successfully settled case on behalf of

8          plaintiff with a mobility disability addressing the need for accessible services,

9          programs and activities at the California Department of Corrections and

10         Rehabilitation.

11         • *S.T. v. Compton Unified School District*, USDC Case Number CV-13-1889 PSG

12         (PLAx), a successfully settled case on behalf of a plaintiff with a mobility

13         disability resulting in program and facility changes to ensure that Compton Unified

14         School District provides program and physical access to students with mobility

15         disabilities.

16         • *C.C. v. Cypress School District et al*, USDC Case Number CV 11-00352 AG

17         (RNBx), a successfully settled case of first impression in federal court allowing a

18         student with autism to attend school with his service dog; preliminary injunction

19         motion granted in favor of Plaintiff.

20         • *Zepeda et al., v. Los Angeles Unified School District,* USDC Case Number CV-10-

21         08034 JFW (FMOx), a successfully settled multi-plaintiff case addressing Los

22         Angeles Unified School District's alleged failure to provide accessible

23         transportation for students with disabilities to Grad Night and other school related

24         events.

25     19.    In the instant matter, I began work on this case since DRLC was retained. I

26  supervised a team of attorneys from DRLC in the work necessary to prosecute this case and

27  negotiate the class settlement. I assisted in drafting, reviewing and revising discovery, worked on

28  settlement, and engaged in strategy sessions. I also worked on motions, worked with experts, and

10

DECLARATION OF MARONEL BARAJAS IN SUPPORT OF PLAINTIFFS' MOTION FOR
REASONABLE ATTORNEYS' FEES AND COSTS
Case No. 2:13-cv-0882 MCE AC (PC)
4/1d6t8 Barajas declaration - EXHIBIT 4

1   participated in regular conferences calls with co-counsel to discuss strategy and tasks.

2         20.    DRLC seeks compensation for my work at an hourly rate of $715, which is

3   DRLC's 2018 billing rate for an attorney of my experience. A 2017 historical hourly rate of $675

4   was previously approved for my work in *Michael Garcia v. Los Angeles County Sheriff's Dept.*,

5   USDC Case No. CV-09-08943 DMG (SHx); that order and related declaration are attached hereto

6   as Exhibits A and B.

7         21.    Anna Rivera worked on this matter as a Managing Attorney at DRLC, a position

8   she currently holds. Ms. Rivera is the only Managing attorney with DRLC.  Ms. Rivera graduated

9   from Southwestern Law School in 2005.  Ms. Rivera first joined DRLC in 2006 as a Staff

10  Attorney in the Education Advocacy Program. Her case work dealt exclusively with disability

11  rights cases, with a focus on cases on behalf of students with disabilities.  Ms. Rivera worked on

12  cases at the administrative and federal court level. She also guest lectured on education and

13  disability rights issues. A true and correct copy of Ms. Rivera's resume is attached hereto as

14  Exhibit I.

15        22.    Ms. Rivera left DRLC in late 2009 to become an associate at the law firm of

16  Martin & Martin in Los Angeles, California. I understand that at Martin & Martin, Ms. Rivera

17  focused on individual education cases in administrative hearing proceedings and individual

18  employment discrimination cases in state court.

19        23.    Ms. Rivera returned to work with DRLC in 2011 as a Staff Attorney.  She was

20  promoted to Senior Staff Attorney in 2015. In early 2018, she was promoted again, this time to

21  Managing Attorney, a position that she still holds. Ms. Rivera has been involved in litigating,

22  negotiating and supervising attorneys in numerous lawsuits affecting the rights of people with

23  disabilities.  She taught a Special Education and the Law class at Loyola Marymount University

24  as well as guest-lectured on educational law and policy. Examples of Ms. Rivera's cases include:

25       •   *Garcia et al. v. Los Angeles Sheriff's Dept. et al*, USDC Case Number CV-09-

26           08943 DMG (SHx), a successfully settled class action case challenging the City

27           of Los Angeles' failure to maintain pedestrian right of ways, including sidewalks

28           and curb ramps for people with mobility disabilities. The class action is currently

11

1          in the monitoring stage.

2          • *Meister et al. v. Hawthorne Police Department*, USDC Case Number CV-14-

3          1096 MWF (SHx), a successfully settled multi-plaintiff lawsuit addressing failure

4          to provide effective communication to individuals who are deaf and hard of

5          hearing by the Hawthorne Police Department. This case is currently in the

6          monitoring stage.

7          • *Greater Los Angeles Agency on Deafness, Inc. et al v. Krikorian Premiere*

8          *Theaters, LLC*, USDC Case No. CV 13-07172-PSG (ASx), a successfully settled

9          class action case addressing Krikorian Theaters' alleged failure to provide close

10          captioning services to individuals who are deaf and/or hard of hearing by a movie

11          theater. The class action is currently in the monitoring stage.

12          • *S.T. v. Compton Unified School District*, USDC Case Number CV-13-1889 PSG

13          (PLAx), a successfully settled case on behalf of a plaintiff with a mobility

14          disability resulting in program and facility changes to ensure that Compton

15          Unified School District provides program and physical access to students with

16          mobility disabilities.

17          • *Goldkorn v. County of Riverside*, USDC Case Number CV 14-982 RSWL (SHx),

18          a successfully settled case on behalf of a plaintiff with a mobility disability

19          resulting in program and facility changes to ensure that Riverside Regional

20          County Regional Medical Center programs program and physical access visitors

21          and patients with a mobility disability.

22          • *Ms. Wheelchair California v. Starline Tours*, USDC No. CV11-02620 JFW

23          (CWx), a successfully settled class action resulting in company-wide change in

24          policy governing accessible tours and seating.

25      24.     In the instant matter, Ms. Rivera began working on this matter in late 2015. She

26 assisted on drafting and reviewing discovery, worked on settlement, engaged in strategy sessions,

27 and participated in clients meetings. Ms. Rivera also worked on motions, including drafting,

28 reviewing and revising them. Ms. Rivera also worked with experts on this matter. And, she

1    conferred within DRLC and participated in regular conference calls with co-counsel to discuss

2    strategy and tasks.

3         25.    DRLC seeks compensation for Ms. Rivera at an hourly rate of $690, which is

4    DRLC's 2018 billing rate for an attorney of her experience.  A 2015 historical hourly rate of $500

5    was previously approved for Ms. Rivera in *Greater Los Angeles Agency on Deafness, Inc. et al v.*

6    *Krikorian Premiere Theaters, LLC*, Case No.  CV 13-07172-PSG (ASx) that order is attached

7    hereto as Exhibit G.

8         26.    Mallory Sepler-King worked on this matter as a Staff Attorney at DRLC, a

9    position she currently holds.  Ms. Sepler-King graduated from the University of California, Irvine

10   School of Law in 2013. Since joining DRLC in June 2017, Ms. Sepler-King has focused on class

11   action and impact litigation centered on physical and programmatic accessibility for individuals

12   with disabilities, including special education matters.

13        27.    Prior to joining the DRLC, Ms. Sepler-King was an associate attorney at a

14   plaintiff-side employment firm, where she worked exclusively on employment litigation, with a

15   focus on cases of workplace discrimination.  She has also held a fellowship with the California

16   Department of Fair Employment and Housing ("DFEH"), where she assisted the Fair Housing

17   Council to draft comprehensive anti-discrimination housing regulations to enact the provisions of

18   the Fair Housing Act. While at the DFEH, Ms. Sepler-King authored numerous articles on state

19   and federal laws regarding assistive animals in housing, employment, and public

20   accommodations. A true and correct copy of her resume is attached hereto as Exhibit J.

21        28.    In the instant matter, Ms. Sepler-King conducted legal research, worked on

22   settlement, obtained declarations, engaged in strategy sessions, and worked on plaintiffs'

23   preliminary approval motion. She also conferred within DRLC and participated in regular

24   conference calls with co-counsel to discuss strategy and tasks.

25        29.    DRLC seeks compensation for Ms. Sepler-King at an hourly rate of $475, which is

26   DRLC's 2018 billing rate for an attorney of her experience.

27        30.    Kara Janssen was a Staff Attorney with the litigation program when she worked on

28   this matter. While at DRLC, Ms. Janssen focused on class action and impact litigation centered

13

1    on physical and programmatic accessibility for individuals with disabilities.  I understand that Ms.

2    Janssen graduated from New York University School of Law in 2010. I understand that prior to

3    joining DRLC she was an associate at Disability Rights Advocates where she managed a caseload

4    involving civil rights cases in state and federal court and litigated a wide variety of disability-

5    related civil rights issues. Ms. Janssen left DRLC to join Rosen Bien Galvan & Grunfeld LLP

6    where she continues to practice civil rights litigation. A true and correct copy of her resume is

7    attached hereto as Exhibit K.

8         31.    In the instant matter, Ms. Janssen conducted outreach and engaged in interviews

9    with affected individuals throughout the litigation.  She assisted on drafting and reviewing

10   discovery, including attending a site inspection.  Ms. Janssen also handled discovery disputes,

11   including engaging in meet and confers with opposing counsel.  She engaged in strategy sessions,

12   and participated in clients meetings, identified and worked with bona fides, and worked with

13   experts. She also conferred within DRLC and participated in regular conference calls with co-

14   counsel to discuss strategy and tasks.

15        32.    DRLC seeks compensation for Ms. Janssen at an hourly rate of $565, which is

16   DRLC's 2018 billing rate for an attorney of her experience.

17        33.    Jonathan Gibson is a 2014 graduate from Georgetown University Law Center.

18   When he worked on this matter, he was a Staff Attorney with the litigation department.  While at

19   DRLC, Mr. Gibson focused on class action and impact litigation centered on physical and

20   programmatic accessibility for individuals with disabilities. Prior to his work with DRLC, Mr.

21   Gibson was a Staff Attorney with Greater Bakersfield Legal Assistance. In the instant matter, Mr.

22   Gibson assisted on drafting and reviewing discovery, conducted legal research and amended

23   complaint and motion work. He also conferred within DRLC to discuss strategy and tasks.

24        34.    Mr. Gibson left DRLC to join Public Law Center where he continues to practice in

25   the public interest. A true and correct copy of his resume is attached hereto as Exhibit L.

26        35.    DRLC seeks compensation for Mr. Gibson at an hourly rate of $450, which is

27   DRLC's 2018 billing rate for an attorney of his experience.

28        36.    Richard Diaz is a 2012 graduate of Southwestern University School of Law. Mr.

14

1   Diaz joined DRLC as a staff attorney in 2013. He then held the position of Kirkland and Ellis

2   Fellow from 2014 to 2015. While at DRLC Mr. Diaz's case work focused on class action and

3   impact litigation centered on physical and programmatic accessibility for individuals with

4   disabilities.  In this litigation, Mr. Diaz conducted significant investigation work, research,

5   assisted in drafting initial amended complaint.  A true and correct copy of Mr. Diaz's resume is

6   attached hereto as Exhibit M. DRLC's hourly rate for an attorney of Mr. Diaz's experience is

7   $545.

8       37.    A 2014 historical hourly rate of $325 was previously approved for Mr. Diaz in

9   *Peter Johnson v. Los Angeles County Sheriff's Department*, Case No. CV 08-03515 DDP (SHx);

10  that order and related declaration are attached hereto as Exhibits D and E. In an exercise of billing

11  judgement, DRLC is not seeking compensation for Mr. Diaz's work in the instant matter. This cut

12  represents 14.9 hours of attorney time for a value of $8,120.50.

13      38.    DRLC regularly works, directs and supports law clerks to, among other things,

14  assist with conducting legal and factual research, drafting memoranda, contact with clients, as

15  well as synthesis of facts and data. DRLC's law clerks are law students who primarily attend law

16  school within the greater Los Angeles area. DRLC law clerks primarily performed legal research

17  and other post filing work in this matter. DRLC's hourly rate for law clerks is $260.  In an

18  exercise of billing judgment, DRLC is not seeking compensation for law clerk time in the instant

19  matter. This cut represents 6.9 hours of law clerk for a value of $1,794.00.

20      39.    DRLC's legal assistants also performed substantial work in this case necessary for

21  discovery and litigation of this matter. DRLC's hourly rate for legal assistants is $255.  A 2017

22  historical hourly rate of $250 was previously approved for DRLC's legal assistants in *Michael*

23  *Garcia v. Los Angeles County Sheriff's Dept.*, USDC Case No. CV-09-08943 DMG (SHx), that

24  order and related declaration are attached hereto as Exhibits A and B. In an exercise of billing

25  judgment, DRLC is not seeking compensation for time spent by legal assistants in the instant

26  matter. This cut represents 66.1 hours of legal assistant time for a value of $16,855.50.

27      40.    In my experience, the manner in which DRLC staffed this case is standard for a

28  case of this size and importance. Further, DRLC was careful and thorough throughout the case,

15

1    and staffed and prosecuted this action in the manner that best protected class interests.

2        41.    DRLC's representation of Plaintiffs is on a wholly contingent basis, as it is with all

3    of its clients. DRLC devoted substantial resources to this matter, and has received no payment for

4    any of the over 700 hours of work done that was necessary to fully litigate this case and achieve

5    the historical settlement at hand.

6        42.    Each year, DRLC is called upon to represent significantly more individuals with

7    disabilities than we can actually represent.  Due to the complexity of this case, and hours required

8    to be spent by the Director of Litigation as well as the only Managing Attorney in the litigation

9    department, and due to that substantial time commitment, DRLC was unable to investigate several

10   new matters even when they seemed meritorious.  This resulted in DRLC being unable to

11   investigate and take potentially meritorious cases.

12       43.    DRLC made every effort to litigate this matter efficiently by coordinating our work,

13   minimizing duplication, and assigning tasks in a time and cost efficient manner, based on the time

14   keepers' experience levels and talents.

15                          **Method of Recording Time**

16       44.    DRLC's method of recording attorneys' fees consists of recording time spent on

17   particular cases as contemporaneously as possible with the actual expenditure of the time, in tenth

18   of an hour increments, and submitting those time records in the regular course of business.

19   DRLC's law clerks and support staff do the same.

20                          **Exercise of Billing Judgment**

21       45.    In the exercise of billing judgment, I have reviewed and revised the billing records

22   on an entry-by-entry basis to eliminate inefficiencies and other billing entries. In total, DRLC has

23   no-charged 97.9 hours. These cuts represent 24.9 hours of attorney time, 66.1 hours of legal

24   support time, and 6.9 hours of law clerk time.  Stated differently, DRLC's exercise of billing

25   discretion cut nearly 14% of total hours spent on this matter, for a value of $33,512.50.

26       46.    Further, DRLC's fees and costs in this matter do not include any time or expense

27   related to Plaintiff Everett Jewett's individual claims. The total time and costs associated with

28   Plaintiff Everett Jewett's individual claims is not calculated in the above discount associated with

1   Plaintiffs' requested Lodestar.

2      47.    First, I reviewed all of the time on an entry-by-entry basis and no charged or

3   deleted time to the extent that particular time entries by DRLC reflected arguably unproductive or

4   duplicative hours. I did so as to eliminate any potential inefficiencies arising from the use of

5   lawyers who were unfamiliar with the case and who would require the expenditure of time to

6   achieve working familiarity with the claims. I also made these deletions to minimize the

7   possibility of billing based on overstaffing and to minimize any overbilling resulting from the use

8   of additional attorneys.  For example, where more than one attorney attended a particular case-

9   related event, Class Counsel billed for only one attorney unless the other attorney's presence was

10   warranted based their participation and contribution

11      48.    Additionally, we also reduced or excised time entries that were excessive in

12   relation to the task at issue.  And finally, Class Counsel eliminated time entries for a number of

13   tasks that were administrative in nature.

14      49.    I also no charged all time expended on the matter for work performed by Richard

15   Diaz, law clerks and legal assistants.

16      50.    I have further applied a 5% across-the-board cut on attorney fees to ensure that this

17   request does not include any time that was unnecessary, redundant, or administrative.  This is a

18   cut of $18,887.05.

19                                        **Requested Fees**

20      51.    DRLC's final requested lodestar for work related to the prosecution and settlement

21   of this class action ("merit-related lodestar") through March 31, 2018 is $358,853.95 for 622.80

22   hours. A true and correct copy of DRLC's billing statement is attached hereto as Exhibit N.

23      52.    In my opinion, DRLC's hours are reasonable and all were necessary to litigate this

24   case in light of the large scope of this case, the almost three and a half year period of

25   litigation and the excellent results achieved.

26      53.    The chart below provides DRLC's timekeepers in this matter including hours and

27   total fees sought.

28

| NAME | GRADUATION DATE | RATE | TOTAL HOURS | TOTAL FEES |
|------|-----------------|------|-------------|------------|

17

| | | | | |
|---|---|---|---|---|
| Maronel Barajas, Director of Litigation | 2003 | $715 | 117.9 | $84,298.50 |
| Anna Rivera, Managing Attorney | 2005 | $690 | 145 | $100,050 |
| Kara Janssen, Staff Attorney | 2010 | $565 | 259 | $146,335 |
| Mallory Sepler-King, Staff Attorney | 2013 | $475 | 66.1 | $31,397.50 |
| Jonathan Gibson, Staff Attorney | 2014 | $450 | 34.8 | $15,660 |
| Richard Diaz, Staff Attorney | 2012 | $545 | 149 | $0 |
| Law Clerks | N/A | $260 | 6.9 | $0 |
| Legal Assistants | N/A | $255 | 66.1 | $0 |
| | | | | |
| **DRLC Total Fees** | | | | $377,741 |
| **DRLC's Final Merit-Related Lodestar** | | | | $358,853.95 |

54. DRLC has also expended time through March 31, 2018 on the preparation of this Motion in the amount of $17,109 ("fees lodestar"). A true and correct copy of DRLC's billing statement is attached hereto as Exhibit O.

**Requested Costs**

55. Plaintiffs' costs are well-documented and reasonable for litigation of this kind.

56. The costs incurred by DRLC were necessary for the prosecution of this litigation, and are consistent with a matter of this scope and complexity. These costs include: process serving fees; travel expenses; photocopying and mailing expenses; and other reasonable litigation-related costs. In the exercise of billing judgment, I have reviewed and revised the costs records on an entry-by-entry basis to eliminate or no charge costs to reduce inefficiencies and other billing.

57. DRLC has incurred the following categories of expenses: Legal Services, such as couriers, service of process and filing fees; Travel, such as mileage, lodging, and airfare; Parking; and Photocopying expenses. For expenses, DRLC uses a computerized billing system, Sage Timeslips, in the regular course of business. DRLC then generates a report from Sage Timeslips that reflects the expenses in each case, in the regular course of business. The total amount of these expenses in this matter for expenses related to the prosecution and settlement of this class action is $8,557.89. A true and correct copy of the total expenses related to the prosecution and settlement of this class action as generated by the Sage Timeslips system and exported in Excel is attached

1    hereto as Exhibit P. DRLC has also expended $30.19 for attendant expenses and costs related to

2    this Motion through March 31, 2018. A true and correct copy of the total expenses related to this

3    Motion as generated by the Sage Timeslips system and exported in Excel is attached hereto as

4    Exhibit Q.

5         58.    As to the category of Travel Expenses: DRLC staff is reimbursed for reasonable

6    and actual expenses for mileage, airfare, lodging, and meals related to each case. DRLC staff may

7    use their personal vehicle for business purposes if it is cost effective to do so. For mileage, DRLC

8    reimburses staff at the standard mileage rate as set by the Internal Revenue Service. When

9    reimbursing DRLC staff for reasonable and actual meal expenses, it is DRLC's practice for staff to

10   submit requests for reimbursement detailing each expense. When reimbursing DRLC staff for

11   expenses, such as mileage, parking, airfare, lodging, and meal expenses, it is DRLC's practice for

12   staff to submit requests for reimbursement detailing each expense. After approval, those expenses

13   are then recorded in our billing system, Sage Timeslips, in the regular course of business. In this

14   matter the total amount of travel expenses related to the prosecution and settlement of this class

15   action was $6,182.65. DRLC further expended $4.36 of travel charges for attendant expenses and

16   costs related to this Motion through March 31, 2018

17        59.    As to the category of Parking: DRLC staff is reimbursed for reasonable and actual

18   parking and toll expenses. When reimbursing DRLC staff for reasonable and actual parking and

19   toll expense, it is DRLC's practice for staff to submit requests for reimbursement detailing each

20   expense. After approval, those expenses are then recorded in our billing system, Sage Timeslips, in

21   the regular course of business. In this matter the total amount of parking and toll expenses related

22   to the prosecution and settlement of this class action was $326. DRLC did not incur any parking

23   expenses related to this Motion through March 31, 2018

24        60.    As to the category of Legal Services: All reported expenses pertain to services

25   necessary to litigation of this case, including service of process, couriers, Pacer fees, and fees

26   related to court filings. In this matter the total amount of legal services charges was $1,449.15.

27   DRLC did not incur any legal services charges related to this Motion through March 31, 2018

28        61.    All reported photocopying and mailing expenses pertain to services necessary to the

19

1  litigation of this case. In this matter the total amount of photocopying and shipping chargers was

2  $600.09. DRLC further expended $25.83 in photocopying and mailing charges for attendant

3  expenses and costs related to this Motion through March 31, 2018

4      62.    I have personally reviewed all the entries and calculations in this declaration. Any

5  calculation errors in the totals of hours, fees, costs or expenses are inadvertent.

6      I declare under penalty of perjury under the laws of the United States of America and the

7  State of California that the foregoing is true and correct.

8

9      Executed on April 10, 2018 in Fullerton, California.

10

11                                      Maronel Barajas
                                        Attorneys for Plaintiffs and the Class
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF MARONEL BARAJAS IN SUPPORT OF PLAINTIFFS' MOTION FOR
REASONABLE ATTORNEYS' FEES AND COSTS
Case No. 2:13-cv-0882 MCE AC (PC)
4/19618 Barajas declaration - EXHIBIT 4

1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

11

| XUE LU, JIE HAO, | Case No.: 01-01758-CBM (Ex) |
|---|---|
| Plaintiffs, | |
| vs. | **ORDER RE: ATTORNEYS' FEES** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

16    The matters before the Court are: (1) the parties' briefs regarding attorneys'
17 fees following the Ninth Circuit's remand (Dkt. Nos. 335, 336, 341, 342); and (2)
18 Plaintiffs' Motion For Award of Reasonable Attorneys' Fees on Appeal (the
19 "Motion") (Dkt. No. 338).

20       **I.    FACTUAL AND PROCEDURAL HISTORY**

21    Plaintiffs Xue Lu ("Lu") and Jie Hao ("Hao") filed suit in 2001 against the
22 United States of America (the "Government") and individual federal officers.
23 Plaintiffs, who are Chinese asylum seekers, alleged that Thomas Powell, a former
24 asylum officer, requested money and sexual favors from them as a requisite to
25 granting their respective asylum applications.

26    Following a bench trial, the Court issued Findings of Fact and Conclusions
27 of Law in favor of Plaintiffs. (Dkt. No. 278.) Judgment was entered against the
28 Government and in favor of Plaintiffs Lu and Hao on both Plaintiffs' claims under

1

1   the Federal Torts Claim Act ("FTCA"), and $500,000 in damages was awarded to

2   Lu, and $700,000 in damages was awarded to Hao. (Dkt. No. 279.)

3        The Court also awarded $881,675.75 in attorneys' fees to Plaintiffs. (Dkt.

4   No. 318, the "Fee Order".) The Court held that Plaintiffs' counsel were entitled to

5   reasonable market rates for the period commencing June 8, 2008 under the Equal

6   Access to Justice Act ("EAJA") based on the following four findings of bad faith:

7   (1) the Government's failure to come to Hao's aid after Powell touched her

8   buttock despite promising to protect Hao if Powell touched her, was bad faith; (2)

9   the Government's defense and arguments regarding Plaintiff Hao's

10  consent/assumption of risk constituted bad faith; (3) the Government's seven-year

11  delay in Plaintiff Hao's asylum case—which lasted from the beginning of the

12  litigation until 2007 and prevented Hao from reuniting with her family—

13  constituted bad faith because Defendant could have adjudicated the asylum case

14  while waiting for Hao to testify at Powell's criminal trial; and (4) the

15  Government's continued argument that Plaintiffs' claims are barred by the

16  intentional tort exception under the FTCA—which the Government raised even

17  after the Ninth Circuit held otherwise in *Lu v. Powell*, 621 F.3d 944, 950 (9th Cir.

18  2010)—constituted bad faith. (Fee Order at 5-8.) Based on these four findings of

19  bad faith, the Court found, under a totality of circumstances, that from June 8,

20  2000 forward—when Plaintiff Hao completed the sting operation with Department

21  of Justice officials—the Government's bad faith affected all of the "various phases

22  of litigation," including the Government's pre-litigation conduct and conduct

23  during the litigation. (Fee Order at 5:16-20; 7:21-8:1.)

24       The Government appealed the judgment entered against it and the Fee

25  Order. On January 27, 2016, the Ninth Circuit affirmed this Court's damages

26  award, but vacated and remanded the fee award for reconsideration of the amount.

27  *Lu v. U.S.*, 638 F. App'x 614 (9th Cir. 2016). The Ninth Circuit found the Court's

28  finding that the Government argued in bad faith that the intentional tort exception

2

barred Plaintiffs' claims in spite of the Ninth Circuit's decision in the first appeal[1] was "without support in the record." *Id.* at 618.[2] In light of its reversal of one of the Court's specific findings of bad faith, the Ninth Circuit vacated and remanded the fee award to allow the Court "to decide what, if any, changes should be made to the award of fees incurred after June 8, 2000." *Id.* at 619.[3]

## II. STATEMENT OF THE LAW

28 U.S.C. § 2412(b) of the Equal Access To Justice Act ("EAJA") provides that "a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States or any agency . . . of the United States . . . . The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law . . . ." The "liable under the common law provision has been used to allow awards of attorney fees at market rates in cases involving bad faith by the United States or an agency of the United States." *Brown v. Sullivan*, 916 F.2d 492, 495 (9th Cir. 1990) (internal quotations omitted). "The district court may award attorney fees at market rates for the entire course of litigation, including

---

[1] In the first appeal of this matter, the Ninth Circuit held that although the Government "is immune from liability for an assault or battery by its employee, . . . . [t]he emotional distress suffered as a result of the demand for sexual favors is an injury distinct from assault or battery." *Lu v. Powell*, 621 F.3d 944, 950 (9th Cir. 2010). In the second appeal, the Ninth Circuit concluded that "[w]henever the government presented an intentional tort exception-based theory, it provided a non-frivolous way to reconcile the argument with our previous decision," and that "it was proper for the government to use the intentional tort exception to counter Plaintiffs' claim that they could recover for the totality of Powell's conduct because his battery had been part and parcel of a 'viable' tort." *Lu v. U.S.*, 639 F. App'x at 618.

[2] The Ninth Circuit also found that the Court's finding that the last two years of delay between Plaintiff Hao receiving a fair asylum interview and being granted asylum was in bad faith was clear error because the delay occurred in the ordinary course of processing Hao's claim once it resumed in 2005. *Lu v. U.S.*, 638 F. App'x at 619.

[3] The Ninth Circuit also vacated an award of $4,113 in fees for work prior to June 8, 2000, reasoning the Court awarded those fees pursuant to 28 U.S.C. § 2412(d)(2)(A), which does not apply to tort actions. *Lu v. U.S.*, 638 F. App'x at 619 n.3 (citing 28 U.S.C. § 2412(d)(1)(A)). Accordingly, the Court does not award any fees for work performed prior to June 8, 2000.

3

1   time spent preparing, defending, and appealing . . . awards of attorneys' fees, if it

2   finds that the fees incurred during various phases of litigation are *in some way*

3   *traceable* to the [defendant's] bad faith." *Id.* at 497 (emphasis added). *See also*

4   *Rodriguez v. U.S.*, 542 F.3d 704, 713 (9th Cir. 2008). Accordingly, the Court

5   must determine the fees expended which are traceable to the three findings of bad

6   faith affirmed by the Ninth Circuit.[4]

7                    **III.   DISCUSSION**

8   **A.   Fees For Underlying Action**

9        The parties disagree as to whether any modification of this Court's original

10  $881,675.75 fee award is warranted on remand.[5]

11       The evidence submitted by Plaintiffs demonstrates $676,751.00 in fees

12  expended in the underlying action is traceable to one or more of the three findings

13  of bad faith by the Government, as set forth in Table 1. (*See* DeSimone Decl.,

14  Exs. A-J.)[6] The amount of traceable fees attributable to each attorney and staff

15  member is calculated in Tables A through I.[7]

16

---

17  [4] 28 U.S.C. § 2412(d), and *Commission, I.N.S. v. Jean*, 496 U.S. 154 (1990),
18  which held that a single finding that the government's position lacked substantial
    justification under § 2412(d) operates as a one-time threshold for fee eligibility,
19  are inapplicable here because this is a case "sounding in tort." *See* 28 U.S.C. §
    2412(d)(1)(A); *Lu v. U.S.*, 638 F. App'x at 619 n.3.

20  [5] The parties do not dispute that Plaintiffs are prevailing parties in the underlying
    action for purposes of § 2412(b).
21
    [6] The Court also finds the evidence demonstrates these fees were reasonably
22  expended.

23  [7] The Ninth Circuit remanded the case so that the Court "may consider what, if
    any, modification of the fee award is appropriate in light of this opinion." *Lu v.*
24  *U.S.*, 638 F. App'x at 618. The Circuit's opinion did not address Powell's
    prelitigation conduct since this Court made no finding as to such conduct for
25  purposes of finding bad faith under § 2412(b). Accordingly, Powell's pre-
    litigation conduct is irrelevant for purposes of determining fees. *See Firth v. U.S.*,
26  554 F.2d 990, 993 (9th Cir. 1977) ("When a case has been decided by an appellate
    court and remanded, the court to which it has been remanded must proceed in
27  accordance with the mandate and such law of the case as was established by the
    appellate court."); *Hongesmeier v. C.I.R.*, 621 F.3d 890, 899 (9th Cir. 2010) ("A
28  trial court is prohibited from giving relief beyond the scope of an appellate
    mandate.").

4

**Table 1:**

| Attorney or Staff | Fees |
|---|---|
| James DeSimone | $410,986.00 |
| Michael Seplow | $15,582.00 |
| Meneka Fernando | $161,816.00 |
| Courtney Abrams | $10,472.50 |
| Douglas Ingraham | $4,031.50 |
| Fatemeh Mashouf | $8,100.00 |
| Kunti Dudakia | $5,579.00 |
| Emma Huang | $20,079.50 |
| Bill Clifton | $4,252.50 |
| Do Kim | $35,852.00 |
| **TOTAL** | **$676,751.00** |

**Table A:**

| James DeSimone | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2013 | $725.00 | 134.7 | $97,657.50 |
| 2012 | $695.00 | 64.8 | $45,036.00 |
| 2011 | $675.00 | 44.4 | $29,970.00 |
| 2010 | $650.00 | 68.1 | $44,265.00 |
| 2009 | $625.00 | 103.9 | $64,937.50 |
| 2008 | $600.00 | 7.4 | $4,440.00 |
| 2007 | $585.00 | 16.7 | $9,769.50 |
| 2006 | $575.00 | 3.7 | $2,127.50 |
| 2005 | $550.00 | 87.4 | $48,070.00 |
| 2004 | $470.00 | 4.4 | $2,068.00 |
| 2002 | $385.00 | 77.8 | $29,953.00 |
| 2001 | $360.00 | 88.4 | $31,824.00 |
| 2000 | $310.00 | 2.8 | $868.00 |
| **TOTAL** | | **704.5** | **$410,986.00** |

///
///
///
///
///
///

**Table B:**

| Michael Seplow | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2012 | $630.00 | 0.4 | $252.00 |
| 2011 | $610.00 | 0.3 | $183.00 |
| 2010 | $590.00 | 1.7 | $1,003.00 |
| 2009 | $575.00 | 21.5 | $12,362.50 |
| 2005 | $440.00 | 0.6 | $264.00 |
| 2004 | $400.00 | 0.7 | $280.00 |
| 2002 | $325.00 | 1.5 | $487.50 |
| 2001 | $300.00 | 2.5 | $750.00 |
| TOTAL | | 29.2 | $15,582.00 |

**Table C:**

| Meneka Fernando | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2013 | $375.00 | 244.57 | $91,713.75 |
| 2012 | $325.00 | 172.13 | $55,942.25 |
| 2011 | $300.00 | 47.2 | $14,160.00 |
| TOTAL | | 463.9 | $161,816.00 |

**Table D:**

| Courtney Abrams | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2011 | $295.00[8] | 35.5 | $10,472.50 |
| TOTAL | | 35.5 | $10,472.50 |

**Table E:**

| Douglas Ingraham | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2011 | $515.00 | 2.9 | $1,493.50 |
| 2001 | $200.00 | 6.4 | $1,280.00 |
| 2000 | $170.00 | 7.4[9] | $1,258.00 |
| TOTAL | | 16.7 | $4,031.50 |

///

---

[8] The Court previously awarded fees for work performed by Abrams, Dudakia, Mashouf, Clifton, and Huang based on the "$125 per hour rate authorized by EAJA." (Fee Order at 9.) The $125 per hour statutory rate set forth in 28 U.S.C. § 2412(d)(2)(A)(ii), however, is inapplicable here because this is a case "sounding in tort." 28 U.S.C. § 2412(d); *Lu v. U.S.*, 638 F. App'x at 619 n.3. Accordingly, the Court awards fees based on the market rate for Abrams, Dudakia, Mashouf, Clifton, and Huang.

[9] The Court does not award fees for 4.2 hours of time expended by Ingraham prior to June 8, 2000. (*See* DeSimone Decl. Ex. E.)

6

**Table F:**

| Fatemeh Mashouf | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2012 | $300.00 | 27.0 | $8,100.00 |
| **TOTAL** | | **27.0** | **$8,100.00** |

**Table G:**

| Kunti Dudakia | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2013 | $350.00 | 15.94 | $5,579.00 |
| **TOTAL** | | **15.94** | **$5,579.00** |

**Table H:**

| Emma Huang | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2013 | $175.00 | 64.91 | $11,359.25 |
| 2012 | $175.00 | 49.83 | $8,720.25 |
| **TOTAL** | | **114.74** | **$20,079.50** |

**Table I:**

| Bill Clifton | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2013 | $175.00 | 2.7 | $472.50 |
| 2012 | $175.00 | 5.8 | $1,015.00 |
| 2011 | $175.00 | 9.8 | $1,715.00 |
| 2010 | $175.00 | 6.0 | $1,050.00 |
| **TOTAL** | | **24.3** | **$4,252.50** |

**Table J:**

| Do Kim | Hourly Rate | Hours | Total |
|---|---|---|---|
| 2008 | $390.00 | 14.9 | $5,811.00 |
| 2005 | $290.00 | 99.4 | $28,826.00 |
| 2004 | $270.00 | 4.5 | $1,215.00 |
| **TOTAL** | | **118.8** | **$35,852.00** |

**B.   Fees on Appeal and Post Remand**

Plaintiffs' Motion also seeks an award of attorneys' fees expended on appeal and post remand.[10]

---

[10] The Court finds Plaintiffs are the prevailing parties on appeal. *See Lu v. U.S.*, 638 F. App'x at 619 (affirming the award of damages to Plaintiffs and awarding costs on appeal to Plaintiffs).

7

## 1.   Timeliness

The parties disagree as to whether Plaintiffs' Motion for fees on appeal is timely.  The Ninth Circuit issued a Mandate stating "[t]he judgment of this Court, entered on January 27, 2016, takes effect this date." (Dkt. No. 332.)  Based on applicable rules, Plaintiffs' deadline to file the Appeal Fees Motion was May 10, 2016.  *See* Ninth Circuit Rule 39-1.6; Supreme Court Rule 13; 28 U.S.C. § 2101(c); *Arulampalam v. Gonzales*, 399 F.3d 1087, 1090-91 (9th Cir. 2005). Since Plaintiffs filed the Appeal Fees Motion on May 26, 2016, the motion was untimely.

Having found the motion was untimely, the Court must determine whether there is good cause to extend the time to file the Appeal Fees Motion based on excusable neglect. Fed. R. Civ. P. 6(b).  The Supreme Court has held that determining whether there is excusable neglect is an "equitable" determination, which takes into account "all relevant circumstances surrounding the party's omission," including:  (1) prejudice to the other party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.  *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Applying the four *Pioneer* factors, the Court finds:  (1) there is no evidence of prejudice to the Government; (2) the delay (i.e., 16 days) was not lengthy and did not impact judicial proceedings; (3) the reason for the delay was Plaintiffs' counsel's misinterpretation of the law; and (4) there is no evidence of bad faith. Accordingly, the Court finds, on balance, Plaintiffs' delay in filing the Appeal Fees Motion was a result of excusable neglect. *See Pincay v. Andrews*, 389 F.3d 853, 855-60 (9th Cir. 2004) (en banc) (district court did not abuse its discretion in granting the defendant's motion for an extension of time to file a notice of appeal where there was no prejudice, the length of delay was small, the reason

8

1   { "pageset": "S9f"  for the delay was carelessness based on the attorney's reliance on a

2   paralegal's misreading of a rule, and there was no evidence of bad faith).

3       **2.    Fees Traceable To the Government's Bad Faith**

4       "The district court may award attorney fees at market rates for the entire

5   course of litigation, including time spent ***preparing, defending, and appealing the***

6   ***two awards of attorney fees***, if it finds that the fees incurred during the various

7   phases of litigation are in some way traceable to the Secretary's bad faith."

8   *Brown*, 916 F.2d at 497 (emphasis added) (citing *General Fed'n of Women's*

9   *Clubs v. Iron Gate Inn, Inc.,* 537 A.2d 1123, 1129-30 (D.C. App. 1988)

10  (upholding a trial court's award of attorneys' fees under the bad faith exception to

11  the American Rule, and stating "[t]he law is well established that, when fees are

12  available to the prevailing party, that party may also be awarded fees on fees, i.e.,

13  the reasonable expenses incurred in the recovery of its original costs and fees.").

14      The evidence submitted by Plaintiffs demonstrates $314,651.50 in fees

15  expended on the second appeal and post-remand is traceable to one or more of the

16  three findings of bad faith by the Government.[11] (*See* DeSimone Decl. Exs. K-Q.)

17  The amount of traceable fees attributable to each attorney and staff member is set

18  forth in Table 2.[12]

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25

26  [11] The evidence demonstrates, for example, that the Government continued to
    pursue its consent defense on appeal, which this Court found to be made in bad
27  faith.

    [12] The Court also finds the evidence demonstrates these fees were reasonably
28  expended.

9

**Table 2:**

| ATTORNEY | HOURLY RATE[13] | HOURS | FEE AMOUNT |
|---|---|---|---|
| Paul Hoffman | $900 | 27.3 | $24,570.00 |
| Michael D. Seplow | $760 | 84.0 | $63,840.00 |
| Raya Marinova | $420 | 168.7 | $70,854.00 |
| Kai Valenzuela | $200 | 28.6 | $5,720.00 |
| Emma Huang | $200 | 19.0 | $3,800.00 |
| V. James DeSimone | $825 | 175.5 | $144,787.50 |
| Ryan Hall | $300 | 3.6 | $1,080.00 |
| **TOTAL** | | **506.7** | **$314,651.50** |

## IV.  CONCLUSION

The Court **GRANTS** Plaintiffs' Motion For Award of Reasonable

Attorneys' Fees on Appeal.

The Court finds $676,751.00 in fees in the underlying action, and

$314,651.50 in fees on appeal and post-remand were reasonably expended and

traceable to one or more of the three findings of bad faith by the Government.

Accordingly, the Court awards $993,758 in attorneys' fees to Plaintiffs.

**IT IS SO ORDERED.**

DATED:  November 10, 2016.

_____

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

---

[13] Plaintiffs provide declarations regarding counsel's qualifications and experience, and a declaration from Carol Sobel who declares the requested hourly rates are within the range of current reasonable market rates. (DeSimone Decl. ¶¶ 2-12; Seplow Decl. ¶¶ 3-12; Sobel Decl. ¶¶ 3-32.) *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).  Accordingly, the Court finds the hourly rates set forth in Table 2 are reasonable based on the individual's experience and qualifications, and are consistent with current prevailing market rates in the community. *See U.S. v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107-08 (9th Cir. 2015).

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 21 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| EVERARDO CARRILLO; FERNANDO CHAVEZ; ERIC FLORES; JOSE MARTINEZ; ARCEO BALTAZAR ZAVALA; JUAN CHAVEZ, for themselves and all others similarly situated and the general public, | Nos. 12-55042, 12-55386<br><br>D.C. No. 11-CV-8557-CAS<br>Central District of California,<br>Los Angeles |
|         Plaintiffs - Appellees,<br><br>  v. | |
| SCHNEIDER LOGISTICS, INC.;<br>SCHNEIDER LOGISTICS TRANS-<br>LOADING AND DISTRIBUTION, INC., | ORDER |
|         Defendants - Appellants. | |

Before: Peter L. Shaw, Appellate Commissioner

I
Background

Everardo Carrillo and other warehouse employees (together, "Carrillo") filed

this action alleging labor law violations by Schneider Logistics, Inc. and Schneider

Logistics Transloading and Distribution, Inc. (together, "Schneider"). The district

court entered two preliminary injunctions, and Schneider appealed. This court

consolidated the appeals and affirmed the district court's decisions. *See Carrillo v.*

*Schneider Logistics, Inc.*, 501 Fed. App'x 713, 715, 717 (9th Cir. 2012).

MH/APPCOMM

1 2-55042, 12-55386

4/21/14 Carrillo Order - EXHIBIT 6

Carrillo filed a motion for attorneys' fees pursuant to the Fair Labor

Standards Act, 29 U.S.C. § 216(b); California Labor Code § 226(h); and California

Code of Civil Procedure § 1021.5.  Schneider filed an opposition, and Carrillo filed

a reply.

The court granted Carrillo's fee motion and referred to the Appellate

Commissioner the determination of the fee amount.  *See* 9th Cir. R. 39-1.9.  The

Appellate Commissioner referred the fee amount question to the Circuit Mediator.

After mediation concluded unsuccessfully, the Circuit Mediator returned the matter

to the Appellate Commissioner for disposition.

In the opposition to the fee motion, Schneider requested further briefing

regarding the fee amount.  The Appellate Commissioner allowed Schneider to file

a supplemental opposition and Carrillo to file a supplemental reply.

II
Analysis

Carrillo requests attorneys' fees in the amount of $203,935 for 337.7 hours

of 2012-14 work at 2013 hourly billing rates of $225 to $875 by attorneys, law

clerks, and paralegals from the law firms of Altshuler Berzon LLP in San

Francisco and Traber & Voorhees in Pasadena and the Service Employees

4/21/14 Carrillo Order - EXHIBIT 6
-108-

International Union ("SEIU") General Counsel's Office in Los Angeles, as follows:

| Timekeeper | Grad | Rate | Hours | Total |
|---|---|---|---|---|
| Michael Rubin (Altshuler Berzon LLP) | 1977 | $875 | 82.6 | $ 72,275 |
| Theresa Traber (Traber & Voorhees) | 1984 | $795 | 5.0 | $  3,975 |
| Jonathan Weissglass (Altshuler Berzon LLP) | 1994 | $725 | 102.4 | $ 74,240 |
| Janet Herold (SEIU) | 1995 | $650 | 3.0 | $  1,950 |
| Lauren Teukolsky (Traber & Voorhees) | 2000 | $570 | 2.6 | $  1,482 |
| Jennifer Sung (Altshuler Berzon LLP) | 2004 | $490 | 25.7 | $ 12,593 |
| Eric Brown (Altshuler Berzon LLP) | 2008 | $400 | 59.9 | $ 23,960 |
| Law Clerks (Altshuler Berzon LLP) | N/A | $250 | 29.9 | $  7,475 |
| Paralegals (Altshuler Berzon LLP) | N/A | $225 | 26.6 | $  5,985 |
| Total | | | 337.7 | $203,935 |

A.  Carrillo's Attorneys' Reasonable Hourly Rates

1.  Evidence Of Prevailing Market Rates

Schneider objects that Carrillo has not satisfied the burden to produce satisfactory evidence of prevailing rates in the relevant community, which Carrillo argues is the Central District of California. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454-55 (9th Cir. 2010). This objection lacks merit. Carrillo's evidence satisfies the burden to produce evidence of prevailing rates in the relevant community, whether it is the

Central District of California or the Ninth Circuit, and Schneider provides no

evidence to rebut the requested rates. *See United Steelworkers of Am. v. Phelps*

*Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Chalmers v. City of Los Angeles*,

796 F.2d 1205, 1214-15 (9th Cir. 1986).

     Carrillo provides a declaration by partner Rubin that the requested rates for

Altshuler Berzon LLP attorneys, law clerks, and paralegals are the firm's 2013

hourly billing rates for commercial litigation.  Rubin cites Ninth Circuit and Los

Angeles County Superior Court cases in which the rates have been charged to

clients, as well as Northern District of California, San Francisco County Superior

Court, San Diego County Superior Court, and Alameda County Superior Court

cases where the firm's 2008-12 billing rates were approved by courts.  Carrillo also

provides partner Traber's declaration that the requested rates are Traber &

Voorhees's 2013 hourly billing rates, and that the rates have been adjusted to be

close to but below current market rates in Los Angeles and San Francisco.  Traber

also states that federal and state courts have regularly approved the firm's

currently-in-effect rates.

     In addition, Carrillo provides a declaration by Fredric D. Woocher, a Los

Angeles law firm partner with more than 20 years of legal experience who

regularly monitors and compares hourly billing rates in Los Angeles.  Woocher

**4/21/14 Carrillo Order - EXHIBIT 6**

states that, "[b]ased on my knowledge of the hourly rates charged in the Los Angeles area and for appeals in the Ninth Circuit," Carrillo's requested 2013 hourly billing rates are "consistent with the rates charged by attorneys with similar experience and legal skills working complex litigation, including on appeals." Carrillo also provides a declaration by Carol Sobel, a Los Angeles civil rights lawyer with more than 30 years of experience, that was recently filed in the district court. Sobel states that her current hourly billing rate is $850 and that, in her experience, there is no longer any meaningful difference between billing rates for attorneys in Los Angeles and San Francisco. Sobel states that she personally knows Traber, Teukolsky, and Herold, and that she reviewed background materials for the attorneys she did not know personally. Based on that information, Sobel believes that the rates sought are "within the range of rates for attorneys of comparable skill, experience, and reputation in the Los Angeles legal market."

### 2. Current Or Historic Rates

Schneider objects that Carrillo's requested 2013 billing rates are higher than the 2012 billing rates that Carrillo requested as sanctions and that the district court awarded for 2012 discovery work. This objection has merit. The 2012 district court discovery work was performed contemporaneously with briefing and argument of these appeals. Carrillo argues that current rather than historic rates

MH/APPCOMM                    5                    1 2-55042, 12-55386

should be awarded to account for delay in payment, lost interest, and missed

investment opportunities, citing *Prison Legal News*, 608 F.3d at 453-54, and *Gates*

*v. Deukmejian*, 987 F.2d 1392, 1407 (9th Cir. 1992).  An award of current rates to

compensate for delay in payment lies within the court's discretion, however, and

the length of the delay in payment is a consideration in deciding whether an award

of current rates is warranted.  *See id.*  Carrillo has not experienced a three-year or

longer delay, like the fee claimants in *Gates* and the cases relied on in *Gates*.  *Id.*

A discretionary award of current rates is not warranted here.

   3.  District Court Reduction

   Schneider argues without explanation that Carrillo's requested rates should

be reduced by 15 percent.  The district court rejected Schneider's request for a 40

percent reduction, but imposed a 5 percent reduction of Carrillo's requested 2012

billing rates to align with prevailing rates in the Central District.

   The district court's determination is persuasive evidence, not materially

contradicted by Rubin's, Traber's, Woocher's, and Sobel's declarations, or by the

Appellate Commissioner's experience, regarding prevailing market rates for this

litigation, including the Ninth Circuit appeals.  Carrillo's attorneys' actual billing

rates are not dispositive evidence regarding the prevailing market rates.  *See*

*Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006).

MH/APPCOMM                        6                    1 2-55042, 12-55386

Carrillo does not provide a 2014 hourly billing rate, and only a minimal amount of work was performed in 2014. Accordingly, Carrillo is awarded the 2012 and 2013 billing rates, reduced by 5 percent, for the 2012-14 work on appeal, as follows:

| Timekeeper | Grad | 2012 Rate | 2013 Rate |
|---|---|---|---|
| Michael Rubin (Altshuler Berzon LLP) | 1977 | $807.50 | $831.25 |
| Theresa Traber (Traber & Voorhees) | 1984 | $755.25 | $755.25 |
| Jonathan Weissglass (Altshuler Berzon LLP) | 1994 | $665.00 | $688.75 |
| Janet Herold (SEIU) | 1995 | $617.50 | N/A |
| Lauren Teukolsky (Traber & Voorhees) | 2000 | $541.50 | $541.50 |
| Jennifer Sung (Altshuler Berzon LLP) | 2004 | $437.00 | $465.50 |
| Eric Brown (Altshuler Berzon LLP) | 2008 | N/A | $380.00 |
| Law Clerks (Altshuler Berzon LLP) | N/A | $221.66 | $237.50 |
| Paralegals (Altshuler Berzon LLP) | N/A | $199.50 | $213.75 |

B. Carrillo's Attorneys' Reasonable Hours

On Ninth Circuit Form 9, Carrillo claims that the attorneys spent the requested 337.7 hours as follows:

4/21/14 Carrillo Order - EXHIBIT 6
-113-

| Services | Rubin | Traber | W'glass | Herold | T'lsky | Sung | Brown | Clks | Plgls | Hours |
|---|---|---|---|---|---|---|---|---|---|---|
| Int & Conf | 1.6 | 0.9 | 2.7 | 0 | 0.3 | 0.3 | 0 | 0.2 | 0 | 6.0 |
| Records | 4.3 | 0.1 | 2.7 | 0.7 | 0 | 0.7 | 0 | 0 | 0 | 8.5 |
| Research | 0 | 0 | 0.1 | 0 | 0 | 23.2 | 0 | 15.6 | 0 | 38.9 |
| Briefs | 19.6 | 0.8 | 80.3 | 2.3 | 2.3 | 1.5 | 0 | 14.1 | 20.4 | 141.3 |
| Argument | 41.4 | 3.0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 44.4 |
| Other | 5.7 | 0.2 | 1.2 | 0 | 0 | 0 | 0 | 0 | 0 | 7.1 |
| Fee Motion | 4.2 | 0 | 10.4 | 0 | 0 | 0 | 35.0 | 0 | 0 | 49.6 |
| Fee Reply | 1.2 | 0 | 5.0 | 0 | 0 | 0 | 12.8 | 0 | 6.2 | 25.2 |
| Fee Opposition | 2.8 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2.8 |
| Fee Supp Reply | 1.8 | 0 | 0 | 0 | 0 | 0 | 12.1 | 0 | 0 | 13.9 |
| | 82.6 | 5.0 | 102.4 | 3.0 | 2.6 | 25.7 | 59.9 | 29.9 | 26.6 | 337.7 |

Carrillo requests fees for reviewing Schneider's notice of appeal and mediation questionnaire, filing a mediation questionnaire, filing a 20-page opposition to Schneider's two motions to stay the injunctions pending appeal, and filing a 13,067-word answering brief in response to Schneider's two opening briefs and excerpts of record. Carrillo also requests fees for Weissglass's and Traber's participation in a telephone conference with the Circuit Mediator, and for Rubin's and Traber's participation in another telephone conference with the Circuit Mediator. In addition, Carrillo requests fees for Rubin's appearance and Traber's attendance at oral argument in Pasadena, and for reviewing the Ninth Circuit's

decision. Carrillo further requests fees for filing the attorneys' fee motion, fee reply, an opposition to Schneider's motion for leave to file a supplemental fee opposition, and a supplemental fee reply.

Carrillo does not request fees for obtaining a telephone extension of time to file the answering brief and filing a letter confirming the extension, or for editing of the answering brief by Kevin Kish of Bet Tzedek Legal Services in Los Angeles. Rubin states that he exercised billing judgment to exclude at least 62.5 hours for administrative tasks and for multiple attorneys' billing of telephone conferences, strategy meetings, and brief editing. Traber states that she excluded 2.4 hours for reviewing the notice of appeal, corresponding with co-counsel, and editing the answering brief, and that her firm did not bill for reviewing time records and preparing a declaration in support of the fee motion.

### 1. Vague Time Entries

Schneider objects that Carrillo's attorneys' time entries are vague, making it impossible to determine the amount of time spent on particular claims or whether the hours were reasonably expended. Without providing dates, Schneider cites seven time entries that Schneider contends do not contain adequate explanation regarding the subject matter of emails or research. Schneider's objection lacks merit.

MH/APPCOMM                                    9                          1 2-55042, 12-55386

4/21/14 Carrillo Order - EXHIBIT 6
-115-

Carrillo's attorneys were not required to record in great detail how each
minute of their time was spent. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 n.12
(1983); *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). Carrillo's
burden to submit evidence supporting the hours claimed is satisfied by listing the
attorneys' hours and identifying the general subject matter of their work. *Id.*
A review of the time entries identified by Schneider shows that the general subject
matter is sufficiently apparent from the entries themselves or from previous and
subsequent entries. Carrillo's attorneys' time entries are adequate to allow a
meaningful determination of the reasonableness of the requested hours.

2. Staffing

Schneider objects that partner Weissglass spent 80.3 hours drafting the
opposition to Carrillo's motions for a stay and the answering brief, including 17.3
hours for the statement of case and statement of facts, rather than delegating this
work to a junior associate. Schneider also objects that, after Weissglass spent 12.9
hours drafting the stay opposition, partner Rubin also spent 6.7 hours editing it.
Schneider further objects that Traber spent 3 hours attending the oral argument that
Rubin presented. This objection lacks merit.

The court may not set the fee based on speculation about how other firms
might have staffed the case or whether it would have been cheaper to delegate the

4/21/14 Carrillo Order - EXHIBIT 6
-116-

work to other attorneys. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1114-15 (9th Cir. 2008). Instead, the court must focus on whether the fees for this particular legal team are justified based on the difficulty and skill level of the work performed and the results achieved in this particular case. *Id.* at 1115.

Indeed, Weissglass may have completed the stay opposition and answering brief more quickly than a junior associate would have. *Id.* at 1114. Given the complexity of the stay opposition, and the success achieved -- the district court's preliminary injunctions remained in effect pending disposition of the appeals -- Rubin and Weissglass reasonably spent a combined 19.6 hours on the stay opposition. *Id.* at 1115. Traber's attendance at Rubin's oral argument to assist in addressing any issues that might arise was reasonable, and Traber's oral argument time is awarded. *See Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286-87 (9th Cir. 2004).

3. Excessive Hours

Schneider objects that Carrillo's requested hours are excessive, inflated, overbilled, unnecessary, and duplicative. Schneider argues that the requested hours should be reduced by 35 percent, because the district court imposed a similar reduction on Carrillo's requested hours for discovery sanctions. In addition to the staffing objections, Schneider objects that Rubin should have been able to prepare

MH/APPCOMM                    11                    1 2-55042, 12-55386

for oral argument in less than 41.4 hours, because he spent 12.9 hours editing the
answering brief. Schneider also objects to Rubin, Weissglass, and Brown spending
a combined 49.6 hours on the attorneys' fees motion -- in particular, that Brown
spent 24.4 hours drafting 20 pages -- when seven pages of the motion involved
background information also found in previous pleadings.

Lawyers are highly unlikely to spend unnecessary time or engage in
churning in the hope of inflating their fees on contingency fee civil rights cases.
*See Moreno*, 534 F.3d at 1112. For the most part, the court should defer to the
winning lawyer's professional judgment as to how much time was required to win
a case. *Id.* Absent specific reasons for imposing a significant reduction, the court
should normally grant the requested hours in full, or with no more than a 10
percent "haircut." *Id.* at 1112, 1116.

A review of the briefs and time entries, in light of fee requests in similar
appeals, shows that Rubin reasonably expended the requested 41.4 hours for oral
argument. Weissglass and Brown should have needed somewhat fewer hours,
however, to complete the answering brief and the fee motion. Accordingly,
Weissglass's 2012 hours are reduced by 10 hours and Brown's 2013 hours are
reduced by 10 hours to reflect reasonable time expenditures on the merits and fee

briefing.  With this reduction, Carrillo's attorneys' remaining 317.7 hours were

reasonably expended, and the hours are awarded.

C.  Carrillo's Reasonable Attorneys' Fees

Carrillo is awarded reasonable attorneys' fees in the amount of $178,000.98,

as follows:

| Timekeeper | 2012 Rate | 2012 Hrs | 2012 Total | 2013 Rate | 2013 Hrs | 2013 Total | Total |
|---|---|---|---|---|---|---|---|
| Rubin | $807.50 | 72.6 | $ 58,624.50 | $831.25 | 10.0 | $ 8,312.50 | $ 66,937.00 |
| Traber | $755.25 | 5.0 | $ 3,776.25 | $755.25 | 0 | 0 | $ 3,776.25 |
| Weissglass | $665.00 | 77.0 | $ 51,205.00 | $688.75 | 15.4 | $10,606.75 | $ 61,811.75 |
| Herold | $617.50 | 3.0 | $ 1,852.50 | N/A | 0 | 0 | $ 1,852.50 |
| Teukolsky | $541.50 | 2.6 | $ 1,407.90 | $541.50 | 0 | 0 | $ 1,407.90 |
| Sung | $437.00 | 25.7 | $ 11,230.90 | $465.50 | 0 | 0 | $ 11,230.90 |
| Brown | N/A | 0 | 0 | $380.00 | 49.9 | $18,962.00 | $ 18,962.00 |
| Law Clerks | $221.66 | 29.9 | $ 6,627.63 | $237.50 | 0 | 0 | $ 6,627.63 |
| Paralegals | $199.50 | 20.4 | $ 4,069.80 | $213.75 | 6.2 | $ 1,325.25 | $ 5,395.05 |
| Total | | 236.2 | $138,794.48 | | 81.5 | $39,206.50 | $178,000.98 |

III
Conclusion

Attorneys' fees in the amount of $178,000.98 are awarded in favor of

Carrillo and against Schneider.  This order amends the court's mandate.  *See* Fed.

R. App. P. 41.

4/21/14 Carrillo Order - EXHIBIT 6
-119-

1   DISABILITY RIGHTS LEGAL CENTER
    Paula D. Pearlman (Cal. State Bar No. 109038)
2   paula.pearlman@lls.edu
    Anna Rivera (SBN 239601)
3   Anna.Rivera@lls.edu
    919 Albany Street
4   Los Angeles, CA 90015
    Telephone: (213) 736-8366
5   Facsimile: (213) 487-2106

6   MILBANK TWEED HADLEY & MCCLOY, LLP
    Linda Dakin-Grimm (Cal. State Bar No. 119630)
7   ldakin@milbank.com
    Daniel M. Perry (Cal. State Bar No. 264146)
8   dperry@milbank.com
    Delilah Vinzon (Cal. State Bar No. 222681)
9   dvinzon@milbank.com
    601 South Figueroa Street, 30th Floor
10  Los Angeles, CA 90017
    Telephone: (213) 892-4000
11  Facsimile: (213) 629-5063

12  *Attorneys for Student/Defendant Michael Garcia*

13              UNITED STATES COURT OF APPEALS
                    FOR THE NINTH CIRCUIT
14

15  LOS ANGELES UNIFIED SCHOOL        | Case No. 10-55879
16  DISTRICT,
                                       | Appeal from: Case No.: CV 09-
17              Plaintiff,             | 9289-VBF-(CTx)
                                       | Related Case No: CV 09-8943-VBF-
18      vs.                            | (CTx)
19  MICHAEL GARCIA,
20              Student/Defendant.     | **DECLARATION OF HANNAH
                                         CANNOM IN SUPPORT OF
21                                       DEFENDANT MICHAEL
                                         GARCIA'S MOTION FOR
22                                       REASONABLE ATTORNEY'S
                                         FEES AND COSTS**
23
24
25
26
27
28

7.    Daniel Perry graduated *Phi Beta Kappa* from the University of Wisconsin with a B.A. in 1996 and graduated *cum laude* with a J.D. from Cornell University in 1999. He has practice law for almost fifteen years and is a member in good standing with both the California and New York State Bar Associations. The current Milbank rate for a partner with his level of experience is $1,135/hour.

8.    Delilah Vinzon graduated *cum laude* with a J.D. from the University of California Hastings College of Law and a B.A. from the University of California at Los Angeles. Ms. Vinzon is special counsel in the firm's Litigation & Arbitration Group. She has practiced law for over eleven years. Ms. Vinzon won several Moot Court awards in law school. The current rate for Milbank special counsel with her experience is $900/hour. Ms. Vinzon was responsible for managing this case from the filing of the Due Process Request through its successful completion. Ms. Vinzon also argued the case before the California Supreme Court.

9.    Kate Eklund received her J.D. from the University of Michigan Law School in 2009 and received her B.A. from the University of Michigan in 2004. Ms. Eklund is a former associate at Milbank. The current Milbank rate in this case for an associate of her year is $550/hour. Ms. Eklund performed much of the legal research and background information that was needed in the drafting of appellate briefs in this case. Ms. Eklund now works in the Career Services Department of the University of California at Los Angeles School of Law.

10.    Revi-ruth Enriquez received her J.D. from Georgetown University in 2008 and her B.A. from Loyola Marymount University in 2002. Ms. Enriquez is a sixth year associate at Milbank. The current Milbank rate for an associate of her year is $760/hour. Ms. Enriquez was the primary Milbank attorney on this case during the appellate process and worked diligently preparing the briefs that were filed before the United States Court of Appeals for the Ninth Circuit and the California Supreme Court.

## DECLARATION OF HANNAH CANNOM

I, HANNAH CANNOM, declare that if called as a witness I would testify competently from first-hand knowledge as follows:

1. I am a member of the Bar of the State of California. I am an associate at Milbank, Tweed, Hadley & McCloy in the Litigation & Arbitration group. I am one of the attorneys primarily responsible for Milbank's representation of Defendant Michael Garcia ("Defendant") in this action. I have personal knowledge of the facts contained herein and if called to testify, could and would competently testify thereto.

2. I earned my J.D. from the University of California at Los Angeles School of Law in 2006 and my B.A. from the University of Pennsylvania in 2000. I was the primary Milbank attorney on this case during the Due Process Hearing before the Office of Administrative Hearings where I worked closely with the DRLC in preparing Mr. Garcia's due process case. Prior to law school, I taught special education high school through the Teach for America program in San Jose, California.

3. Five Milbank attorneys other than myself have been primarily involved in this case at its various stages: Daniel Perry, a partner at the firm; Delilah Vinzon, special counsel at the firm; Kate Eklund, a former associate at the firm; Revi-ruth Enriquez, an associate at the firm; and Caitlin Hawks, a former associate at the firm.

4. Support staff, including paralegal Ricky Windom, substantially contributed work to this matter.

5. At least six other attorneys and support staff persons at Milbank worked on this matter, but in an exercise of billing discretion their fees are not being claimed. Their fees total more than $45,000.00.

6. Milbank's current rate for an associate with my level of experience is $800/hour.

11.    Caitlin Hawks received her J.D. from the University of California at Los Angeles School of Law in 2008 and received her B.A. from Puget Sound in 2004. Ms. Hawks is a former Milbank associate . The current Milbank rate for an associate of her year is $760/hour. Ms. Hawks helped support the team during Mr. Garcia's Due Process Hearing before the OAH and performed substantial work on the appeal. Ms. Hawks now works at the Savitt Bruce & Wiley law firm in Seattle, Washington.

12.    Ricky Window has been a paralegal for over 8 years. Mr. Windom received his J.D. from The Ohio State University in 2002 and his B.A. from Clark Atlanta University in 1998. The current Milbank rate for a paralegal with his experience is $230/hour.

13.    It is the practice of all Milbank attorneys and support staff whose time is billed to the client to record the time expended and expenses incurred with respect to each litigation matter on which the firm is engaged. The firm maintained such time records and records of expenses for this matter.

14.    Attached hereto as Exhibit A is a true and correct copy of a report of Milbank's time records and records of expenses for this matter up to February 5, 2014. The records have been redacted in some places to protect attorney-client privileged information or attorney work product. Additionally, the records have been altered from the original report generated to deduct certain time entries that Milbank, in exercise of its billing judgment, has elected not to claim. None of these redactions or alterations have increased the total of any fees or expenses claimed. I have personally reviewed all the entries and calculations on this report. Any calculation errors in the totals of hours, fees, or expenses are inadvertent and mine alone. As of February 5, 2014, the total fees and expenses incurred by Milbank, after adjustments for billing judgment, are $541,840.

15.    Since the attached time report was prepared on February 5, 2014, significant additional time has been spent preparing this motion and its supporting

declarations. Once those time records are available, Milbank intends to submit them for compensation as well.

16.    Below is a table of the Milbank time-keepers on this matter as broken down by proceeding:

| Attorney | Hours | | | Total Fees Sought | | |
|---|---|---|---|---|---|---|
| | Due Process | District Court | 9th Circuit | Due Process | District Court | 9th Circuit |
| Daniel Perry | 8.4 | 0.7 | 14.5 | $6,200 | $578 | $14,025 |
| Hannah Cannom | 124.75 | 7 | 125.9 | $68,613 | $3,595 | $85,689 |
| Kate Eklund | 0 | 0 | 63 | $0 | $0 | $34,100 |
| Revi-ruth Enriquez | 139.4 | 5.6 | 110.9 | $60,456 | $2,940 | $66,271 |
| Caitlin Hawks | 88.4 | 13.9 | 19.2 | $37,048 | $7,298 | $11,970 |
| Delilah Vinzon | 50.7 | 26.9 | 91.7 | $32,955 | $19,045 | $70,238 |
| Ricky Windom | 84 | 13.5 | 15.8 | $15,540 | $2,498 | $3,131 |
| Total | 495.65 | 67.6 | 441 | $220,812 | $35,605 | $285,423 |

## Evidence that Milbank's Rates are Reasonable

17.    On January 23, 2014, the *National Law Journal*, a legal industry trade publication, published the results of its annual survey of the billing rates of the 350 largest law firms in the United States. A true and correct copy of this article is attached as Exhibit B. Milbank is one of the 350 largest law firms in the United States. For firms that have their largest office in New York, like Milbank, the highest average partner billing rate was $882/hour and for associates it was $520/hour.

Cannom declaration - EXHIBIT 7

18.    The hourly rates charged in connection with the professional services rendered on behalf of Michael Garcia in this litigation are reasonable. The rates are comparable to the hourly rates of Milbank's peer firms, most of which are also New York-headquartered firms at the top end of the market. Thomson Reuters' Peer Monitor Public Rates program compiles attorney and support staff hourly rates as publicly reported in court filings throughout the country. The high hourly rate for partners based in New York and California offices of Am Law 100 firms was $1195/hour in 2012, for associates it was $990/hour, and for legal assistants and paralegals it was $665/hour. The data from this program confirms that the hourly rates charged by Milbank in this litigation are in line with those charged by other top-tier "Am Law 100" firms.

19.    Attached hereto as <u>Exhibit C</u> is a true and correct copy of an application filed by Milbank before the United States Bankruptcy Court, District of Nevada in *In re Circus and Eldorado Joint Venture, et al.*, Case No. BK-12-51156. This application is entitled Debtors' Application for an Order, Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Fed. R. Bankr. P. 2014(a), and 2016(b), and Local Rule 2014, Authorizing Employment and Retention of Milbank, Tweed, Hadley & McCloy LLP As Counsel for the Debtors.

20.    Attached hereto as <u>Exhibit D</u> is a true and correct copy of an order of the United States Bankruptcy Court, District of Nevada in *In re Circus and Eldorado Joint Venture, et al.*, Case No. BK-12-51156. The order is entitled Order Pursuant to Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Fed. R. Bankr. P. 2014(a), and 2016(b), and Local Rule 2014, Authorizing Employment and Retention of Milbank, Tweed, Hadley & McCloy LLP As Counsel for the Debtors.

21.    Courts routinely approve Milbank's hourly rates in fee applications. (*E.g.*, Ex. C at 8; Ex. D at 3, ¶ 3).

22.    On March 31, 2010, in *LV v. New York City Department of Education*, Case No. 03 Civ. 9917, a district court awarded over $1.2 million in

1   attorneys' fees to Milbank and Advocates for Children of New York for a case

2   brought under 20 U.S.C. § 1400—the Individuals with Disabilities in Education

3   Act. The court awarded $847,184.38 for work performed by Milbank attorneys on

4   a pro bono basis and the remainder for work performed by Milbank's co-counsel.

5   The court found that $600/hour was a reasonable rate for a Milbank partner,

6   $225/hour to $375/hour was a reasonable rate for a Milbank associate depending

7   on the associate's experience and contributions to the case, and that $150/hour was

8   a reasonable rate for a Milbank paralegal. A true and correct copy of this

9   memorandum and order is attached as Exhibit E.

10      23.   In *Instrumentation Laboratory Co. v. Walter Binder,* a patent

11   litigation case, the court awarded plaintiffs approximately $3.6 million in

12   attorneys' fees for work completed by attorneys in the Los Angeles and London

13   offices of Milbank. The court found that $842 and $725 were reasonable rates for

14   the two primary Milbank partners involved in the case. The court additionally

15   found that $475 was a reasonable rate to cover all the Milbank associates who

16   worked on the case. The associates ranged from a third year to a ninth year. A

17   true and correct copy of the order is attached as Exhibit F.

18

19      I declare under penalty under the laws of the United States of America that

20   the foregoing is true and correct.

21   Executed this 25ᵗʰ day of February, 2014 at Los Angeles, California.

22

23

24   HANNAH CANNOM

25

26

27

28

-6-

1  Barrett S. Litt, SBN 45527
2  Lindsay Battles, SBN 262862
   Email: lbattles@kmbllaw.com
3  Kaye, McLane, Bednarski & Litt
4  975 East Green Street
   Pasadena, California 91106
5  Phone: (626) 844-7660
6  Facsimile: (626) 844-7670

7  Attorneys for Plaintiffs
8  (Other counsel not listed)

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12 | MARY AMADOR, *et al.*,              | Case No. CV 10-01649 SVW (JEMx)

13 |        Plaintiffs,                   | [Honorable Stephen V. Wilson]

14 |     vs.                             | **DECLARATION OF CAROL A.**
15 |                                      | **SOBEL IN SUPPORT OF MOTION**
16 | COUNTY OF LOS ANGELES, *et al.*,     | **FOR ATTORNEYS' FEES**

17 |        Defendants.

18 |                                      | Date:     July 20, 2020
19 |                                      | Time:     1:30 p.m.
                                          | Crtm:     10A
20
21
22
23
24
25
26
27
28

Case 2:21-cv-06003-DOC-KES  Document 249-3  Filed 06/20/22  Page 98 of 118  Page ID
Case 2:16-cv-00194-FMO-E  Document 144-2  Filed 02/14/20  Page 2 of 22  Page ID #:2361
#:3278

### DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1. I am an attorney admitted to practice before the Supreme Court of California
and the United States District Court for the Central District of California. I
make this declaration from facts of which I have personal knowledge and, if
called to testify to those facts, could and would do so competently.

2.       I graduated from law school and was admitted to practice in 1978.
Following 20 years with the ACLU Foundation of Southern California, I
entered private practice in April of 1997. My practice primarily involves
complex civil rights litigation, focusing on the rights of homeless persons,
First Amendment rights and police practices. Exhibit"1" is my resumé.

3.       I have received many awards for my legal work over the years. In
2008, I was named a California Lawyer of the Year (CLAY) recipient for civil
rights by California Lawyer Magazine. That same year, I was also named as
one of the Top 75 Women Litigators in California by the Daily Journal
Corporation. In 2007, I received an Angel Award from California Lawyer
Magazine for pro bono work and was also named by the Daily Journal as one
of the Top 100 Most Influential Lawyers in California. In 2013 and again in
2014, I was named one of the top 50 women lawyers in Los Angeles. I am
named as a Superlawyer in the area of First Amendment or civil rights
litigation consistently for more than a decade. Additional recognition of my
legal work is set out in my attached resumé.

4.       For the six years prior to 1997, I held the position of Senior Staff
Counsel in the legal department of the ACLU Foundation of Southern
California. During that time period, I was responsible for preparing many of
the fee motions in cases where the ACLU represented the prevailing party.
Because the ACLU does not bill clients on an hourly basis for its services, I was

2

Case 2:21-cv-06003-DOC-KES   Document 249-3   Filed 06/20/22   Page 99 of 118   Page ID
Case 2:16-cv-00194-FMO-E   Document 144-12   Filed 02/14/20   Page 3 of 22   Page ID #:2362
#:3279

required to obtain information to establish reasonable market rates for the ACLU lawyers. It was my practice to obtain current billing rates for lawyers of comparable skill and experience at several firms throughout the City. I did this on an annual basis, contacting partners who were familiar with the ACLU lawyers in question so that they could make an informed judgment about the comparable skill levels of the attorneys at their firms whose rates were used to establish ACLU billing rates. At the time that I consulted these individuals, I was aware that the partners had been personally involved in pro bono litigation with the ACLU and worked directly with the ACLU lawyers for whom I sought to establish market billing rates, so they were able to assess the skill and experience of the ACLU lawyers.

5.      Since entering private practice, I have continued to survey firms each year to obtain relevant comparisons for billing rates. I generally begin this process the first time in each year I prepare a fee motion, or enter into settlement discussions regarding fees. As part of my survey, I make it a point to obtain information concerning rates for attorneys in both larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms.

6.      To obtain information concerning market rates charged by attorneys in the Los Angeles area, I also review attorney fee applications and awards in other cases than my own. Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing the range of civil rights law, as well as court awards made to the ACLU, Disability Rights Legal Center ("DRLC"), Asian Americans Advancing Justice, the Western Center on Law and Poverty ("WCLP"), MALDEF and other public interest groups in Los Angeles. I do this to determine what is being sought and approved as market rates for lawyers from these firms. Because many of the cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I have access to those billing rates as well.

7.      In addition to these two methods, when I become aware of a case

3

Case 2:21-cv-06003-DOC-KES   Document 249-3   Filed 06/20/22   Page 100 of 118   Page ID
Case 2:16-cv-00194-FMO-E   Document 144-2   Filed 02/14/20   Page 4 of 22   Page ID #:2363
#:3280

where statutory fees are sought, I regularly obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as LEXIS and Westlaw.   Included in my review of fee applications and awards are those by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these firms.  Many of these commercial firms also serve as pro bono counsel on occasion.  I estimate that I review around 100 or more fee motions, supporting declarations and fee awards annually and have done so for more than 30 years.

8.      To obtain information concerning market rates charged by attorneys in the Los Angeles area, I also review attorney fee applications and awards in other cases than my own.  Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing the range of civil rights law, as well as court awards made to the ACLU, Disability Rights Legal Center ("DRLC"), Asian Americans Advancing Justice, the Western Center on Law and Poverty ("WCLP"), MALDEF and other public interest groups in Los Angeles.  I do this to determine what is being sought and approved as market rates for lawyers from these firms.  Because many of the cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I have access to those billing rates as well.  In addition to these two methods, when I become aware of a case where statutory fees are sought, I regularly obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as LEXIS and Westlaw.   Included in my review of fee applications and awards are those by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these firms.  Many of these commercial firms also serve as pro bono counsel on occasion.  I estimate that I review around 100 or more fee motions, supporting declarations and fee awards annually for more than 30 years.

9.      My declarations in support of fee applications for civil rights and public interest attorneys have been cited repeatedly by courts as evidence of

4

Case 2:21-cv-06003-DOC-KES   Document 249-3   Filed 06/20/22   Page 101 of 118   Page ID
Case 2:16-cv-00194-FMO-E   Document 144-3   Filed 02/14/20   Page 5 of 22   Page ID #:2364
#:3281

reasonable market rates in Los Angeles. For example, in *Nadarajah v. Holder*, 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of the application of attorneys from the ACLU for fees under the Equal Access to Justice Act ("EAJA"). In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (CD CA 2008), granting fees pursuant to the IDEA statute, 20 U.S.C. §1415(i)(3)(c), the Court cited to my declaration as persuasive evidence of market rates. In *Atkins v. Miller*, CV 01-01574 DDP (CD CA 2007), Judge Pregerson awarded fees to a 1975 graduate at $675 an hour, specifically citing to my declaration and that of Barry Litt to support the requested rates. *Id.* at pp. 8-9 and n.4. Additional cases in which my declarations have been cited favorably include, among others, *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (May 30, 2012); *Orantes-Hernandez v. Holder*, 713 F.Supp.2d 29,963-964(C.D.Cal.2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Hiken v. DOD*, 836 F.3d 1037 (9th Cir. 2016); *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles*, *supra*; *Dugan v. County of Los Angeles*, cv-11-08145 CAS (C.D. Cal. March 3, 2014); *Flores v. City of Westminster*, SA-CV-11-0278 DOC (C.D. Cal. Oct. 23, 2014); *Xue Lu v. United States*, 2014 U.S. Dist. LEXIS 77789 (C.D. Cal. May 23, 2014); *Wagafe v. Trump*, Case 2:17-cv-00094-RAJ [Doc. 223] (W.D. WA 02/27/19); *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal. January 4, 2018) [Doc. 180, p.5]; and *Carrillo v. Schneider Logistics*, awarding fees in Circuit Case No. 12-55042 (9th Cir. Apr. 2014), following the affirmance of a preliminary injunction (*See* 501 Fed. Appx. 713, 2012 U.S. App. LEXIS 26601 (9th Cir. Dec. 28, 2012). The Ninth Circuit recently cited to my declaration in approving EAJA rates for the ACLU and other immigration attorneys in *Gomez-Sanchez v. Barr, sub nom Gomez-Sanchez v. Sessions*, 892 F.3d 985 (9th Cir. 2018). In *Jochimsen*, a unanimous court held

Case 2:21-cv-06003-DOC-KES   Document 249-3   Filed 06/20/22   Page 102 of 118   Page ID
Case 2:16-cv-00194-FMO-E   Document 144-3   Filed 02/14/20   Page 6 of 22   Page ID #:2365
#:3283

that I was qualified as an expert on reasonable market rates.

10.     In addition, I litigated statutory fee issues at the appellate level in several of my cases.  Most notably, I was lead counsel before the California Supreme Court in *Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604 (2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal.4th 533 (2004), establishing the continued vitality of the "catalyst" fee doctrine in California courts and upholding an award of fees of almost $2 million in a multi-plaintiff sexual discrimination/harassment lawsuit on behalf of female employees of the Los Angeles Police Department.  I was also counsel in *Jones v. City of Los Angeles*, 555 Fed. Appx. 659 (2014), establishing entitlement to fees as a "prevailing party" based on the Circuit Court's necessary approval of a settlement that was conditioned on vacatur of the panel decision.

11.     I provide training on attorney fees best practices for civil rights and public interest firms, including the Legal Aid Foundation of Los Angeles and the ACLU Foundation of Southern California.  I also do CLE presentations on attorney fees for a number of organizations, including the National Lawyers Guild and the National Police Accountability Project.

12.     I have considerable experience reviewing and analyzing billing records in my own cases and in cases for which I provide a supporting declaration on the reasonableness of rates or hours.  Many of the cases in which I am counsel involve multiple attorneys and law offices.  In those instances, I am the attorney who conducts a review of all of the fee records and exercises billing judgment to eliminate any improperly billed time.  This includes, among other issues, eliminating clerical tasks, unnecessarily duplicative items, improperly billed items and vague items.  For example, in the *Tipton-Whittingham* case cited above, it was my responsibility to review the fee records covering six years of hours for attorneys from three firms: the ACLU, the Western Regional Office of the NAACP Legal Defense Fund, and

6

Litt & Estuar.  The unadorned lodestar in *Tipton* was approximately
$1,900,000.  I performed similar services in other cases where multiple
counsel are involved.

13.     In *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*,
involving a police assault on a lawful demonstration in MacArthur Park on May
Day, 2007, I performed a billing judgment on the fee records for all attorneys and
support staff in the case.  Because the case was a hybrid class action, with both
300 individual plaintiffs and a residual class of several thousand persons, the legal
team was sizable.  The fee approved in the case was $3,713,000.

14.     Because I am a sole practitioner, I assess a reasonable market rate by
comparison to lawyers of comparable skill and experience at other firms in the Los
Angeles area, as I did during the time that I was employed by the ACLU.  When I
was at the ACLU, I prepared numerous fee motions under federal and state fee-
shifting statutes for cases in which the ACLU represented the prevailing party.  I
was responsible for preparing these motions both for cases where I was directly
involved in the underlying litigation, as well as in cases brought by other staff
attorneys and volunteer counsel for the ACLU.  As part of this assignment, each
year I would survey several law firms to obtain information on their current billing
rates to establish rates for individuals of comparable experience to ACLU staff.  I
chose firms where the partners were familiar with the experience levels of the
various ACLU attorneys and had co-counseled cases with the ACLU.  I have
continued a similar practice with fee motions in those cases where I serve as
ACLU cooperating counsel and in my own practice when fees may be recovered.

15.     Since entering private practice, to keep current with market rates, I
review billing rates at firms the first time in each year I prepare a fee motion or
enter into settlement discussions regarding fees.  I make it a point to obtain rate

7

information for attorneys in both larger law firms engaged in similarly complex federal litigation, as well as smaller boutique civil rights law firms and public interest organizations. I regularly review fee motions submitted by, and awards made to, the ACLU Foundation of Southern California, the Mexican America Legal Defense and Educational Fund ("MALDEF"), the Western Center on Law and Poverty, Public Counsel, the Disability Rights Legal Center, Disability Rights Advocates and other public interest groups to determine what is being sought and awarded as market rates. Although I frequently file declarations in support of fee applications filed by these non-profit groups, I am usually not the only declarant.

16.    In all the fee declarations that I prepare, I apply my understanding of the U.S. Supreme Court decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons." *Id.* at 895 fn. 11. I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate with the possibility of receiving a market rate award if successful. *See, Nadarajah v Holder,* 569 F3d at 910.

17.    To support my opinion here, I attach fee awards and supporting declarations in civil rights cases in the Los Angeles legal market. Each is a true and correct copy of the document available in the Court's files, with the state Superior Court's stamp or the federal ECF header. Several are now several years old. These older exhibits illustrate the reasonableness of the rates but do not reflect current rates. In *Hiken v. DOD*, the court noted that "market rates in effect more than two years *before* the work was performed" are not current lodestar

8

rates. 802 F.3d at 1107 (9th Cir. 2016) (emphasis in original). If I rely on decisions more than two years old, I compute a current rate by using a 3.1 percent increase, which is the average of the legal services component increase in the Consumer Price Index for Los Angeles for the past several years. The data is available at http://www.bis.gov/news.release/cpi.t02.htm (Table2.Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average, by detailed expenditure category).

18.  I apply several additional principles to establish reasonable market rates. First, when available, I look to rates awarded to the attorney in previous cases because I understand that such awards are strong evidence of reasonable market rates. I look to rates awarded to the attorney in previous cases based on my understanding that such awards are strong evidence of reasonable rates. *See Chaudhry v. City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008).

19.  Next, I look to billing rates by attorneys engaged in similarly complex litigation as an approved method of setting market rates for civil rights attorneys who do not bill clients on an hourly basis. *See Blum*, 465 U.S. at 895. This approach recognizes that most civil rights attorneys, including at non-profits, take cases on a contingency basis. I look broadly at awards stablishing reasonable hourly rates in a variety of civil rights cases based on my understanding that the market rate comparison "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (internal quotation omitted).

20.  When the specific rate evidence identified in the preceding paragraph

9

Case 2:21-cv-06003-DOC-KES  Document 249-3  Filed 06/20/22  Page 106 of 118  Page ID
Case 2:16-cv-00194-FMO-E  Document 142-6  Filed 02/14/20  Page 10 of 22  Page ID
#:2369

is available, I do not rely on surveys because they do not meet the standards for the lodestar analysis. In my experience, fee surveys report market rates in sweeping categories with no identification of the comparable skill, experience and reputation of the attorneys included in the survey and often no indication of the relevant legal market. *See e.g., Shirrod v. Director, Office of Workers' Compensation Programs,* 809 F.3d 1082, 1089 (9th Cir. 2015) (reversing where lower court relied on a national survey rather than local rates). Similarly, I do not apply the rates billed by and paid to opposing counsel who are salaried, contract government attorneys, or retained insurance defense because they generally charge rates well below market and are paid win or lose, so they do not share the risk taken by lawyers who depend upon fee-shifting statutes and other contingent fees. *See e.g., Shapiro v. Paradise Valley Unified School Dist.*, 374 F.3d 857, 866 (9th Cir. 2004) (because government lawyers and retained insurance defense attorneys generally bill at lower rates, they do not reflect the same legal market).

21. I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the efficiency of hours, not the lodestar rate of the attorney. *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F3d 1041, 1046 (9th Cir. 2009).

22. I estimate that I review nearly 100 fee motions, fee awards, and supporting declarations in the course of a year. I look at court orders in the past year awarding statutory fees or awarding fees as a discovery sanction. I subscribe to several websites that report legal news. If I learn of a case where there is likely to have been a fee motion, I obtain a copy of the motion, supporting declarations and any subsequent fee award from public sources, including the on-line document services for the Los Angeles Superior Court website and PACER.

23. In all the fee declarations that I prepare, I apply my understanding of

10

Case 2:21-cv-06003-DOC-KES   Document 249-3   Filed 06/20/22   Page 107 of 118   Page ID
Case 2:16-cv-00194-FMO-E   Document 142-7   Filed 02/14/20   Page 11 of 22   Page ID
#:2370

the U.S. Supreme Court decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons." *Id.* at 895 and fn. 11 ("The statute and legislative history establish that 'reasonable fees' under [42 U.S.C.] § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel"). I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a nonprofit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate with the possibility of receiving a market rate award if successful. *See, Nadarajah v Holder,* 569 F3d at 910.

24.    I apply several other principles to establish reasonable market rates. First, when available, I look to rates awarded to the attorney in previous cases because I understand such awards are strong evidence of reasonable rates. Past decisions where "a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market." *Carson v. Billings Police Dept.*, 470 F. 3d 889, 892 (9th Cir. 2008).

25.    I also look to billing rates by attorneys engaged in similarly complex litigation as an approved method of setting market rates for civil rights attorneys who do not bill clients on an hourly basis. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (approving use of declarations of other attorneys regarding prevailing rates in the relevant market and rates in other cases).

26.    Finally, in my experience, billing rates in Los Angeles have increased annually at more than the cost-of-living rate. For example, in *Charlebois v. Angels Baseball, LP*, 2012 U.S. Dist. LEXIS 91069, cv 10-0853 DOC (C.D. Cal. May 30,

11

Case 2:21-cv-06003-DOC-KES  Document 249-3  Filed 06/20/22  Page 108 of 118  Page ID
Case 2:16-cv-00194-FMO-E  Document 142-38  Filed 02/14/20  Page 12 of 22  Page ID
#:2371

2012), Judge Carter rejected the defense's argument that the rate then sought by attorney V. James DeSimone should be limited to what he had received in prior years. "[C]ourts routinely recognize that fee rates increase over time based on a variety of factors." 2012 U.S. Dist. LEXIS 91069, *24.  In *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07-1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012), the Court approved an increase of 10 percent in one year, noting "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice."

27.     I have not set my rate for 2020.  The rate I applied to fee motions and negotiations in 2019 was $1,000 an hour.  In May 2019, this was the rate used to calculate my fees in *Mitchell v. City of Los Angeles*, Case No. 2:16-cv-01750-SJO-JPR (C.D. Cal.). Over the last few years, I have resolved attorney fees in several matters applying rates of $900 an hour up to $975.  The last court-awarded fee I received was from the Ninth Circuit, approving my 2014 rate of $875 an hour in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015). The rate of $1,000 an hour represents an increase of slightly less than three percent annually from my last court-approved rate in *CPR for Skid Row*.

28.     The table attached to my Declaration as Exhibit 2 sets out the summary of the rates I considered for the attorneys seeking fees by this motion.

**LITT FIRMS:**
**BARRETT S. LITT**

29.     Mr. Litt seeks a rate of $1200 an hour in this matter.  In my experience and opinion, Mr. Litt is one of the most skilled civil rights and class action litigators in the nation.  Based on my interactions with civil rights attorneys throughout the country, I believe my opinion of his reputation is widely shared.

12

Case 2:21-cv-06003-DOC-KES   Document 249-3   Filed 06/20/22   Page 109 of 118   Page ID
Case 2:16-cv-00194-FMO-E   Document 1:4289   Filed 02/14/20   Page 13 of 22   Page ID
#:2372

30.    I have known Mr. Litt for approximately 46 years and co-counseled cases with him repeatedly over that time period after I was admitted to practice law in 1978.  These include several of the cases listed above, including *Tipton-Whittingham v. City of Los Angeles*, *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*,  CV 07-7032 AHM, 2009 U.S. Dist. LEXIS 132270 (C.D. Cal. 6/24/09), and, currently *Chua v. City of Los Angeles,* Case No. 16-cv-00237 JAK GJS (C.D. Cal.)             .

31.    Mr. Litt seeks a rate of $1200 an hour for 2020 (which I am advised is the year being used for all counsel for rates because the fee motion will be ruled on in the second half of 2020).  The rate of $1200 an hour is at the lower end of the legal market for an attorney of Mr. Litt's skill, experience and reputation.  To support my opinion, I submit six recent fee application and fee awards setting rates at approximately the same rate for attorneys with far less experience than Mr. Litt in both civil rights and private commercial firms.

32.    In *Nozzi v. Housing Authority of the City of Los Angeles,* Case No. 2:07-cv-00380-PA-FFM) (C.D. Cal. 2018), the Court approved the class fee on a lodestar cross-check.  Because the Court's Order did list the approved rates, I reviewed the Declaration of Barrett S. Litt in Support of Plaintiffs' Motion for Final Approval of Settlement for specific rates. [Doc. 323]. In *Nozzi*, Mr. Litt's 2017 rate was $1,150, just $50 below the rate he requests three billing years later.

33.    Attached at Exhibit 3 is the Declaration of Gerald Knapton filed in *Skeen v. BMW North America*,  2016 U.S. Dist. LEXIS 97188, Civ. No. 2:13-cv-1531-WHW-CLW (D.C. NJ 2016), a class-action product defect case in which Paul Keisel and Ray Boucher were counsel, both well-known attorneys in Los Angeles.  In *Skeen*, Mr. Kiesel sought a 2016 rate of $1100 an hour and Mr.

13

Case 2:21-cv-06003-DOC-KES  Document 249-3  Filed 06/20/22  Page 110 of 118  Page ID
Case 2:16-cv-00194-FMO-E  Document 142-90  Filed 02/14/20  Page 14 of 22  Page ID
#:2373

1   Boucher, identified in the Knapton declaration as a 1984 law graduate, requested
2   $925 for the early part of the litigation and $1100 for work done in 2016. I know
3   Mr. Kiesel and co-counseled a case with him when I was at the ACLU in the early
4   1990s. Mr. Knapton attested that the rates for Mssrs. Kiesel and Boucher were
5   reasonable in the Los Angeles market, especially for class actions, and consistent
6   with past rates approved for both. Ex. 3, ¶¶ 32,34. I reviewed the PACER file in
7   *Skeen* and am aware that the judge determined that the rates were somewhat high
8   for New Jersey; however, the Court reached the same rate of compensation by
9   applying a multiplier to a slightly lower rate. The Court used the unadjusted 2015
10  Real Rate Report of $848 for partners with 21 years of experience, which was the
11  approximate amount of experience Mssrs. Kiesel and Boucher had at the time.
12  *Skeen v. BMW*, 2016 U.S. Dist. LEXIS 97188, *71-72 and n.6 (D NJ 2016). I note
13  that each attorney had less than half the experience Mr. Litt has now.
14
15          34.     Mr. Kiesel was awarded fees at the rate of $1100 an hour in 2015 in
16  the Central District, when he had just 30 years of experience. Attached at Exhibit
17  4 is the Declaration of Matthew Young, setting out the rates for the Kiesel firm in
18  *Stone v. Howard Johnson, International, Inc.*, Case No. 12-cv-01684 PSG
19  (MANx) (CD CA 2015). The rate for Mr. Kiesel is set out in Exhibit 3 to the
20  Young declaration. The Court's Order approving final settlement, including the
21  attorneys' fees, was entered at Docket # 123.
22          35.     Attached at Exhibit 5 is the Notice of Ruling in *Hadsell v. City of*
23  *Baldwin Park*, Los Angeles Superior Court Case No. BC548602 (2019). I
24  reviewed the Court's Minute Order on the motion for attorneys' fees. The Court
25  approved rates of $1100 an hour for attorneys Dordick and Shegarian. *Id.*, p. 2.
26  Based on a review of their respective websites and the State Bar website, I believe
27  Mr. Dordick is a 1987 admittee and Mr. Shergarian is a 1990 admittee, with   18
28                                          14

Case 2:21-cv-06003-DOC-KES  Document 249-3  Filed 06/20/22  Page 111 of 118  Page ID
Case 2:16-cv-00194-FMO-E  Document 142-1  Filed 02/14/20  Page 15 of 22  Page ID
#:2374

years and 21 years less experience, respectively, than Mr. Litt.

36.     Attached at Exhibit 6 is a true and correct copy of the Minute Order by Judge Michael Linfield in *Dr. Lauren Pinter-Brown v. University of California at Los Angeles*, LASC Case No. BC624838 (Aug. 2018). I downloaded the document from the Los Angeles Superior Court's online services on December 12, 2019, when I became aware of the ruling. Chart No. 1 to the Minute Order sets out the approved rates for each attorney at Shergerian and Associates for whom fees were sought. Mr. Shegerian's approved 2018 rate is $1,100 an hour.

37.     Attached at Exhibit 7 is the Order approving attorney fees in *Schroeder v. County of San Bernardino*, Case No. ED CV 18-427 DMG (JCx). In *Schroeder*, Judge Gee approved the 2019 rate of $950 an hour for Dale Galipo based on the Court's conclusion that Mr. Galipo had 28 years of experience at the time. The Court noted that Mr. Galipo graduated from law school in 1984 but listed no significant experience on his resumé prior to 1991. Ex. 7, p.5.

38.     As further support for Mr. Litt's requested rate, I submit the Declaration of Hannah Cannom, setting out rates for attorneys at Milbank Tweed Hadley & McCloy LLP in 2014. The firm served as pro bono counsel with the Disability Rights Legal Center in Los Angeles in a class-action Special Education case. The Plaintiffs' attorneys filed a motion for attorney fees after prevailing on appeal in the Ninth Circuit. *LAUSD v. Garcia*, Case: 10-55879 (9th Cir. 2014).

39.     In support of the motion, Hannah Cannom, then an associate at Milbank Tweed, filed a declaration setting out the rates for the firm's attorneys. A true and correct copy of the Cannom declaration is attached at Exhibit 8. Ms. Cannom attested that the 2014 rate for Daniel Perry, a 1999 law graduate and a partner at the firm, was $1,135 an hour. At the time, Mr. Perry had only 15 years of experience, less than one-third of the experience Mr. Litt has now. Ex. 8, ¶ 7.

15

Case 2:21-cv-06003-DOC-KES  Document 249-3  Filed 06/20/22  Page 112 of 118  Page ID
Case 2:16-cv-00194-FMO-E  Document 144-12  Filed 02/14/20  Page 16 of 22  Page ID
#:2375
#:3292

**LINDSAY BATTLES**

40.    Plaintiffs request a rate of $700 an hour for Lindsay Battles, now with 10 years of experience.  It is my understanding based on discussions with Mr. Litt that Ms. Battles carried the laboring oar on this case and seeks a rate at the higher end of the range of market rates for an attorney of her skill, experience and reputation.  In my opinion, Ms. Battles' requested rate is comparable to those of similarly skilled attorneys in the Los Angeles legal market.

41.    In *LAUSD v. Garcia*, fees were sought for Delilah Vinzon, then practicing for approximately 11 years, at the 2014 rate of $900 an hour. Ex. 8, ¶ 8. Ms. Cannom also attested in her declaration that her 2014 customary billing rate as an eighth-year associate was $800 an hour.  *Id.*, ¶ 6.  I am familiar with Ms. Cannom and am aware that she is a 2006 law graduate  *Id.,* ¶ 2.

42.    Ms. Battles' rate is also reasonable when compared to the 2018 rate of $675 an hour approved for Anthony Nguyen in Exhibit 6. Ex. 6, Chart 1.  Based on my review of the State Bar website, I understand Mr. Nguyen is a 2009 admittee.  In 2018, he had three years less experience than Ms. Battles has now and was approved at a rate barely three percent below the rate she now requests.  I also note that in 2019, in *Hadsell,* the Court approved the rate of $800 an hour for Mr. Nguyen, an increase of almost 20 percent in one year.  Ex. 5, p. 2.

43.    As one final example of the reasonableness of Ms. Battles' requested rate, in *The Estate of Pream v. City of Long Beach*, Case NO. 17-cv-04295 TJH (FFMx), Plaintiffs requested 2019 rate for Rodney Diggs.  A true and correct copy of the motion for attorney fees is attached at Exhibit 9.  Mr. Diggs is identified in the motion as a 2010 law graduate. Ex. 9, p.13.  His requested rate is at p.12, l. 22. It is my understanding, based on discussions with counsel in the case and my review of the PACER docket, that the case settled prior to a ruling on the motion.

Case 2:21-cv-06003-DOC-KES   Document 249-3   Filed 06/20/22   Page 113 of 118   Page ID
Case 2:16-cv-00194-FMO-E   Document 142-3   Filed 02/14/20   Page 17 of 22   Page ID
#:2376

1

**MARTIN LITJMAER**

2      44.     Plaintiffs request a rate of $600 an hour for Martin Lijtmaer.  I am

3   personally familiar with Mr. Litjmaer and am aware that his primary experience is

4   as a criminal defense attorney.  Mr. Lijtmaer is a 2008 law graduate.

5      45.     The rate of $600 for Mr. Lijtmaer is also reasonable when compared

6   to the rate approved for attorneys in *Sheik Moinuddin v. State of California Dept.*

7   *of Transportation*, LASC Case No. BC656161 (Aug. 13, 2019), an employment

8   discrimination case.  There the Court approved the rate of $550 an hour for

9   attorney Brandon Ruiz and $525 an hour for Sereena Singh.  Ex. 10, p.4.  Based on

10  my preparation of a supporting fee declaration in *Moinuddin* and my review of the

11  State Bar website, I understand that Mr. Ruiz is a 2009 law graduate and Ms. Singh

12  is a 2011 law graduate.  Mr. Ruiz has two years and Ms. Singh four years less

13  experience than Mr. Lijtmaer has now.

14  **PAUL ESTUAR**

15

16     46.     Mr. Estuar seeks a rate of $800 an hour with 27 years of experience.  I

17  believe this is a reasonable rate in the Los Angeles legal market.   In *Moinuddin*,

18  the Court approved attorney fees at the 2019 rate of $850 an hour for attorney Rob

19  Hennig.  Ex. 10, p.4.  I know Mr. Hennig personally.  He was a board member of

20  the ACLU while I worked there and both prior to and after he attended law school.

21  Based on personal knowledge, I believe Mr. Hennig is a 1994 law graduate.  In

22  2019, he had two years less experience than Mr. Estuar has now.

23     47.     Attached at Exhibit 11 is the order of the United States District Court

24  in  *Trevor Woods, et al. v. Officer John Fagan, et al.*, Case No. CV14-08374 VAP

25  (Spx) (C.D. CA 2016), issued by the Honorable Virginia A. Phillips, Chief United

26  States District Judge for the Central District of California.  In *Woods*, the Court

27  determined that a reasonable 2016 hourly rate for attorney Brian Dunn, managing

28                                         17

Case 2:21-cv-06003-DOC-KES   Document 249-3   Filed 06/20/22   Page 114 of 118   Page ID
Case 2:16-cv-00194-FMO-E   Document 182-94   Filed 02/14/20   Page 18 of 22   Page ID
#:2377

attorney at The Cochran Law Firm, was $750.00 per hour.  I am personally familiar with Mr. Dunn.   I provided a supporting declaration for his fee motion in *Fagan*.  I am aware that Mr. Dunn, like Mr. Estuar, is a 1993 law graduate.

48.     More recently, I provided a supporting fee declaration for Mr. Dunn and other attorneys in *Pream*, Case 2:17-cv-04295-TJH-FFM (C.D. CA April 12, 2019) [Doc. 136-2]. Ex. 9.  In *Pream,* Mr. Dunn requested an hourly 2019 rate of $850 an hour.  It is my understanding, based on a review of the Court's docket and discussions with one of the attorneys in the case, that the case settled, including all fees, prior to any decision by the Court on the rates.

**STACEY BROWN**

49.     Plaintiffs request a rate of $700 an hour for Stacey Brown, a 2006 law graduate now with 14 years of experience.  Based on the evidence submitted in support of the requested rates for Lindsay Battles and Martin Lijtmaer, both 2008 law graduates, the rate sought for Ms. Brown is well within the reasonable market range for an attorney with her skill and experience.

**COOK, ANDERSON-BARKER, FLYNN FIRMS**
**DONALD COOK**

50.     Plaintiffs seek a rate of $925 an hour for attorney Donald W. Cook.  I know Mr. Cook personally.  We participate on the National Police Accountability Project list serve and have both presented at the same CLEs on police misconduct issues.  In my experience, Mr. Cook is one of the most skilled practitioners in this area of law.  His work has produced numerous precedential decisions that I and others rely on for our cases.  In my opinion, he is widely viewed as highly skilled and experienced.  The rate of $925 an hour is well within the range of market rates for comparably skilled attorneys in the Central District.

18

Case 2:21-cv-06003-DOC-KES  Document 249-3  Filed 06/20/22  Page 115 of 118  Page ID
Case 2:16-cv-00194-FMO-E  Document 144-5  Filed 02/14/20  Page 19 of 22  Page ID
#:2378
#:2295

51.     Attached at Exhibit 12 is the Order awarding attorney fees as part of the approval of the class settlement in *McKibben v. McMahon*, 2019 WL 1109683, Case No. EDCV 14-2171 JGB (Spx) (C.D. CA Feb. 28, 2019).  Based on my review of the Court's docket, I am aware that the motion for attorney fees was filed in 2018.  In *McKibben*, the Court approved the 2018 rate of $875 an hour for David McLane.  Ex. 12, *14.  I know Mr. McLane personally and am aware that he graduated from UCLA in 1986.  Mr. Cook has four more years of experience now.  The difference in their rates over four years is $50, little more than one percent or approximately $12 an hour per year. (I also note that, in that case, Judge Bernal found Mr. Litt's rate of $1150 reasonable.)

52.     In Exhibits 4, the 2015 rate approved for Paul Kiesel was $1100 an hour.  Ex. 4, p. 7.  Donald Cook and Paul Kiesel both graduated from law school in 1984.  Mr. Cook has five more years of experience than Mr. Kiesel had in 2015.

53.     Attached at Exhibit 13 is the decision in *Garza v. City of Los Angeles*, 2018 WL 5859549, Case No. 2:16-cv-03579-SVW-AFM (CD Cal. 2018), awarding fees to civil rights attorney V. James DeSimone at the 2018 rate of $875 an hour.  I know Mr. DeSimone since approximately 1988, when he contacted the ACLU to ask for assistance on his first appellate argument.  Based on my personal interactions with Mr. DeSimone, I believe that he is a 1985 law graduate.  His approved 2018 rate is only $50 below the 2020 rate now requested for Mr. Cook.

**ROBERT MANN**

54.     Plaintiffs request $975 an hour for attorney Robert Mann.  It is my understanding that Plaintiffs seek a somewhat lower rate for Mr. Mann, a 1971 law graduate, based on his retirement and, therefore, have calculated his rate based on only 45 years of experience. Mr. Mann was a UCLA classmate of a lawyer at the

19

Case 2:21-cv-06003-DOC-KES    Document 249-3    Filed 06/20/22    Page 116 of 118    Page ID
Case 2:16-cv-00194-FMO-E    Document 142-36    Filed 02/14/20    Page 20 of 22    Page ID
#:2379

ACLU when I began working there, which is when I first met him.  He is highly

skilled and experienced as a civil rights lawyer.  The rate he seeks is supported by

the approved rates cited to support Mr. Cook's requested rate.

**SAMANTHA KOERNER**

55.     Plaintiffs request $700 an hour for Samantha Koerner.  I know Ms.

Koerner personally and, on that basis, understand that she is a 1994 law graduate.

While this rate is at the low end of the market range for an attorney with 26 years

of experience, it is my understanding that Ms. Koerner's experience is

concentrated on motion writing, rather than the broader case strategy and lead

counsel role.   Ms. Koerner's requested rate is supported by the evidence

supporting the rates for Lindsay Battles and Stacey Brown.

**CYNTHIA ANDERSON-BARKER**

56.     Plaintiffs request $775 an hour for attorney Cynthia Anderson-Barker.

I have co-counseled several cases with Ms. Anderson-Barker, including *Santiago
v. City of Los Angeles*, Case No. CV 15-8444-BRO(Ex) (CD Cal.) and *Multi-Immigrant
Worker Organizing Network ("MIWON") v. City of Los Angeles*, cv 07-7032 AHM

(CD Cal.).  It is my understanding that she is a 1995 admittee.  In my experience,

she is a highly skilled and experienced attorney who litigated complex civil rights

cases, particularly in the area of police misconduct issues.  The rate of $775 an hour

is at the lower end of the market range for an attorney of her skill and experience.

57.     In *Moinuddin*, the Court approved attorney fees at the 2019 rate of

$850 an hour for attorney Rob Hennig, a 1994 law graduate.  Ex. 10, p.4.

58.     In *Trevor Woods*, the Court approved a 2016 hourly rate for attorney

Brian Dunn at $750 an hour.  Ex. 11.  As noted above, Mr. Dunn is a 1993 law

graduate.  In *Pream*, Mr. Dunn's 2019 hourly rate was $850 an hour.  Ex. 9.

Case 2:21-cv-06003-DOC-KES   Document 249-3   Filed 06/20/22   Page 117 of 118   Page ID
Case 2:16-cv-00194-FMO-E   Document 144-17   Filed 02/14/20   Page 21 of 22   Page ID
#:2380

59.     In *Nozzi,* the lodestar cross-check applied a 2017 rate of $750 an hour for attorney Patrick Dunlevy, identified as a 1992 law graduate. *See* Case 2:07-cv-00380-PA-FFM (CD Cal. 12/22/17) [Doc. 323, p. 4]. Also in *Nozzi*, Hernán Vera, formerly the Executive Director of Public Counsel and identified as a 1994 law graduate, was calculated at the 2017 rate of $765 an hour, just $10 an hour below the 2020 rate requested for Ms. Anderson-Barker.

**COLLEEN FLYNN**

60.     Plaintiffs request compensation for attorney Colleen Flynn at the rate of $740 an hour.  I know Ms. Flynn well and have known her since she was a law student.  On that basis, I am aware that she is a 2004 law graduate.  Over the course of the last 15 years, I have co-counseled several cases with her, including, among others, the *MIWON* case.  Currently, Ms. Flynn is one of my co-counsel in *Chua v. City of Los Angeles*, 2:16-cv-00237 JAK GJS (CD Cal), a class-action First Amendment protest mass arrest case; and in *Rivera Martinez v. The Geo Group,* Case No. 5:18-cv-01125 SP (CD Cal), a civil rights lawsuit on behalf of former detainees at the Adelanto ICE detention facility.

61.     In 2019 in *Chua*, the plaintiffs filed a motion for approval of attorney fees in which they request a rate of $725 a hour for Ms. Flynn.  The rate of $740 an hour is a modest $15 increase on her 2019 rate.

62.     Ms. Flynn's requested rate is also supported by the 2019 rate of $700 an hour for Mr. Diggs, a 2010 law graduate, in *Pream.* Ex. 9.  It also reasonable when measured against the rate of $730 an hour in *Nozzi* for Stephanie Carroll, identified as a 2004 law graduate. *See* Case 2:07-cv-00380-PA-FFM (CD Cal. 12/22/17) [Doc. 323, p. 5].

**SUPPORT STAFF**

21

Case 2:21-cv-06003-DOC-KES   Document 249-3   Filed 06/20/22   Page 118 of 118   Page ID
Case 2:16-cv-00194-FMO-E   Document 148-38   Filed 02/14/20   Page 22 of 22   Page ID
#:2381

63.     Plaintiffs also seek compensation for support staff at rates ranging from $360 an hour for Senior Paralegals, $225 for Experienced Paralegals, $175 an hour for Paralegals, $125 an hour for Junior Paralegals, and $225 for Law Clerks. Plaintiffs are entitled to compensation for paralegals and law clerks at market rate. *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989).  In my experience, the practice in the Central District is to bill private clients for paralegal and law clerk services.  I base my opinion on my review of multiple fee declarations and applications filed by pro bono counsel in public interest and civil rights cases.

64.     For example, in 2014, Milbank Tweed billed a paralegal with 8 years of experience at $230 an hour.  Ex. 8, ¶12.  I note the paralegal had a juris doctor in addition to a Bachelor of Arts, but was not admitted to practice law.

65.     In *Nozzi*, the fees included billing for paralegals at 2017 rates ranging from $335 an hour to $150 an hour and $200 an hour for law clerks. *Nozzi,* Case 2:07-cv-00380-PA-FFM (CD Cal. 12/22/17) [Doc. 323, pp. 4-5].  In *McKibben*, paralegal compensation was approved at an average rate of $235 an hour.  Ex. 12, *14.  In *Moinuddin*, paralegals were approved at $165 an hour.  Ex. 10, p. 4.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 3rd day of February 2020 at Santa Monica, California.

*Carol Sobel*

CAROL A. SOBEL

22