STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310) 452-3200

JOSEPH REICHMANN (SBN 29324)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310) 452-3200

Attorneys for Plaintiff and Class Members

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| PEOPLE OF THE CITY OF LOS ANGELES WHO ARE UN-HOUSED, AS A CLASS REPRESENTED BY E. SERIN, <br><br> Plaintiffs, <br><br> v. <br><br> ERIC MICHAEL GARCETTI, <br><br> Defendants. | 2:21-cv-06003-DOC(KESx) <br><br> NOTICE OF MOTION AND MOTION (1) FOR DECLARATORY RELIEF AND (2) A PRELIMINARY INJUNCTION, DECLARING THAT DEFENDANT CITY OF LOS ANGELES SIT/LIE ORDINANCE, MUNICIPAL CODE §41.18, IS UNCONSTITUTIONAL AND IS ENJOINED FROM BEING ENFORCED <br><br> Date: December 5, 2022 <br> Time: 8:30 a.m. <br> Place: Courtroom 10A, Santa Ana <br><br> Judge David O. Carter |

**PLEASE TAKE NOTICE** that plaintiff moves the court to declare the unconstitutionality, under the United States Constitution, of defendants' sit/lie ordinance, Los Angeles Municipal Code § 41.18, and to enjoin its enforcement, and that oral argument will be heard as set forth above, and that the instant motion is based on the ground that the anti-sit/lie ordinance and its enforcement is

1

1 violative of both the Fourteenth Amendment and the Eighth Amendment to the
2 United States Constitution.
3       Motions for preliminary injunctions are exempted from the L.R. 7-3 meet
4 and confer condition precedent to filing motions, so that no L.R. 7-3 conference
5 was held. As a courtesy, this motion is faxed on Nov. 6, 2022, to defense counsel,
6 Emerson Kim, at (213) 978-7011, so that he will have it as it is filed.

                **YAGMAN + REICHMANN, LLP**

              By: _____
                         **STEPHEN YAGMAN**

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff Eric Serin, who is a homeless person who has been living in tents (which were stolen by defendants' thugs) and cardboard boxes on the sidewalk at the intersection of Jefferson Boulevard and Lincoln Boulevard, along the Ballona Wetlands, for several years, submits this memorandum of points and authorities in support of his motion for declaratory relief and the issuance of a preliminary injunction.

## I.
## INTRODUCTION

Plaintiff challenges a City of Los Angeles law relating to "Lying, or Sleeping or Storing, Using, Maintaining, or Placing Personal Property in the Public Rights of Way." Los Angeles Municipal Code § 41.18 provides as follows:

**SEC. 41.18. SITTING, LYING, OR SLEEPING OR STORING, USING, MAINTAINING, OR PLACING PERSONAL PROPERTY IN THE PUBLIC RIGHT-OF-WAY.**
(Title and Section amended by Ord. No. 187,127, Eff. 9/3/21.)

(a)  No person shall obstruct a street, sidewalk, or other public right-of-way:

(1)  by sitting, lying, or sleeping, or by storing, using, maintaining, or placing personal property, in a manner that impedes passage, as provided by the Americans with Disabilities Act of 1990, Pub. L, No. 101-336, 104 Stat. 328 (1990), as amended from time to time;

(2)  by sitting, lying, or sleeping, or by storing, using, maintaining, or placing personal property, within ten feet of any operational or utilizable driveway or loading dock;

(3)  by sitting, lying, or sleeping, or by storing, using, maintaining, or placing personal property, within five feet of any operational or utilizable building entrance or exit;

(4)  by sitting, lying, or sleeping, or by storing, using, maintaining, or placing personal property, within two feet of any fire hydrant, fire plug, or other fire department connection;

(5)  by sitting, lying, or sleeping, or by storing, using, maintaining, or placing personal property, within the public right-of-way in a manner that obstructs or unreasonably interferes with the use of the right-of-way for any activity for which the City has issued a permit.

(b)  No person shall obstruct any portion of any street or other public right-of-way open to use by motor vehicles, or any portion of a bike lane, bike path, or other public right-of-way open to use by bicycles, by sitting, lying, or sleeping, or by storing, using, maintaining, or placing personal property, anywhere within the street, bike lane, bike path, or other public right-of-way, as specified.

(c)  Except as limited by Subsection (d), no person shall:

(1)  sit, lie, sleep, or store, use, maintain, or place personal property, in or upon any street, sidewalk, or other public right-of-way within the distance stated on the posted signage (up to a maximum of 500 feet) of a property designated as a sensitive use. For a property to be designated as a "sensitive use", the property must be a Public Park, or Public Library, as those terms are defined in Section 105.01 of this Code; (Amended by Ord. No. 187,586, Eff. 9/18/22.)

(2)  sit, lie, sleep, or store, use, maintain, or place personal property, in or upon any street, sidewalk, or other public right-of-way within the distance stated on the posted signage (up to a maximum of 500 feet) of a designated overpass, underpass, freeway ramp, tunnel, bridge, pedestrian bridge, subway, wash, spreading ground, or active railway, where the City Council determines, in the designating resolution, that the public health, safety, or welfare is served by the prohibition, including, without limitation, by finding that sleeping or lodging within the stated proximity to the designated area is unhealthy, unsafe, or incompatible with safe passage;

(3)  sit, lie, sleep, or store, use, maintain, or place personal property, in or upon any street, sidewalk, or other public right-of-way, within the distance stated on the posted signage (up to a maximum of 1,000 feet) of a designated facility, opened after January 1, 2018, that provides shelter, safe sleeping, or

safe parking to homeless persons, or that serves as a homeless services navigation center;

(4) sit, lie, sleep, or store, use, maintain, or place personal property, in or upon any street, sidewalk, or other public right-of-way that has been posted with signage prohibiting sitting, lying, sleeping, or storing, using, maintaining, or placing personal property. In order to designate a section of street, sidewalk, or other public right-of-way as prohibited under this subdivision, the City Council shall determine, in a designating resolution and based on specific documentation, that the circumstances of continued sitting, sleeping, lying, storing personal property, or otherwise obstructing the public right-of-way at that location poses a particular and ongoing threat to public health or safety. Such circumstances may include, but are not limited to: (i) the death or serious bodily injury of any person at the location due to a hazardous condition; (ii) repeated serious or violent crimes, including human trafficking, at the location; or (iii) the occurrence of fires that resulted in a fire department response to the location. For each such location, a prohibition pursuant to this subdivision shall be effective for a period of time specified in the resolution, but not to exceed one year.

(d) No person shall be found to be in violation of any prohibition set forth in Subsection (c), unless and until: (i) the City Council has taken action, by resolution, to designate a specified area or areas for enforcement against sitting, lying, sleeping, or storing, using, maintaining, or placing personal property, or otherwise obstructing the public right-of-way; (ii) the City has posted signage at the designated area or areas set forth in the resolution, with such signage including reference to any required findings adopted in the resolution, and giving notice of the date after which no sitting, lying, sleeping, or storing, using, maintaining, or placing personal property, or otherwise obstructing the public right-of-way will be allowed; and (iii) at least 14 calendar days have passed from the date on which the signage is posted at the designated area or areas.

(e) No person shall sit, lie, sleep, or store, use, maintain, or place personal property, in or upon any street, sidewalk, or other public property within 500 feet of a School or Day Care Center as those terms are defined in Section 105.01 of this Code. A violation of this subsection is governed by Section 41.18(f) of this Code. (Added by Ord. No. 187,586, Eff. 9/18/22.)

(f) Violations of this section involving a person who willfully resists, delays, or obstructs a City employee from enforcing this section or who willfully refuses to comply after being requested to do so by an authorized City employee shall be subject to the penalties set forth in Los Angeles Municipal Code (LAMC) Section 11.00. All other violations of this section shall be enforceable only as infractions pursuant to LAMC 11.00(m) or issuance of a citation pursuant to City's Administrative Citation Enforcement Program pursuant to LAMC Section 11.2.01 *et seq*.

Very obviously, §41.18, unabashedly is directed at, and only at, the now-vast homeless population of the City of Los Angeles, and was signed into law by a Mayor, defendant Eric Garcetti, who talks a good game about the homeless, but who in fact, at best, is incompetent, and, at worst, is a horrible Brentwood rich kid who feels no compassion for the City's homeless population, and who dreams of escaping Los Angeles' homeless tragedy to New Delhi, India, on "his passage to India." *See* Exhibit 1 hereto. It would be laughable if it were funny. But it's not funny.

This court, Judge Carter, held a very similar City of Santa Barbara ordinance to be violative of the Equal Protection Clause of the Constitution's Fourteenth Amendment, in *Boring v. Murillo*, 2022 WL 14740244, *1 (C.D.Cal. 2022). Plaintiff moves for a preliminary injunction to declare that this section of the Municipal Code is unconstitutional, and for a preliminary injunction to prohibit its enforcement.

## II.
## DEFENDANTS' CONDUCT IS UNCONSTITUTIONAL.

Like *Les Misérables*, in 1862, in which Victor Hugo examined the nature of law and grace, and urban design, so too does this action address the fate of the poor and un-housed in relatively, very wealthy Santa Barbara.

In 2014, the Ninth Circuit's holdings in *Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014), should have put paid to defendants' challenged conduct in the instant matter, but it didn't. In 2016, the City defendants ramped-up

6

their restrictions on the poor, unhoused. Defendants are local, City of Los Angeles politicians,[1] who have no regard for the poor and down-trodden among them, and instead who seek to appease only those who most likely are going to vote, hopefully for them. Defendants seek to appease the rich and comfortable among us, and the business interests, and who don't want to be bothered even having to look at those who are less fortunate. They want them just to disappear, to go away. They want negatively to eugenicize their City scapes, to clear them of the unsightly, except for in out-of-the-way areas where no one will have to look at them. But it is, unfortunately, not at all surprising. This court must not let defendants get away with that. What defendants are doing is both fascistic and shameful.

In *Desertrain*, the Ninth Circuit told the City of Los Angeles, to stop demonizing and punishing the poor, and held as follows:

> This 42 U.S.C. § 1983 case concerns the constitutionality of Los Angeles Municipal Code Section 85.02, which prohibits use of a vehicle "as living quarters either overnight, day-by-day, or otherwise." Plaintiffs include four homeless individuals who parked their vehicles in the Venice area of Los Angeles and were cited and arrested for violating Section 85.02. Defendants are the City of Los Angeles and individual LAPD officers.
> . . .
> [The subject ordinance states that N]o person shall use a vehicle parked or standing upon any City street, or upon any parking lot owned by the City of Los Angeles and under the control of the City of Los Angeles or under control of the Los Angeles County Department of Beaches and Harbors, as living quarters either overnight, day-by-day, or otherwise.
>
> On September 23, 2010, Los Angeles officials held a "Town Hall on Homelessness" to address complaints of homeless individuals with vehicles living on local streets in Venice.
> . . .

---

[1] Of the sort whom the bizarre Pennsylvania Republican senate candidate Dr. Mehmet Oz wants women in need of an abortion to go to, to get permission.

> Beginning in late 2010, the Task Force began enforcing Section 85.02 against homeless individuals. Four such homeless individuals are Plaintiffs in this case . . . .
>
> . . .
>
> Section 85.02 promotes arbitrary enforcement that targets the homeless. A statute is also unconstitutionally vague if it encourages arbitrary or discriminatory enforcement. See Papachristou, 405 U.S. at 162, 92 S.Ct. 839. If a statute provides "no standards governing the exercise of ... discretion," it becomes "a convenient tool for harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure." Id. at 170, 92 S.Ct. 839 (internal quotation marks omitted).
>
> [The ordinance] appears to be applied only to the homeless[,][2] . . . to enable men to be caught who are vaguely undesirable in the eyes of the police and prosecution . . . .
>
> The [Supreme] Court [in Papachristou v. City of Jacksonville, 405 U.S. 156 (1972)] viewed the ordinance in its historical context as the descendant of English feudal poor laws designed to prevent the physical movement and economic ascension of the lower class. *Id.* at 161–62, 92 S.Ct. 839. In America, such laws had been used to "roundup ... so-called undesirables," and resulted "in a regime in which the poor and the unpopular [we]re permitted to stand on a public sidewalk ... only at the whim of any police officer." *Id.* at 170, 171, 92 S.Ct. 839 (internal quotation marks omitted). The Court concluded that "the rule of law implies equality and justice in its application. Vagrancy laws ... teach that the scales of justice are so tipped that even-handed administration of the law is not possible. The rule of law [must be], evenly applied to minorities as well as majorities, to the poor as well as the rich, [and] is the great mucilage that holds society together." *Id.* at 171, 92 S.Ct. 839.
>
> . . .
>
> [The manner in which the City of Los Angeles behaved is] incompatible with the concept of an even-handed administration of the law to the poor and to the rich that is fundamental to a democratic society.
>
> . . .

---

[2] Here, this precisely is what is going on: the subject ordinance is applied only to the un-housed, to prevent only them from even being on public streets.

> In sum, Section 85.02 has paved the way for law enforcement to target the homeless and is therefore unconstitutionally vague.
>
> [The Section] opens the door to discriminatory enforcement against the homeless and the poor.
>
> For many homeless persons, their automobile may be their last major possession—the means by which they can look for work and seek social services. The City of Los Angeles has many options at its disposal to alleviate the plight and suffering of its homeless citizens. Selectively preventing the homeless and the poor from using their vehicles for *activities* many other citizens also conduct in their cars should not be one of those options.

754 F.3d at 1149-58 (emphases added). Yet, here we all are, again: some of the same (read, Garcetti) and some different faces, but the same old, cacophonous song.

This long has been condemned by **both** the Supreme Court and the Ninth Circuit.

In his dissent in *James v. Valtierra*, 402 U.S. 137, 144-45 (1971), Justice Marshall, joined by Justices Brennan and Blackmun, stated that "[i]t [the law in issue] is an explicit classification on the basis of poverty--a suspect classification which demands exacting judicial scrutiny[,] . . . [because it] may affect the poor more harshly than it does the rich." (Citing *Douglas v. California*, 372 U.S. 353, 361 (1973) (Harlan, J., dissenting). In as many words, majority dispositions of the Court held the same thing. *See McDonald v. Bd. of Election Commissioners*, 394 U.S. 802, 807 (1969) ("a careful examination on our part is especially warranted where lines are drawn on the basis of wealth"); *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 667 (1966) ("We conclude that a State violates the Equal Protection Clause of the Fourteenth Amendment whenever it makes . . .affluence . . . a[] . . . standard."); *Douglas v. California*, 372 U.S. 353, 358 (1973) ("equality [is]

demanded by the Fourteenth Amendment where the rich man . . . enjoys the benefit . . . while the indigent . . . is forced to shift for himself.").

There is the same right under the Eighth Amendment. In *Martin v. City of Boise*, 920 F.3d 584, 604 (9th Cir.), *amended on denial of reh'g and reh'g en banc*, *cert. denied sub nom. City of Boise, Idaho v. Martin*, 140 S.Ct. 674 (2019), the court held that:

> "so long as there is a greater number of homeless individuals in Los Angeles than the number of available beds [in shelters]" for the homeless, Los Angeles could not enforce a similar ordinance against homeless individuals . . . . . We agree with *Jones's* reasoning and central conclusion . . . and so hold that an ordinance violates the Eighth Amendment insofar as it imposes criminal sanctions against homeless individuals for sleeping outdoors, on public property, when no alternative shelter is available to them.

(Citing with approval and adopting the reasons set forth in *Jones v. City of Los Angeles*, 444 F.3d 118 (9th Cir. 2006), *vacated*, 505 F.3d 1006 (2007)). In *Martin*, although *Jones* too-cleverly-by-half had been settled by the City of Los Angeles, having paid out a small king's ransom in attorneys' fees to plaintiffs' counsel, lawyers with the ACLU Foundation of Southern California, in order to try to prevent it from becoming binding precedent, still it ended up becoming binding precedent, when the court in *Martin* "agree[d] with *Jones's* reasoning and central conclusion." *Martin* brought *Jones* back from the graveyard of cases that over-reaching parties sought to bury by settling and then getting a court to vacate their holdings.

Plaintiff both has stated and sustained both Fourteenth Amendment and Eighth Amendment claims, and there is a likelihood of plaintiff succeeding on the merits.

This court already has held to be unconstitutional a similar ordinance.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). To establish a violation, the "plaintiff must show that the defendant[ ] acted with an intent or purpose to discriminate against [him] based on membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (internal citation omitted).

\*\*\*

### 2. Sit/lie ordinances

Turning to the sit/lie ordinances, Defendants argue that "[a]lthough Plaintiffs allege that sanitation workers and police have kept unhoused individuals off the sidewalks and streets, Plaintiffs fail to describe when and how they were prevented from sitting or lying on public streets as opposed to housed individuals." Mot. at 14. The City further claims that "these ordinances serve the legitimate government need of maintaining the safety of the City's streets." *Id.*

The City's sit/lie ordinance bars sitting or lying on public streets in downtown Santa Barbara. Santa Barbara Mun. Code § 9.97.010. The ordinance includes exceptions for people "patronizing a commercial establishment conducted on the public sidewalk;" attending parades, festivals, or meetings granted a City permit; waiting for buses at bus stops; and sitting on chairs or benches provided by the City or adjacent private property owners. *Id.* §§ 9.97.010(B)(3), (C)(1), (C)(2). The ordinance appears to ban people sitting unless they are spending money. Plaintiffs argue that this is simply an attempt to sweep homeless people off of the streets without providing shelter. *See* FAC ¶ 100b.

\*\*\*

The Santa Barbara ordinance does not provide a rational basis for distinguishing between people sitting while dining outside, people sitting on the sidewalk to watch a parade, and homeless people sitting to rest their legs. This ordinance appears to ban homeless people from ever sitting down when the City has left them with no alternative—they lack adequate shelter, housing, and places to rest, which the City could provide.

\*5 Plaintiffs have sufficiently pled their Equal Protection claim at this early stage of litigation. Other district courts have similarly found that allegations of selective enforcement of ordinances against the homeless based on improper motives are sufficient to survive a motion to dismiss. *See, e.g., Anderson v. City of Portland*, No. 08-cv-01447-AA, 2009 WL 2386056, at \*8 (D. Or. July 31, 2009).

*Boring*, 2022 WL 14740244, at *3-5.

# III.
# BOTH DECLARATORY AND INJUNCTIVE RELIEF ARE WARRANTED.

## A. DECLARATORY RELIEF

"In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party[,] . . . [and a]ny such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201. Moreover, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

Here, based on the foregoing, plaintiff is entitled to the declaratory relief that the subject ordinance is unconstitutional, both on its face and as applied, and to further injunctive relief. *See infra*.

## B. PRELIMINARY INJUNCTIVE RELIEF

"A plaintiff seeking a preliminary injunction must establish that he [or here, she] is likely to succeed on the merits, that he [or she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his [or her] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982). Plaintiff is likely to succeed on the merits, *see supra*, plaintiff is likely to suffer irreparable harm in that plaintiff will have been deprived of plaintiff"s constitutional rights -- and a violation of a constitutional right always constitutes irreparable harm -- the right to be on a public street in the City of Los Angeles, the

balance of equities tips decidedly in plaintiff's favor and against defendants, and clearly a preliminary injunction is in the public interest, because it always is in the public's interest to have constitutional and lawful ordinances, and to treat all citizens, both rich and poor, equally, and not based on wealth or poverty.

As to preliminary injunctions, the Ninth Circuit most recently held in *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. Aug. 30, 2021), that:

> "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). At the same time, however, federal courts "must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners." *Brown v. Plata*, 563 U.S. 493, 511, 131 S.Ct. 1910, 179 L.Ed.2d 969 (2011) (citation and internal quotation marks omitted). Nor may federal courts "allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Id.*
>
> To obtain a preliminary injunction, Porretti "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20, 129 S.Ct. 365. Where, as here, the government opposes a preliminary injunction, the third and fourth factors merge into one inquiry. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).
> . . .
> Emotional injuries, psychological distress, and risk of suicide may constitute irreparable harm. *See id.* at 797–98; *see also Thomas v. Cnty. of L.A.*, 978 F.2d 504, 511 (9th Cir. 1992) ("Plaintiffs have also established irreparable harm, based on this Court's finding that the deputies' actions have resulted in irreparable physical and emotional injuries to plaintiffs and the violation of plaintiffs' civil rights.").

Homeless people, such as plaintiff Jacobs, undoubtedly suffer emotional injuries, psychological distress, and risk suicide by not being able to reside without fear of defendants' ordinance being enforced against them, and this constitutes irreparable harm, in violation federal civil rights. The court continued in *Porretti*:

13

> The third and fourth [*Winter*] factors of the preliminary-injunction test—balance of equities and public interest—merge into one inquiry when the government opposes a preliminary injunction. *See Drakes Bay*, 747 F.3d at 1092. The "balance of equities" concerns the burdens or hardships to [the Plaintiff] compared with the burden on Defendants if an injunction is ordered. *See Winter*, 555 U.S. at 24–31, 129 S.Ct. 365. The "public interest" mostly concerns the injunction's "impact on nonparties rather than parties." *Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003) (citation omitted).
>
> The district court then explained how an injunction was in the public's interest: "The public has an interest in ensuring the continued dignity of [individuals] incarcerated in federal prisons" and "[i]nherent in that dignity is the recognition of serious medical needs, and their adequate and effective treatment" pursuant to the Eighth Amendment's mandated standard of care. We see no abuse of discretion here. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("***[I]t is always in the public interest to prevent the violation of a party's constitutional rights.***") (citation omitted); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, ***public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution***.").

(Emphases added.)

In the Ninth Circuit, a party may obtain injunctive relief in the form of a preliminary injunction by satisfying one of two, alternative tests.

The traditional injunctive relief test requires that there be "(1) a strong likelihood[3] of success on the merits [as here there is], (2) the likelihood of irreparable injury to plaintiff if the preliminary relief is not granted [as here there is], (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest[] [as here there is]." *Johnson v. California State Board of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995). The public interest is the most

---

[3] *Winter* did not change this injunctive relief standard, and it arguably reduced the "*strong* likelihood" standard to merely "likely to succeed on the merits." Plaintiffs have met both standards.

14

important factor, and it would be irreparably harmed were the subject ordinance to stand.

Under the so-called "alternative test," a party seeking injunctive relief must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury, *or* (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *Stanley v. Univ. of Southern California*, 13 F.3d 1313, 1319 (9th Cir. 1994).

Taken as a whole, these requirements construct "a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 516 (9th Cir. 1993) (citations and internal quotation marks omitted). Conversely, *mutatis mutandis*, and/or by *modus tollens*, as the probability of success increases, the required degree of irreparable harm decreases. *See id*.

Under the test for injunctive relief, a moving party must show that there is a fair chance of success on the merits. *Stanley,* 13 F.3d at 1319, as here plaintiff has shown. Likewise, "[u]nder either formulation of the test, a party seeking an injunction must demonstrate that it will be exposed to some significant risk of irreparable injury." *Associated General Contractors v. Coalition for Economic Equity,* 950 F.2d 1401, 1410 (9th Cir. 1991).

Defendants are acting and continue to act without any legal authority and contrary to controlling legal authority, and continue to proceed with the enforcement of their ordinance.

Plaintiff has demonstrated that plaintiffs are entitled to a preliminary injunction.

//
//
//

# IV.
# CONCLUSION

For each and all of the reasons set forth, plaintiff should be granted declaratory relief and a preliminary injunction, as set forth in the proposed order that is lodged concurrently herewith.

This court should ignore completely what three up-town judges of the Ninth Circuit did in *L.A. Alliance for Human Rights v. County of Los Angeles*, 14 F.4th 947 (9th Cir. 09/23/21), because that disposition was based on standing, and it had to do with providing funding to shelter homeless residents, and in the instant matter there simply are no such issues. In *L.A. Alliance*, the court held that this court abused its discretion (1) in relying on extra-record evidence to find facts supporting standing; here there is no such evidence; (2) that the plaintiffs lacked standing to bring race-based claims; here, there are no race-based claims; (3) that the plaintiffs lacked standing to bring a due process claim under state-created danger theory; here, there is no standing issue and no state-created danger theory; (4) that the plaintiffs lacked standing to bring a due process claim under special relationship theory; here, there is no special relationship theory; (5) that plaintiffs lacked standing to bring a claim under a California statute requiring local governments to provide support for indigent persons; here, there is no such claim; (6) that plaintiffs had standing to bring ADA claim; here, there is no such claim; and, (7) that residents who used wheelchairs for their daily activities failed to demonstrate that law and facts clearly favored their position, in ADA claim, as required to support preliminary injunction; here, there is no such claim.

The Ninth Circuit opinion here is wholly inapposite

This court's position should be "Once burned, fight twice as hard." And, of course, none of the wealthy, privileged judges on the Ninth Circuit panel would have had any sympathy or compassion for the homeless. But that makes no

1 difference here, because their disposition has no bearing whatever on the instant
2 matter, as that false flag case should have no bearing on the instant matter.

Respectfully submitted,

**YAGMAN + REICHMANN, LLP**

By: _____/s/ Stephen Yagman_____
      **STEPHEN YAGMAN**