1  STEPHEN YAGMAN (SBN 69737)
   filing@yagmanlaw.net
2  YAGMAN + REICHMANN, LLP
   333 Washington Boulevard
3  Venice Beach, California 90292-5152
   (310)452-3200
4
5  Presented on behalf of Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PEOPLE OF LOS ANGELES WHO ARE UN-HOUSED, AS A CLASS REPRESENTED BY C. FINLEY, *etc.*,<br><br>Plaintiff,<br><br>v.<br><br>ERIC MICHAEL GARCETTI, *et al.*,<br><br>Defendants. | 2:21-cv-06003-DOC(KESx)<br><br>**PLAINTIFFS'** *EX PARTE* **APPLICATION FOR ORDER RECONSIDERING MINUTE ORDER DENYING DAMAGES CLASS CERTIFICATION BY (1) NAMING PLAINTIFF FINLEY AS A CLASS REPRESENTATIVE, AND (2) REVERSING RULING THAT A DAMAGES MODEL IS REQUIRED FOR A DAMAGES CLASS CERTIFICATION**<br><br>Judge David O. Carter |

   On July 31, the court determined which plaintiffs would be class

representatives and omitted plaintiff Finley and also ruled that a damages model

was required for a damages class certification, and plaintiffs apply to correct thos

two rulings.

                    Respectfully submitted,

               **YAGMAN + REICHMANN, LLP**


               By:  /s/  Stephen Yagman
                    **STEPHEN YAGMAN**

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

How outrageous that the pathetically few possessions of the already-impoverished and downtrodden poor, with only minimal belongings, are just grabbed-up, and dumped, as far away as possible, to prevent them from retrieving them, in effect treating them like scofflaw car owners, whose cars are impounded for not paying tickets, rather than treating them as indigent paupers.  One is reminded of  Victor Hugo's *Les Miserables*, and that almost 200 years later, the City of Los Angeles Los Angeles (the City whose officials, like defendant Mayor Karen Bass now making her second trip to Paris to "study" the 2024 Olympics, presently are moving heaven and earth to facilitate the 2028 Olympics) only barely stops short of sending homeless people to prison, but nonetheless punishes them severely for being homeless: this is, as they say in Yiddish, a "Shonda" (a disgrace, a shame, a terrible embarrassment, a scandal).

**PLAINTIFF FINLEY SHOULD HAVE BEEN NAMED A CLASS REPRESENTATIVE.**

The court had before it the material difference in fact, L.R. 7-18(a), and failed to consider it, L.R. 7-18(c), that when this, principal action was consolidated with *Finley v. Bass*, Doc. 350 (May 30, 2024), Ms. Finley, by operation of law, became a plaintiff in the instant action, so that the court should correct this oversight error.

**NO "MODEL" IS REQUIRED FOR DAMAGES CLASS CERTIFICATION.**

A change in law, L.R. 7-18(b), as to whether a model is required to be presented in order for there to be damages class certification, *Lytle v. Nutramax Labs, Inc.*, 99 F.4th 557, 565, 568 (9th Cir. April 2024), *see infra*, warrants reconsideration of this issue.

2

A class is maintainable under Rule 23(b)(3) (a damages class) when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Rule 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (citing *Amchem Products, Inc. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Whereas the commonality inquiry tests the common claim itself, the preponderance inquiry measures the relative weight of the common claim with respect to individualized claims which might militate against class adjudication. *Ibid*. Here, there are only common claims, and to say that any claims here preponderate would be either superfluous and/or redundant. Every claim is identical. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser*, 253 F.3d at 1189 (citing *Valentino*, 97 F.3d at 1234). Here, in fact and in law, the only judicially-economic way of addressing all of these claims is in a damages class action. To do otherwise would be inefficient and absurd. In determining superiority, the court must consider the four factors of Rule 23(b)(3): (A) the interests of members in the class in individually controlling the prosecution or defense of the separate actions; (B) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. *Ibid*.; *Lewallen v. Medtronic USA, Inc.*, 2002 WL 30300899, at *1, *5 (N.D. Cal. 2002); Rule 23(b)(3). In balancing these factors, the court should "focus on the efficiency and economy elements so that

appropriate cases may be adjudicated most profitably on a representative basis." *Lewallen*, 2002 WL 30300899 * 5 (citing *Zinser*, 253 F.3d at 1190).

This court, Judge Dean D. Pregerson, in a class action prosecuted by plaintiffs' counsel herein, put the question succinctly:

> The plaintiffs contend that the common questions of law or fact clearly predominate over any individual issues. The defendants reply that individualized determinations of causation and ***damages*** predominate. However, ***these types of issues do not concern Rule 23(b)(3)***. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). This inquiry is more searching than the Rule 23(a)(2) "commonality" inquiry. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir.1998). However, ***the determination rests not on whether individualized damages determinations will be necessary but on "legal or factual questions that qualify each class member's case as a genuine controversy."*** *Amchem,* 521 U.S. at 623, 117 S.Ct. 2231.
> . . .
> For the foregoing reasons, the Court grants the motion for certification and certifies this as a class action under Rules 23(b)(2) and 23(b)(3).

*Thomas v. Baca*, 231 F.R.D. 397, 402, 405 (C.D. Cal. 2005) (emphasis added).

Measured against these hoary principles, plaintiffs clearly have satisfied the prerequisites for class certification. Defense counsel's argument that damages for the class members would differ previously was addressed and rejected by this court in *Berry*.

A. The interests of members in the class in individually controlling the prosecution or defense of the separate actions.

There is absolutely no interest of members of the class individually to control the prosecution of separate actions. This factor supports certification of a damages class action.

B. The extent and nature of any litigations concerning the controversy already commenced by or against members of the class.

4

There is no other litigation of which plaintiffs know concerning the subject controversies, and this will be the only such litigation. This factor supports class certification.

C. The desirability or undesirability of concentrating the litigation of the claims in the particular forum.

The litigation will be *only in this forum*, and therefore, this factor supports class certification.

D. There are no difficulties likely to be encountered in the management of a class action.

## NO DAMAGES MODEL AT ALL IS REQUIRED FOR CERTIFICATION OF A DAMAGES CLASS, AS RECENT NINTH CIRCUIT AUTHORITY SHOWS.

The case on which this court relied as the basis for it not certifying a damages class, *Comcast Corp. v. Behrend*, is wholly inapposite, because it does not stand for the proposition for which the court cited it -- that "plaintiffs [are required] to present a damages mode consistent with their theory of liability . . . [and there must be a] model [to] measure . . . those damages . . . ." Doc. 365 at 7-9. *Comcast Corp.* goes to the efficacy of a hypothetical damages model *when one has been presented*, **but it does not require that there be a model at all.**

Plaintiffs were not required to and did not propose any model, and because they had no notice that a model *vel non* would be in issue, they did not present any argument on that issue. (Plaintiffs present one, hypothetical model below, but do not advocate it or argue that there be one at all. None is required by *Comcast Corp.* or any other case that plaintiffs could find.)

No model was required in any of the other class actions that plaintiffs' counsel got certified in this court, *viz. e.g. Vanke v. Block*, 98-04111-DDP (C.D. Cal. 1998); *Berry v. Baca*, 226 F.R.D. 398 (C.D. Cal. 2005); *Mortimer v. Baca*,

5

2005 WL 2160203 (C.D. Cal. 2005); *Thomas v. Baca*, 231 F.R.D. 397 (C.D. Cal. 2005); *Hawkins v. Comparet-Cassani*, 251 F.3d 1230 (9th Cir. 2001) (affirming certification of class). For this reason, plaintiffs' counsel did not submit any model (nor did defendants submit any contention that a model was required).

Certification of a damages class is permitted if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). A court should consider the following factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Ibid*.

The plaintiffs contend that the common questions of law or fact clearly predominate over any individual issues. The defendants reply that individualized determinations of causation and damages predominate is without merit, and these types of issues do not concern Rule 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). This inquiry is more searching than the Rule 23(a)(2) "commonality" inquiry. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998). However, the determination rests not on whether individualized damages determinations will be necessary, but rather only on "legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem,* 521 U.S. at 623, 117 S.Ct. 2231.

6

Thus, this requirement essentially is a heightened commonality inquiry: do the common legal and factual questions appear more significant than the individualized legal and factual questions? The court should find that the answer is "yes." The central issue to a claim brought by any potential class member is whether they have damages under § 1983. All the class members share this legal question. They also share the fact that they have allegedly been subjected to unconstitutionally-applied ordinances. The individualized questions of law and fact are peripheral. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Wright, Miller & Kane, 7AA *Federal Practice and Procedure,* § 1778. Such is the case here. Accordingly, the court should find that the predominance requirement is met.

In determining the superiority element of Rule 23(b)(3), a court should consider the four factors listed therein, as well as the possibility of a superior alternative to class adjudication. (Here, clearly there is no superior alternative.)

First, the court should consider the interests of class members in controlling their individual prosecutions. Here, the court should find that the injuries and claims of the putative class members are virtually identical, and that, therefore, their interests in controlling their individual prosecutions are low, if not non-existent. Further, it should appear to the court that the potential recovery for any one member's action would be low relative to the cost of prosecuting the action, such that it would discourage a bringing of a claim.

The third listed Rule 23(b)(3) factor, the desirability of concentrating similar actions in a single forum favors certification in this action. Any related actions that likely would arise in the Central District would be consolidated before a single judge, as the seven, currently-consolidated actions have been.

Next, the court should find that any difficulties likely to be encountered in the management of this class are not significant and, in any case, would be fewer and less than the judicial resources that would be expended in adjudicating individual un-housed persons' actions against defendants.

Finally, the court should find that a class action is superior to any available alternative, so that, accordingly, the court should certify this as a damages class action, under Rule 23(b)(3).

The Ninth Circuit, in April 2024, held as follows:

> Nutramax challenges the district court's reliance upon the proposed damages model of Plaintiffs' expert, Dr. Jean-Pierre Dubé, ***to find that common questions predominated as to injury***. Nutramax claims this was error because the proposed model had not actually been applied to the proposed class. We conclude that, contrary to Nutramax's contention, there is no general requirement that an expert actually apply to the proposed class an otherwise reliable damages model ***in order to demonstrate that damages are susceptible to common proof at the class certification stage***. Rather, we hold that class action plaintiffs may rely on a reliable though not-yet-executed damages model to demonstrate that ***damages are susceptible to common proof*** so long as the district court finds that the model is reliable and, if applied to the proposed class, will be able to calculate damages in a manner common to the class at trial.
> . . .
> [T]he court below, citing other district court precedent, held that "[a] plaintiff is not required to actually execute a proposed conjoint analysis to ***show that damages are <u>capable</u> of determination on a class-wide basis***."

*Lytle v. Nutramax Labs, Inc.*, 99 F.4th 557, 565, 568 (9th Cir. 2024) (emphases added).

Plaintiffs here are not required to have a damages model at all. Rather, they are required to show that "damages are susceptible to common proof," which they have done, and do again herein. *Nutramax* further held:

> At issue here is the predominance requirement [of Rule 23(b)(3)]: that "questions of law or fact common to class members predominate over any

> questions affecting only individual members." FRCP 23(b)(3). This requirement presupposes satisfaction of the commonality requirement of FRCP 23(a)(2), which itself tests "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011)). But the predominance inquiry goes further and "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016).
>
> At the same time, it is critical to keep in mind that class certification is different from summary judgment. "A court . . . is merely to decide [whether a class action is] a suitable method of adjudicating the case." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015). With respect to the predominance inquiry specifically, a district court must evaluate " 'the method or methods by which plaintiffs propose to use the [class-wide] evidence to prove' the common question in one stroke." *Olean*, 31 F.4th at 666 (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 312 (3d Cir. 2008)). "In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that ***a common question is capable of class-wide resolution***, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666–67.

*Id*. at 569 (emphasis added). No damages model is required and all that a damages class applicant need show is that their damages request is *capable of class-wide resolution*, which plaintiffs here have done and do again. *See also id*. at 570, n. 2: "[W]e have held that ***individual questions of damages do not necessarily defeat class certification***, as the district court here expressly acknowledged. *See Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015)." Thus, no damages model at all is required. *Cf. Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (finding evidence "that damages could feasibly and efficiently be calculated once the common liability questions are adjudicated" was sufficient

to satisfy predominance); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) ("To gain class certification, Plaintiffs need to be able to allege that their damages arise from a course of conduct that impacted the class. But they need not show that each members' damages from that conduct are identical.").

**THERE IS A READY, ILLUSTRATIVE MODEL, ALTHOUGH ONE IS NOT NECESSARY AND PLAINTIFFS DO NOT ADVOCATE IT.**

All damages class members had their tents confiscated by defendants. A quick Internet survey of the kind of tents in which plaintiffs and class members lived turned up that:

# Amazon Basics Dome Camping Tent With Rainfly and Carry Bag, 4/8 Person

Visit the Amazon Basics Store
4.4 *4.4 out of 5 stars*  2,858 ratings

| Search this page
100+ bought in past month

$95.26$95.26



## Coleman Sundome Camping Tent, 2/3/4/6 Person Dome Tent with Snag-Free Poles for Easy Setup in Under 10 Mins, Included Rainfly Blocks Wind & Rain, Tent for Camping, Festivals, Backyard, Sleepovers

*4.6 out of 5 stars*
24,330
6K+ bought in past month

$68.21 $68.21
List: $99.99 $99.99

Thus, the average cost of a tent is about $81.00, which properly models what minimum, class-wide damages would be.

## CONCLUSION

The court should reconsider its certification order and (1) add plaintiff Finley as a class representative and (2) certify a damages class, absent a model.

                              **YAGMAN + REICHMANN, LLP**

                              By: _____
                                    **STEPHEN YAGMAN**

//

## DECLARATION OF STEPHEN YAGMAN

I, Stephen Yagman, declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am one of the attorneys for the plaintiffs in this action.

2. Today, Aug. 2, 2024, at approximately 2:38 p.m., I spoke with defense counsel, Gabriel Dermer, and gave him notice that the foregoing application would be made today, and he advised me that he would oppose it.

3. If this action is certified as a damages class action, I would need to do important discovery before the Aug. 30 discovery cutoff date, so that I have worked continuously since July 31, when the court's order denying damages class certification was rendered, to research and draft the instant application. I do not wish to divulge the specific discovery I would need to do because that would be a disclosure that would breach the attorney work product privilege.

4. The matter of whether or not this action will be a damages class action needs to be determined at the earliest possible time.

_____
STEPHEN YAGMAN 08-02-24