HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
GABRIEL S. DERMER Assistant City Attorney (SBN 229424)
EMERSON H. KIM, Deputy City Attorney (SBN 285142)
200 North Main Street, Room 675, City Hall East
Los Angeles, California 90012
Telephone No.: (213) 526-7336
Email: emerson.kim@lacity.org

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF CITY OF LOS ANGELES WHO ARE UN-HOUSED, E. SERIN, D. JACOBS, and C. FINLEY individually and as representatives of a class,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, et al.<br><br>Defendants. | No. 2:21-cv-06003-DOC (KESx)<br><br>**Hon. David O. Carter**<br>**United States District Judge**<br><br>Action filed: July 26, 2021<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: December 16, 2024<br>Time: 8:30 a.m.<br>Ctrm: 10A, Santa Ana |

.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................. 1

II. RELEVANT BACKGROUND ............................................................. 2

   A.  Facts Relating to Plaintiffs' Alleged Cleanups ............................ 2

   B.  Pertinent Procedural Background Concerning Plaintiffs' Claims ................ 5

III.  LEGAL STANDARD ........................................................................ 6

IV.  ARGUMENT .................................................................................... 7

   A.  Plaintiffs Fail to Make a Showing Sufficient to Establish the Existence of Elements Essential to Their Case, and Therefore Defendants Are Entitled to Judgment as a Matter of Law. ...................................................... 7

   B.  Defendants Are Entitled to Summary Judgment on Plaintiffs' Eighth Amendment Cruel and Unusual Punishment Claim ...................................... 8

   C.  Defendants Are Entitled to Summary Judgment on Plaintiffs' Eighth Amendment Excessive Fines Claim. .............................................. 9

   D.  Defendants Are Entitled to Summary Judgment on Plaintiffs' Fourteenth Amendment Substantive Due Process Claim. .................................. 12

   E.  Defendants Are Entitled to Summary Judgment on Plaintiffs' Fourteenth Amendment Procedural Due Process Claim. .................................. 14

      1.    No Erroneous Risk of Deprivation .......................................... 15

V.   CONCLUSION ............................................................................... 17

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................... 6

*Austin v. United States*,
509 U.S. 602 (1993) ........................................................................................... 9

*Bd. of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972) ......................................................................................... 14

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*,
149 F.3d 971 (9th Cir. 1998) ........................................................................... 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................................................... 6, 7

*City of Grants Pass, Oregon v. Johnson*,
144 S.Ct. 2202 (2024) ............................................................................... 1, 8, 9

*Cty. of Sacramento v. Lewis*,
523 U.S. 833 (1998) ......................................................................................... 12

*Daniels v. Williams*,
474 U.S. 327 (1986) ......................................................................................... 12

*Davidson v. Cannon*,
474 U.S. 344 (1986) ......................................................................................... 12

*Lee v. City of Los Angeles*,
250 F.3d 668, 686 (9th Cir. 2001) ..................................................................... 8

*Hudson v. Palmer*,
468 U.S. 517 (1984) ......................................................................................... 14

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ............................................................................. 6

*Ingraham v. Wright*,
430 U.S. 651 (1977) ........................................................................................... 8

ii

*Keenan v. Allan*,
  91 F.3d 1275 (9th Cir. 1996) .......................................................... 7

*Lavan v. City of Los Angeles*,
  693 F.3d 1022 (2012) .................................................................. 14

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) .................................................................... 15

*Nunez v. City of Los Angeles*,
  147 F.3d 867 (9th Cir. 1998) ........................................................ 12

*People of the City of Los Angeles Who Are Un-housed, et al. v. City of Los Angeles, et al.*, No. 24-5000
  (9th Cir. filed Aug. 14, 2024), ECF No. 5................................................6

*Pierce v. Multnomah Cty, Oregon*,
  76 F.3d 1032 (9th Cir. 1994) ......................................................... 8

*Pimentel v. City of Los Angeles*,
  974 F.3d 917 (9th Cir. 2020) ........................................................ 10

*Powell v. Texas*,
  392 U.S. 514 (1968) ..................................................................... 9

*Shanks v. Dressel*,
  540 F.3d 1082 (9th Cir. 2008) ...................................................... 12

*United States v. Bajakajian*,
  524 U.S. 321 (1998) .................................................................... 10

*Wolff v. McDonnell*,
  418 U.S. 539, (1974) ................................................................... 12

*Zinermon v. Burch*,
  494 U.S. 113 (1990) .................................................................... 12

**Statutes**

21 U.S.C. § 801 ............................................................................. 10

21 U.S.C. §§ 881(a)(4) and (a)(7) ...................................................... 10

U.S. Const. amend. VIII .................................................................... 9

U.S. Const. amend. XIV, § 1 ............................................................................. 12

**Rules**

Federal Rule of Civil Procedure 56 ............................................................... 1, 6, 7

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, defendants City of Los Angeles, Monique Contreras, Brian Cook, and Derek Jacobs (collectively, "Defendants") move for summary judgment as to plaintiffs David Jacobs and Eric Serin's (collectively, "Plaintiffs") remaining claims in their Third Amended Master Complaint ("TAMC"), specifically their claims under the Eighth Amendment's Cruel and Unusual Punishment and Excessive Fines clauses and the Fourteenth Amendment's Due Process clause.

Plaintiffs' vague allegations and complete failure to conduct any discovery or provide any evidence undermines their lawsuit, as it is their burden to prove the elements of their claims.  On this basis alone, Defendants are entitled to judgment as a matter of law.  At minimum, the individual defendants must be dismissed, as there are no facts showing any misconduct by these officers.

Moreover, the evidence from videos, photographs, documents, and declarations that Defendants were able to obtain through their own efforts show that no actions violating Plaintiffs' constitutional rights were taken.  Defendants did not impose any fines whatsoever, and the Supreme Court's decision in *City of Grants Pass, Oregon v. Johnson*, 144 S.Ct. 2202 (2024), establishes that no cruel and unusual punishment claim exists here, as Plaintiffs were not criminally charged or convicted.  Also, Defendants adhered to due process protections to the extent that any cleanups occurred.  With respect to Plaintiff Jacobs, he lives in an area with permanent signage stating that cleanings occur every Thursday between 7 a.m. and 3 p.m., meaning he received notice and was well aware of the City's cleanup operations.  At any point before Thursday, he could have gathered his belongings and left the vicinity but chose to stay.  On the day of the cleaning, he had the opportunity to take his belongings and leave the area; however, he chose to move his belongings from the sidewalk into the street despite being told not to.  After the area was cordoned off, he was given additional opportunities to identify any sensitive items, such as medication or forms of identification, but he chose not to.

1

Despite being provided a post-removal notice with a phone number to call for assistance, he does not state that he made a single attempt to retrieve his belongings. Despite his claims that he would be forced to travel 17 miles to The Bin, he lives approximately two miles from the Downtown Santa Monica Metro station. The closest stop to The Bin (the Little Tokyo / Arts District station) is 0.6 miles away. And though he had 90 days to retrieve his belongings, he does not contend that he ever made any attempts to do so; instead, he chose to file this lawsuit.

Ultimately, no dispute of material facts exist here and there is only one reasonable conclusion as to the verdict in this matter. Thus, Defendants respectfully request that the Court grant their motion in its entirety.

## II.    RELEVANT BACKGROUND

### A.    Facts Relating to Plaintiffs' Alleged Cleanups

Plaintiffs state that they are unhoused individuals in Los Angeles, California. TAMC ¶¶ 28-31. Plaintiff Serin contends that he lives near 13044 Pacific Promenade in Playa Vista. *Id.* ¶ 30. Though the TAMC alleges that he and Plaintiff Jacobs are subject to ordinances pertaining to Special Enforcement and Cleaning Zones ("SECZs"), 13044 Pacific Promenade is not located within a SECZ. *See id.* ¶¶ 24-35; (Statement of Undisputed Facts ("SUF") No. 1). He does not specifically identify anyone involved with the alleged cleanups, vaguely alluding to "City workers" and "LAPD officers," or what occurred at any of these cleanups. *See id.* ¶¶ 24-35. Nor does he say what month or even what year as to when an alleged cleanup occurred, let alone provide a specific date. *See id.* He does not identify what belongings were taken or state that those belongings were not contraband, trash, or health hazards. *See id.* What the facts do show is that there was no SECZ cleanup on October 21, 2021—the only cleanup date provided in the entire TAMC—at or near 13044 Pacific Promenade. (SUF No. 2.) The scant factual background is not for Defendants' lack of trying—the interrogatories they propounded seeking such basic facts were categorically objected to. (Declaration of Emerson H. Kim ("Kim Decl."), ¶ 3, Exs. 1, 2.) Put differently, the only evidence

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

relating to Plaintiff Serin's claims is that no cleanup occurred.

With respect to Plaintiff Jacobs, his allegations identify a specific cleanup occurring on October 21, 2021, in Venice Beach.  TAMC ¶ 31.  Plaintiff Jacobs is regularly seen at that location during the weekly cleanings—on Main St. between Clubhouse Ave. and Westminster Ave. across the street from the Westminster Avenue Elementary School.  (SUF No. 3.)



This location is within a SECZ due to its proximity to the Sunset/Venice A Bridge Home homeless shelter.  As Plaintiff Jacobs acknowledges, the location of the cleanup at issue is one where cleanups occurred every Thursday.  TAMC ¶ 27.

On Thursday, October 21, 2021, the City conducted a comprehensive cleanup at this location, as indicated by the permanent signage stating, in relevant part, "COMREHENSIVE STREET & SIDEWALK CLEANING Every Thursday Between

3

1
2
3
4
5
6
7
8
9
10
11
12




13  7am and 3pm," accompanied by a shaded map.  (SUF No. 4.)  ECI Gharios and the

14  LASAN team arrived around 7:30 a.m. and informed Plaintiff Jacobs that a

15  comprehensive cleaning was about to occur and that he needed to move his belongings

16  out of the area.  (SUF No. 5.)  However, Plaintiff Jacobs, with the help of another

17  unhoused individual, began moving his items from the sidewalk into the street in

18  between two parked vehicles.  (SUF No. 6.)  ECI Gharios informed Plaintiff Jacobs

19  multiple times that his belongings could not be in the street and would still be subject to

20  the cleanup. (SUF No. 7.)  Plaintiff Jacobs continued to move his items.  (*Id.*)  About 15

21  to 20 minutes later, ECI Gharios cordoned off the area so that he could begin the

22  cleanup.  (SUF No. 8.)  All of Plaintiff Jacobs's belongings were now on the street.  (*Id.*)




23
24
25
26
27
28

4

Shortly after the cleanup commenced, LAPD officer, Robert Garcia, began talking to Plaintiff Jacobs, as Plaintiff Jacobs had expressed concerns about his belongings. (SUF No. 9.)  Officer Garcia explained to Plaintiff Jacobs that the majority of the items would be stored but those that pose health hazards would be discarded.  (*Id.*)  Officer Garcia also offered multiple times to help retrieve any medication or identification belonging to Plaintiff Jacobs.  (SUF No. 10.)  However, Officer Garcia's offers were ignored.  (*Id.*)

ECI Gharios did not find any credit cards, cash, or forms of identification.  (SUF No. 11.)  After the completing the cleanup, ECI Gharios posted a notice containing information on where and how to obtain items collected during the cleanup, which would be stored for 90 days, as well as a phone number to call for assistance in obtaining his belongings.  (SUF No. 12.)   Per Plaintiff Jacobs's allegations, he does not state that he made any attempt to retrieve them.  *See* TAMC ¶¶ 24-35.  ECI Gharios prepared a cleanup report and took 38 photographs.  (SUF No. 13.)  LAPD did not issue any citations for Plaintiff Jacobs in connection with the cleanup.  (SUF No. 14.)

**B.    Pertinent Procedural Background Concerning Plaintiffs' Claims**

Initially, the instant action was filed by plaintiff Chrystal Finley on July 26, 2021. (ECF No. 1.)  But after the filing of several new actions, the consolidation of those actions, and several rounds of motions to dismiss, the current operative complaint is Plaintiffs Jacobs and Serin's TAMC, filed on December 4, 2023 (ECF No. 324), which was filed pursuant to the Court's November 21, 2023 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (ECF No. 319).  However, as a result of Plaintiffs' inclusion of claims in the TAMC the Court had previously dismissed with prejudice, additional motion practice resulted, and the Court issued its April 22, 2024 Order confirming that the remaining claims are Plaintiffs' "Eighth Amendment Claims and due process claims" under the Fourteenth Amendment.  (ECF No. 333, 8:7-8.)  The Court also confirmed that "the proper defendant here is the City of Los Angeles, the municipality, not its elected officials or employees," dismissing all but three individuals.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(*Id.* at 6:24-7:11.)  At Plaintiffs' request, Court subsequently clarified who the remaining individual defendants are in its May 15, 2024 Order: LAPD Senior Lead Officer Monique Contreras, Sgt. Brian Cook, and Derek Jacobs.  (ECF No. 342 at 1:7-8.)

On May 14, 2024, the Court issued its Scheduling Order in this matter, setting fact discovery cut-off for August 30, 2024 and trial for March 18, 2025.  (ECF No. 341.) Despite having adequate time to conduct discovery, Plaintiffs have done nothing but object to the entirety of Defendants' interrogatories, which sought basic facts relating to the alleged cleanups.  (Kim Decl., ¶ 3, Exs. 1, 2.)  Thus, Defendants relied on Plaintiffs' scant allegations in their TAMC to locate any evidence it had concerning the alleged cleanups.

On July 31, 2024, the Court granted Plaintiffs' motion seeking class certification. (ECF No. 365.)  Defendants petitioned the Ninth Circuit to appeal the order, which was granted on September 18, 2024.  *People of the City of Los Angeles Who Are Un-housed, et al. v. City of Los Angeles, et al.,* No. 24-5000 (9th Cir. filed Aug. 14, 2024), ECF No. 5.

## III.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  *Id*. at 325.

Instead, the moving party need only prove there is an absence of evidence to support the non-moving party's case.  *Celotex Corp*., 477 U.S. at 325; *In re Oracle Corp. Sec. Litig*., 627 F.3d 376, 387 (9th Cir. 2010).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The non-moving party has

the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the non-moving party fails to make this showing, then "[t]he moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

## IV. ARGUMENT

### A. Plaintiffs Fail to Make a Showing Sufficient to Establish the Existence of Elements Essential to Their Case, and Therefore Defendants Are Entitled to Judgment as a Matter of Law.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"; therefore, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322-323 (internal quotation marks omitted).

Plaintiffs fail to proffer any proof concerning any of their elements despite having adequate time for discovery. Defendants attempted to obtain basic discovery from Plaintiffs via written interrogatories, such as facts pertaining to their allegations, claims, and damages, but Plaintiffs responded with a list of objections, seemingly uninterested in providing a modicum of proof. (Kim Decl., ¶ 3, Exs. 1, 2.) Without such, there can be no genuine issue as to any material fact, and their complete failure of proof necessarily renders all other facts immaterial. Thus, Defendants are entitled to a judgment as a matter of law, as Plaintiffs have utterly failed to discharge their burden of proof.

Even if the Court were to set aside this glaring deficiency, the facts show that Plaintiff Jacobs has no claim concerning the October 21, 2021 cleanup. With respect to

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Serin, he provides no details as to who was involved, what occurred, where it occurred, or when it occurred.  *See* TAMC ¶ 30.  He vaguely alleges that his personal belongings "have been regularly stolen from him by City workers and enforced by LAPD officers" and would need to travel 34.44 miles from where he resides, 13044 Pacific Promenade in Playa Vista.  *See id.*  He does not contend that a cleanup occurred where he resides, nor have Defendants found any evidence of a SECZ cleanup occurring on October 21, 2021 at that location.  (SUF No. 1.)  Put differently, the only evidence relating to Plaintiff Serin's claims is that no SECZ cleanup occurred.  And Defendants' efforts to ascertain any evidence has been rejected by Plaintiff Serin.

As for the individual defendants in this matter, specifically Defendants Contreras, Cook, and Jacobs, Plaintiffs proffer no evidence of any misconduct by these individuals. There are no facts supporting any unconstitutional actions taken by them to support any claims, and thus, at minimum, these individuals must be dismissed from this action.

## B. Defendants Are Entitled to Summary Judgment on Plaintiffs' Eighth Amendment Cruel and Unusual Punishment Claim.

The Eighth Amendment's prohibition against cruel and unusual punishment applies only after criminal conviction.  *See Pierce v. Multnomah Cty, Oregon,* 76 F.3d 1032, 1042 (9th Cir. 1994); *see also Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) ("The Eighth Amendment's prohibition of cruel and unusual punishments applies only after conviction and sentence." (internal quotation marks and citation omitted)).

The Supreme Court recently reaffirmed this in *City of Grants Pass, Oregon v. Johnson*, 144 S.Ct. 2202, 2215 (2024), stating that "[t]he Cruel and Unusual Punishments Clause focuses on the question what 'method or kind of punishment' a government may impose after a criminal conviction, not on the question whether a government may criminalize particular behavior in the first place or how it may go about

securing a conviction for that offense." *Id.* at 2216 (citing *Powell v. Texas*, 392 U.S. 514, 531-532 (1968)). In reviewing its origins, the Supreme Court noted that 18th century English law formally tolerated punishments like "disemboweling, quartering, public dissection, and burning alive." *Id.* at 2215 (internal quotation marks and citation omitted). And such punishments were deemed cruel "because they were calculated to superadd terror, pain, or disgrace." *Id.* at 2216 (internal quotation marks and citation omitted). When viewing the criminal punishments imposed by the City of Grants Pass under its anti-camping ordinances, which included fines and up to 30 days in jail, the Supreme Court found that "[n]one of the city's sanctions qualifie[d] as cruel because none [were] designed to 'superadd terror, pain, or disgrace.'" *Id.* (internal quotation marks and citation omitted).

Here, *Grants Pass* controls. Plaintiffs do not allege a criminal conviction arising out of enforcement of either ordinance. *See generally* TAMC. Nor is there evidence that a citation was issued. (SUF No. 14.) Furthermore, LAMC § 56.11's sanctions point to LAMC § 11.00, none of which are "designed to superadd terror, pain, or disgrace" as identified by the Supreme Court in *Grants Pass*. *See, e.g.,* LAMC § 11.00(m) ("Every violation of this Code is punishable as a misdemeanor unless provision is otherwise made, and shall be punishable by a fine of not more than $1,000.00 or by imprisonment in the County Jail for a period of not more than six months, or by both a fine and imprisonment."). Thus, Plaintiffs' Eight Amendment Cruel and Unusual Punishment claim fails as a matter of law.

### C. Defendants Are Entitled to Summary Judgment on Plaintiffs' Eighth Amendment Excessive Fines Claim.

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Austin v. United States*, 509 U.S. 602, 609 (1993). It prohibits punitive, as opposed to remedial,

9

fines that are "grossly disproportional to the underlying offense." *Pimentel v. City of Los Angeles*, 974 F.3d 917, 921 (9th Cir. 2020) (citing *United States v. Bajakajian*, 524 U.S. 321, 336-37 (1998)). To determine whether a fine is grossly disproportional to the underlying offense, four factors are considered: (1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense. *Id.* (citing *Bajakajian*, 524 U.S. 321, 336-37). Here, Plaintiffs do not allege that any fine was imposed on them. *See generally* TAMC ¶¶ 120-124. Nor is there any evidence of such. (SUF No. 14.)

To the extent that Plaintiffs rely on *Austin*, 509 U.S. 602, to contend that the loss of their belongings during these cleanups amounts to an excessive fine, their reliance is wholly misplaced. *Austin*, a criminal matter, specifically dealt with a forfeiture proceeding under the Controlled Substance Act, 21 U.S.C. §§ 801, *et seq.*, specifically § 881. Petitioner Austin contended that "the Eighth Amendment's Excessive Fines Clause applies to *in rem* civil forfeiture proceedings." *Id.* at 606. The issue before the Supreme Court was whether a forfeiture under §§ 881(a)(4) and (a)(7) was a monetary punishment and therefore subject to the limitations of the Excessive Fines Clause. *Austin*, 509 U.S. at 610 ("Thus, the question is not, as the United States would have it, whether forfeiture under [21 U.S.C.] §§ 881(a)(4) and (a)(7) is civil or criminal, but rather whether it is a punishment.).

Neither the allegations nor facts support Plaintiffs' claims under the Excessive Fines Clause. Plaintiffs' belongings were not taken to be sold by the government pursuant to a forfeiture proceeding like in *Austin*. Indeed, to the extent any belongings were actually taken, they were stored. (*See* SUF No. 12.) Additionally, Plaintiff Serin fails to proffer any evidence that he was subjected to any cleanups. With respect to Plaintiff Jacobs, his property was arguably abandoned. Plaintiff Jacobs essentially admits that he had advance notice of the cleanup in his pleadings. *See* TAMC ¶ 27 ("'Every Thursday, [b]etween 7 am and 3 pm' '[d]uring comprehensive cleaning no one

10

will be allowed to remain on a sidewalk.'"). City employees regularly saw him at that location during the comprehensive cleanings. (SUF No. 3.) On the day in question, Thursday, October 21, 2021, Plaintiff Jacobs deliberately moved his belongings into the street from the sidewalk and left them there despite being told multiple times that his possessions could not be in the street. (SUF No. 7.) And, unlike a forfeiture, his belongings were stored—not sold—for his retrieval, which he acknowledges in the pleadings. *See* TAMC ¶ 31 ("LAPD . . . t[old] him that he could retrieve [his belongings] at the Bin."). Had he desired to recover his items, he could have done so. But he chose not to, citing the distance of 17 miles to obtain them. *Id.* Defendants' post-removal notice included a phone number for him to call to arrange a drop off of his items closer to his location. (*See* SUF No. 12.) He had 90 days to do so, and he does not allege making any such effort. *See* TAMC ¶¶ 24-35.

Even if the Court were to view this under *Austin*, Defendants' removal of Plaintiff Jacobs's belongings from the street after being deliberately placed there cannot be considered as punishment or punitive. It is incumbent on the City to keep its streets safe from (a substantial amount of) debris that could injure motorists, cyclists, and pedestrians. Defendants even offered to secure any sensitive items for Plaintiff Jacobs, but he chose not to accept that offer. (SUF No. 10.) Furthermore, these items were not taken to a single storage facility "never to be seen or had again," as Plaintiff Jacobs could have called the number on the notice to arrange a drop off, which he does not allege to have even attempted to do. And though Plaintiff Jacobs complains that The Bin is too far, he lives approximately two miles from the Downtown Santa Monica Metro station. The closest stop to The Bin is the Little Tokyo / Arts District station, which is 0.6 miles away—less than three miles of walking. Yet, he does not contend that he made any effort to do so. *See* TAMC ¶¶ 24-35.

As such, Plaintiffs cannot support their claims under the Eighth Amendment's Excessive Fines Clause, as there was no fine, forfeiture, or punishment.

/ / /

**D.     Defendants Are Entitled to Summary Judgment on Plaintiffs'**
**Fourteenth Amendment Substantive Due Process Claim.**

The Fourteenth Amendment bars "any State [from] depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The Due Process Clause of the Fourteenth Amendment encompasses two types of protections: substantive rights (substantive due process) and procedural fairness (procedural due process).  *See Zinermon v. Burch*, 494 U.S. 113, 125-28 (1990).

Substantive due process forbids the government from depriving a person of life, liberty, or property in a way that "shocks the conscience or interferes with rights implicit in the concept of ordered liberty."  *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (internal quotation marks and citation omitted).  To state a claim alleging a violation of substantive due process, a plaintiff must "show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest."  *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).  Further, the alleged conduct must amount to "abusive government conduct."  *Davidson v. Cannon*, 474 U.S. 344 (1986) (citing *Daniels v. Williams*, 474 U.S. 327, 331-333 (1986)).  *See also Wolff v. McDonnell*, 418 U.S. 539, 558, (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government."). "The cognizable level of executive abuse of power is that which shocks the conscience."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998).

In its November 21, 2023 Order, the Court noted the City's procedures and processes regarding due process protections but questioned the "grim reality" that Plaintiffs describe.  (*See* ECF No. 319 at 24:4-25:21.)  However, the facts (or lack thereof for Plaintiff Serin) stand in stark contrast to these baseless allegations.

For Plaintiff Serin, he fails to proffer any evidence that a cleanup even occurred.  And Defendants have no record of a cleanup occurring at 13044 Pacific Promenade in Playa Vista on October 21, 2021.  (SUF No. 1.)  Plaintiff Serin chose not to provide basic facts supporting his allegations, opting to object to the entirety of Defendants'

interrogatories.  (Kim Decl., ¶ 3, Exs. 1, 2.)

As for Plaintiff Jacobs, videos, photographs, documents, and declarations establish that the October 21, 2021 cleanup was scheduled in advance, routine, and in no way shocks the conscience or amounts to abusive government conduct.  If anything, such evidence shows questionable conduct by Plaintiff Jacobs.  First, Plaintiff Jacobs cannot credibly contend that he was unaware that cleanups occur regularly at that location.  In his TAMC, he states that the location is one where cleanups occurred every Thursday—on Main St. between Clubhouse Ave. and Westminster Ave. in front of the Westminster Avenue Elementary School.  *See* TAMC ¶ 27.  He could have left the area on any day before Thursday but did not.  Second, even on the day of the cleaning, he had an opportunity to move his belongings out of the area, but he chose not to do so.  Per LAMC § 56.11 protocol, he was given 15 minutes (at least) to gather his belongings and exit the area prior to the cleanup commenced.  (*See* SUF No. 8.)  Instead, Plaintiff Jacobs began moving his items *into the street* between two parked cars despite being told by the ECI multiple times that his items would be cleared.  (SUF No. 7.)  Moreover, the permanent signage on that street unequivocally states "COMREHENSIVE <u>STREET</u> & SIDEWALK CLEANING," accompanied by a map with the entire zone shaded, including the streets.  (SUF No. 4 (emphasis added).)  Third, even as the cleanup was underway, he was given multiple opportunities to identify sensitive items, such as medication and identification, so that they could be retrieved.  (SUF No. 10.)  He did not accept the offers of help.  (*Id.*)  This is unsurprising, as the ECI found no credit cards, cash, or any forms of identification during the cleanup.  (SUF No. 11.)  Lastly, after the cleanup was completed, the ECI posted a notice of how these items could be retrieved, which included a phone number to call.  (SUF No. 12.)  This is the same number posted on the permanent signage.  (*See* SUF Nos. 4, 12.)  And despite The Bin being 17 miles away, Plaintiff Jacobs could have taken the Metro to travel to the Bin.  He had 90 days to do either, but he does not contend that he made any effort to do so.  *See* TAMC ¶¶ 24-35.

13

Based on the above, Defendants did not deprive Plaintiff Jacobs of life, liberty, or property in a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.  If anything, Plaintiff Jacobs deliberately ignored instructions and rejected assistance, arguably recklessly, if not intentionally, to allow his belongings to be taken, and subsequently made no attempt to retrieve them.  Thus, there was no violation of his substantive due process rights here.

### E.    Defendants Are Entitled to Summary Judgment on Plaintiffs' Fourteenth Amendment Procedural Due Process Claim.

To establish a procedural due process claim, there must be "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Personal possessions like "personal identification documents, birth certificates, medications, family memorabilia, toiletries, cell phones, sleeping bags and blankets" are "property within the meaning of the Fourteenth Amendment."[1]  *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1025 (2012).  However, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533, 104 (1984).

The *Mathews* test requires consideration of three factors: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal

---

[1] The Court previously determined that "Plaintiffs here certainly have more than an 'abstract need or desire' for their tents, money, clothing, and identification documents." (ECF No. 319, 26:5-6.)

and administrative burdens that additional or substitute procedural requirements would entail.[2]  *Id.* at 321.  *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

### 1.    No Erroneous Risk of Deprivation

Again, for Plaintiff Serin, he fails to proffer any evidence that a cleanup even occurred.  Likewise, Defendants have no record of a SECZ cleanup occurring at 13044 Pacific Promenade in Playa Vista on October 21, 2021.  (SUF No. 1.)

As for Plaintiff Jacobs, there was no erroneous risk of deprivation.  Defendants provided sufficient notice concerning Plaintiff Jacobs's October 21, 2021 cleanup.  His cleanup occurred in a SECZ, where *permanent* signage in the area explains that, effective March 3, 2020, comprehensive street and sidewalk cleaning would occur every Thursday between 7 a.m. and 3 p.m., in addition to health hazard removals on Mondays, Tuesdays, Wednesdays, and Fridays.  (SUF No. 4.)  These signs include a map shading the area that is subject to the cleaning, including streets.  (*Id.*)  Plaintiff Jacobs even noted that such permanent signage exists near his "place of habitation."  TAMC ¶ 33.  In other words, he must have experienced such cleanups regularly and therefore cannot credibly claim ignorance that his property, if left behind, would be removed.  Plaintiff Jacobs could have moved his belongings out of the SECZ before Thursday at 7 a.m., and none of his belongings would have been subject to the cleaning.  But he chose not to.

Furthermore, the City did not confiscate Plaintiff Jacobs's belongings and then force him to determine what items to take.  The City posted permanent signage indicating that a comprehensive cleaning would occur every Thursday and that he would need to move whatever belongings he wanted, essential or not, before 7 a.m. the day of the cleaning, meaning he had no less than six days to comply.  (*See* SUF No. 4.)  Also, Plaintiff Jacobs was given additional time to move out of the area on the day of the cleaning.  The cleaning team arrived at Plaintiff Jacobs's location at approximately

---

[2] The Court previously determined that "Plaintiffs have sufficiently established a private interest in their own belongings."  (ECF No. 319, 26:17-19.)  The Court also previously found the "government's interest" factor in Defendants' favor, stating that LAMC § 56.11 is presumptively valid "because the City has a legitimate interest in cleaning public streets."  (*Id.* at 29:6-11.)

15

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

7:30 a.m. on October 21, 2021—thirty minutes later than the noticed time.  And the lead ECI provided him with more than the standard 15 minutes under LAMC § 56.11's protocols to move his belongings out of the area.  (SUF No. 8.)  Instead, of doing so, Plaintiff Jacobs moved them from the sidewalk into the street between two parked cars despite the permanent signage explicitly stating that cleanings would occur both on sidewalks and streets as well as being told multiple times by the ECI not to do so.  (SUF Nos. 7-8.)  Even after the area was cordoned off, Plaintiff Jacobs had further opportunities to claim his items.  LAPD attempted to help Plaintiff Jacobs, offering assistance with locating any medication or identification.  (SUF No. 10.)  Despite being asked multiple times, Plaintiff Jacobs ignored the offers of help.  (*Id.*)  No credit cards, cash or any forms of identification were found during the cleanup.  (SUF No. 11.)  Thus, Plaintiff Jacobs chose to ignore multiple notices that his items would be subject to cleaning and multiple opportunities to move his belongings, arguably abandoning his property.

Moreover, Plaintiff Jacobs was provided with adequate post-deprivation remedies, but he simply refused them.  Both the permanent signage and the post-removal notice indicate that any items confiscated could be retrieved at "The Bin" at 507 Towne Ave., Los Angeles, 90013.  (SUF Nos. 4, 12.)  But the notices also provide a phone number to call for assistance.  (*Id.*)  As previously submitted by Defendants, which the Court noted, the nonprofit operating The Bin can arrange to drop property off to an individual in a public area closer to the cleanup area or individual.  (ECF No. 319, 23:15-24:3.)  Plaintiff Jacobs does not contend that he ever attempted to call the number to arrange a drop-off.  Nor does he explain or proffer any evidence of why he feasibly could not travel to The Bin, such as a lack of access to public transportation (e.g., the Downtown Santa Monica Metro station, which is approximately two miles away from where the cleanup occurred, and the Little Tokyo / Arts District station, which is 0.6 miles from The Bin).  He had 90 days to do either but chose to do neither, instead opting to prepare and file the instant lawsuit.

1

**V.    CONCLUSION**

2

For the foregoing reasons, Defendants respectfully request that the Court grant

3

their motion in its entirety, and dismiss this action.

4

5

DATED:  November 18, 2024          Respectfully submitted,

6

7

HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney

8

KATHLEEN KENEALY, Chief Assistant City
Attorney

9

GABRIEL S. DERMER, Assistant City Attorney
EMERSON H. KIM, Deputy City Attorney

10

11

By:  */s/ Emerson H. Kim*

12

EMERSON H. KIM, Deputy City Attorney
Attorney for Defendants

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants certifies that this brief contains 5,408 words, which complies with the word limit of L.R. 11-6.1

DATED:  November 18, 2024      By:   */s/ Emerson H. Kim*
                                                    EMERSON H. KIM

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT