STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net\
(for court filings only)
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310)452-3200

Presented on behalf of Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| PEOPLE OF LOS ANGELES WHO ARE UN-HOUSED, AS A CLASS REPRESENTED BY C. FINLEY, *etc.*,<br><br>Plaintiff,<br><br>v.<br><br>ERIC MICHAEL GARCETTI, *et al.*,<br><br>Defendants. | 2:21-cv-06003-DOC(KESx)<br>(and all consolidated actions)<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' SUMMARY JUDGMENT MOTION**<br><br>December 16, 2024<br>8:30 a.m.<br>Courtroom 10A<br><br>Judge David O. Carter |

## **MEMORANDUM OF POINTS AND AUTHORITIES**

For the following reasons, the summary judgment motion should be denied and the action should proceed to its March 18, 2024 trial, because defendants concealed massive discovery by not making timely initial disclosures or updated disclosures.

## **1. PROCEDURAL HISTORY.**

The instant action was filed on July 26, 2021, Doc. 1, and the court did not issue a scheduling order until nearly three years after that, on May 5, 2024, Doc. 341, having delayed this action, in deference, it stated, to the *Alliance* action, 2:20-cv-02291-DOC(KESx),[1] in which no plaintiff was an un-housed person.[2] The court stated that many of the issues presented in the instant action were present in that, other action, and likely would be decided in that action, so that it was prudent, in the instant action, to await rulings in *Alliance*: so far as plaintiffs can tell, that never happened. (Plaintiffs moved to intervene in that action, but that motion never was either granted or denied.) The scheduling order, Doc. 341, set an Aug. 30, 2024 fact discovery cutoff date, that later, upon the consolidation of the instant action with plaintiff Finley's case filed on May 9, 2024, *Finley v. Bass*, 2:24-cv-03894-DOC(KESx), Doc. 1, was extended to Oct. 30, 2024, and a motion cutoff date of Dec. 16, 2024, Doc. 341. Only plaintiff Finley's claims in the later-filed action continue to exist. On Nov. 18, 2024, all defendants filed the instant motion for summary judgment, to be heard on Dec. 16, 2024. Doc. 394.

---

[1] Plaintiffs' counsel is fully aware of the enormous amount of indefatigable time the court spent in settling that action and the enormous benefits the settlement has conferred. Nevertheless, in this action, counsel represents the plaintiffs who, as actual unhoused persons have their own interests, most of which are entirely different from the interests of the *Alliance* plaintiffs.

[2] Here, all three plaintiffs have been and remain unhoused persons.

## 2. REASONS THE MOTION SHOULD NOT BE HEARD, AND SHOULD BE DENIED.

For four, separate reasons the motion should not be heard:

1. There was no good faith compliance with L.R. 7-3 -- no meeting was attempted in god faith, or held;

2. Pursuant to Fed. R. Civ. P. 56(d), plaintiffs cannot present essential facts, in opposition;

3. Essential initial disclosures, whose contents warrants discovery, were not made until three days before the date on which the motion was filed, on Nov. 18, 2024, in violation of Fed. R. Civ. P. Rule 26(a)(1), and were not received until three days after that, on the date the motion was filed; and,

4. This action unduly was delayed by the court, based on the *Alliance* action, and that has made it very difficult, because of the passage of time, presently to locate two plaintiffs, Serin and Jacobs.

### a. No L.R. 7-3 Compliance.

Since the summary judgment motion was filed on Nov. 18, therefore, the L.R. 7-3 meeting was required to be held no later than Nov. 11, seven days before filing that motion. Defense counsel states only with respect to that that he "attempted to meet . . . with Mr. Yagman by telephone . . . [o]n November 4, 2024 . . . [by leaving a voicemail . . . [that he] requested a call back . . . [and] did not receive a call back . . . ."Doc. 394-3 at 11-14. That is not sufficient to have satisfied L.R. 7-3. (Mr. Yagman was out of his office during the week of Nov. 4, dealing with election, voting, and poll monitoring, Yagman Decl. and did not return until the next Tuesday, Nov. 12, but did not learn of the voice message until the next day, Nov. 13. Nov. 11 was Veterans' Day Holiday.)

Because defense counsel admittedly did not timely hold the pre-motion conference of counsel required by L.R. 7-3, and the motion should be stricken. Surely, given the heft and breadth of the motion, counsel knew well before Nov. 4

that he intended to make it, and he should have attempted the L.R. 7-3 meeting well before Nov. 4, and not just four business days before the deadline for holding that meeting. (Since the meeting was required to be held at least seven days before the motion would be filed, and since Monday, Nov. 11 was a legal holiday, the meeting was required to have been held by Friday, Nov. 8, so that only four days' time was provided within which to hold the meeting.) This was inappropriate gamesmanship. Counsel should have called before Nov. 4 and also followed-up on his call and/or written a letter. It appears that he did not really want to hold the meeting, or he would have tried harder to have done that.

The case from this court that best discusses the requirements of L.R. 7-3 is *Allianz Life Ins. Co. v. Garrity*, 2022 WL 139148809 (C.D.Cal. 2015) (Judge Andre Birotte). In it, the court held as follows:

> The Court **DENIES** the motion for several, independent reasons. First, and most importantly, Garrity's motion fails to comply with Local Civil Rule 7-3. With limited exceptions not at issue here, Local Rule 7-3 provides:
>
> "[C]ounsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, *preferably in person*, the substance of the contemplated motion and any potential resolution.
>
> The *conference* shall take place at least seven (7) days prior to the filing of the motion." L.R. 7-3 (emphasis added). Garrity contends she complied with Local Rule 7-3 by sending Allianz letters on December 8 and 9 regarding her demand for sanctions. (Dkt. No. 39-2, pp. 9-10.) However, Local Rule 7-3 requires more than a letter war, it requires a "conference" and prefers that the conference occur "in person." Sending opposing counsel a testy letter is not the sort of "conference" demanded by Local Rule 7-3. Rather, a conference is "a *meeting* of two or more persons for discussing matters of common concern." "CONFERENCE," Merriam-Webster Online Dictionary (Jan. 7, 2014, 1:58 p.m.), http://www.merriam-webster.com/dictionary/conference.

4

Garrity does not represent that she ever attempted to conduct the required "conference" with Allianz – i.e., a meeting allowing the parties to engage in real-time, substantive discussions, in person if possible. But an exchange of letters is not the same as a real-time discussion of the issues. *Bohn v. Pharmavite, LLC*, No. CV 11-10430-GHK (AGRx), 2013 WL 4517173, at *1 (C.D. Cal. Feb. 5, 2013) ("letters and email, for example, do not constitute a proper 7–3 conference"); *accord Singer v. Live Nation Worldwide, Inc.*, No. SACV 11-0427-DOC, 2012 WL 123146, at *2 (C.D. Cal. Jan. 13, 2012) ("The attempted in-writing 'conference' of counsel is insufficient under these circumstances"). At best, an exchange of letters is a *precursor* to a conference, allowing all parties involved to prepare for the issues on the agenda for the live discussion demanded by Local Rule 7-3. The distinction between letters that *prepare* for real-time, live conference and letters that *substitute* for a conference is an important one. Local Rule 7-3 recognizes the truth that the instant motion proves: letters by themselves are rarely fruitful in resolving litigation disputes. Lawyers, freed from the accountability offered by a pair of eyes across the table or a voice on the other end of a phone call, all-too-often use letter exchanges as opportunities for exaggerated rhetoric and snark rather than informal dispute resolution. As a result, pure letter exchanges frequently lead to more heel-digging than compromise. Local Rule 7-3 seeks to short-circuit that counterproductive pattern by requiring that the parties *speak* with each other in a substantive manner to help ensure that cooler heads prevail. Garrity, however, declined to heed Local Rule 7-3's call for a real-time, substantive discussion, and the Court **DENIES** the motion. *See Singer v. Live Nation Worldwide, Inc.*, 2012 WL 123146, at *2 (denying motion for failure to comply with Local Rule 7-3 because "[t]he attempted in-writing 'conference' of counsel is insufficient under these circumstances."); *Bohn v. Pharmavite, LLC*, 2013 WL 4517173, at *1 (striking motion for failure to meet and confer in real time under Local Rule 7-3); *Caldera v. J.M. Smucker Co.*, No. CV 12-4936-GHK (VBKx), 2013 WL 6987905, at *1-2 (C.D. Cal. June 3, 2013) (striking motion for failure to comply with Local Rule 7-3 where moving party only "mentioned his intent to file" the motion over the phone "and then followed up with a letter to defense counsel").

(Emphases in original.) An actual, real-time conference is ***mandatory***.

More specifically to *this* court (meaning Judge Carter), the law is set forth in *Bennett v. Setschedule, Inc.*, 2020 WL 5498078, *1 (C.D. Cal. 2020) (Judge Carter):

> The Court, on its own motion, **STRIKES** Defendant's Motion to Deny Class Certification for failure to comply with Local Rule 7-3.

**I. Legal Standard**

**A. Meet and Confer**

Local Rule 7-3 requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." C.D. Cal. R. 7–3 (emphasis added). This conference shall take place at least seven days prior to the filing of the motion. *Id.* If the parties are unable to reach a resolution, counsel for the moving party must include in the notice of motion the following statement: "This motion is made following the conference of counsel pursuant to L.R. 7–3 which took place on (date)." *Id.* The purpose of Local Rule 7–3 is to help parties "reach a resolution [and] eliminate[ ] the necessity for a hearing," which in turn promotes judicial economy and the administration of justice. *See James R. Glidewell Dental Ceramics, Inc. v. Philadelphia Indem. Ins. Co.*, No. 8:16-CV-01155-JLS-E, 2016 WL 9223782, at *1 (C.D. Cal. Sept. 12, 2016). Parties must adhere to the Local Rules of this district, and a district court "has considerable latitude in managing the parties' motion practice and enforcing local rules." *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002).

**II. Discussion**

A proper meet and confer did not occur in this case. Defendant does not seem to have met to discuss the motion with opposing counsel, and they did not include the appropriate statement in their motion indicating that they complied with Rule 7–3.

**III. Disposition**

For the foregoing reasons, the Court **STRIKES** Defendant's Motion to Deny Class Certification.

So too, here, should the court strike the motion to dismiss and order defendants to answer, forthwith, so that defendants will not get the actual benefit of an extension of time, by breaking the rules and without bothering to request one. One should not benefit from one's own wrongful conduct.

### b. Rule 56(d).

Pursuant to Rule 56(f), F.R. Civ. P., plaintiff submits this memorandum in response to defendant's summary judgment motion. Plaintiff has made the required Rule 56(f) showing in the preceding Declaration of Stephen Yagman, and submits this memorandum to set forth the legal authority required to make a Rule 56(f) showing.

A court may continue a summary judgment motion if the opposing party needs to gather essential facts to oppose the motion. *Hall v. Hawaii*, 791 F.2d 759, 761 (9th Cir. 1986). Here, plaintiffs Serin and Jacobs need to gather essential facts by way of drafting their declarations in opposition to the motion, and to propound and take discovery as to late-made initial disclosures. *See infra.*.

Rule 56(d) (formerly Rule 56(f)) gives a trial court discretion to allow discovery prior to the hearing of a summary judgment motion when "[i]f a nonmovant shows by . . . declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain . . . declarations or to take discovery; or (3) issue any other appropriate order."

"Federal Rule of Civil Procedure 56(f) provides that if a party opposing summary judgment demonstrates a need for further discovery in order to obtain facts essential to justify the party's opposition, the trial court may deny the motion for summary judgment or continue the hearing to allow for such discovery. In making a Rule 56(f) motion, a party opposing summary judgment 'must make

1   clear what information is sought and how it would preclude summary judgment.'"

2   *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998) (quoting *Garrett v. San*

3   *Francisco*, 818 F. 2d 1515, 1518 (9th Cir. 1987)).

4         In order to make a proper Rule 56(d) showing, a party must make clear what

5   information is sought and how it would preclude summary judgment, *Margolis*,

6   140 F.3d at 852, and summary judgment may not be granted until a court first

7   determines the merits of the opposing party's request for continuance under Rule

8   56(d). *Garrett*, 818 F. 2d at 1518-19. The burden is on the party who seeks relief

9   under Rule 56(f) to proffer sufficient facts to show that the evidence sought exists

10  and that it would prevent summary judgment. *Nidds v. Schindler Elevator Corp.*,

11  113 F.3d 912, 920 (9th Cir. 1997). Here, plaintiffs have done that, Declaration of

12  Stephen Yagman ("Yagman Decl.") attached hereto. Only when evidence sought is

13  almost certainly nonexistent or is the object of pure speculation, Rule 56(d) relief

14  is not warranted. *See Exxon Corp. v. Federal Trade Comm'n*, 663 F.2d 120, 127

15  (D.C. Cir. 1980). Here, it is obvious that, at minimum the evidence sought exists:

16  indeed, defense counsel concealed some of his evidence, by making late initial

17  disclosures.

18        Though a court would not abuse its discretion by denying a Rule 56(d)

19  request when the requesting party "failed diligently to pursue discovery in the

20  past[,]" *Nidds*, 113 F.3d at 921 (quoting *Conkle v. Jeong*, 73 F.3d 909, 914 (9th

21  Cir. 1995], *cert. denied*, 519 U.S. 811 [1996]); *see, e.g., Hauser v. Farrell*, 14 F.3d

22  1338, 1340-41 (9th Cir. 1994) (denial of a Rule 56(d) request proper in light of a

23  failure to depose witness within 27 months of filing suit), *Mackey v. Pioneer Nat'l*

24  *Bank*, 867 F.2d 520, 524 (9th Cir. 1989) (failure to take advantage of additional

25  month of discovery granted by district court showed lack of diligence), here, based

26  on the facts, Rule 56(d) relief fully is warranted.

27        Here, since the plaintiffs have met all requirements to make a valid Rule

28  56(d) showing, and because there are no negative factors that weigh against

1   granting the Rule 56(d) request, the court should deny the summary judgment

2   motion or continue its hearing until plaintiffs have exhausted their attempts to

3   obtain the necessary declarations of plaintiffs Serin and Jacobs and discovery, as

4   to the late-filed initial discovery.

5
6
**c. The Untimely Initial Disclosures Warrant Discovery and that The Action
Proceed to Trial on March 18, 2025..**

7       On Nov. 15, defense counsel mailed to plaintiffs 50, unlabeled and

8   unidentified pages of discovery (Nos. 02-051), and attached it as exhibits to the

9   motion, along with declarations, discovery that obviously existed a long, long time

10  ago and that should have been included in the initial disclosures, but it was not.

11  Plaintiffs were sandbagged by it. They were not even included under a face-sheet

12  stating that they were delayed initial disclosures, but instead were attached to a

13  curt letter, that did not even include the salutation "Dear" before Mr. Yagman's

14  name, and they were, literally, just dumped on plaintiffs. Yagman Decl. Discovery

15  is required with respect to their contents, and plaintiffs request 60 days within

16  which to propound and process the discovery responses. None of the exhibits

17  explicitly describes it sufficiently to authenticate them, satisfy the best evidence

18  rule, show that it is on personal knowledge, and show that it is not inadmissible

19  hearsay.

20              **c.1 Declarations and Exhibits Should be Excluded.**

21      The declarations of Armand Lemoyne, Robert Garcia, Brandon Gharios,

22  each and all, as well as the exhibits attached to them, must be excluded from

23  evidence because the names of these individuals apparently were not timely

24  disclosed in initial disclosures or supplements to initial disclosures, nor were the

25  exhibits timely disclosed. Since defendants now seek to use them in support of

26  their defenses and contentions, they must be excluded.

27      **d. The Delay Based on the *Alliance* Case Warrants Rule 56(d) Relief.**

28

As the court may recall, the court basically trailed the instant action behind the *Alliance* action, for the reasons set forth hereinabove, and this resulted in the unhoused plaintiffs becoming less and less able to be found and/or contacted by their counsel, who presently is unable to locate plaintiffs Serin and Jacobs. This warrants denial of the summary judgment motion until they can be found, so that they can execute declarations in opposition to the motion.

### 3. The Untimely 50 Pages of Initial Disclosures Is Inadmissible By Defendants. They Are Procedurally Inadmissible.

Any attempted use of the 50 photographs that comprise the untimely initial disclosures is procedurally barred by defense counsel Emerson Kim's failure properly to disclose them, pursuant to Fed. R. Civ. P. Rule 26, in initial disclosures, as set forth in the Yagman Decl. *See Carisbrook Asset Holding Tr.* v. *SFR Invs. Pool 1, LLC*, 2019 U.S. Dist. LEXIS 94880, at *6 (D. Nev. June 6, 2019) ("when a party fails to disclose or supplement its [Rule 26] disclosures, the default rule is the party cannot use that information or witness to supply evidence on a motion, at a hearing, or at trial", and "[t]he exception is when that failure is substantially justified or harmless") (emphasis added) (citing *Yeti by Molly, Ltd.* v. *Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (describing the sanction as "self-executing"); *Bright v. Dennis Garberg & Assocs.*, 2012 U.S. Dist. LEXIS 202353, at *6-7 (C.D. Cal. Aug. 23, 2012) (when, in violation of Rule 26, the identities of 24 witnesses were disclosed after their declarations were filed with the parties' opposition papers, the subject declarations were excluded under FRCP Rule 37(c)); *FTC v. Cardiff*, 2021 U.S. Dist. LEXIS 155342, at *13 (C.D. Cal. June 29, 2021) ("Under Rule 37(c), if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party cannot 'use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.' Fed. R. Civ. P. 37(c).").

1

## 4. CONCLUSION.

2       For each and all of the stated reasons, the motion should be denied (and not

3   continued) as plaintiffs wish to hold the current, long-delayed March 18, 2025 trial

4   date (provided that plaintiffs Serin and Jacobs can be located by that date).

5   Defense counsel didn't play fairly, because he concealed the 50 exhibits by not

6   providing them in defendants' initial disclosures or updated disclosures. This

7   should not operate to delay the trial. The action, therefore, should proceed to trial.

8           Respectfully submitted,

9

10           **YAGMAN + REICHMANN, LLP**

11           By: _/s/ Stephen Yagman_

12           **STEPHEN YAGMAN**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF COMPLIANCE
### (L.R. 11-6.2)

The undersigned, counsel of record for plaintiff(s) certifies that this brief contains 3,105 words, which complies with the word limit of L.R. 11-6.1.

**YAGMAN + REICHMANN, LLP**

By: _____

**STEPHEN YAGMAN**

## DECLARATION OF STEPHEN YAGMAN

I, Stephen Yagman, declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am one of the attorneys for the plaintiff in this action.

2. I incorporate herein by this reference all of the facts in the preceding memorandum, which I know to be correct from my personal knowledge, in order to render them admissible in evidence.

3. As of Sunday, Nov. 24, I was unable to locate either plaintiffs Eric Serin or David Jacobs. I last had spoken with both of them around Oct. 31. I shall continue to search the streets of Venice Beach for Mr. Jacobs, and I have left a message with Mr. Serin's mother, whom he regularly calls. I hope to locate both of them soon. Based on prior communications with Mr. Jacobs, I drafted the declaration attached hereto, based on what he told me, but when, on Sunday, Nov. 24, I went to the location at which his tent always had been located, in order to have him sign it, neither it nor he was there. I regularly shall go over there to look for him. He may be in custody, as the LAPD frequently takes him into custody, he gets held for a month or two, the charges then are dismissed, and he is released. In the four years that I have known Mr. Jacobs, he never voluntarily has moved his residence from the corner of Main and Westminster, and the only times he has not been there have been when the LAPD has moved him or arrested him, and it may be that he now is in LAPD custody, or in custody as a result of his arrest by LAPD.

4. I need declarations from both plaintiffs (I have one from plaintiff Finley, that I attach) in order competently and effectively to respond to the summary judgment motion. If this case had progressed more speedily, this problem would not exist, but as it has gone on for relatively a long time, it has become

13

increasingly difficult to communicate with both plaintiffs who are transient, un-housed persons who don't have telephones. I am sure the court understands this.

5. Attached hereto are (1) untimely initial disclosures that I received on Nov. 18, the same day I got the summary judgment motion, and (2) another envelope from defense counsel, postmarked Nov. 18, that I received on Nov. 22, with nothing in it. I also have photocopied the back of it, to show that it was not sealed, and if there was anything in it, I do not know what it might have been and do not have any contents of it. I obviously need to do discovery as to the 50 pages of photographs that comprise the untimely, initial disclosures.

6. One more matter: plaintiff Finley remains in this case as a result of her May 2024 action, for the claims asserted therein, because that case was consolidated into this action.


_____
**STEPHEN YAGMAN** 11/25/24

## **DECLARATION OF CHRYSTAL FINLEY**

I, CHRYSTAL FINLEY, declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am a plaintiff in this action.

2. Today, May 7, 2024, at about noon, LAPD officer Contreras, and about 10 other LAPD officers, came to where I and my husband, Ray White, were living in a tent, in Venice, near Rose Avenue and Main Street, across from the Google Building, told us we had to get out of Venice, because, she said, homeless people could not live in Venice, and she and they took our tent, all of our belongings, including our clothing and bedding.

**CHRYSTAL FINLEY** 05/07/24

1

## **DECLARATION OF RAY WHITE, JR.**

I, RAY WHITE, JR., declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am Chrystal Finley's husband, and she is a plaintiff in this action.

2. Today, May 7, 2024, at about noon, LAPD officer Contreras, and about 10 other LAPD officers, came to where I and my wife, Chrystal Finley, were living in a tent, in Venice, near Rose Avenue and Main Street, across from the Google Building, told us we had to get out of Venice, because, she said, homeless people could not live in Venice, and she and they took our tent, all of our belongings, including our clothing and bedding.

RAY WHITE, JR. 05/07/24

1

## **DECLARATION OF DAVID JACOBS**

I, DAVID JACOBS, declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on September 9, 2024.

1. I have been the plaintiff in this *Finley v. Garcetti* action, since Nov. 2, 2022.

2. Until her RV was taken away by the City of Los Angeles, I lived on the sidewalk across the street from my friend, Chrystal Finley and her husband, on the corner of Main Street and Westminster Street, in Venice Beach, where I have lived for about five years and where I still live.

3. Since the summer of 2021, I saw Stephen Yagman regularly visit Ms. Finley, his client in case 2:21-cv-06003-DOC(KESx), and I would come across the street when I saw him, to visit with him and her.

4. I got to know that Mr. Yagman provided legal services to homeless people in the Venice Beach neighborhood, and frequently I would speak with him.

5. By November 2022, my tent and all of my belongings frequently had been confiscated by the LAPD, including defendant Monique Contreras, and sanitation workers, and I asked Mr. Yagman if he would help me with that, and he agreed to file a lawsuit. (Mr. Yagman's partner, Marion Yagman, at that time, replaced my tent.) Most recently, officer Contreras accosted me and confiscated all of my belongings on Sept. 2, 2024, and that incident is the subject of a new lawsuit by me against her and others, that is pending before Judge Andre Birotte. *Jacobs v. Bass*, 2:24-cv-09320-AB. From November 22, 2022 to the present date, my tent and all of my belongings were confiscated by officer Contreras and others at least eight times.

//

//

1

**DAVID JACOBS**



OFFICE OF THE CITY ATTORNEY
200 North Main Street, Room 675
Los Angeles, CA 90012

Business & Complex Litigation

6/7

Stephen Yagman, Esq.
Yagman + Reichmann, LLP
333 Washington Blvd.
Venice Beach, CA 90292-5152

quadient
FIRST-CLASS MAIL
IMI
$002.31 ℠
11/18/2024 ZIP 90012
043M31233210

US POSTAGE

