STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net\
(for court filings only)
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310)452-3200

Presented on behalf of Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| PEOPLE OF LOS ANGELES WHO ARE UN-HOUSED, AS A CLASS REPRESENTED BY C. FINLEY, <br><br> Plaintiff, <br><br> v. <br><br> **ERIC MICHAEL GARCETTI**, *et al.*, <br><br> Defendants. | 2:21-cv-06003-DOC(KESx) (and all consolidated actions) <br><br> **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' SUMMARY JUDGMENT MOTION** (Feb. 3, 2025 order) <br><br> Judge David O. Carter |

What is a rebel?
A man who says no; but whose refusal does not imply a renunciation.  What does he mean by saying "no?"
He means . . . that "this has been going on too long,"
"so far but no farther," you are going too far," or again
"There are certain limits beyond which you shall not go."
In other words, his "no" affirms the existence of a borderline.

In every act of rebellion, the man concerned experiences not only a feeling of revulsion at the infringement of his rights but also a complete and spontaneous loyalty to certain aspects of himself.

*Albert Camus*
*L'Homme Revolte*, 1951

Where is the City of Los Angeles' borderline, as to the homeless? This court will make that determination.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

For the following reasons, the summary judgment motion should be denied, and the action should proceed to its March 18, 2024 trial, if only because defendants concealed massive discovery by not making timely initial disclosures or updated disclosures. And because there are genuinely-disputed issues of material fact in dispute that may not be resolved on summary judgment and that must be resolved only by a jury. Defendants' statement of uncontroverted facts (1) is disputed by their video of the first seizure of plaintiff Jacobs' property, on Oct. 21, 2021, and the video legally prevails over the facts asserted in the statement, and (2) none of the facts set forth in the statement have any direct bearing on any issue presently before the court.

It would be obvious to a Moron From Mars that the City's every-Thursday sidewalk cleanups in Venice are pretextual: nowhere else in the City are there such cleanings, and nowhere in Venice is any sidewalk cleaned, except where there are homeless people in habiting.

### 1. The applicable Fourth Amendment law.

Any seizure that is unreasonable is redressable under the Fourth Amendment via § 1983. It was unreasonable for defendants to seize plaintiff Finley's property on May 30, 2024. As is indicated in Ms. Finley's declaration of even date therewith, on "May 30, 2024, at about 8:25 a.m., LAPD officer Monique Contreras, and a number of other LAPD officers, including an officer named "Gil," came to where I and my  husband, Ray White, Jr., and his sister were living in a tent, in Venice, on the west side of Main Street near Rose Avenue, across from the Google Building, and took our tent and belongings[, and w]hen my husband told officer Contreras that a lawsuit was pending, she said that she didn't care about that." Nothing in the summary judgment motion addresses this, much less controverts it. This *per se* was an unreasonable seizure of property, because it was warrantless and lacked probable cause.

Seizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place. A seizure of property occurs, within the meaning of the Fourth Amendment, when there is some meaningful interference with an individual's possessory interests in that property. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). Here, stealing it.

The same standard for probable cause applies to both search warrants and warrantless searches. *Whiteley v. Warden*, 401 U.S. 560, 564-66, 91 S.Ct. 1031, 1034-36, 28 L.Ed.2d 306 (1971); *see also*, *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990). Here, there were a warrantless seizures as to all three, named plaintiffs.

Once a warrantless search is established, the burden of going forward with the evidence is with the police. *Gilker v. Baker*, 576 F.2d 245, 246 (9th Cir. 1978). Defendants have not put in issue any evidence to justify any of their seizures.

When police seize property, it is required that they provide notice that is reasonably calculated to inform people of the means by which they may be able to secure the prompt return of their seized property. Such notice should include: the fact of the search, its date, and the searching agency; the date of the warrant, the issuing judge, and the court in which she or he serves; the persons to be contacted for further information; the procedure for contesting the seizure or retention of property taken, along with any additional information required for initiating that procedure in the appropriate court; the search warrant number, or, if it is not available or the record is sealed, the means of identifying the court file; and, an explanation of the need for a written motion or request to the court stating why the property should be returned. *Perkins v. City of West Covina*, 113 F.3d 1004, 1013 (9th Cir.1997); *see also*, *Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1357 (Alaska 1974). Here, any evidence of notice is controverted; and there was no notice.

1           Nothing in the summary judgment motion addresses any of this.

2                  **2. The applicable Eighth Amendment law.**

3           Plaintiffs have asserted, *inter alia*, rights under the Fourth, Eighth, and

4 Fourteenth Amendment (due process clause), and their Eighth Amendment claims

5 are made under excessive fines clause, and *not* under the excessive bail or

6 excessive fines clause, so that the Court's opinion in *Grants Pas v. Johnson*, 603

7 U.S. 520 (2024), based solely on the Amendment's cruel and unusual punishment

8 clause, here is wholly inapposite, because plaintiffs' claims are not based on the

9 cruel and unusual punishment clause, as clearly they could not be, because that

10 clause applies only to persons who first have been convicted of crimes.

11 Nothing in the summary judgment motion addresses any of this.

12             **3. The applicable Fourteenth Amendment law.**

13           The central aim and purpose of due process doctrine is to assure fair

14 procedure when the government imposes a burden on an individual, and the

15 doctrine seeks to prevent arbitrary government, to avoid mistaken deprivations,

16 and to promote a sense of legitimacy of official behavior. *See Zinermon v. Burch*,

17 494 U.S. 113, 125 (1990). In *Londoner v. Denver*, 210 U.S. 373 (1908), the Court

18 held that procedural due process is concerned solely with the manner in which the

19 government acts. The due process clause secures the individual from the arbitrary

20 exercise of the powers of government and prevents governmental power from

21 being used for purposes of oppression, *Daniels v. Williams*, 474 U.S. 327, 331

22 (1986) (quoting *Hurtado v. California*, 110 U.S. 516, 527 (1884); *Murray's Lessee*

23 *v. Hoboken*, 59 U.S. (18 How.) 272, 277 (1856)), as here it was used as to all three

24 named plaintiffs, whose property was taken and who had no opportunity get it

25 back.

26           Substantive due process places substantive limits on government powers,

27 and it affects broad categories of events and people. *See id.* It can be traced to the

28 English idea of fundamental, but unwritten principles, and flows forward to

1  modern constitutional guarantees of privacy, and includes the idea of individual,
2  civil rights, and it is founded on Assoc. Justice Stephen J. Fields' dissent in the
3  *Slaughter House Cases*, 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1873).

4      The "substantive component [of due process] . . . bars certain arbitrary,
5  wrongful government actions regardless of the fairness of the procedures used to
6  implement them." *Sierra Lake Reserve v. City of Rocklin*, 938 F.2d951, 956 (9th
7  Cir. 1991), *opinion vacated on other grounds*, 987 F.2d 662 (9th Cir. 1993)
8  (quoting *Zinermon*) (internal quotation marks deleted). "[A] substantive due
9  process claim challenges the government action itself." *Id.* at 957. When a
10  "plaintiff alleges that the denial of due process consists of an official's arbitrary
11  action . . . [is a] violation of substantive due process . . . [that claim] . . . is
12  indistinguishable from a claim for violation for violation of procedural due
13  process." *Ibid.*

14      An arbitrary deprivation of an individual's property right is violative of the
15  substantive component of due process when it is arbitrary and deliberate, rather
16  than merely negligent, as here it was, and shocks the conscience, as here it was, to
17  wit: boldly stripping all earthly belongings from helpless people, with no ability
18  for them to retrieve it. *Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir.
19  1999) (citing *Collins v. City of Harker Hts.*, 503 U.S. 115, 126, 127 n. 10 (1992)).

20      Fair notice is a component of due process, and a lack of adequate notice
21  implicates a fundamental right of due process. *Lankford v. Idaho*, 500 U.S. 110,
22  126 (1991); *Wilson v. U.S. Dist. Ct. for N. Dist. of Calif.*, 161 F.3d 1185, 1187 (9th
23  Cir. 1998). And, notice is the most fundamental of due process rights, and is the
24  minimum requirement of due process. *U.S. v. Merchant*, 760 F.2d 963, 967 (9th
25  Cir. 1985); *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).

26      Nothing in the summary judgment motion addresses any of this.
27  //
28  //

**4. The summary judgment motion addresses only the Oct. 21, 2021 theft of
Jacobs' property.**

The summary judgment motion and its attendant statement of
uncontroverted facts addresses only Jacobs' (and not Finley's or Serin's) claim
based on the Oct. 21, 2021 incident and nothing else; and Jacobs controverts the
"evidence" as to that incident. Therefore, summary judgment should be denied.

## 2. PROCEDURAL HISTORY.

The instant action, 21-6003, was filed on July 26, 2021, Doc. 1, and the
court did not issue a scheduling order until nearly three years after that, on May 5,
2024, Doc. 341, having delayed this action, in deference, it stated, to the *Alliance*
action, 2:20-cv-02291-DOC(KESx),[1] in which no plaintiff was an un-housed
person.[2] The court stated that many of the issues presented in the instant action
were present in that, other action, and likely would be decided in that action, so
that it was prudent, in the instant action, to await rulings in *Alliance*: so far as
plaintiffs can tell, that never happened. (Plaintiffs moved to intervene in that
action, but that motion never was either granted or denied.) The scheduling order,
Doc. 341, set an Aug. 30, 2024 fact discovery cutoff date, that later, upon the
consolidation of the instant action with plaintiff Finley's case filed on May 9,
2024, *Finley v. Bass*, 2:24-cv-03894-DOC(KESx), Doc. 1, was extended to Oct.
30, 2024, and a motion cutoff date of Dec. 16, 2024, Doc. 341. Only plaintiff
**Finley's claims in the later-filed action continue to exist in 21-6003**, as they
could not have been dismissed by any order of dismissal that preceded that date.

---

[1] Plaintiffs' counsel is fully aware of the enormous amount of indefatigable time
the court spent in settling that action and the enormous benefits the settlement has
conferred. Nevertheless, in this action, counsel represents the plaintiffs who, as
actual unhoused persons have their own interests, most of which are entirely
different from the interests of the *Alliance* plaintiffs.

[2] Here, all three plaintiffs have been and remain unhoused persons.

On Nov. 18, 2024, all defendants filed the instant motion for summary judgment, to be heard on Dec. 16, 2024. Doc. 394.

## 3. REASONS THE MOTION SHOULD NOT BE HEARD, AND SHOULD BE DENIED.

For these reasons the motion should not be heard:

1. There was no good faith compliance with L.R. 7-3 -- no meeting was attempted in god faith, or held, and this court should enforce that Local Rule;

2. Essential, initial disclosures, whose contents warrant discovery, were not made until three days before the date on which the motion was filed, on Nov. 18, 2024, in violation of Fed. R. Civ. P. Rule 26(a)(1), and were not received until three days after that, on the date the motion was filed; plaintiffs requested information regarding those materials, Exhibit 1 hereto, to which there never has been any response.

### a. No L.R. 7-3 Compliance.

Since the summary judgment motion was filed on Nov. 18, therefore, the L.R. 7-3 meeting was required to be held no later than Nov. 11, seven days before filing that motion. Defense counsel states only with respect to that that he "attempted to meet . . . with Mr. Yagman by telephone . . . [o]n November 4, 2024 . . . [by leaving a voicemail . . . [that he] requested a call back . . . [and] did not receive a call back . . . ."Doc. 394-3 at 11-14. That is not sufficient to have satisfied L.R. 7-3. (Mr. Yagman was out of his office during the week of Nov. 4, dealing with election, voting, and poll monitoring, Yagman Decl. and did not return until the next Tuesday, Nov. 12, but did not learn of the voice message until the next day, Nov. 13. Nov. 11 was Veterans' Day Holiday.)

Because defense counsel admittedly did not timely hold the pre-motion conference of counsel required by L.R. 7-3, and the motion should be stricken. Surely, given the heft and breadth of the motion, counsel knew well before Nov. 4 that he intended to make it, and he should have attempted the L.R. 7-3 meeting

well before Nov. 4, and not just four business days before the deadline for holding that meeting. (Since the meeting was required to be held at least seven days before the motion would be filed, and since Monday, Nov. 11 was a legal holiday, the meeting was required to have been held by Friday, Nov. 8, so that only four days' time was provided within which to hold the meeting.) This was inappropriate gamesmanship. Counsel should have called before Nov. 4 and also followed-up on his call and/or written a letter. It appears that he did not really want to hold the meeting, or he would have tried harder to have done that.

The case from this court that best discusses the requirements of L.R. 7-3 is *Allianz Life Ins. Co. v. Garrity*, 2022 WL 139148809 (C.D.Cal. 2015) (Judge Andre Birotte). In it, the court held as follows:

> The Court **DENIES** the motion for several, independent reasons. First, and most importantly, Garrity's motion fails to comply with Local Civil Rule 7-3. With limited exceptions not at issue here, Local Rule 7-3 provides:
>
> "[C]ounsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, *preferably in person*, the substance of the contemplated motion and any potential resolution.
>
> The *conference* shall take place at least seven (7) days prior to the filing of the motion." L.R. 7-3 (emphasis added). Garrity contends she complied with Local Rule 7-3 by sending Allianz letters on December 8 and 9 regarding her demand for sanctions. (Dkt. No. 39-2, pp. 9-10.) However, Local Rule 7-3 requires more than a letter war, it requires a "conference" and prefers that the conference occur "in person." Sending opposing counsel a testy letter is not the sort of "conference" demanded by Local Rule 7-3. Rather, a conference is "a *meeting* of two or more persons for discussing matters of common concern." "CONFERENCE," Merriam-Webster Online Dictionary (Jan. 7, 2014, 1:58 p.m.), http://www.merriam-webster.com/dictionary/conference.
>
> Garrity does not represent that she ever attempted to conduct the required "conference" with Allianz – i.e., a meeting allowing the parties to engage in real-time, substantive discussions, in person if possible. But an exchange of

letters is not the same as a real-time discussion of the issues. *Bohn v. Pharmavite, LLC*, No. CV 11-10430-GHK (AGRx), 2013 WL 4517173, at *1 (C.D. Cal. Feb. 5, 2013) ("letters and email, for example, do not constitute a proper 7–3 conference"); *accord Singer v. Live Nation Worldwide, Inc.*, No. SACV 11-0427-DOC, 2012 WL 123146, at *2 (C.D. Cal. Jan. 13, 2012) ("The attempted in-writing 'conference' of counsel is insufficient under these circumstances"). At best, an exchange of letters is a *precursor* to a conference, allowing all parties involved to prepare for the issues on the agenda for the live discussion demanded by Local Rule 7-3. The distinction between letters that *prepare* for real-time, live conference and letters that *substitute* for a conference is an important one. Local Rule 7-3 recognizes the truth that the instant motion proves: letters by themselves are rarely fruitful in resolving litigation disputes. Lawyers, freed from the accountability offered by a pair of eyes across the table or a voice on the other end of a phone call, all-too-often use letter exchanges as opportunities for exaggerated rhetoric and snark rather than informal dispute resolution. As a result, pure letter exchanges frequently lead to more heel-digging than compromise. Local Rule 7-3 seeks to short-circuit that counterproductive pattern by requiring that the parties *speak* with each other in a substantive manner to help ensure that cooler heads prevail. Garrity, however, declined to heed Local Rule 7-3's call for a real-time, substantive discussion, and the Court **DENIES** the motion. *See Singer v. Live Nation Worldwide, Inc.*, 2012 WL 123146, at *2 (denying motion for failure to comply with Local Rule 7-3 because "[t]he attempted in-writing 'conference' of counsel is insufficient under these circumstances."); *Bohn v. Pharmavite, LLC*, 2013 WL 4517173, at *1 (striking motion for failure to meet and confer in real time under Local Rule 7-3); *Caldera v. J.M. Smucker Co.*, No. CV 12-4936-GHK (VBKx), 2013 WL 6987905, at *1-2 (C.D. Cal. June 3, 2013) (striking motion for failure to comply with Local Rule 7-3 where moving party only "mentioned his intent to file" the motion over the phone "and then followed up with a letter to defense counsel").

(Emphases in original.) An actual, real-time conference is ***mandatory***.

More specifically to *this* court (meaning Judge Carter), the law is set forth in *Bennett v. Setschedule, Inc.*, 2020 WL 5498078, *1 (C.D. Cal. 2020) (Judge Carter):

The Court, on its own motion, **STRIKES** Defendant's Motion to Deny Class Certification for failure to comply with Local Rule 7-3.

## I. Legal Standard

### A. Meet and Confer

Local Rule 7-3 requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." C.D. Cal. R. 7–3 (emphasis added). This conference shall take place at least seven days prior to the filing of the motion. *Id.* If the parties are unable to reach a resolution, counsel for the moving party must include in the notice of motion the following statement: "This motion is made following the conference of counsel pursuant to L.R. 7–3 which took place on (date)." *Id.* The purpose of Local Rule 7–3 is to help parties "reach a resolution [and] eliminate[ ] the necessity for a hearing," which in turn promotes judicial economy and the administration of justice. *See James R. Glidewell Dental Ceramics, Inc. v. Philadelphia Indem. Ins. Co.*, No. 8:16-CV-01155-JLS-E, 2016 WL 9223782, at *1 (C.D. Cal. Sept. 12, 2016). Parties must adhere to the Local Rules of this district, and a district court "has considerable latitude in managing the parties' motion practice and enforcing local rules." *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002).

## II. Discussion

A proper meet and confer did not occur in this case. Defendant does not seem to have met to discuss the motion with opposing counsel, and they did not include the appropriate statement in their motion indicating that they complied with Rule 7–3.

## III. Disposition

For the foregoing reasons, the Court **STRIKES** Defendant's Motion to Deny Class Certification.

So too, here, should the court strike the motion to dismiss and order defendants to answer, forthwith, so that defendants will not get the actual benefit

of an extension of time, by breaking the rules and without bothering to request one. One should not benefit from one's own wrongful conduct.

Based solely on this, the motion should be denied.

### c. Based Solely On Defense Counsel's Never-Explained Failure To Appear For The Feb. 3 Hearing On His Own Motion, The Motion Should Be Denied.

### c. The Untimely Initial Disclosures Warrant Discovery and that The Action Proceed to Trial on March 18, 2025..

On Nov. 15, defense counsel mailed to plaintiffs 50, unlabeled and unidentified pages of discovery (Nos. 02-051), and attached it as exhibits to the motion, along with declarations, discovery that obviously existed a long, long time ago and that should have been included in the initial disclosures, but it was not. Plaintiffs were sandbagged by it. They were not even included under a face-sheet stating that they were delayed initial disclosures, but instead were attached to a curt letter, that did not even include the salutation "Dear" before Mr. Yagman's name, and they were, literally, just dumped on plaintiffs. Yagman Decl. Discovery is required with respect to their contents, and plaintiffs request 60 days within which to propound and process the discovery responses. None of the exhibits explicitly describes it sufficiently to authenticate them, satisfy the best evidence rule, show that it is on personal knowledge, and show that it is not inadmissible hearsay.

### d. Declarations and Exhibits Should be Excluded.

The declarations of Armand Lemoyne, Robert Garcia, Brandon Gharios, each and all, as well as the exhibits attached to them, must be excluded from evidence because the names of these individuals apparently were not timely disclosed in initial disclosures or supplements to initial disclosures, nor were the exhibits timely disclosed. Since defendants now seek to use them in support of their defenses and contentions, they must be excluded.

### 3. The Untimely 50 Pages of Initial Disclosures Is Inadmissible By Defendants. They Are Procedurally Inadmissible.

Any attempted use of the 50 photographs that comprise the untimely initial disclosures is procedurally barred by defense counsel Emerson Kim's failure properly to disclose them, pursuant to Fed. R. Civ. P. Rule 26, in initial disclosures, as set forth in the Yagman Decl., Doc. 397. *See Carisbrook Asset Holding Tr.* v. *SFR Invs. Pool 1, LLC*, 2019 U.S. Dist. LEXIS 94880, at *6 (D. Nev. June 6, 2019) ("when a party-fails to disclose or supplement its [Rule 26] disclosures, the default rule is the party cannot use that information or witness to supply evidence on a motion, at a hearing, or at trial", and "[t]he exception is when that failure is substantially justified or harmless") (emphasis added) (citing *Yeti by Molly, Ltd.* v. *Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (describing the sanction as "self-executing"); *Bright v. Dennis Garberg & Assocs.*, 2012 U.S. Dist. LEXIS 202353, at *6-7 (C.D. Cal. Aug. 23, 2012) (when, in violation of Rule 26, the identities of 24 witnesses were disclosed after their declarations were filed with the parties' opposition papers, the subject declarations were excluded under FRCP Rule 37(c)); *FTC v. Cardiff*, 2021 U.S. Dist. LEXIS 155342, at *13 (C.D. Cal. June 29, 2021) ("Under Rule 37(c), if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party cannot 'use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.' Fed. R. Civ. P. 37(c).").

### 4. MALICE.

Why not just give plaintiff Jacobs, who was there at the scene, his property, when he asked for it, so that it would not be put beyond his reach, over 17 miles away? Not doing that shows no common sense and shows malice.

Punitive damages may be awarded if it is found that a defendant's act or omission was done: maliciously; or in reckless or callous disregard of a plaintiff's

federally-protected rights or safety; or wantonly; or with evil motive or intent; or
with callous indifference to a plaintiff's federally-protected rights or safety; or in
the face of a perceived risk that the acts or omissions would violate a plaintiff's
federally-protected rights; or oppressively. Any one of or combination of these
seven conditions is a sufficient basis for an award of punitive damages.

An act or a failure to act is "maliciously" done, if prompted by or
accompanied by ill will, or spite, or grudge, either toward the injured person
individually, or toward persons in one of more groups or categories of which the
injured person is a member, or if it was done for the purpose of injuring another.
An act or failure to act is in reckless or in callous disregard of a plaintiff's rights if,
under the circumstances, it reflects complete indifference to the plaintiff's safety or
rights, or the defendant acts in the face of a perceived risk that his actions will
violate the plaintiff's rights under federal law. An act or a failure to act is
"wantonly" done, if done in reckless or callous disregard of, or indifference to, the
rights of one of more persons, including the injured person. An act or a failure to
act is "oppressively" done (the key basis here, for a claim of malice), if done in a
way or manner which injures, or damages, or otherwise violates the rights of
another person with unnecessary harshness or severity, as by misuse or abuse of
authority or power, or by taking advantage of or exploiting some weakness, or
disability, or misfortune of another person.

When a jury considers oppressive acts, the jury must consider the relative
positions of power and authority between the parties (plaintiffs -- no power;
defendants -- guns) and determine whether the defendant misused his power or
authority, or abused the plaintiff's weakness, in the course of wrongful conduct. It
is oppressive for a defendant to take advantage of his authority and power and a
plaintiff's relative weakness.

Punitive damages are intended to foster deterrence and punishment, both
specifically as to the person against whom they may be awarded and generally as

to other persons who might act like him.

Society has an interest in deterring and punishing conduct that warrants punitive damages because deterrence is a primary and common purpose of section 1983, and because the specter of punitive damages may be the only credible deterrent against constitutionally abhorrent behavior. Dang v. Cross, 422 F.3d 800 (9th Cir.2005) (prosecuted by plaintiffs' counsel herein); Price v. Kramer, 200 F.3d 1237, 1251 (9th Cir. 2000); Morgan v. Woessner, 997 F.2d 1244, 1255 (9th Cir. 1993); Ward v. City of San Jose, 967 F.2d 280, 286 (9th Cir. 1991); Larez v. City of Los Angeles, 946 F.2d 630, 639 (9th Cir. 1991); Bouman v. Block, 940 F.2d 1211, 1234 (9th Cir. 1991); Davis v. Mason County, 927 F.2d 1473, 1485 (9th Cir. 1991); Anderson v. United Fin. Co., 666 F.2d 1274, 1278 (9th Cir. 1982); Fountila v. Carter, 571 F.2d 487, 492, 493 (9th Cir. 1978); Gregory v. Thompson, 500 F.2d 59, 65 (9th Cir. 1974); Stokes v. Delcambre, 710 F.2d 1120, 1126 (5th Cir. 1983); Walker v. Norris, 917 F.2d 1449, 1459 (6th Cir. 1990); McKinley v. Trattles, 732 F.2d 1320, 1326 & n. 2 (7th Cir. 1984); Garza v. City of Omaha, 814 F.2d 553, 556 (8th Cir. 1987); Day v. Woodworth, 54 U.S. (13 How.) 363, 371, 14 L.Ed. 181 (1851); Smith v. Wade, 461 U.S. 30, 33, 45 n. 12, 46 n. 13, 49, 54, 103 S.Ct. 1625, 1628, 75 L.Ed.2d 632 (1983); Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989); Cowen v. Winters, 96 F. 929, 935 (6th Cir. 1899); Berry v. Fletcher, 3 F.Cas. 286, 288 (C.C. Mo. 1870); Fotheringham v. Adams Exp. Co., 36 F. 252, 253 (E.D. Mo. 1888); Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 432, 121 S.Ct. 1678, 1683, 149 L.Ed.2d 674 (2001); Welch v. Durand, 36 Conn. 182, 185 (1869); Frink & Co. v. Coe, 4 Greene 555, 1854 WL 228 at *4 (Iowa 1854); Marysville & L.R. Co. v. Herrick, 76 Ky. 122, 127 (1877); Florida Ry. & Nav. Co. v. Webster, 25 Fla. 394, 5 So. 714, 719 (Fla. 1889); Jacobus v. Congregation of Children of Israel, 107 Ga. 518, 33 S.E. 853, 855 (1899).

# 5. CONCLUSION.

For each and all of the stated reasons, the motion should be denied as plaintiffs wish to hold the current, **long-delayed** March 18, 2025 trial date. Defense counsel didn't play fairly, because he concealed the 50 exhibits by not providing them in defendants' initial disclosures or updated disclosures. (Plaintiffs have not provided a statement of genuine issues because nothing in defendants' *faux* statement of uncontroverted facts warrants summary judgment.) This should not operate to delay the trial (or as a basis for summary judgment). The action, therefore, should proceed to trial.

Respectfully submitted,

**YAGMAN + REICHMANN, LLP**

By: /s/ Stephen Yagman
**STEPHEN YAGMAN**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CERTIFICATE OF COMPLIANCE
### (L.R. 11-6.2)

The undersigned, counsel of record for plaintiff(s) certifies that this brief contains 4,518 words, which complies with the word limit of L.R. 11-6.1.

**YAGMAN + REICHMANN, LLP**

By: _____
**STEPHEN YAGMAN**

## DECLARATION OF DAVID JACOBS

I, DAVID JACOBS, declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on September 9, 2024.

1. I have been the plaintiff in this *Finley v. Garcetti* action, since Nov. 2, 2022.

2. Until her RV was taken away by the City of Los Angeles, I lived on the sidewalk across the street from my friend, Chrystal Finley and her husband, on the corner of Main Street and Westminster Street, in Venice Beach, where I have lived for about five years and where I still live.

3. Since the summer of 2021, I saw Stephen Yagman regularly visit Ms. Finley, his client in case 2:21-cv-06003-DOC(KESx), and I would come across the street when I saw him, to visit with him and her.

4. I got to know that Mr. Yagman provided legal services to homeless people in the Venice Beach neighborhood, and frequently I would speak with him.

5. By November 2022, my tent and all of my belongings frequently had been confiscated by the LAPD, including defendant Monique Contreras, and sanitation workers, and I asked Mr. Yagman if he would help me with that, and he agreed to file a lawsuit. (Mr. Yagman's partner, Marion Yagman, at that time, replaced my tent.) Most recently, officer Contreras accosted me and confiscated all of my belongings on Sept. 2, 2024, and that incident is the subject of a new lawsuit by me against her and others, that was transferred to Judge Carter. From November 22, 2022 to the present date, my tent and all of my belongings were confiscated by officer Contreras and others at least eight times, with no notice and no opportunity or ability to retrieve them. On all of these occasions I requested that they be given to me, but that maliciously was refused. I have money, no telephone, or watch, or clock, or any way to tell what the time is.

1

1

2          **DAVID JACOBS**    FEB 1 4 2025

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# DECLARATION OF STEPHEN YAGMAN

I, Stephen Yagman, declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am one of the attorneys for the plaintiff in this action.

2. The attached, Nov. 26 letter from me to defense counsel was faxed to him on Nov. 26, 2024, and I have not received any response to it, either telephonic, as requested, or written.

STEPHEN YAGMAN 02/14/25

LAW OFFICES

# YAGMAN + REICHMANN, LLP

333 WASHINGTON BOULEVARD
VENICE BEACH, CALIFORNIA 90292-5152
(310) 452-3200

November 26, 2024

Emerson Kim
Via fax (213)978-7011

Re: *Finley v. Garcetti*, 2:21-cv-06003-DOC(KESx)

Dear Mr. Kim:

On Nov. 15, 2024, you mailed a letter to plaintiffs, enclosing with it sheets of paper numbered CTY_002-051, some of them depicting one photographic image and others depicting multiple images. It would appear that this constitutes a delayed or supplemental Rule 26, Fed. R. Civ. P., disclosure, provided after the Oct. 30, 2024 fact discovery cutoff date. Did you intend it to be a Rule 26 disclosure?

This letter is written to request that you voluntarily agree to provide to us, under penalty of perjury by persons who have first-hand knowledge of the information requested, identification of each image, including the following, identifying information:

1. What, specifically, is depicted in each image;
2. The date of each image;
3. The identity, by full name and job title, of the person who recorded the image;
4. Where, by street address, the image was made;
5. Where, by street address, the items depicted in each image were taken to;
6. Where, by street address, the items depicted in each image presently are;
7. As to each image that depicts a person's belongings, identification of that person;
8. As to each image that depicts a person's belongings, identification by name and job title of all persons, at every level, who authorized the removal of those belongings from that person;
9. As to each batch of belongings, the names and job titles of all persons who were present at the scene at the time the "comprehensive cleanup" occurred, on Oct. 21, 2021.
10. All reasons that the images were not previously provided to plaintiffs.

LAW OFFICES

# YAGMAN + REICHMANN, LLP

333 WASHINGTON BOULEVARD
VENICE BEACH, CALIFORNIA 90292-5152
(310) 452-3200

Would you please advise me via telephone message, no later than noon on Wed., Nov. 27,either that you will of will not provide all of this information, and will provide it no later than Mon., Dec. 2, absent which plaintiffs contemplate filing an *ex parte* application to compel the provision of the information.

Thank you for your anticipated courtesy and cooperation.

Very truly yours,

STEPHEN YAGMAN