STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net\
(for court filings only)
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310)452-3200

Presented on behalf of Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PEOPLE OF LOS ANGELES WHO ARE UN-HOUSED, AS A CLASS REPRESENTED BY C. FINLEY,<br><br>Plaintiff,<br><br>v.<br><br>ERIC MICHAEL GARCETTI, *et al.*,<br><br>Defendants. | 2:21-cv-06003-DOC(KESx)<br>(and all consolidated actions)<br><br>**PLAINTIFFS' FOURTH, SUPPLEMENTAL RESPONSE TO DEFENDANTS' SUMMARY JUDGMENT MOTION**<br>(Feb. 3, 2025 order)<br><br>Judge David O. Carter |

    This response is made pursuant to the court's Feb. 3 order, and after plaintiff had the opportunity to read and to analyze the transcript of the Feb. 3 hearing, that was made available only after Feb. 19. The court also should take into consideration Doc. 412.

    Plaintiffs needed the transcript of the Feb. 3 hearing in order to be able to submit this memorandum, which they did not receive until Feb. 19, and they submit this brief on Feb. 24.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### FINLEY IS A REMAINING PART PLAINTIFF

Chrystal Finley, because her claim concerning the incident of the taking of her property on May 7, 2024 was the basis for the action she filed on May 9, 2024, No. 2:24-cv-03894-DOC, became the charging allegation in the new action she filed on May 9, that was consolidated with the instant action, and the court then consolidated that action with the instant action, *after* it had dismissed Finley as a plaintiff in the instant action.

> 34. Truly amazingly, as to any of these Zones that are not in Downtown Los Angeles, an un-housed person would have to travel to a City-operated facility with the Orwellian name of "The Bin," located at 507 Towne Avenue, in zip code 90013, so that the un-housed in Venice Beach, of whom plaintiff Finley is one, would need to travel somehow to "The Bin" to retrieve literally all of her belongings, that were stolen from her in Venice Beach on May 7, 2024, at noon, by defendant Contreras and other LAPD officers. Plaintiff Finley never will be able to get back any her belongings and she has been forced to exist and to sleep at night unsheltered. 35. Defendants Contreras and other LAPD officers oversaw and enforced the theft of Finley's property.

*Id.* at *loc. cit.* This claim was not dismissed, so that Finley and this claim remain in this action.

So too was the May 30 incident put at issue and never ruled upon. *See* Doc. 352, attached hereto, and as to it Finley remains a plaintiff in this action.

The court did not dismiss Finley as a plaintiff as to the May 7 and May 30 takings of her property.

### THE PARTIES' CLAIMS

Plaintiffs assert claims under the Fourth Amendment, because their property was taken without probable cause and without a warrant.

Plaintiffs assert claims under the Fourteenth Amendment because their property was taken arbitrarily and capriciously, in violation of the rights to both procedural and substantive due process.

### THE BASES FOR THE CLAIMS

The seizure of plaintiffs' property.

### THE REASONS WHY DEFENDANTS' STATEMENT OF UNCONTROVERED FACTS IS IRRELEVANT.

It addresses only the Oct. 21, 2021 seizure of Jacobs' property and, as to that seizure it is rebutted by Jacobs' declaration.

### WHAT FACTS ARE IN ISSUE AND MUST BE DETERMINED BY A JURY.

All of the facts of all of the seizures of plaintiffs' property are in issue.

### THE COURT ALREADY SET FORTH THE GUIDING PRINCIPLES.

> The Court nonetheless expressed concern over City Defendants "forcing unhoused people without transportation or money to trek to Skid Row" to get to the Bin, as well as the absence of a "process allowing people to determine which items are essential to them or whether there is a process to respect those choices." Id. at 10-11.
>
> . . .
>
> The procedures and processes Defendants describe, however, stand in stark contrast to the grim reality that Plaintiffs describe. As a threshold matter, the Court has substantial doubts about the nonprofit's ability to regularly locate individuals who have no permanent address. Moreover, plaintiffs explain, for example, how the cleaning protocols require "that the City provide notice 24 hours before any cleaning" and, how, if any property is not cleared off the sidewalk when City workers arrive, "unhoused individuals have 15 minutes to move their belongings, or they will be confiscated." SAMC ¶ 207. In one example, Plaintiff Jacobs was "sitting in front of the tent in which he had slept, when a 'waste team' confronted him, backed up by about 10 LAPD officers . . .[who] ordered him to remove his belongings from the sidewalk." Id. Plaintiff Jacobs complied and put his items in the street pursuant to their commands. They then put a yellow tape cordon

around his belongings, threw his belongings on the sidewalk, and confiscated them. He was told he could retrieve them at the 'Bin,' at 507 Towne Avenue, Los Angeles 90013, over 17 miles away, in downtown Los Angeles. Id. ¶ 37. Although the City has "four additional storage areas[] located throughout the City," Plaintiffs contend that the "Zone Protocols send confiscated belongings solely to The Bin." Id. ¶ 207. This Bin is not open regular hours and the hours are not communicated to the unhoused. The belongings taken from Jacobs included "his clothing, his wallet, his bank cards, several hundred dollars in cash, and a container, which were all of his belongings." Id. The Bin is also 17 miles from the residence of Plaintiff Serin, meaning both Plaintiffs "would need to make a round-trip journey of almost 35 miles, across multiple City districts and neighborhoods, to retrieve their belongings. Jacobs is unable to make that journey to retrieve his tent and belongings, particularly after the City confiscated his wallet and bank cards and he now sleeps in a cardboard box on the sidewalk. Id. at 207. In addition to the inhumanity of displacing the unhoused, confiscating their essential personal documents, and providing no resources, leaving individuals who are often mentally ill or physically incapacitated with no choice but to transit across Los Angeles to recover their necessities is likely to be disruptive for neighborhoods they must pass through along their route. The question is whether confiscating the personal property of the unhoused in this manner, even when done pursuant to cleanups, "shocks the conscience or interferes with rights implicit in the concept of ordered liberty." Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998). The Court finds it does. As the Court previously emphasized, an unhoused person's belongings are essential to their dignity and ability to obtain healthcare, employment, and housing. And, because it is often all they have, their belongings necessarily implicate their right to liberty. The Court finds that compelling individuals with no money or means of transportation to trek along miles of congested freeways and highways to retrieve their rightful possessions shocks the conscience on public health and safety grounds, particularly when car accidents are a leading cause of injury and death for the unhoused. . . . Plaintiffs have sufficiently alleged that City Defendants' manner of confiscating the personal belongings of the unhoused, including Plaintiffs Serin and Jacobs, pursuant to cleanups, violates the substantive due process clause of the Fourteenth Amendment.

Doc. 319 at 23-25. *See also* Doc. 408 at 7:5-7; 13-16 (Serin); 8:8-10, 14-16, 25 (Jacobs); 10-14, 17 (Finley).

      The telephone number provided, (213)806-6355 and (844) 475-1244, Doc. 408: 10:21, when called, both render the same recording, "[number is] unavailable." When telephoned in court, the response was "First of all, they would have to have a case number." How in the world would any plaintiff or class member have gotten a "case number?"

      This court further stated:

> THE COURT: Okay. How does a homeless person who is 16 semi-ambulatory go these distances? Or mentally -- lets say 17 has mental issues? In other words, I understand the need for a 18 safe location. We dont want our City workers placed in a 19 situation where they re going into a place where they could be 20 endangered. By the same token, how are the homeless with 21 mental infirmities or physical infirmities to get to these safe 22 areas?
>
> . . .
>
> Is it an Eighth Amendment cruel and unusual 17 punishment if your clients have a system of returning property 18 but it s not functional? In other words, the intent of the 19 City is genuinely to return these pieces of property to your 20 client. We take away the evil doer for a moment. But it is a 21 dysfunctional system. It is a system that requires a safe site 22 or certain hours to marry up so its not the evil person that 23 hypothetically you're involved with who's trying to keep the 24 items from your property, it s a dysfunctional system.

*Id.* at 17: 16-23, 30:17-25.

      Last, defendants did not produce any declarations to address any of the matters raised herein, nor did defense counsel provide any substantive responsive to the questions the court put to him at the Feb. 3 hearing.

//

//

//

5

Respectfully submitted,

**YAGMAN + REICHMANN, LLP**

By: /s/ Stephen Yagman
**STEPHEN YAGMAN**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 2:21-cv-06003-DOC-KES            Date: May 30, 2024

Title: PEOPLE OF CITY OF LOS ANGELES WHO ARE UN-HOUSED V. ERIC MICHAEL GARCETTI ET AL.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**     **ORDER GRANTING PLAINTIFF'S MOTION TO CONSOLIDATE [339]**

Before the Court is Plaintiff D. Jacobs' Motion to Consolidate Cases ("Motion" or "Mot.") (Dkt. 339). The Court finds the matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7–15. Having reviewed the briefing submitted by the parties, the Court **GRANTS** Plaintiff's Motion.

Plaintiff moves the court to consolidate the instant action with *Finley v. Bass*, 2:24-cv-03894-DOC(KESx) on the grounds that the actions are based on the same legal arguments and ordinances. Mot. at 1. Defendants do not oppose consolidation of the 3894 matter with the 6003 matter, but instead ask them to be consolidated with a third case they identify as related, *Jacobs v. Garcetti*, 2:22-08010-DOC(KESx) (Dkt. 345). In asking that the cases be consolidated, however, Defendants request that the Court vacate the scheduling order (Dkt. 341), as Defendants will need to respond to Plaintiff Finley's allegations in the 3894 matter by way of a motion to dismiss so that the parties can resolve the question of what claims are at issue and who the parties are in the

consolidated matter before the discovery and motion cut-offs. Plaintiff opposes consolidating the two cases with the 8010 matter on the grounds it would delay trial and similarly opposes vacating the scheduling order, but supports extending the discovery cut-off. *See* Dkt. 346.

As both parties agree that the cases should be consolidated and the underlying questions of law significantly overlap, the Court agrees that consolidation of the 6003 and 3894 matters would increase judicial economy and streamline litigation. Given the protracted nature of the present litigation, however, the Court is unwilling to further delay the resolution of this case by vacating the scheduling order and trial date. Therefore, the Court will grant Plaintiff's motion to consolidate the 6003 and 3894 matters, but will not consolidate the 8010 matter. To allow Defendants the opportunity to file a motion to dismiss in the 3894 matter and resolve what claims and defendants will move forward, the Court will extend the discovery cut-off for discovery related to the 3894 matter from August 30, 2024 to October 31, 2024 and extends the motion cut-off from December 16, 2024 to January 6, 2025. The other dates in the scheduling order will remain unchanged.

Accordingly, Plaintiff's motion is **GRANTED**. Accordingly, the motion hearing scheduled for June 10, 2024 is hereby VACATED.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                                 Initials of Deputy Clerk
CIVIL-GEN

STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310)452-3200

Presented on behalf of Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| PEOPLE OF LOS ANGELES WHO ARE UN-HOUSED, AS A CLASS REPRESENTED BY C. FINLEY, *etc.*, | 2:21-cv-06003-DOC(KESx) |
|---|---|
| Plaintiff, | DECLARATIONS OF C. FINLEY AND R. WHITE, CONCERNING YESTERDAY'S LAPD CONFISCATION OF ALL OF THEIR BELONGINGS |
| v. | |
| ERIC MICHAEL GARCETTI, *et al.*, | |
| Defendants. | Judge David O. Carter |

Respectfully submitted,

YAGMAN + REICHMANN, LLP

By: /s/ Stephen Yagman
    STEPHEN YAGMAN

1

# DECLARATION OF CHRYSTAL FINLEY

I, CHRYSTAL FINLEY, declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am a plaintiff in this action.

2. Today, May 7, 2024, at about noon, LAPD officer Contreras, and about 10 other LAPD officers, came to where I and my husband, Ray White, were living in a tent, in Venice, near Rose Avenue and Main Street, across from the Google Building, told us we had to get out of Venice, because, she said, homeless people could not live in Venice, and she and they took our tent, all of our belongings, including our clothing and bedding.

_____
CHRYSTAL FINLEY 05/07/24

## DECLARATION OF RAY WHITE, JR.

I, RAY WHITE, JR., declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am Chrystal Finley's husband, and she is a plaintiff in this action.

2. Today, May 7, 2024, at about noon, LAPD officer Contreras, and about 10 other LAPD officers, came to where I and my wife, Chrystal Finley, were living in a tent, in Venice, near Rose Avenue and Main Street, across from the Google Building, told us we had to get out of Venice, because, she said, homeless people could not live in Venice, and she and they took our tent, all of our belongings, including our clothing and bedding.

_____
RAY WHITE, JR. 05/07/24

1

1  STEPHEN YAGMAN (SBN 69737)
   filing@yagmanlaw.net
2  YAGMAN + REICHMANN, LLP
   333 Washington Boulevard
3  Venice Beach, California 90292-5152
   (310) 452-3200
4
5  JOSEPH REICHMANN (SBN 29324)
   filing@yagmanlaw.net
6  YAGMAN + REICHMANN, LLP
   333 Washington Boulevard
7  Venice Beach, California 90292-5152
   (310) 452-3200
8
   Attorneys for Plaintiffs
9
              UNITED STATES DISTRICT COURT
10
              CENTRAL DISTRICT OF CALIFORNIA
11
                     WESTERN DIVISION
12

| J. FINLEY, | 2:21-cv-06003-DOC(KESx) |
|---|---|
| Plaintiff, | **EXECUTED DECLARATIONS OF CHRYSTAL FINLEY AND RAY WHITE, JR. IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION AND RESTRAINING ORDER** |
| v. | |
| ERIC MICHAEL GARCETTI, et al., | |
| Defendants. | Judge David O. Carter |

1

## DECLARATION OF CHRYSTAL FINLEY

I, CHRYSTAL FINLEY, declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am the plaintiff in this action.

2. Today, May 30, 2024, at about 8:25 a.m., LAPD officer Monique Contreras, and a number of other LAPD officers, including an officer named "Gil," came to where I and my husband, Ray White, Jr., and his sister were living in a tent, in Venice, on the west side of Main Street near Rose Avenue, across from the Google Building, and took our tent and belongings. When my husband told officer Contreras that a lawsuit was pending, she said that she didn't care about that.

_Chrystal Finley_
CHRYSTAL FINLEY 05/30/24

## DECLARATION OF RAY WHITE, JR.

I, RAY WHITE, JR., declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am the spouse of the plaintiff in this action.

2. Today, May 30, 2024, at about 8:25 a.m., LAPD officer Monique Contreras, and a number of other LAPD officers, including an officer named "Gil," came to where I and my spouse, Chrystal Finley, and my sister were living in a tent, in Venice, on the west side of Main Street near Rose Avenue, across from the Google Building, and took our tent and belongings. When I told officer Contreras that a lawsuit was pending, she said that she didn't care about that.

_____
RAY WHITE, JR. 05/30/24