JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| **PEOPLE OF CITY OF LOS ANGELES WHO ARE UN-HOUSED, E. SERIN and D. JACOBS, individually and as representatives of a class,** | **Case No. LA CV 21-06003-DOC (KES)** |
| Plaintiffs, | |
| v. | **ORDER GRANTING CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [394]** |
| **ERIC MICHAEL GARCETTI, ET AL.,** | |
| Defendants. | |

Before the Court is a Motion for Summary Judgment by the City of Los Angeles Defendants[1] ("Motion" or "Mot.") (Dkt. 394). The Court heard oral arguments on the Motion on February 3, 2025.

For the reasons set forth below, the Court **GRANTS** the Motion.

# I.    INTRODUCTION

This case is about how the City of Los Angeles and its workers conduct "cleanups" of unhoused individuals' personal belongings on public property. The Court has previously expressed serious concerns about the City's practices particularly the confiscation of property and storage of it at a facility called the Bin on Skid Row. The City has exhibited a pattern of dumping the unhoused and their problems on Skid Row and clearing the western, wealthy areas of the City. At the pleading stage, the Court accepted as true Plaintiffs' allegations that retrieving their property from the Bin was impossible. At the summary judgment stage, however, the Court requires evidence not just allegations of how property is confiscated and stored. Plaintiffs, unfortunately, have failed to engage in discovery to obtain evidence sufficient to go to trial. The only evidence from Plaintiffs are declarations that do not provide details of the cleanups at issue. Plaintiffs also do not dispute Defendants' evidence which shows confiscated property can be dropped off with unhoused individuals by request at no cost. The Court remains deeply concerned about the City's cleanups and how the unhoused can fairly retrieve their belongings, but the bare record in this case requires the Court to grant summary judgment.

# II.    BACKGROUND

## A. Facts

Plaintiffs are unhoused individuals challenging the constitutionality of two Los Angeles City ordinances: § 56.11, which governs the storage of personal property in public areas, and § 56.12, which governs the placement of items that obstruct the public-right-of-way. L.A. Mun.

---

[1] The Court uses the term "City Defendants" or "Defendants" to refer to the City of Los Angeles and the three remaining individual Defendants: LAPD Senior Lead Officer Monique Contreras, Sgt. Brian Cook, and Derek Jacobs.

Code §§ 56.11-12. Both municipal code sections were summarized at length in the Court's November 21, 2023 Order (Dkt. 319).

The facts before the Court at this stage consist of the evidence submitted by the Defendants in support of their Motion (Dkts. 394-395), a declaration from Plaintiff Serin (Dkt. 399), a declaration from Plaintiff Jacobs (Dkt. 403), and a second updated declaration from Plaintiff Jacobs (Dkt. 412). Plaintiffs did not submit a Statement of Genuine Disputes of Material Fact as ordered by the Court or any evidence other than Plaintiffs' short declarations to oppose the Motion. Plaintiffs do not specifically dispute any of the facts in Defendant's Motion or evidence. Accordingly, the facts presented to the Court almost entirely consist of those submitted by Defendants including body-worn camera video, photos, and declarations.

Plaintiffs live in Los Angeles and are unhoused. Third Amended Master Complaint ("TAMC") (Dkt. 324) ¶ 24. Plaintiffs allege that they are subject to "Zone" ordinances including Los Angeles City ordinances § 56.11 and § 56.12. *Id*. ¶¶ 24-25; *see also* Declaration of Eric Serin ("Serin Decl.") (Dkt. 399).

On Thursday, October 21, 2021, Brandon Gharios, a Senior Environmental Compliance Inspector for the City of Los Angeles Department of Public Works Bureau of Sanitation ("LASAN"), was the lead inspector for a "cleanup" on Main Street, between Clubhouse Ave. and Westminster Ave., in the Venice neighborhood of the City. Declaration of Brandon Gharios ("Gharios Decl.") (Dkt. 395-4) at 1. This area is located within a Special Enforcement and Cleaning Zone ("SECZ") which is marked by several permanent signs identifying it as such. *Id*. The signs state in part, "COMREHENSIVE STREET & SIDEWALK CLEANING Every Thursday Between 7am and 3pm," and show a shaded map of the area. *See* Statement of Uncontroverted Facts (Dkt. 395-5), Exhibit 1. Among other locations in the area, the signs are posted at the corner of Main St. and Clubhouse Ave. and at the corner of Main St. and Westminster Ave., bookending the block where Plaintiff Jacobs and his belongings were on the enforcement day. *Id*.; *see also* Gharios Decl.

Mr. Gharios arrived at Plaintiff Jacobs' encampment on Main Street across the street from the Westminster Avenue Elementary School on October 21, 2021, at about 7:30 a.m.

Gharios Decl. at 1-2. Mr. Gharios is familiar with Jacobs and has seen him at that location "regularly." *Id.* at 1. That day, Mr. Gharios told Jacobs that he would need to pack his belongings and leave because a cleaning was going to happen there. *Id.* at 2. Mr. Gharios then observed Jacobs and another person move Jacobs' belongings from the sidewalk to the street between two parked cars. *Id.* Mr. Gharios told Jacobs that the street was also subject to the cleanup and his belongings could not be there. *Id.* About 15 to 20 minutes later, Mr. Gharios taped off the area for the cleanup and Jacobs' belongings were still in the street. *Id.*

Senior Lead Officer Monique Contreras was present on the scene and wearing an activated body-worn camera. *See* Declaration of Armand Lemoyne ("Lemoyne Decl.") (Dkt. 395-1). Her body-worn camera video from that day shows Plaintiff Jacobs zealously objecting to sanitation workers clearing his belongings, including a tent, from the street. *See* Lemoyne Decl. (Dkt. 395-2), Exhibit 1 (video file manually lodged with the Court). Jacobs said to the police officers: "I've been here for, like, a year. They have not done this every week for a year. This is the second time they've done it in a year." *Id.* Officer Robert Garcia explained to Jacobs what would happen to his belongings. *Id.* Garcia said that only biohazards would be disposed but everything else would be stored. *Id.* Garcia repeatedly asked Jacobs if "there's any particular items that you do need such as medication, identification" that he wanted retrieved from the sanitation workers. *Id.* Jacobs did not ask for anything but continued to object to the enforcement and say that there were not any biohazards in his belongings. *Id.* As he watched the workers continue from behind caution tape, Jacobs insisted that the officers needed a court order and that his belongings were being damaged. *Id.* At the end of the video, Officer Contreras again explains to Jacobs that he is in a special cleaning zone and asks if he wants to speak to the LAHSA (Los Angeles Homeless Services Authority) workers present about finding housing. *Id.* Jacobs was not issued a citation as part of the October 21, 2024, enforcement. *See* Declaration of Robert Garcia ("Garcia Decl.") (Dkt. 395-3).

Mr. Gharios ultimately did not find any credit cards, cash, or forms of identification among Jacobs' belongings. Gharios Decl. at 2. After the cleaning, Mr. Gharios posted a "post-removal notice" on a nearby lamppost. *Id.* Mr. Gharios prepared a report of the cleanups from

that day including several photos. *Id*. His report contains photos of Jacobs' belongings on the street and the notice. *See* Comprehensive Cleanup Summary, Gharios Decl. (Dkt. 395-6), Exhibit 2. The notice stated, "ITEMS COLLECTED BY THE CITY MAY BE RETRIEVED FROM OR BY CONTACTING THE FOLLOWING LOCATION: The BIN…" *Id*. The notice gave the address, phone numbers, and hours of The Bin and stated that the items would be held for 90 days. *Id*.

Unlike Plaintiff Jacobs, there is no evidence of when or where exactly an enforcement cleanup of Plaintiff Serin's belongings occurred. Plaintiff Serin does not provide a location, date, or date range but asserts that city workers destroyed and took his belongings pursuant to the "Zones ordinance," Municipal Code sections 56.11(g) and 56.11(c). Serin Decl. (Dkt. 399). He states that all his property, including the tent he lived in and his mechanical tools for his livelihood, were taken and destroyed by being compacted in a garbage truck. *Id*. He also states that all confiscated property is stored solely at the Bin which was 17.22 miles from where he resided near 13044 Pacific Promenade in Playa Vista, and he had no ability to get there so he was not able to retrieve his belongings. *Id*. Mr. Gharios states that the address Serin provides is not within a SECZ and that he is unaware of any cleanings in that location on October 21, 2021. Gharios Decl. at 2. No other evidence about Plaintiff Serin's claims was presented to the Court.

Plaintiff Jacobs states that he lives on the corner of Main Street and Westminster Street in Venice Beach and has lived there for about five years. Declaration of David Jacobs ("Jacobs Decl.") (Dkt. 403). He states, "By November 2022, my tent and all of my belongings frequently had been confiscated by the LAPD, including defendant Monique Contreras, and sanitation workers…" *Id*. at 1. Plaintiff Jacobs also discusses a different lawsuit and an incident in 2024 not at issue in the present lawsuit. *Id*. He also states, "From November 22, 2022 to the present date, my tent and all of my belongings were confiscated by officer Contreras and others at least eight times." *Id*. Plaintiff Jacobs' second declaration—dated February 14, 2025 and submitted after hearing and the close of briefing—adds that his belongings were confiscated "with no notice and no opportunity or ability to retrieve them." Declaration of David Jacobs ("Second Jacobs Decl.") (Dkt. 412). He also adds, "On all of these occasions I requested that they be given

to me, but that was maliciously was refused. I have money, no telephone, or watch, or clock, or any way to tell what the time is." *Id*.

**B. Procedural History**

Plaintiff Finley filed the instant class action on July 26, 2021. (Dkt. 1). Plaintiff Finley also filed a second lawsuit on the same day. Case No. 2:21-cv-06109 (Dkt. 1). On September 9, 2021, Plaintiff Finley filed a First Amended Complaint ("FAC") in this matter (Dkt. 28). On September 22, 2021, Plaintiff Lockett filed a class action complaint. Case No. 2:21-cv-07596 (Dkt. 1). On September 24, 2021, the Court consolidated cases No. 21-cv-06109-DOC (KESx) and No. 21-cv-07596-DOC (KESx) with this lawsuit. (Dkt. 40).

On October 24, 2021, Plaintiff Lockett filed a Second Amended Complaint ("SAC") adding plaintiffs Serin and Jacobs but dropping Plaintiff Finley. (Dkt. 68). On November 19, 2021, Plaintiffs Finley, Lockett, Serin, and Jacobs filed a new action. Case No. 2:21-cv-09112 (Dkt. 1). On December 6, 2021, Plaintiffs Lockett, Serin, and Jacobs and City Defendants stipulated to consolidate two additional cases (Case No. 2:21-cv-09112 and Case No. 2:21-cv-08783) and the Court provided Plaintiffs with leave to file an amended master complaint (Dkt. 127). On December 10, 2021, an Amended Master Complaint ("AMC") was filed (Dkt. 131).

On January 3, 2022, Los Angeles City Defendants filed a motion to dismiss the AMC. (Dkt. 149). On January 27, 2022, Los Angeles County Defendants filed a Motion to Dismiss. On March 18, 2022, Malibu Defendants filed their Motion to Dismiss. (Dkt. 219). The Court heard arguments on all three Motions to Dismiss (Dkts. 149, 186, 219) on May 20, 2022.

On August 9, 2022, the Court granted both County and Malibu Defendants' Motions to Dismiss. ("First Order") (Dkt. 260). The Court dismissed Plaintiffs' claims against County Defendants under Los Angeles County Ordinance § 15.20.070[2] without leave to amend. *Id*. The Court also dismissed all claims asserted against Malibu Defendants Paul Grisanti, Bruce Silverstein, Karen Farrer, Mikke Pierson, and Steve Uhring without leave to amend, while

---

[2] The ordinance states: "Every operator and every pedestrian shall comply with and obey every instruction appearing on any traffic sign or other marking, which sign or marking has been erected or placed by authority of the board or commissioner or this Division 1." L.A. County, Cal., ch. 15.20, div. 1, § 15.20.070.

dismissing all claims asserted against the Malibu Defendants Steve McClary and Lisa Soghor with leave to amend. *Id*.

On August 11, 2022, the Court granted City Defendants' Motion, dismissing with leave to amend all of Plaintiffs Finley's and Lockett's claims while also dismissing with leave to amend Plaintiffs Serin's and Jacobs's Equal Protection, Due Process, Eighth Amendment, *Monell*, and conspiracy claims. ("Second Order") (Dkt. 264). The Court also dismissed Plaintiffs Jacobs and Serin's Privileges and Immunities, intrastate travel, RICO, *jus cogens*, and *jus dispositivum* claims, but did not provide leave to amend. *Id*.

On September 1, 2022, Plaintiffs Finley, Kinney, Saucedo, Lockett, Serin, and Jacobs filed a Second Amended Master Complaint ("SAMC") (Dkt. 273). County Defendants, City Defendants, and Malibu Defendants filed Motions to Dismiss on September 15, 2022 (Dkts. 278, 279, 280).

On November 6, 2022, Plaintiff Serin filed a motion for preliminary injunction seeking a declaratory judgment that Los Angeles City Ordinance § 41.18 was unconstitutional. (Dkt. 302).

On November 21, 2023, the Court issued an order (Dkt. 319) ("Third Order") granting County Defendants' Motion to Dismiss, granting Malibu Defendants' Motion to Dismiss, denying Plaintiffs' Motion for a Preliminary Injunction, and granting in part and denying in part City Defendants' Motion to Dismiss the Second Amended Master Complaint. The Court denied the Motion to Dismiss Plaintiffs Jacobs and Serin's Eighth Amendment Claims and Plaintiffs Serin and Jacobs' due process claims, dismissed with prejudice Plaintiffs' *Monell* claims and conspiracy claims, and dismissed Plaintiffs' Fourth Amendment claim without prejudice, directing Plaintiffs to file an amended complaint within 30 days. Third Order at 44.

On December 4, 2023, Plaintiffs filed their Third Amended Master Complaint ("TAMC")[3] (Dkt. 324). On December 18, 2023, City Defendants moved to dismiss (Dkt. 325). On April 22, 2024, the Court granted the City Defendants' Motion to Dismiss ("Fourth Order") (Dkt. 333). The Court specifically dismissed all individual Defendants named except

---

[3] Erroneously titled First Amended Master Complaint.

for three people, dismissed Plaintiffs' Fourth Amendment claim with prejudice, and dismissed all other claims previously dismissed with prejudice (Dkt. 333). Thus, the remaining claims by remaining Plaintiffs Serin and Jacobs are the Eighth Amendment claims and Fourteenth Amendment Due Process claims.

The Court then clarified who the remaining individual defendants are in its May 15, 2024 Order: LAPD Senior Lead Officer Monique Contreras, Sgt. Brian Cook, and Derek Jacobs (Dkt. 342). These Defendants remain with Defendant City of Los Angeles. On May 30, 2024, Case No. 2:24-cv-03894 was consolidated with this matter (Dkt. 350). The Complaint in Case No. 2:24-cv-03894 alleged claims by Plaintiff Finley which had been previously dismissed with prejudice in the present case or are duplicative of the remaining claims in this case. *See* No. 24-cv-03894 (Dkt. 1).

On July 31, 2024, the Court partially granted the Motion for Class Certification (Dkt. 365). The Court certified the following Class: "All un-housed persons who reside in the City of Los Angeles and whose property and/or belongings have been subjected to and confiscated pursuant to City of Los Angeles ordinances §§ 56.11 and/or 56.12, and who have suffered the same injuries of having had their property and/or belongings taken, and who have been required to travel long distances across Los Angeles to retrieve their seized belongings, and who (A) have traveled long distances and retrieved their belongings, or (B) have not been able to travel those long distances and who thereby have lost their belongings." *See* Order Granting in Part Plaintiffs' Motion for Class Certification (Dkt. 365). The Court, however, did not certify a damages class. *Id*. at 7-8.

On September 18, 2024, the Ninth Circuit approved Defendants petition to appeal the certification of the class (Dkt. 388). The appeal remains pending.

On November 18, 2024, Defendants filed the present Motion for Summary Judgment ("Motion") (Dkt. 394). On November 25, 2024, Plaintiffs filed their Opposition ("Opp.") (Dkt. 397). On December 2, 2024, Defendants filed their Reply (Dkt. 398). On December 4, 2024, Plaintiffs filed a Declaration of Eric Serin (Dkt. 399). On December 4, 2024, Plaintiffs filed a Supplemental Response that includes a Declaration of Stephen Yagman (Dkt. 400). On

December 7, 2024, Plaintiffs filed a Supplemental Memorandum, Setting Forth New, Post-Briefing Authority in Opposition to Summary Judgment Motion (Dkt. 401). On December 9, 2024, Defendants filed a Response to Plaintiffs' Supplemental Filings (Dkt. 402).

On December 16, 2024, the date set for hearing on the Motion, the Court called the case, but Defendants' counsel failed to appear (Dkt. 404). The Court rescheduled the hearing on the Motion for February 3, 2025 (Dkt. 405). On December 23, 2025, Plaintiffs filed Plaintiff Jacobs' Declaration (Dkt. 403).

At the February 3, 2025, hearing on the Motion for Summary Judgment, the Court ordered additional simultaneous briefing from the Parties by February 15, 2025, at 5p.m. (Dkt. 407). On February 14, 2025, Plaintiffs filed their Supplemental Response to Defendants' Summary Judgment Motion ("Supp. Opp.") with a new declaration from Plaintiff Jacobs attached ("Second Jacobs Decl.") (Dkt. 412). On February 15, 2025, Defendants filed their brief entitled Additional Briefing Pursuant to ECF No. 407 (Dkt. 413). Without leave to file additional briefing, Plaintiffs then filed a Second Supplemental Response which is only one page and argues that Defendants violated the Court's order that the briefing be simultaneous (Dkt. 414). This improper filing set off four more filings. Defendants filed a Response to Plaintiff's Second Supplemental Response arguing that the briefing was simultaneous because they filed without reviewing Plaintiffs' briefing first (Dkt. 415). Plaintiffs then filed their identical improper response again (compare Dkt. 416 to Dkt. 414). Plaintiffs then filed their Third Supplemental Response again arguing briefing was not blind (Dkt. 417). Defendants then filed a Response to Plaintiffs' Third Supplemental Response arguing the Court should strike Plaintiffs' improper filings (Dkt. 418).

## III.    LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477

U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

Summary judgment is also proper when there is no genuine dispute of material fact due to a complete failure of proof. "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 322–24.

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Id*.

## IV.    DISCUSSION

Defendants argue that they are entitled to judgment as a matter of law because Plaintiffs have failed to proffer any proof essential to the elements of their claims and have failed to engage in discovery despite sufficient time to do so. Motion at 7. Even aside from Plaintiffs' lack of proof, Defendants argue that they are entitled to summary judgment on Plaintiffs' Eighth Amendment and Fourteenth Amendment Due Process claims based on the undisputed facts they have submitted. Motion at 8-16.

In response, Plaintiffs make four procedural arguments for why the Motion should not be heard: (1) Defendants' failure to comply with the meet and confer requirement in Local Rule 7-3; (2) Plaintiffs require more time under Rule 56(d) to conduct discovery and present essential facts; (3) Defendants made late disclosures to Plaintiffs which necessitate further discovery; and (4) the passage of time has made it difficult to locate the two remaining Plaintiffs, Jacobs and Serin. Opp. at 3. In their Opposition, Plaintiffs do not respond to any of Defendants' legal arguments on the merits of the claims.

In Plaintiffs' Supplemental Response filed as part of ordered additional briefing, Plaintiffs repeat some of the same procedural arguments listed above and, for the first time, argue: (1) Defendants' statement of uncontroverted facts is disputed by Defendants' own body-camera video; (2) none of the facts presented by Defendants "have any direct bearing on any issue presently before the court" and Plaintiffs did not need to provide their own statement of facts because summary judgment is not warranted; (3) the Motion only addresses Jacobs'

claims not Serin's or Finley's claims; (4) Finley's claims in case 24-cv-03894 still exist in the present case because the 24-03894 case was consolidated with this case on May 30, 2024 after the Court's orders of dismissal; (5) Defendants acted with malice so punitive damages are warranted. *See generally* Supp. Opp. (Dkt. 412). Plaintiffs also state the applicable law under the Fourth Amendment and Fourteenth Amendment but do not respond to Defendants' arguments or analyze the law based on the facts here. Notably, Plaintiffs concede their Eighth Amendment Cruel and Unusual Punishment Clause claim. Supp. Opp. at 4.

The Court addresses each of Plaintiffs' generalized arguments in turn before analyzing each claim.

### A. Failure to Meet and Confer

Plaintiffs argue that the Motion should be stricken because defense counsel did not timely attempt to hold the pre-motion conference of counsel required by Local Rule 7-3 and there ultimately was no conference. Opp. at 3; Supp. Opp. at 7. This argument does not hold water, however, because defense counsel called and left a voicemail with Plaintiffs' counsel, Mr. Yagman, on November 4, 2024 which is 14 days before the Motion was filed. *See* Declaration of Emerson Kim ("Kim Decl.") (Dkt. 394-3). Mr. Yagman never called defense counsel back. *Id*. Plaintiffs' counsel argues that he was out of the office the week of November 4 and did not learn of the voicemail until November 13. Opp. at 3. He also argues that defense counsel did not allow enough time to hold the meeting and should have called him earlier than November 4. *Id*. The Court finds that defense counsel reasonably attempted to contact opposing counsel with sufficient time to meet before the Motion was filed. Defense counsel cannot be faulted for Plaintiffs' counsel's failure to return his call for nearly two weeks. Moreover, striking the Motion would only further delay this protracted litigation. Thus, the Court declines to strike the Motion on those grounds.

### B. Rule 56(d) Request for Further Discovery

Plaintiffs argue that the Court should deny or continue the Motion until they "have exhausted their attempts to obtain the necessary declarations of plaintiffs Serin and Jacobs and discovery, as to the late-filed initial discovery." Opp. at 8-9. Mr. Yagman submitted a

declaration on December 4, 2024, after filing the Opposition, that he was not able to locate Plaintiffs Jacobs or Serin as of November 24. *See* Declaration of Stephen Yagman ("Yagman Decl.") (Dkt. 400). He states that he last spoke to them both around October 31. *Id*. On December 4, 2024, however, Plaintiffs submitted Plaintiff Serin's signed declaration dated December 3, 2024 (Dkt. 399). Plaintiffs also submitted Plaintiff Jacobs signed declaration on December 23, 2024 after briefing had closed (Dkt. 403). Plaintiff Jacobs' second declaration was submitted on February 14, 2025 (Dkt. 412). Setting aside that the filings after the Opposition violate Local Rule 7-10 requiring leave of court for supplemental briefing and sur-replies, the Court finds Plaintiffs' request for more time unavailing and now moot given the submission of the declarations.

Rule 56(d) states:

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order."

Defendants argue that because the request is made after discovery has closed, it should be more properly considered a request to modify the scheduling order under Rule 16. Rule 16(b)(4) states: "A schedule may be modified only for good cause and with the judge's consent." Under Rule 56(d) or Rule 16, the inquiry primarily focuses on whether Plaintiffs have been diligent in their pursuit of discovery until now. *See Panatronic USA v. AT&T Corp.*, 287 F.3d 840, 846 (9th Cir. 2002); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Plaintiffs have made no showing of diligence in their moving papers other than conclusory statements. Plaintiffs argue that the Court's delays in this litigation are to blame for counsel's inability to reach Plaintiffs Jacobs and Serin. While the litigation has been partially delayed due to the priority of the *LA Alliance* case, this litigation has been pending for years and counsel could have obtained signed declarations from Plaintiffs at any point given that the facts alleged occurred several years ago. Moreover, Plaintiffs' declarations have now been

submitted. Defendants also state that Plaintiffs refused to engage in discovery and objected to all interrogatory requests. Motion at 6-7. Therefore, the Court declines to extend discovery or deny or not hear the Motion on those grounds.

**C. Defense Disclosures and Inability to Locate Plaintiffs**

Plaintiffs argue that they were belatedly provided with fifty documents of discovery on November 15, 2024 from Defendants. Opp. at 9; Supp. Opp. at 11. Plaintiffs argue that this should have been provided as part of initial disclosures and they need sixty days to "propound and process the discovery responses." *Id*. Plaintiffs request that the Declarations of Armand Lemoyne, Robert Garcia, and Brandon Gharios along with the exhibits attached to them be excluded for late disclosure. Upon reviewing the attachment to the Opposition, the discovery Plaintiffs discuss appears to be the exhibits submitted in support of the Defendants' present Motion including photographs of the October 21, 2021 clean up and Mr. Gharios' report from that day. Defendants argue that the "50 photographs" should not be considered because they were provided late in violation of Rule 26. Opp. at 10. Plaintiffs do not mention the body-worn video from Defendants in their briefing.

Defendants respond that Plaintiffs cannot suffer prejudice from these disclosures because they pertain to the cleanups that Plaintiffs were allegedly at and therefore, they had knowledge of these facts in 2021. Reply at 4. Defendants further assert that they did provide initial disclosures in 2021; however, they were those related to RVs, the original basis for this lawsuit. *Id*. Plaintiffs, they add, refused to make any disclosures from the start. *Id*.

Plaintiffs also argue that the Motion should be denied because the Court unreasonably delayed this case which has made it difficult for counsel to locate Plaintiffs Serin and Jacobs. Opp. at 9-10.

Finally, at the February 3, 2025 hearing on the Motion, the Court played the body-worn camera video of the cleanup of Plaintiff Jacobs' property in Venice. Plaintiffs' counsel told the Court that he had not seen the video before, but defense counsel told the Court the video had been served on Plaintiffs. Transcript of February 3, 2025 Hearing (Dkt. 403), at 42-43. The

Court's electronic docket also reflects that the video was lodged and the briefing on the Motion discusses the video.

The Court finds Plaintiffs' arguments unavailing especially because both Plaintiffs have now been located, their declarations filed, and additional time for briefing was given. The Court allowed additional briefing due three months after the date Plaintiffs argue they received late disclosures which is ample time to review and respond. Thus, the Court declines to exclude Defendants' evidence or extend discovery.

**D. Plaintiff's Supplemental Arguments Opposing Summary Judgment**

In their additional briefing, Plaintiffs argue (1) Defendants' statement of uncontroverted facts is disputed by Defendants' own body-camera video; (2) none of the facts presented by Defendants "have any direct bearing on any issue presently before the court" and Plaintiffs did not need to provide their own statement of facts because summary judgment is not warranted; (3) the Motion only addresses Jacobs' claims not Serin's or Finley's claims; (4) Finley's claims in case 24-cv-03894 still exist in the present case because the 24-03894 case was consolidated with this case on May 30, 2024 after the Court's orders of dismissal; (5) Defendants acted with malice so punitive damages are warranted. *See generally* Supp. Opp. (Dkt. 412).

First, the Court does not find that Defendants' statement of uncontroverted facts is disputed by the video. They are in accordance. Plaintiffs provide no details or further argument on this point so the Court will not address it further. Second, Plaintiffs simply state that the statement of facts are irrelevant to the litigation. The Court does not find that to be the case as the facts relate to the only specific evidence available of the cleanups at issue. Further, Plaintiffs were ordered to provide a statement of disputed facts and *must* dispute facts to defeat a motion for summary judgment. Third, Plaintiffs are incorrect that the Motion does not address Plaintiff Serin's claims. The Motion explicitly addresses the dearth of evidence presented on Serin's claims and argues that absence of evidence compels judgment as a matter of law. No dates or locations of cleanups for Serin are presented at all.

As to former Plaintiff Finley's claims, Defendants did not address Finley's claims because they were dismissed with prejudice in this case. *See* Third Order (Dkt. 319), at 44; *see*

*also* Fourth Order (Dkt. 333), at 8. The Court confirmed this in its Order on class certification declining to name Finley as a class representative. *See* Order Granting in Part Plaintiffs' Motion for Class Certification (Dkt. 365), at 7. Further, Finley's claims from the 24-03894 case which was consolidated with this case on May 30, 2024 (Dkt. 350) do not, as Plaintiffs argue, still exist because the Complaint in 24-03894 merely repeats the same claims that were already dismissed with prejudice or are duplicative of the remaining claims in the present case. *See* Third Order (Dkt. 319), at 44; *see also* Fourth Order (Dkt. 333), at 8. Plaintiffs cannot circumvent the Court's orders by filing a new case with a nearly identical Complaint, consolidating it with the pending litigation, and then for the first time raising the already dismissed claims in additional briefing at summary judgment. Claims that were dismissed with prejudice cannot be raised again.[4]

Finally, Plaintiffs' new argument that Defendants acted with malice warranting punitive damages is not relevant at summary judgment. Supp. Opp. at 12-14. Plaintiffs, regardless, have not presented any evidence that Defendants acted with malice other than a conclusory statement. The only specific evidence of Defendants' conduct is in the body-worn video which shows police officers treating Plaintiff Jacobs with respect and patience.

**E. Plaintiffs' Failure to Meet Their Burden and Concession of Claims**

Plaintiffs have failed to meet their burden at the summary judgment phase. Plaintiffs did not submit a Statement of Genuine Disputes of Material Fact as ordered by the Court or any evidence other than Plaintiffs' short and vague declarations to oppose the Motion. Critically, Plaintiffs do not specifically dispute any of the facts in Defendant's Motion or evidence let alone cite specific evidence to establish a genuine dispute of material fact. *See generally* Opp. (Dkt. 397); *see also* Supp. Opp. (Dkt. 412). Thus, Plaintiffs fail to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. Plaintiffs' declarations do not contain the dates or locations of the incidents that are the bases for their claims. Little to no detail is provided by Plaintiffs about what happened. Plaintiffs refused to

---

[4] Even if the Complaint in the consolidated 24-03894 case raises more recent factual allegations by Finley that might render some of the claims distinct from those dismissed, the Court on its own motion still dismisses those claims based on Plaintiff's failure to timely and diligently prosecute them.

engage in discovery and fail to present evidence essential to prove their claims. While permissible to rely on allegations in the Complaint at the pleading stage, that is not sufficient at summary judgment. Thus, Plaintiffs fail to establish a genuine issue of material fact for trial because there is a failure of proof on their claims. *See Celotex*, 477 U.S. at 322–24.

Moreover, Plaintiffs do not respond to the merits of the legal arguments in the Motion challenging Plaintiffs' claims. As addressed above, Plaintiffs merely request that the Motion be denied or not heard on meritless procedural grounds. The Court will not make Plaintiffs' arguments for them. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). Courts in this District, and many others, have found that a failure to address an argument in opposition briefing constitutes a concession of that argument. *See, e.g., Johnson v. Macy*, 145 F. Supp. 3d 907, 918 (C.D. Cal. 2015) (citing *Tatum v. Schwartz*, No. S-06-01440 DFL EFB, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5, 2007), for the proposition that the plaintiff "tacitly concedes this claim by failing to address defendants' argument in her opposition"); *Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded."). The Court finds that Plaintiffs' failure to substantively oppose the Motion alone is grounds for granting the Motion.

**F. Eighth Amendment Cruel and Unusual Punishment Claim**

Plaintiffs concede that their claims "are not based on the cruel and unusual punishment clause" in light of the Supreme Court's decision in *City of Grants Pass, Oregon v. Johnson*, 603 U.S. 520 (2024). Supp. Opp. (Dkt. 412), at 4. Based on this concession, the Court grants summary judgment on this claim.

"The Cruel and Unusual Punishments Clause focuses on the question what 'method or kind of punishment' a government may impose after a criminal conviction, not on the question whether a government may criminalize particular behavior in the first place or how it may go about securing a conviction for that offense." *City of Grants Pass*, 603 U.S. at 542–43. *Grants Pass* compels the Court to find that the ordinances at issue here as applied to Plaintiffs and the

class they represent do not violate the Cruel and Unusual Punishments clause of the Eighth Amendment. Plaintiffs do not allege criminal convictions from the ordinances and there is no evidence they were issued citations. Thus, Plaintiffs were not criminalized, and the Eighth Amendment's Cruel and Unusual Punishment Clause does not apply to them here. For this reason as well, the Court grants summary judgment on this claim.

## G. Eighth Amendment Excessive Fines Claim

Plaintiffs have not submitted any arguments or evidence in their Opposition or Supplemental Opposition to counter Defendants' Motion on this claim.

Plaintiffs do not allege that they were fined and there is no evidence to suggest they were. Without a substantive response from Plaintiffs, it is unclear whether Plaintiffs contend that the fines for violation of § 56.11 are unconstitutional or if the confiscation of property permitted by § 56.11 and § 56.12 is akin to a fine that is unconstitutional.[5] Because Plaintiffs were not fined and the certified class focuses on those whose property was confiscated by the City, the Court addresses the latter legal theory challenging the confiscation of property, as it did in its prior November 21, 2023 Order (Dkt. 319), but not the monetary fines imposed for violation.

"The Supreme Court has held that a fine is unconstitutionally excessive under the Eighth Amendment if its amount 'is grossly disproportional to the gravity of the defendant's offense.'" *Pimentel v. City of Los Angeles*, 974 F.3d 917, 921 (9th Cir. 2020) (quoting *United States v. Bajakajian*, 524 U.S. 321, 336–37 (1998)). Courts consider four factors (the "*Bajakajian* factors") to assess whether a fine is grossly disproportionate to the underlying offense: "(1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Id.*

Claims under the Excessive Fines Clause usually challenge criminal forfeitures. *Id.* For example, in *Bajakajian*, the defendant was required to forfeit a large sum of money for failing

---

[5] Uncertainty about what legal theory Plaintiffs pursue is precisely why it is essential that Parties fully brief and respond to arguments. It is not the role of the Court to make legal arguments for Plaintiffs.

to report it during travel as required by federal law. *Id*. "Forfeitures are 'fines' within the meaning of the Eighth Amendment if they 'constitute punishment for an offense.'" *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1119 (9th Cir. 2004) (quoting *Bajakajian*, 524 U.S. 321 at 328). But the Excessive Fines Clause is not limited to criminal cases. *Austin v. United States*, 509 U.S. 602, 610 (1993) (applying the Clause to a civil forfeiture proceeding stemming from a criminal case because forfeiture has historically been understood as punishment at least in part). The Supreme Court in *Austin* distinguished sanctions which can be explained as serving in part to punish (in addition to remedial or deterrent purposes) from sanctions which serve purely a remedial purpose. *Id*. at 611.

Thus, in order to find a violation of the Excessive Fines Clause, the question is whether the City's confiscation of Plaintiffs' personal property in public areas was punitive. In its November 21, 2023 Order (Dkt. 319) on several motions to dismiss, the Court accepted Plaintiffs' facts as true and found that Plaintiffs Serin and Jacobs had plausibly stated an Excessive Fines Claim for the confiscation of their property. The Court's holding at the motion to dismiss stage relied on Plaintiffs' allegations that their belongings were taken to "the Bin" on Skid Row and were impossible to retrieve. Based on these facts, the Court held that "[t]he taking of belongings to a single storage facility located far from many of the locations where the City carries out cleanings, 'never to be seen or had again by these plaintiffs,' amounts to punishing the unhoused." Third Order (Dkt. 319), at 38 (quoting Plaintiffs' Complaint). The Court also quoted its prior order reemphasizing that "'[w]hile filling streets with garbage or permanent structures is not protected, an unhoused person's belongings are essential to their dignity and ability to obtain healthcare, employment, and housing.'" *Id*.

The Court stands by its prior holdings and reaffirms that unhoused individuals' property is essential to their dignity and well-being. The undisputed facts at the summary judgment stage, however, compel a different result here. The Court no longer accepts Plaintiffs' factual allegations in the Complaint as true and must look to the evidence submitted after discovery. The body-camera video submitted by Defendants of the October 21, 2021 "cleanup" of Plaintiff Jacobs' belongings in Venice shows that Jacobs had advance notice of the City's actions, was

given an opportunity to move his belongings before the cleanup began, and was given several opportunities to retrieve any essential items during the cleanup but refused. *See* Lemoyne Decl. (Dkt. 395-2), Exhibit 1 (video file manually lodged with the Court). Plaintiff Jacobs' latest declaration says his property was taken "with no notice and no opportunity or ability to retrieve them…I requested that they be given to me, but that was maliciously refused." Second Jacobs Decl. (Dkt. 412), at 1. That statement is directly refuted by the video evidence which shows police offering to retrieve items for Plaintiff, and so, fails to create a genuine dispute of material fact. *Scott v. Harris*, 550 U.S. 372, 380, (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Moreover, Plaintiffs do not dispute that Jacobs was given a notice with a phone number to call to retrieve his belongings. Plaintiffs Jacobs and Serin do not state that they tried to call this number or that they attempted to retrieve their belongings at all. The City states that Plaintiffs could have called the number to arrange a drop-off of their items in a public location near them. Motion at 11; *see also* Exhibit E of Declaration of Howard Wong (Dkt. 87-6), at 7 ("Chrysalis [a nonprofit] may arrange to drop the property off to the individual in a public area (by a restaurant or supermarket) closer to the cleanup area or the individual."). Plaintiffs do not dispute that this option exists and that Plaintiffs did not attempt it. At the February 3, 2025 hearing on the Motion, counsel called the phone number for the Bin listed on the notice at the Court's request. The phone call was made in open court on the record. A worker picked up the phone call and a drop off of confiscated property could be facilitated. In short, the undisputed facts show that Plaintiffs' belongings were confiscated by Defendants, a process exists for Plaintiffs' property to be returned to them at a nearby location on request, and Plaintiffs did not attempt to use that process.

Based on the undisputed facts, the Court finds that the confiscation of Plaintiffs' property does not constitute punishment. Plaintiffs' property was not taken as part of a criminal or civil forfeiture proceeding. Plaintiffs' property was not taken as punishment after citation or

conviction. Plaintiffs were not fined, cited, criminally charged, or criminally convicted. The property was taken by city workers to clear sidewalks and roadways. It was put in a storage facility for retrieval within 90 days. Critically, Plaintiffs could get their property back without paying any fines or fees or traveling to the storage facility. The evidence shows that Plaintiff Jacobs was also given multiple opportunities to take essential items before city workers took his belongings to the storage facility. The removal of personal property from streets and sidewalks serves the remedial purpose of clearing public areas for public use. By giving Plaintiffs the opportunity to move their belongings and retrieve them at no cost, the City's ordinances do not punish Plaintiffs.

The facts here are distinguishable from towing cases in which, for example, cities effectively confiscate cars with unpaid parking tickets until the tickets and associated towing costs are paid. Judge Jesus Bernal of the Central District of California, found that such practices by the City of Los Angeles sufficiently stated a claim under the Excessive Fines Clause because impoundment of cars and towing costs were characterized as a penalty for unpaid parking tickets and thus were at least partially punitive. *Fitzpatrick v. City of Los Angeles*, No. CV 21-6841 JGB (SPX), 2023 WL 3318748, at *32 (C.D. Cal. Jan. 31, 2023). Here, there is no evidence that the City is taking personal property to deter or punish behavior whereas in *Fitzpatrick* the City towed cars to collect tickets and punish non-payment. It appears the City removes the property to remedy taking up public space, obstructing public rights-of-way, obstructing city operations, obstructing access, any other issues. And again, the evidence before the Court does not show that there are monetary costs associated with retrieving the property from storage. Without fines, forfeiture, or punishment, this claim fails. Based on a different record, the Court might find otherwise, but here Plaintiffs have failed to present any evidence about the drop-off process or other issues supporting confiscation as punishment. Thus, the Court grants summary judgment on this claim.

**H.  Procedural Due Process Claim**

Plaintiffs have not submitted any arguments or evidence to directly counter Defendants
on this issue. Plaintiffs submitted some briefing on the applicable law but provided no analysis
of Plaintiffs' facts or the ordinances at issue here. *See* Supp. Opp. at 4-5.

First, Plaintiff Serin does not state that his items were taken without notice and does not
provide the date or location of the confiscation of his property in his declaration. *See generally*
Serin Decl. After ample time for discovery, Plaintiffs chose not to engage in discovery and
have presented no evidence of the details of the confiscation of Plaintiff Serin's property. Thus,
as to Plaintiff Serin, there is not evidence to support a "showing sufficient to establish the
existence of an element essential to that party's case, and on which that party will bear the
burden of proof at trial" and so the moving party is entitled to summary judgment. *Celotex*, 477
U.S. at 322–24.

Second, Plaintiff Jacobs also provides no details such as dates or location for the
confiscation of his property. Jacobs' declaration dated December 23, 2024 (Dkt. 403) was
belatedly submitted only after the original hearing on the Motion and does not state that he did
not receive notice of the cleanups. Jacobs' new declaration dated February 14, 2025 was only
submitted after two scheduled hearings on the Motion and was attached to Plaintiffs'
supplemental briefing. Second Jacobs Decl. (Dkt. 412). The new declaration does not contain
specific dates or locations of cleanups but states simply that "from November 22, 2022 to the
present date, my [property was] confiscated by officer Contreras and others at least eight times,
with no notice and no opportunity or ability to retrieve them." *Id*. at 1. Again, Plaintiffs made
no effort to obtain discovery from Defendants regarding these eight incidents and have
presented no evidence about them. Plaintiffs also only amended the Jacobs declaration to
include the "with no notice" language after the Motion had been fully briefed and after the
hearing on the Motion.

The only detailed evidence of a cleanup before the Court is the October 21, 2021 video
provided by Defendants which objectively shows police offering Plaintiff Jacobs several
opportunities to obtain his essential items before they were taken. Photos provided by

Defendants related to that cleanup also demonstrate that there was pre-removal and post-removal notice. The cleanup occurred on a street with numerous signs warning Jacobs. Thus, the Court finds that there was sufficient notice for Plaintiff Jacobs. Defendants were only able to locate this evidence based on a specific date provided in the Third Amended Master Complaint. Motion at 6. Defendants provide evidence to the Court that Plaintiffs objected to all of Defendants' interrogatories in an effort to find facts related to the cleanups. Motion at 6; Kim Decl. (Dkt. 394-3); Exhibits 1 and 2 to Kim Decl. (Dkt. 394-4 and 394-5).

Without more specific evidence from Plaintiffs about the confiscation of their property after discovery, Defendants cannot defend against this action and there is no genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 322–24; *see also Liberty Lobby*, 477 U.S. at 252 (holding that a "scintilla of evidence" is insufficient to defeat summary judgment).

Moreover, if Plaintiffs are permitted to repeatedly change their declarations (the only evidence submitted by them) after briefing and oral argument has closed, Defendants similarly cannot defend themselves. In this situation, where Plaintiffs fail to engage in discovery and present evidence essential to their case, the Court must grant summary judgment. Therefore, the Court grants summary judgment for Defendants on this claim.

## I. Substantive Due Process Claim

Again, Plaintiffs have not submitted any arguments or evidence to directly counter Defendants on this claim. Plaintiffs submitted some briefing on the applicable law but provided no analysis of Plaintiffs' facts or the ordinances at issue here. See Supp. Opp. at 4-5.

Substantive due process forbids the government from depriving a person of life, liberty, or property in a way that "shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (citation and internal quotation marks omitted). To state a claim alleging a violation of substantive due process, a plaintiff must "show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). The alleged conduct must amount to "abusive government conduct." *Davidson v. Cannon*, 474 U.S. 344 (1986) (citing *Daniels v. Williams*, 474 U.S. 327, 331-333

1    (1986)). *See also Wolff v. McDonnell*, 418 U.S. 539, 558, (1974) ("The touchstone of due

2    process is protection of the individual against arbitrary action of government."). "The

3    cognizable level of executive abuse of power is that which shocks the conscience." *Cnty. of*

4    *Sacramento v. Lewis*, 523 U.S. 833 (1998).

5        Plaintiffs have not provided sufficient evidence to support their claims under substantive

6    due process at the summary judgment stage. As the Court discussed, Plaintiffs Serin's and

7    Jacobs' declarations do not provide sufficient details such as date or location of property

8    confiscation to ascertain if a violation occurred. Plaintiffs refused to engage in discovery to

9    further support their claims or allow Defendants to investigate their claims. The undisputed

10   evidence before the Court of the October 21, 2021 cleanup of Jacobs' property shows police

11   officers treating Jacobs with respect, attempting to help him, offering to retrieve property for

12   him, and asking if he would like to speak to a city worker about finding housing. Jacobs refused

13   these offers. Based on this evidence, the Court does not find a violation of substantive due

14   process.

15       The Court remains concerned about the City's cleanup procedures and skeptical of the

16   City's compliance with its own ordinances requiring substantial notice. Although the Court

17   acknowledges the City's property drop-off service, the Court is still concerned about the City's

18   unfair practice of moving unhoused individuals' property from the western and wealthy parts of

19   the City such as Venice to the Bin in Skid Row, a city-created zone of impoverished

20   homelessness. "Funneling the unhoused to Skid Row by confiscating and relocating their

21   essential possessions places a disproportionate and unsustainable burden on Downtown Los

22   Angeles." Third Order (Dkt. 319), at 25. Moreover, for individuals living on the streets without

23   access to a phone, a drop-off service requested by phone does little to help them retrieve their

24   property. Despite the Court's serious doubts about the City's practices, the Plaintiffs here have

25   failed to engage in discovery and adequately support their claims for trial. The scant and

26   undisputed evidence before the Court does not show a substantive due process violation.

27   Therefore, the Court grants summary judgment for Defendants on this claim.

28

**IV. DISPOSITION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. Judgment is entered in favor of Defendants City of Los Angeles, Monique Contreras, Brian Cook, and Derek Jacobs on all of Plaintiffs' claims. All remaining deadlines and court dates in this matter are **VACATED**.

DATED:  February 26, 2025

David O. Carter
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE