MIRA HASHMALL (State Bar No. 216842)
mhashmall@millerbarondess.com
JASON H. TOKORO (State Bar No. 252345)
jtokoro@millerbarondess.com
LAUREN M. BRODY (State Bar No. 337858)
lbrody@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Attorneys for Defendant
COUNTY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, et al., <br><br> Defendants. | **CASE NO. 2:20-cv-02291 DOC (KES)** <br><br> **DEFENDANT COUNTY OF LOS ANGELES' STATUS REPORT PURSUANT TO SETTLEMENT AGREEMENT FOR QUARTER ENDING DECEMBER 31, 2025** <br><br> Assigned to the Hon. David O. Carter and Magistrate Judge Karen E. Scott |

776967

The County of Los Angeles ("County") hereby submits this status report containing the information to be reported pursuant to Section D.9 of the Settlement Agreement, including the First and Second Addenda (together, "Agreement"), between Plaintiffs and the County for the quarter ending December 31, 2025, in a streamlined narrative at the request of County Monitor Thomas M. Goethals.

## I. REPORTING ITEMS

### A. Support For Plaintiffs' Settlement With The City

The County continues to support the settlement between Plaintiffs and the City by funding a suite of "mainstream" services at the interim housing units and intensive case management services, including mainstream services, at the permanent supportive housing units ("PSH") created by the City pursuant to the Plaintiffs/City settlement (Dkt. 1051). Attached as **Exhibit A1** is a summary of the County mainstream services accessed during the reporting period (July 1, 2025–September 30, 2025) by residents of the City's interim housing sites.[1] Attached as **Exhibit A2** is a summary of ICMS and mainstream services accessed by residents in the City's PSH during the reporting period (July 1, 2025–September 30, 2025).[2] The County's "mainstream" services were last detailed in its quarterly report filed October 30, 2025 (Dkt. 1059) and include public assistance programs, moderate-to-serve specialty mental health services, substance use disorder services, and benefits advocacy.

---

[1] The data is reported in summary form in light of applicable regulations governing the disclosure of personal health information and information regarding substance use treatment services, including the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 C.F.R. Part 2, and California statutes.

[2] As previously discussed, the clients that these services are attached to come from a combination of the County's ICMS client list, and a Time-Limited Subsidy client list that is produced by LAHSA on the City's behalf.

DEFENDANT COUNTY OF LOS ANGELES' STATUS REPORT
PURSUANT TO SETTLEMENT AGREEMENT FOR QUARTER ENDING DECEMBER 30, 2025

1   The City reported adding one interim housing site for the reporting period from July 1, 2025 to September 30, 2025, increasing the total to 49 sites. In coordination with these additional sites, the County is actively organizing service connection events at the new sites and across all Service Planning Areas for the City's Inside Safe portfolio (41 sites). During the reporting period, CEO-HI conducted three Service Connection Events: a domestic-violence emergency shelter (address confidential) on September 18, 2025; 2377 Midvale Avenue, Los Angeles, California 90064 on October 7, 2025; and 10864 Rochester Avenue, Los Angeles, California 90024 on October 15, 2025. Looking ahead, regional Service Connection Events will be scheduled for Inside Safe sites in SPA 8 (serving Hotel Dreamscape, Palm Motel, Horizon Inn, Paradise Inn) and SPA 2 (serving Willow Tree Inn, Palm Tree Inn, Motel 6 Van Nuys, Good Knight Inn Motel).

Following productive discussions facilitated by Special Master Michele Martinez, who monitors the City's settlement agreement, the County received an up-to-date list of City-funded outreach workers ("Official List") from LAHSA and the City Attorney's Office for purposes of preparing this quarterly report. **Exhibit E** contains data on the disposition of referrals that were properly documented in the referral pathways in the Homeless Management Information System ("HMIS") from City-funded outreach workers to County Departments in the reporting period.

Based on the County's ongoing analysis, the low number of documented referrals in **Exhibit E** appears to stem from City-funded outreach workers' limited use of the HMIS referral documentation pathways, rather than training gaps.

To identify referrals from City-funded outreach workers, the County cross-referenced the City's Official List of outreach staff and, after de-duplication, identified a total of 143 City-funded outreach workers. The County also populated a report of 227 total referrals documented during the reporting period using the County's updated HMIS pathways. The majority of those referrals (163) were documented in HMIS by the County's Department of Homeless Services and

Housing-funded outreach workers. Of the 143 City-funded outreach workers, only five documented referrals using the referral pathways in HMIS, for a total of nine referrals.

### B. High-Service Need Beds Available To County Outreach Teams

**Exhibit B** contains the number of referrals from County outreach teams to "Homeless Initiative-funded high-service need interim housing beds," as well as the status of those referrals. As of December 31, 2025, DHS has received 1,747 referrals from the County's MDTs and HOME teams operating in the City, and accepted and/or placed 950 clients to these high-service needs interim housing beds. During the reporting period specifically, DHS received 121 referrals from County outreach teams and accepted 57 clients. Those referrals that were not accepted were due to a variety of reasons including an incomplete application, referrals to other programs, and referrals rescinded.

### C. Mental Health ("MH")/Substance Use Disorder ("SUD") Beds

Last quarter, the County added 239 MH/SUD beds, bringing the total portfolio of new resources to 2,729 MH and SUD beds (1,205 MH beds and 1,524 SUD beds), and ending the calendar year ahead of the December 2025 milestone of 1,800 new beds and on track to meet the December 2026 milestone of 3,000. This includes 40 SUD beds that were open and operational but had not been included in prior reports.[3] The accompanying **Exhibit C** has been reformatted at the request of

---

[3] As a best practice to ensure accuracy and consistency throughout the dynamic bed management process, DPH-SAPC now performs bi-annual (previously, periodic) quality assurance reviews of treatment bed inventory, during which the Department reconciles records across contracts and reporting periods and considers factors such as lease expirations, contract consolidation, and housing relocations. Because the treatment bed inventory is dynamic and changes over time, this process validates records across contracts and reporting periods and may result in adjustments to reported bed counts, including the incorporation of beds that were previously authorized but not reflected in earlier summaries

County Monitor Goethals and now includes a new column highlighting net change during this reporting period and improves readability with a larger font.

The exhibit also notes the loss of 16 Recovery Bridge Housing (RBH) beds formerly operated by LACADA due to the transition of beds from RBH to Drug Medi-Cal (DMC) beds. **Exhibit C** reflects cumulative reporting per the Settlement Agreement, meaning all of the beds listed have been developed/contracted since June 14, 2022 and continue to be open and operational unless otherwise noted in a subsequent report.

### D. Enriched Residential Care For Adult Residential Facilities ("ARF") And Residential Care Facilities For The Elderly ("RCFEs") Beds

**Exhibit D** contains information regarding referrals and placements for enriched-rate subsidies created pursuant to the Agreement through the Enriched Residential Care (ERC) Program for placements in ARFs and RCFEs. To date, the County has activated 428 new "LA Alliance" subsidies, including 52 during the reporting period. 423 of those 428 subsidies were filled as of the end of the reporting period. The County therefore exceeded the milestone of 320 new subsidies by December 31, 2025 and is on track to meet the December 2026 milestone of 450 subsidies.

### E. Multi-Disciplinary Teams ("MDTs") And Homeless Outreach Mobile Engagement ("HOME") Teams

The County has met and maintains its obligation to operate 34 MDTs and 10 HOME teams serving the City. No changes occurred during the reporting period.

### F. Partnership On City- And County-Owned Land

No changes occurred during the reporting period.

### G. The County's Advocacy Efforts For PEH With Serious Mental Illness or Substance Use Disorder

During the reporting period, the Department of Mental Health (DMH) continued state and federal advocacy to expand resources, programs, and policies that increase the County's capacity to treat and house residents with serious mental illness who are experiencing or at risk of homelessness.

At the federal level, DMH coordinated with County partners, the City, and LAHSA to oppose changes in HUD's November 13, 2025 Continuum of Care (CoC) Program Competition Notice of Funding Opportunity (NOFO) that would have capped permanent housing at 30 percent of funds and threatened more than 6,400 units in Los Angeles.  On December 13, 2025, the court in *National Alliance to End Homelessness v. U.S. Department of Housing and Urban Development* verbally ordered HUD to reinstate the FY 2024-2025 CoC NOFO.  DMH also reviewed a forthcoming federal bill to address the IMD exclusion by allowing Medicaid reimbursement for short-term (under 30 days) IMD stays.  If introduced as drafted, the County intends to support the bill, which would increase available placements and help serve more people with severe mental illness.

At the state level, DMH began strategic work with Managed Care Plans, the County Behavioral Health Directors Association (CBHDA), and County departments on CalAIM's new Transitional Rent (TR) benefit.  DMH is seeking flexibility to "braid" TR with Behavioral Health Services Act (BHSA) housing resources so clients do not fall through gaps when transitioning between benefits; currently, BHSA funds are only available after TR is exhausted.

The Department of Public Health-Substance Abuse Prevention and Control (DPH-SAPC) tracked 36 housing-related bills for people with or at risk of homelessness who have SUDs, and was actively engaged in the legislative process for two priority bills sponsored/supported by DPH-SAPC:

- The SUD Care Modernization Act (AB 1037 (Elhawary)) stands to update requirements in the existing statute related to SUD care to reflect current evidence-based best practices and ensure access to appropriate treatment and services. The bill would, among other objectives, seek to reduce barriers for residential SUD facilities and encourage them to directly provide SUD treatment services such as medications for addiction treatment (MAT). Specifically, the bill streamlines licensing and certification requirements and removes the prohibition for SUD programs on discussion of evidence-based, harm reduction interventions. The bill also removes the existing prohibition for individuals to be abstinent or to not have consumed a substance within 24 hours prior to admission to a residential SUD facility and removes analogous requirements in order for an individual to continue treatment at a residential SUD facility. Together, these changes will increase the number of facilities and available services from residential SUD providers and increase access to such facilities by lowering barriers to care. The majority of the provisions in AB 1037 went into effect on January 1, 2026, while the combined licensing and certification for residential facilities will go into effect January 1, 2027.
- The Supportive-Recovery Residence Program (AB 255 (Haney)), would have allowed state departments or agencies to fund supportive-recovery residences (SRRs) that have been certified by a National Alliance for Recovery Residences (NARR) affiliated organization, comply with Housing First components as determined by the California Department of Health Care Services (DHCS), and meet other specifications. The bill would have required 75 percent of program funds to be allocated for harm reduction approach housing. This bill would have made eligible for funding a type of permanent supportive

housing (PSH) for individuals seeking a substance-free environment, which can be a helpful choice of housing for some individuals with SUD in their recovery journey. This would have ensured that the CoC will be able to appropriately serve these individuals as a part of the spectrum of level of care options for housing and services. AB 255 passed out of the Legislature with bipartisan votes in both the Assembly and Senate, but was ultimately vetoed by the Governor. DPH-SAPC continues to track the issue closely.

DPH-SAPC also provided input on draft Behavioral Health Information Notices, urging required Medication for Addiction Treatment (MAT)/SUD capability for Psychiatric Health Facilities and Mental Health Rehabilitation Centers who opt in to admit individuals diagnosed solely with severe SUDs, supported reallocation of unencumbered opioid settlement funds to counties prepared to deploy them, and continued workforce advocacy through CBHDA workgroups.

DPH-SAPC engaged on federal issues with DHCS, including BH-CONNECT (1115) implementation—approved December 16, 2024 and effective January 1, 2025 - December 31, 2029—which centers around housing interventions and expands evidence-based behavioral health services. The department is also tracking H.R. 1 implementation and conducting community messaging on Medi-Cal eligibility changes that may chill service use despite exemptions for SUD providers. DPH-SAPC also analyzed and advocated on federal issues related to housing for persons experiencing or at risk of homelessness with SUDs and has worked closely as a supportive stakeholder with DHCS through this process, including with respect to the following legislative action items: H.R. 2483 (SUPPORT Act) signed December 1, 2025, strengthening SUD programs through 2030; H.R. 5462 (Michelle Alyssa Go Act) introduced to exclude ≤ 36-bed facilities from the IMD definition; and H.R. 4022 (Increasing Behavioral Health Treatment Act) to repeal

the IMD payment exclusion under Medicaid while requiring access and reporting safeguards.

Finally, through Value-Based Incentive efforts, DPH-SAPC is strengthening the SUD provider network-supporting staff development, clinical quality, service design, and payment reforms under DMC-ODS and CalAIM-to ensure durable access to high-quality Medi-Cal SUD services.

## II. DATA VERIFICATION

The County continues to work with County Monitor Goethals to validate the information provided in the County's quarterly reports. In addition to the previously reported meetings, the County arranged a ride-a-long in January 2026 with an MDT and HOME team as well as a visit to the new headquarters of the County Department of Homeless Services and Housing and a DMH interim housing site created pursuant to the Settlement Agreement. The County has also offered to provide the County Monitor with additional background documentation, interviews, future site visits, and raw data upon request.

The County also continues to upload invoices related to the LA Alliance Settlement approximately every month to https://lacounty.gov/alliance/.

DATED: February 13, 2026        MILLER BARONDESS, LLP

By: /s/ Mira Hashmall
MIRA HASHMALL
Attorneys for Defendant
COUNTY OF LOS ANGELES